# Exhibit 1



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**1200 New Jersey Ave, SE
Washington, DC 20590**

June 25, 2026

Ian M. Grossman, President & CEO
American Association of Motor Vehicle Administrators
4401 Wilson Blvd., Suite 700
Arlington, VA  22203

Mr. Grossman,

As a part of the Federal Motor Carrier Safety Administration's (FMCSA) ongoing efforts to ensure the integrity and issuance of Commercial Driver's Licenses (CDLs) and Commercial License Permits, we conduct routine reviews and data analysis to oversee the national CDL program.

In accordance with Article 7(b) of the 2013 Commercial Driver's License Information System (CDLIS) Cooperative Agreement, FMCSA requests the American Association of Motor Vehicle Administrators (AAMVA) provide the following information for all individual pointers within CDLIS for the last five years:

- Driver Name
- Date of Birth
- State of Record
- License Number
- Social Security Number (If available. If not, please provide date when this data was removed from records retained by AAMVA)

FMCSA understands the size and scope of this request and will work with AAMVA to determine the most efficient way to comply with the significant amount of data being requested. FMCSA requests that AAMVA expedite the delivery of the requested information.

We appreciate your prompt attention to this matter. Should you need additional information, please contact Patrick D. Nemons, Director of Safety Program, by email at patrick.nemons@dot.gov.

Sincerely,

Thomas Liberatore
Acting Associate Administrator for Safety

**American Association of
Motor Vehicle Administrators**

OUR **VISION**

*Safe drivers
Safe vehicles
Secure identities
Saving lives!*

June 30, 2026

***Transmitted by email***

Mr. Thomas Liberatore
Acting Associate Administrator for Safety
Federal Motor Carrier Safety Administration
1200 New Jersey Ave, S.E.
Washington, D.C.  20590

Re:  Request for Driver Pointer Records of June 26, 2026

Dear Mr. Liberatore:

On behalf of the American Association of Motor Vehicle Administrators ("AAMVA"), I am writing to confirm receipt of your June 25, 2026 request for certain "information for all individual pointers within CDLIS for the last five years."  We have conducted a preliminary review of data potentially responsive to the request and assess that there are approximately 17 million responsive pointer records.

As you are likely aware, this is the first AAMVA has ever received such a request from the Federal Motor Carrier Safety Administration ("FMCSA").  AAMVA is expeditiously working to assess feasibility from both a technical and legal standpoint.  As we do so, we intend to work closely with FMCSA.

From a technical standpoint, our team is evaluating data storage and transfer options that will comply with security requirements for the data.  We expect to have preliminary solutions in those areas soon and will ensure we coordinate with you accordingly.

From a legal standpoint, we are working with our counsel and will be coordinating with the AAMVA Board of Directors.  As the request calls for "pointer records," including name, date of birth, state of record, license number, and social security number, it implicates both the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*, and the privacy laws in all United States jurisdictions.  We must carefully evaluate competing legal obligations to FMCSA, jurisdictions using CDLIS, and drivers to whom the information pertains.

Understanding that Section 7(b) of the Cooperative Agreement calls for access to "driver records," for authorized purposes, FMCSA personnel may access any driver record directly from the State of Record using existing transactions (CD03 and CD04) or they can retrieve CDLIS pointer information from the Central Site using the AKA Data Inquiry (CD05). Based upon our initial review, we do not believe Section 7(b) covers the current request for compilation of a dataset comprised of personal information built from 17 million "pointer records." As a preliminary matter, "pointer records," although built in large part from information in "driver records," are separate from driver records.

In any case, we will work in good faith to assess what can be provided and any necessary safeguards beyond technical transmission requirements.  As we do so, we must ask that FMCSA provide AAMVA the specific intended use of the information.  In particular, we must understand what agency or agencies will use the information and for what government function or functions.  Such analysis is required of AAMVA in evaluating

Mr. Thomas Liberatore
June 30, 2026
Page 2 of 2

the various potential disclosure justifications under the DPPA, and we anticipate that such analysis will be necessary in applying other relevant privacy laws as well.

Finally, driver records are maintained by originating jurisdictions and merely accessed via the Commercial Drivers' License Information System ("CDLIS").  As stated in Section 6(C) of the Cooperative Agreement, they are not considered a federal system of records under the Privacy Act, 5 U.S.C. § 552a and the Department of Transportation's implementing regulations at 49 C.F.R. Part 10.  By comparison, the data set presently requested seems likely to create a Privacy-Act-covered system of records.  To that end, we ask that you please share your analysis of whether this dataset will be a federal system of records under the Privacy Act and provide us any pertinent system of records notice ("SORN").

Sincerely,

Ian M. Grossman
President & CEO

IMG/sfb



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

1200 New Jersey Ave, SE
Washington, DC 20590

Ian M. Grossman, President & CEO
American Association of Motor Vehicle Administrators (AAMVA)
4401 Wilson Blvd., Suite 700
Arlington, VA  22203

Mr. Grossman,

Thank you for reaching out regarding the Federal Motor Carrier Safety Administration's (FMCSA) request for Commercial Driver's License Information System (CDLIS) data. To address your specific questions, we have outlined the agency's position on the language in the 2013 Cooperation Agreement, FMCSA's use of the CDLIS data, the Driver's Privacy Protection Act (DPPA), and Privacy Act compliance below.

FMCSA's request for the data falls solely under Article 7(b) of the 2013 Cooperation Agreement and subsequent addendum. Article 7 states that AAMVA **shall** make available to FMCSA, under subsection (b), all information on all driver records, including non-CDL holders who operate CMVs. The driver records data addressed in Article 7(b) encompasses all driver data to include the pointer records.  It is clear from the language that AAMVA must provide this information upon request and that FMCSA is entitled to receive this information.

FMCSA will use the CDLIS data as part of our statutory and regulatory oversight in our ongoing efforts to ensure the integrity and issuance of Commercial Driver's Licenses (CDLs) and Commercial Motor Vehicles (CMVs).

As to AAMVA's concerns with the DPPA, it is FMCSA's position that the DPPA does not apply to this CDLIS data sharing, as this situation is explicitly covered as a permissible use under 18 U.S.C. § 2721(b)(1). This provision allows for:

> *Use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."*

Because FMCSA is utilizing this data to fulfill its federal safety and regulatory obligations, it falls squarely within this statutory exception.

FMCSA appreciates AAMVA's concerns with the Privacy Act and whether FMCSA is creating a system of records with the data set provided by AAMVA. FMCSA will handle all legal

2

coordination necessary under the Privacy Act in close conjunction with our Chief Counsel and the Office of General Counsel.

We strongly encourage AAMVA's cooperation in providing this data to FMCSA as soon as possible. Our Information Technology team stands ready to help facilitate the transfer of the CDLIS data that FMCSA is entitled to receive.

Thank you for your prompt attention to this matter.

Sincerely,

Derek D. Barrs
Administrator
Federal Motor Carrier Safety Administration

American Association of
Motor Vehicle Administrators

OUR VISION

Safe drivers
Safe vehicles
Secure identities
Saving lives!

July 10, 2026

*Transmitted by email*

The Honorable Derek Barrs
Administrator
Federal Motor Carrier Safety Administration
1200 New Jersey Ave, S.E.
Washington, D.C. 20590

Administrator Barrs:

Thank you for your July 7, 2026 letter explaining the Federal Motor Carrier Safety Administration's ("FMCSA") position on disclosure of Commercial Drivers' License Information System ("CDLIS") pointer records. We appreciate the candid dialogue on this significant request. In the interest of transparency, this letter provides an update regarding our internal review process and the underlying issues we are working through.

As the request calls for transmittal of 17 million pointer records, it requires input from the American Association of Motor Vehicle Administrators' ("AAMVA") Board of Directors ("Board"). In addition to being an extraordinary data request, the pointer records are state records to which AAMVA has access, not AAMVA records.

To fully assess potential liability of AAMVA with respect to a disclosure of this magnitude and to ensure our Board has the information needed to provide input, we are working with our external counsel on the following issues:

- AAMVA's obligations under the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*;
- AAMVA's obligations under numerous state analogues to the DPPA;
- AAMVA's obligations under more general state privacy laws; and
- Any limitations to disclosure under AAMVA's user agreements with participating states.

We hope you will understand that, despite being expedited, our pre-disclosure analysis may take some time.

With respect to the information shared in your July 7 letter, we have several follow-up questions and are happy to provide additional context. First, we are familiar with the government functions exception to the DPPA that you cite. However, it is our understanding that such exception does not create a blanket authorization to disclose driver records whenever asked by a government agency. Rather, we must consider whether each data element requested is necessary to the governmental purposes for which it was requested. In other words, we must at least know what government agency will use the records for what government function. *See, e.g., New Richmond News v. City of New Richmond*, 881 N.W.2d 339 (C.A. Wis. 2016) (relying on *Senne v. Village of Palatine*, 695 F.3d 597 (7th Cir. 2012)). Also, as a practical matter, we anticipate that members of our Board will pose this question to AAMVA management.

Second, we appreciate that Article 7 of the Cooperative Agreement states that AAMVA "shall" provide "all information on all driver records" to FMCSA. As conveyed in our June 30 letter, we do not believe the pointer records are driver records subject to this Article. As also conveyed in that letter, FMCSA currently has access to

every driver record in the system.  The current request is for AAMVA to produce a new comprehensive dataset by pulling copies of all pointer records from participating jurisdictions.

Third, we appreciate your point that FMCSA is primarily responsible for analyzing compliance with its obligations under the Privacy Act, 5 U.S.C. § 552a.  However, we anticipate that at least some of AAMVA members may have concerns about the creation of a new federal system of records comprised of all pointer records pertaining to citizens of their states who hold commercial driver's licenses.  Although we appreciate your point from an administrative standpoint, we do not agree that AAMVA's member states have no meaningful role under the federal Privacy Act when the source records are state records.

We would like to request an in-person meeting between FMCSA counsel and our counsel to talk through the key issues we believe inherent in the request.  Such further dialogue will assist in our review and help us to prepare for important conversations with our Board.  If possible to schedule such a meeting for the week of July 20, we would greatly appreciate it.

Sincerely,

Ian M. Grossman
President & CEO

IMG/sfb



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**1200 New Jersey Ave, SE
Washington, DC 20590**

July 24, 2026

Ian M. Grossman, President & CEO
American Association of Motor Vehicle Administrators (AAMVA)
4401 Wilson Blvd., Suite 700
Arlington, VA  22203

Mr. Grossman,

Following the recent meeting between AAMVA and FMCSA leadership, FMCSA is providing this supplemental statement regarding the legal basis for the agency's access to and use of CDLIS data.

It remains FMCSA's position that the proposed CDLIS data sharing is fully authorized under the Driver's Privacy Protection Act (DPPA). Specifically, the disclosure is permissible under 18 U.S.C. § 2721(b)(1), which expressly allows for:

> *"Use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."*

FMCSA intends to use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313, including verifying Commercial Driver's License (CDL) validity and conducting motor carrier safety assessments. Direct access to this data enables FMCSA to fulfill its core responsibilities under 49 U.S.C. § 113, constituting a clear exercise of "carrying out its functions" under federal law.

Furthermore, any subsequent redisclosure to federal partner agencies is authorized pursuant to 18 U.S.C. § 2721(c) and § 2721(b)(1), provided the data is used strictly in furtherance of legitimate government functions. FMCSA will fully comply with all statutory and administrative requirements, including maintaining disclosure logs for five years, ensuring audit and inspection availability, and executing formal interagency Data Use Agreements (DUAs).

Finally, FMCSA will maintain this data within established Systems of Records in accordance with the Privacy Act of 1974. Relevant System of Records Notices (SORNs) will be provided under separate cover.

2

Thank you for your prompt attention to this matter.

Sincerely,

Rebecca Pettit
Chief Counsel
Federal Motor Carrier Safety Administration

American Association of
Motor Vehicle Administrators

OUR **VISION**
*Safe drivers*
*Safe vehicles*
*Secure identities*
*Saving lives!*

July 24, 2026

***Transmitted by email***

Rebecca Pettit
Chief Counsel
Federal Motor Carrier Safety Administration
1200 New Jersey Ave, S.E.
Washington, D.C. 20590

**Re: Request for Driver Pointer Records**

Chief Counsel Pettit:

Thank you for the follow-up information and assurances provided by letter this morning.  As shared preliminarily by email earlier today, we engaged the American Association of Motor Vehicle Administrators ("AAMVA") Board of Directors on this matter through a special meeting this afternoon.

I am able to confirm that AAMVA intends to disclose the records in compliance with applicable law, mindful of our regulatory obligations and the rights of the data owners. In furtherance of such disclosure, we are providing notice of the circumstances to our member jurisdictions, as they are the owners of the data.

The assurances you provided by letter this morning are appreciated and have helped us to reach this point.  Our assessment at this juncture is that AAMVA remains exposed to liability under state laws and potentially under our jurisdiction-level CDLIS agreement obligations.  It is simply the reality of this extraordinary data pull.

To facilitate our compliance while addressing necessary liability protections, we ask that the Department of Transportation ("DOT") confirm in writing that AAMVA's production of the pointer records will be an act carried out on behalf of, and at the specific direction of, DOT under AAMVA's agreements with DOT, and thereby subject to liability protection under the government contractor defense or related doctrines of derivative sovereign immunity.  An assurance that such a position would be taken by the United States in the event AAMVA is sued in relation to compliance with this demand would significantly help to reduce the risk AAMVA is forced to face.  Similarly, if DOT has any authorities under which it may offer indemnification, AAMVA would welcome prompt incorporation of such a term into the Commercial Driver's License Information System ("CDLIS") cooperative agreement.

As a showing of good faith while you consider our request, AAMVA's technical team will immediately commence detailed coordination with your information technology team to facilitate the transfer process, with an expectation of transfer on or around August 17.

Finally, I understand from our counsel and Mr. Cian Cashin that the meeting they had with you, DOT General Counsel Gregory Zerzan, and a Department of Justice attorney ended with an explicit threat of termination of all of AAMVA's federal grants and contracts and potential litigation if AAMVA did not inform DOT by today whether AAMVA intends to produce the 17 million pointer records.  Understanding you are eager to expeditiously obtain

Chief Counsel Rebecca Pettit
July 24, 2026
Page 2 of 2

the designated pointer records, we ask that you not carry through on these threats.  Doing so will cause significant disruption to the national commercial driver licensing program, including CDLIS.  Disruption to these programs, particularly CDLIS, will have immediate negative impacts on all jurisdictions, including the inability for all 50 states and the District of Columbia to issue or renew any CDL as well as non-CDL driver licenses.

We appreciate your continued patience as we work in good faith on your extraordinary request on a very short timeline.

Sincerely,

Ian M. Grossman
President & CEO

IMG/sfb

**American Association of
Motor Vehicle Administrators**

OUR **VISION**

*Safe drivers
Safe vehicles
Secure identities
Saving lives!*

August 7, 2026

***Transmitted by email***

Ms. Rebecca Pettit
Chief Counsel
Federal Motor Carrier Safety Administration
U.S. Department of Transportation
1200 New Jersey Ave, S.E.
Washington, D.C. 20590

Re: Request for Driver Pointer Records

Dear Ms. Pettit:

As you know, over the past approximately two weeks, the American Association of Motor Vehicle Administrators ("AAMVA") has been working on the Department of Transportation's ("DOT") demand for production of approximately 17 million master pointer records ("MPRs"), including Social Security numbers.

As we had committed to in our Friday, July 24 letter, on Monday, July 27, we provided the enclosed notice to our member jurisdictions that own the data and have worked aggressively with our counsel to assess the relevant privacy laws of all fifty-one (51) impacted jurisdictions.  AAMVA's response to this demand is complicated by the fact that, on the one hand, DOT asserts that MPRs are subject to unrestricted federal access, while, conversely, many of AAMVA's member jurisdictions assert strict disclosure constraints on the data.  In fact, in response to our notice, more than twenty jurisdictions have formally objected to AAMVA's proposed production of this state data.

Against this challenging backdrop, and with this new information, we have been assessing AAMVA's legal obligations, taking into account that AAMVA is a private non-profit corporation subject to compliance with state laws as a custodian of state data.  We have concluded that production of the MPRs would create significant questions as to AAMVA's compliance with its obligations under many user agreements between AAMVA and states that participate in the Commercial Driver's License Information System ("CDLIS"), state civil laws prohibiting disclosure of information contained in MPRs, and even certain state criminal laws prohibiting disclosure of information contained in MPRs.

In the interest of continued transparency and as a dedicated partner to DOT, we have prepared a summary of the key state laws that your demand implicates, which is attached as Appendix A.  We believe that analysis of the legal constraints set forth in Appendix A will aid DOT in understanding the ongoing complexities of AAMVA's position.

As part of our analysis, we appreciated the Federal Motor Carrier Safety Administration's ("FMCSA") letter of July 24, asserting:

> FMCSA intends to use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313, including verifying Commercial Driver's License (CDL) validity and conducting motor carrier safety assessments. Direct access to this data enables FMCSA to fulfill

its core responsibilities under 49 U.S.C. § 113, constituting a clear exercise of 'carrying out its functions' under federal law.

Furthermore, any subsequent redisclosure to federal partner agencies is authorized pursuant to 18 U.S.C. § 2721(c) and § 2721(b)(1), provided the data is used strictly in furtherance of legitimate government functions. FMCSA will fully comply with all statutory and administrative requirements, including maintaining disclosure logs for five years, ensuring audit and inspection availability, and executing formal interagency Data Use Agreements (DUAs).

These assurances were particularly helpful to our analysis of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq*. and numerous similar state driver data protection laws. They were also conveyed to our member jurisdiction in our notice to them.

However, our analysis was also informed by the Department of Homeland Security ("DHS") subpoena served upon AAMVA in person on Tuesday, July 28. That subpoena called for production of exactly the same information as demanded through FMCSA. The subpoena is entitled "Immigration Enforcement Subpoena," its cited legal basis is 8 U.S.C. § 1225(d), and its stated purpose is production of documents "in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws." FMCSA staff separately indicated via email that FMCSA and DHS had coordinated on their data demands and that the subpoena would be withdrawn due to AAMVA's efforts to cooperate with FMCSA. We therefore had to incorporate into our analysis the fact of an immigration enforcement purpose in collection of the data. Although AAMVA takes no policy position on that matter, as shown in Appendix A, that fact does affect the necessary legal analysis.

In light of the above, AAMVA is reconvening its Board for a meeting this Friday, August 14th. At that meeting, one of the options AAMVA will consider with respect to the data demand will be facilitating an opt-in or opt-out choice by the states whether to authorize AAMVA's transmission of that state's data. This allows states to conduct their own analyses under applicable laws and ease the burden of DOT in coordinating with the states, while removing AAMVA from the actual disclosure decision about individual state data.

If this proceeds, we would also be willing to facilitate a forum between you or other DOT representatives to address the jurisdictions on this important matter. Please do not hesitate to let me know.

We understand that you are eager to receive initial data, including desiring some production by August 10. We will not be able to produce any bulk data prior to the upcoming Board meeting.

We are well aware that DOT and certain states may have differing views on these matters and assure you that we are not pleased about the circumstance AAMVA faces on all sides as a result of this data demand. At bottom, this is state data that does not belong to AAMVA, necessitating a measured approach.

Sincerely,

Ian M. Grossman
President & CEO

Enclosures

Copy to:
Derek Barrs, Administrator, FMCSA
Scott S. Sheffler, Partner, Venable LLP

**Appendix A**

**Summary of Restrictions on AAMVA's Disclosure of MPRs to FMCSA**

***Several states restrict disclosure of Social Security numbers:***

The vast majority of MPRs contain Social Security numbers, which are subject to heightened protection under state law.  AAMVA has identified at least five (5) states that expressly restrict disclosure of Social Security numbers to third parties.  Colo. Rev. Stat. § 4-1-206; Ga. Code § 40-5-2; MCL § 257.307; Tex. Transp. Code § 730.007; Wis. Stat. § 343.14.

Some of these statutes include limited exceptions for disclosures to select state agencies or for specific purposes not consistent with those asserted by FMCSA.  *See, e.g.*, Wis. Stat. § 343.14 (prohibiting disclosure of Social Security numbers other than to specific state agencies); Ga. Code § 40-5-2 (clarifying that the government functions exception under the motor vehicle records law permits only disclosure of name, address, driver identification number, and medical or disability information).  Of the laws restricting disclosure of Social Security numbers, three (3) carry potential criminal penalties. *See, e.g.,* Ga. Code Ann. § 40-5-2(g).

AAMVA has identified the laws above as potentially restricting disclosure of unredacted MPRs to FMCSA, but does not have all the information necessary to fully evaluate which exceptions may apply. For instance, AAMVA is not involved in the collection of Social Security numbers from CDL applicants and therefore cannot assess whether any relevant consent is obtained for disclosures of Social Security numbers.  States can resolve these questions and, when consistent with applicable state law, authorize disclosure of complete MPRs to FMCSA.

***Many states restrict disclosure of data for immigration enforcement:***

AAMVA has identified at least eleven (11) states that prohibit disclosure of information contained in MPRs for purposes of immigration enforcement or to agencies that primarily enforce immigration laws. Given AAMVA's express coordination with DHS, which cited civil immigration enforcement as one of its primary purposes for collecting MPRs, these laws are relevant for AAMVA's analysis.  In order to disclose MPRs to FMCSA, AAMVA would need to resolve the restrictions under the following laws, at a minimum:

1. Cal. Veh. Code § 1808.48
2. Colo. Rev. Stat. § 24-72-204
3. D.C. Code § 50-1401.01b
4. 625 ILCS 5/6-110.3
5. Md. Code, Gen. Provisions § 4–320.1
6. 940 CMR § 37.04(1)
7. Nev. Rev. Stat. § 481.063
8. N.M. Stat. § 66-2-7.1
9. N.Y. Veh. & Traf. Law § 201(12)
10. Va. Code § 46.2-208(B)(9)
11. RCW § 43.17.425

The prohibitions typically have narrow exceptions that allow disclosure only in limited circumstances, such as to respond to court orders, judicial warrants, or court-issued subpoenas. *See, e.g.*, Colo. Rev. Stat. § 24-72-204 (clarifying that the government functions exception under the motor vehicle records law does not apply to requests made "for the purpose of investigating for, participating in, cooperating with, or assisting in federal immigration enforcement . . . except as required by federal or state law or to comply with a court-issued subpoena warrant or order"); 625 ILCS 5/6-110.3 (prohibiting disclosure of personally identifying information to any immigration agent except as required to comply with a judicial warrant, court order, or court-issued subpoena); Va. Code § 46.2-208 (prohibiting disclosure "for any purposes related to civil immigration enforcement unless (i) the subject of the information provides consent or (ii) the requesting agency presents a lawful judicial order, judicial subpoena, or judicial warrant").  Of these laws, seven (7) carry potential criminal penalties.  *See, e.g.*, Cal. Veh. Code § 1808.45; N.M. Stat. § 66-2-7.1.  As these laws generally apply to state agencies as well as their contractors, many states have objected to any unilateral determination by AAMVA regarding permissibility of disclosure of MPRs.

***AAMVA's agreements with states restrict disclosure of state data:***

All MPRs are created by states and provided to AAMVA specifically for the operation of CDLIS to facilitate individual queries.  Many of AAMVA's agreements with states classify state-provided data as "Protected" or "Confidential" and prohibit disclosure of state data to any third parties except as authorized by the state.  Specifically, our analysis has revealed express restrictions on AAMVA's disclosure of state data in agreements with the following states: California, Colorado, Hawaii, Idaho, Illinois, Indiana, Maine, Michigan, Missouri, Nevada, New Jersey, New Mexico, New York, Tennessee, Utah, and West Virginia.  Numerous states have objected to AAMVA's disclosure of the data on the basis of these contractual restrictions.  States have also asserted that they, not AAMVA, are owners of the data and therefore responsible for determining whether and when to disclose the data in response to requests by any third party.  Both sets of restrictions can be resolved by states authorizing the release of the data to FMCSA.

A-2

**American Association of
Motor Vehicle Administrators**

**OUR VISION**
*Safe drivers
Safe vehicles
Secure identities
Saving lives!*

## MEMORANDUM

**TO:**      U.S. State Driver Licensing Agency Chief Administrators

**FROM:**    Ian M. Grossman, AAMVA President & CEO

**DATE:**    July 27, 2026

**RE:**      FMCSA Request for CDLIS Pointer Records

AAMVA is writing to inform driver licensing agencies of a demand from the Federal Motor Carrier Safety Administration (FMCSA) for AAMVA to provide approximately 17 million Commercial Driver's License Information System (CDLIS) Master Pointer Records (MPR).  The MPR is the information of a licensee (Driver Name • Date of Birth • State of Record • License Number • Social Security Number) contained on the CDLIS Central Site to serve as the "address book" to find the full driver record held in the individual jurisdiction system. More background on the CDLIS architecture is included as an appendix to this memo.

Pursuant to 49 U.S.C. § 31309, the Department of Transportation (DOT) is required to maintain the CDLIS system but may do so via a non-federal operator.  Under this authority, and similar prior authorities, throughout the system's history FMCSA has designated AAMVA as the CDLIS operator and entered a long-standing Cooperative Agreement governing CDLIS operations. Federal statutes establish FMCSA access to all information in CDLIS and the CDLIS Cooperative Agreement provides that AAMVA shall make available to FMCSA all information on driver records.

While FMCSA has access to existing CDLIS transactions to locate a MPR and connect to the jurisdiction of record to access a full driver record, the compilation of a combined pointer dataset requires a data pull that only AAMVA can perform.

Due to the unique nature of this request, AAMVA has worked with FMCSA to secure assurances that the data will be used only for authorized purposes as outlined in the Driver's Privacy Protection Act (DPPA), specifically, as permitted under 18 U.S.C. § 2721(b)(1), which allows:

*"Use by any government agency, including any court or law enforcement agency in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."*

More specifically, to conform to the scope of this DPPA exception, FMCSA has committed in writing to:

*"use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313, including verifying Commercial Driver's License (CDL) validity and conducting motor carrier safety assessments."*

Further, FMCSA has provided in writing its understanding and commitment that:

*"any subsequent redisclosure to federal partner agencies is authorized pursuant to 18 U.S.C. § 2721(c) and § 2721(b)(1), provided the data is used strictly in furtherance of legitimate government functions.  FMCSA will fully comply with all statutory and administrative requirements, including maintaining disclosure logs for five years, ensuring audit and inspection availability, and executing formal interagency Data Use Agreements (DUAs)."*

AAMVA expressed concerns with the Federal Privacy Act and whether FMCSA is creating a system of records with the data set and has received confirmation from FMCSA, along with the DOT Office of General Counsel, that DOT accepts all responsibility for all legal coordination necessary under the Federal Privacy Act.

Considering the disclosure requirements under the Cooperative Agreement and these assurances, the AAMVA Board of Directors has instructed staff to work in good faith with FMCSA to produce the data with the understanding that prior notice to the licensing agencies is necessary, as we believe that the MPRs contained in the CDLIS Central Site are jurisdiction data.

While we are preparing to transmit the data within the next few weeks, AAMVA is working with counsel to fully assess any remaining legal implications, including any jurisdiction-specific-law or agreement-related limitations that may be relevant, so we can best manage all potential obligations to both the jurisdictions and DOT. Given the short timeline imposed on AAMVA, any jurisdiction that would like to provide such information for our review is asked to do so ASAP, and no later than August 3, 2026. Please provide such information to Cian Cashin, AAMVA Vice President of Government Affairs.

If you have any other questions or concerns, please feel free to contact me at any time.

IMG/sfb

**American Association of Motor Vehicle Administrators**

Safe drivers
Safe vehicles
Secure identities
Saving lives!

# UNDERSTANDING CDLIS: A POINTER-BASED SYSTEM ARCHITECTURE

## Executive Overview

### What is CDLIS?

The Commercial Driver License Information System (CDLIS) enables all states to share critical commercial driver information in real-time, ensuring that commercial drivers can only hold one valid CDL at a time and that safety-critical events are immediately reported across state lines. CDLIS supports pre-issuance checks, disqualification enforcement, and nationwide driver history management.

CDLIS is operated by AAMVA on behalf of the Federal Motor Carrier Safety Administration (FMCSA).

### The Pointer System: A Distributed Architecture

CDLIS uses a "pointer" system to maintain national oversight while protecting state sovereignty over driver records. CDLIS pointers are created for all commercial permit / license holders and for non-commercial drivers who have been convicted in a CMV (26,001 or more pounds). CDLIS currently has approximately 17.3 million pointers.

Rather than storing all driver history centrally, CDLIS employs a two-tier architecture:

• Central Site (AAMVA) — Maintains Master Pointer Records (MPRs), which point to where each driver's complete history is stored.
• State of Record — Maintains the Driver History Record (DHR), which contains all detailed driver information, convictions, withdrawals, and actions.

This distributed design allows state driver licensing agencies (SDLAs) to enforce federal standards, while states retain full control of their driver records and the authority to make licensing decisions for their own citizens.

### How Does a Pointer Work? (Simplified Example)

Imagine a state licensing official in State A is about to issue a commercial license to a driver. Before issuance, State A must check CDLIS to ensure this driver doesn't already hold a valid CDL elsewhere:

1. State A sends a search inquiry to CDLIS Central Site with the driver's identification.
2. CDLIS Central Site searches its Master Pointer Records and finds a match: "This driver has a CDL on file — State of Record is State B."
3. The Central Site sends the pointer information to State A and simultaneously requests the driver's complete Driver History Record from State B.
4. State B transmits the driver's complete Driver History Record to State A.
5. State A reviews the history and decides whether to issue the CDL.

The pointer is the "address book" entry; the DHR is the complete file.

## What Information Is Stored Where?

Master Pointer Record (MPR) — Stored at AAMVA CDLIS Central Site.

| Data Element | Purpose | Is this included in FMCSA's request? |
|---|---|---|
| Master Pointer ID | Unique identifier for each driver's pointer record | No |
| Current State & License # | Which state holds the driver's current record and what their license number is | **Yes** |
| Name & DOB | Basic identification for driver matching | **Yes** |
| 9 Digit SSN | Verification that the right person is identified | **Yes** |
| AKA Records | Also Known As names used in previous jurisdictions | No |
| CDLIS Indicator | Identifies if the pointer belongs to CDLIS or not | No |

## Sample MPR Extract (Fictional Data)

Below is an example of the information from CDLIS Master Pointer Record that FMCSA has requested.

| Field Name | Sample Value |
|---|---|
| Current State (Jurisdiction) | CO |
| Current License Number | C12345678 |
| First Name | Michael |
| Last Name | Johnson |
| Date of Birth | 05/15/1978 |
| Social Security Number | 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 |

Driver History Record (DHR) — Stored at the State of Record. **<u>FMCSA has not requested this information.</u>**

| Data Element | Purpose |
|---|---|
| License Status | Current commercial license status (valid, suspended, revoked, etc.) |
| License Information | License information, including license class, type, endorsements and restrictions. |
| Permit Information | Permit information, including endorsements and restrictions |
| Conviction Records | All ACD violations and convictions while driving a CMV or holding CDL |
| Withdrawal Records | License suspensions, disqualifications, revocations, cancellations |
| Conviction-Withdrawal Links | Which convictions triggered which withdrawals |
| Federal Integration | Drug & Alcohol Clearinghouse status, Medical Examiner certification status |



1200 New Jersey Avenue, SE
Washington, DC 20590

**U.S. Department of Transportation**
**Federal Motor Carrier Safety Administration**

August 11, 2026

Ian Grossman
American Association of Motor Vehicle Administrators
4250 Fairfax Drive, Ste 1000
Arlington, VA 22203

Mr. Grossman,

We have received your letter of August 7, 2026.  The Department of Transportation ("DOT") has been committed to working with the American Association of Motor Vehicle Administrators ("AAMVA") to ensure the timely production of the pointer records DOT requested in its initial June 25, 2026, letter.  In that spirit, DOT consulted with the Department of Justice and promptly provided the assurances AAMVA requested in its July 24 letter to "facilitate [its] compliance" with DOT's production request.

However, despite AAMVA's representations indicating a willingness to produce the requested records, including representing in its July 24 letter "an expectation of transfer on or around August 17," AAMVA's letter of August 7 reneges on its prior commitment to produce the records and instead intends to subject the matter to yet another board vote on August 14, at which it may, or apparently may not, decide to produce the records subject to "an opt in or opt-out choice by the states."  That is unacceptable.  States have no veto over the production of records that AAMVA is holding on DOT's behalf, that DOT has statutory authority and responsibility to maintain, and that are urgently needed for the federal government to help prevent fatal trucking accidents involving the many drivers to whom States have improperly issued Commercial Driver's Licenses. *See* 49 U.S.C. § 31309.  This is not "state data," and State laws and choices cannot override DOT's statutory authority or AAMVA's obligation to produce DOT's own records to DOT.

Given your shift in position, DOT has no choice but to take immediate action to secure the production of the requested pointer records.  Today, the Department of Homeland Security will reissue the administrative subpoena it previously withdrew.  Unless AAMVA provides DOT with the requested records by August 17, DOT will pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the subpoena, and considering terminating its contract with AAMVA.



1200 New Jersey Avenue, SE
Washington, DC 20590

U.S. Department of Transportation
**Federal Motor Carrier Safety Administration**

We regret that AAMVA has reneged on its prior assurances of production by August 17, and hope that AAMVA will reconsider its position.  In the event it does not, DOT will pursue all available options to obtain the records to which it is entitled.

Sincerely,

*Rebecca Pettit*

Rebecca Pettit
Chief Counsel