**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

State of Illinois, et al.,

Plaintiffs

v.

United States Department of Transportation, et al.,

Defendants.

No. 1:26-cv-2547

# DEFENDANT AMERICAN ASSOCIATION OF MOTOR VEHICLE ADMINISTRATORS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Jay C. Johnson, VSB 47009
Scott S. Sheffler, pro hac vice pending
Emma Blaser, pro hac vice pending
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
jcjohnson@venable.com
202-344-4000

Kyle Keraga, pro hac vice pending
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
kkeraga@venable.com
410-244-7400

Counsel for Defendant
American Association of
Motor Vehicle Administrators

## TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 2
A. AAMVA has operated CDLIS from the start. ..... 2
B. CDLIS serves as a clearinghouse for State licensing information. ..... 3
C. FMCSA is asking for information in the CDLIS master pointer records. ..... 5
DISCUSSION ..... 6
I. The CDLIS master pointer records belong to the States, not to AAMVA. ..... 7
II. No matter which path it chooses, AAMVA is reasonably concerned about the legal consequences. ..... 8
III. If CDLIS went offline, it would have serious consequences. ..... 10
CONCLUSION ..... 11

## INTRODUCTION

For nearly 40 years, the American Association of Motor Vehicle Administrators (AAMVA) has run a federally mandated clearinghouse of State-supplied information about commercial vehicle operators. That clearinghouse—called the Commercial Driver's License Information System (CDLIS)—has done what Congress intended, helping the federal and State governments "work in partnership" to "improve motor carrier, commercial motor vehicle, and driver safety" and "to support a safe and efficient transportation system." 49 U.S.C. § 31100. But now the federal and State governments are fighting over certain information in the CDLIS clearinghouse, and AAMVA is caught in between.

The CDLIS clearinghouse is necessary because commercial driver's licenses are issued by States, but subject to federal regulations. Those regulations exist so that a driver may hold only one commercial license at a time, 49 C.F.R. § 383.21, with one State being responsible for that license's issuance, *id.* § 383.73. The CDLIS clearinghouse is vital to this system's proper functioning because it gives all States access to commercial driver information, thus enabling them to manage and oversee their own driver population and adhere to the commercial driver's licensing program requirements established by State and federal law. AAMVA is vital because it manages the CDLIS clearinghouse for the State and federal governments.

This case puts AAMVA in an untenable position between its State members and a longtime safety partner, jeopardizing AAMVA's unique role as a bridge between the States and the federal government. Its federal contracting agency wants AAMVA to turn over the records it uses to identify commercial drivers in every State. Nearly half the States argue that this demand is illegal and have sued to block it. AAMVA takes no view on most of those legal issues. AAMVA seeks only to comply with State and federal law while maintaining the safety-critical functionality of the CDLIS clearinghouse.

## BACKGROUND

To understand the dilemma that AAMVA is facing, it will help to know what AAMVA does, how the Commercial Driver License Information System (CDLIS) works, and why the States brought this case against the Federal Motor Carrier Safety Administration (FMCSA), the Department of Transportation (DOT), and AAMVA.[1]

### A. AAMVA has operated CDLIS from the start.

AAMVA has been enabling road safety and interstate coordination since its founding in 1933. Its members now include the 50 U.S. States and the District of Columbia, five U.S. territories, ten Canadian provinces, and three Canadian territories. These members are the motor vehicle agencies (both vehicle and driver) within each jurisdiction and the jurisdiction's lead traffic law enforcement agency (such as a State patrol or police agency).[2] AAMVA also has associate members, including other associations, non-profits, educational institutions, and businesses.[3]

AAMVA's mission is to improve safety by assisting members in their efforts to promote safe drivers, safe vehicles, and secure identities to save lives. That mission drives AAMVA's support for numerous initiatives, from encouraging highway safety partnerships among local and state jurisdictions[4] to supporting legislation that bans hand-held electronic devices while driving,[5] and many more.[6] AAMVA's policy experience and nationwide reach has also led it to develop several electronic tools that allow efficient exchange of information between motor vehicle users and government jurisdictions. For example, AAMVA runs the National Motor

---

[1] This case involves several abbreviations. For ease of reading, the acronym AAMVA is pronounced "*am*-vuh." CDLIS, also an acronym, is pronounced "*sid*-liss." FMCSA and DOT are initialisms, so they are pronounced letter-by-letter. *See* Bryan A. Garner, *Garner's Modern English Usage* 2–3 (5th ed. 2022) (explaining these distinctions for those who may care).

[2] *See* AAMVA, Jurisdiction Membership, available at https://tinyurl.com/bdhuvxxu.

[3] *See* AAMVA, Association Membership, available at https://tinyurl.com/3np3dc4e.

[4] *See* https://tinyurl.com/yytzjury (Policy Position on Highway Safety Office Partnership and Collaboration).

[5] *See* https://tinyurl.com/2s3pk5ey (Policy Position on Combatting Distracted Driving).

[6] *See* AAMVA, Policy Positions, available at https://tinyurl.com/m2y3tj8b.

Vehicle Title Information System, which allows titling agencies to instantly verify information on a paper title by comparing it to electronic information from the State that issued the title.[7]

AAMVA's safety focus and technical expertise, together with its character as a State-membership nonprofit organization, have made it the ideal operator for the CDLIS clearinghouse. Indeed, there has been a longstanding and common understanding that the existing relationship between all parties has worked. The current situation is novel and a departure from this successful, four-decade partnership.

### B. CDLIS serves as a clearinghouse for State licensing information.

CDLIS has been part of commercial-driver licensing since 1989. The following discussion highlights its key features.

Driver's licenses, including commercial driver's licenses, are issued at the State level. But by nature, States lack access to each other's licensing systems and driver records. Nor can the federal government readily access State licensing systems or driver records. The result, absent CDLIS, would be 51 separate commercial-driver licensing regimes.

One problem with such segregated licensing regimes is that commercial drivers often operate across State lines. An unsafe driver working under this sort of system could thus acquire licenses from multiple States, and violate motor vehicle safety laws in multiple States, without ever being flagged as unfit to operate a commercial vehicle. When Congress passed the Commercial Motor Vehicle Safety Act of 1986, it created CDLIS so that these kinds of problems could be solved. *See* Pub. L. 99–570 § 12007.

CDLIS is "a clearinghouse and depository of information about the licensing, identification, and disqualification of operators of commercial vehicles." 49 U.S.C. § 31309(a). CDLIS leverages the existing system of State-level licensing by requiring States to send the CDLIS operator—AAMVA—basic identifying information about their licensed commercial drivers. *Id.* § 31311(a)(5). Using this identifying information, CDLIS allows U.S. jurisdictions to

---

[7] AAMVA, National Motor Vehicle Title Information System (MNVTIS), available at https://tinyurl.com/hxv2359u.

ensure each CDL holder has only one record and to ensure that their driving record, including convictions, suspensions and withdrawals, moves with them when they obtain a CDL in another state. *Id.* § 31311(a)(6)–(10).

At bottom, CDLIS is a 'pointer system': It identifies the State maintaining the driver's underlying record and facilitates access to that State-held record, rather than serving as the repository of the driver's complete history. The CDLIS Central Site, which AAMVA maintains, is thus distinct from the full driver record that is maintained by the States and exchanged between jurisdictions. The information at the CDLIS Central Site is minimal and allows both the states and FMCSA to submit a query through its infrastructure to identify which jurisdiction maintains an individual's driver record and to retrieve the full driver record from the jurisdiction. So when someone seeks a commercial license in one State, that State need only ask CDLIS whether the license applicant already holds a commercial license somewhere else. *Id.* § 31311(c). Drivers may not hold two commercial licenses at the same time. *Id.* § 31302.

On a technical level, FMCSA acknowledges that "CDLIS is not a Federal Privacy Act system of records, but a distributed relational database maintained and operated by the States." FMCSA, Privacy Impact Assessment for Commercial Driver's License Information System (CDLIS)-Gateway (Jan. 11, 2011).[8] That means each State "is the authoritative source" for its own commercial driver's license records. *Id.* This data is thus "distributed" among the States. *Id.* By collecting the States' driver-identifying data in CDLIS, "which is operated by AAMVA on behalf of the States," the database becomes "relational." *Id.* AAMVA can use CDLIS to point authorized users to the appropriate State's records. *Id.* In computer jargon, the driver-identifying information held by AAMVA is called a "master pointer record" because it contains only enough identifying information—including a driver's name, date of birth, Social Security number, driver's license number and State of license issuance—to "point" a CDLIS user toward the full State driver record.

[8] The FMCSA Privacy Impact Assessment is available at https://tinyurl.com/6wuy292k.

The master pointer records themselves are not created by AAMVA. Rather, AAMVA's States Procedures Manual—which FMCSA's regulations incorporate by reference, 49 C.F.R. § 384.107—requires the State that creates the driver record to "maintain[] the [master pointer record]" on CDLIS. Cashin Decl. Ex. B (AAMVA State Procedures Manual excerpts) ¶ 5.1.1.1. This makes sense. AAMVA is not a regulator and it lacks insight into State licensing processes and decisions, much less the driver identification data in the master pointer record. The State that issues the license is thus the only entity that could create the master pointer record. AAMVA's value as CDLIS operator is in its ability to connect the States with each other.

### C. FMCSA is asking for information in the CDLIS master pointer records.

In June, AAMVA received a letter from FMCSA asking for specific "information for all individual pointers within CDLIS for the last five years." ECF 1-2 at 2. The requested information included the name, date of birth, license number, licensing State, and Social Security number for each driver with a pointer record—about 17 million of them. *Id.* AAMVA had never before received a request like this, but it promptly began working with its lawyers to assess the request and respond. *Id.* at 3. It also let FMCSA know from the start that it faced "competing legal obligations" to the federal and State governments, as well as to the drivers themselves. *Id.*

FMCSA at first responded by reassuring AAMVA that this request complied with federal law. *Id.* at 5–6. But AAMVA still had concerns, both about the legality of turning over the information from the master pointer records and about its obligation to do so under its Cooperative Agreement with FMCSA. *Id.* at 7–8. After another letter from FMCSA, AAMVA wrote back to "confirm that AAMVA intends to disclose the records in compliance with applicable law, mindful of [its] regulatory obligations and the rights of the data owners." *Id.* at 11. To that end, AAMVA told its State members, whom it considers "the owners of the data," about FMCSA's request. *Id.*

When AAMVA told the States about FMCSA's request, many quickly objected to AAMVA's disclosing the data in their State's master pointer record. *Id.* at 13. Seeking a solution, AAMVA proposed offering States "an opt-in or opt-out choice" on "whether to authorize AAMVA's transmission of that state's data." *Id.* at 14. FMCSA described this proposal as "unacceptable" on the grounds that "States have no veto over the production of records that AAMVA is holding on DOT's behalf" and that "State laws and choices cannot override DOT's statutory authority or AAMVA's obligation to produce DOT's own records to DOT." *Id.* at 21.

FMCSA further told AAMVA that the Department of Homeland Security would issue an administrative subpoena requiring AAMVA to produce the information in the master pointer records by August 17. *Id.*; *see* ECF 1-12 (as-issued subpoena).[9] Failure to comply, said FMCSA, could prompt DOT to "cancel[] AAMVA's grants" and "consider[] terminating its contract with AAMVA." ECF 1-2 at 21.

At the same time, several States were urging AAMVA not to produce the information FMCSA wanted. Illinois, for instance, highlighted potential violations of federal and state law if its information were turned over. *See* Declaration of Cian Cashin, Ex. D. California warned that turning over its information would violate the agreement between the State and AAMVA. *See* Cashin Decl. Ex. E. In all, 21 States and the District of Columbia objected to disclosure. Cashin Decl. Ex. C at 9–10. By the week of August 10, these plaintiff States were threatening legal action. *Id.* at 6–12. On August 13, they filed this case and the accompanying motion for a temporary restraining order.

**DISCUSSION**

The States' motion for a temporary restraining order puts AAMVA in an impossible place. On one hand, FMCSA is demanding access to the CDLIS master pointer records and warning AAMVA that its federal grants and contracts are at stake. ECF 1-2 at 21. On the

[9] An earlier Department of Homeland Security subpoena had been withdrawn. *Id.*

other, the States claim that "that disclosure is unlawful." ECF 1 ¶ 101. AAMVA needs clarity so it can avoid violating any federal or State laws and so CDLIS can keep working.

## I. The CDLIS master pointer records belong to the States, not to AAMVA.

The statute that authorizes CDLIS explicitly describes it as a "clearinghouse and depository." 49 U.S.C. § 31309(a). AAMVA is the clearinghouse "operator." *Id.* § 31309(d). In this context, a clearinghouse is nothing more than a "place for the exchange of specialized information." *Clearinghouse*, Black's Law Dictionary 319–20 (5th ed. 2024). The term clearinghouse comes from the law of finance and banking, where it describes "an intermediary between buyers and sellers." *U.S. Futures Exch., LLC v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 959 n.1 (7th Cir. 2020); *see Alice Corp. Pty., Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 220 (2014) ("The use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy."). Such financial clearinghouses lack ownership or control over the funds and property that they handle. *See, e.g.*, *Bailey v. Big Sky Motors*, 314 F.3d 1190, 1202 (10th Cir. 2002) (holding that "intermediaries, couriers, and conduits may have physical control," but do not possess "dominion and control over the funds" they handle); *Bonded Fin. Servs. v. Euro. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) (holding that an agent directed to cash a check for a depositor never had "dominion over the money").[10]

As the "operator" of the CDLIS "clearinghouse," AAMVA is an intermediary, not an owner. The "data from the State databases is the authoritative source of commercial driver's license (CDL) records for each State," with "[e]ach State and the District of Columbia operat[ing] its own portion" of the database. FMCSA, Privacy Impact Assessment for Commercial Driver's License Information System (CDLIS)-Gateway (Jan. 11, 2011).[11] The CDLIS link between these State databases "is operated by AAMVA on behalf of the States." *Id.*

---

[10] The term "depository" reinforces this reading. *Depository*, Black's Law Dictionary 554 (12th ed. 2024) (defining "depository" as "[a] place where one can leave money or valuables for safekeeping").

[11] This federal Privacy Impact Assessment is available at https://tinyurl.com/6wuy292k.

Each State owns and maintains its own master pointer records. Cashin Decl., Ex. B at 13, 19 ¶¶ 5.1.1.1 & 6 (referencing the "[master pointer records] owned by the jurisdiction"). Thus, as AAMVA's agreement with DOT explains, "the records in CDLIS are not controlled by DOT." Cashin Decl. Ex. A (Cooperative Agreement), art. 6.C. Rather, "CDLIS records … are created and maintained by the States." *See* 76 Fed. Reg. 68328, 68329 (Nov. 4, 2011); *accord* 89 Fed. Reg. 50235, 50237 (June 13, 2024).[12]

## II. No matter which path it chooses, AAMVA is reasonably concerned about the legal consequences.

FMCSA's demand for the master pointer records relies first and foremost on Article 7(b) of its Cooperative Agreement with AAMVA. *See* Cashin Decl. Ex. A. That article tells AAMVA to "make available" to FMCSA "all information on all driver records." *Id.* art. 7(b). But the next paragraph in the same agreement tells AAMVA to give "third party service providers" "access to CDLIS Central Site master pointer records … after the third party service provider has entered into an agreement with AAMVA." *Id.* art. 7(c). By using two different terms—"driver records" and "master pointer records"—the Cooperative Agreement suggests "different meanings." *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1370–72 (Fed. Cir. 2009).

The Cooperative Agreement also reaffirms that CDLIS does not create a federal Privacy Act system of records. Cashin Decl. Ex. A, art. 6.C ("DOT has determined that CDLIS is not a Federal 'system of records' as defined by the Privacy Act of 1974 …."). Reading the Cooperative Agreement as authorizing FMCSA to require production of 17 million master pointer records is in some tension with that reaffirmation. AAMVA has thus understood Article 7(b) as requiring AAMVA to give FMCSA access to "information on driver records" via specific CDLIS searches, and that is what it has always done.

[12] Most recently, in a Notice of Proposed Rulemaking released on May 15, 2026, FMCSA proposed instating a CDLIS maintenance fee calculated based on "the total number of [master pointer records] owned by each State." 91 Fed. Reg. 28514, 28517 (May 18, 2026); *see id.* at 28516 (proposing fee set at "$0.33 for each MPR record on CDLIS owned by the particular State.").

But even if FMCSA were right that Article 7(b) gives it authority to demand all CDLIS master pointer records, AAMVA would still face legal risk. Many States have contracts detailing the terms on which their CDLIS data may be accessed or shared. ECF 1 ¶ 200. The language of these contracts varies depending on individual State requirements existing at the time they were signed. Some prohibit AAMVA from sharing a State's data without permission from its motor vehicle administration. *Id.* ¶ 203. Others strictly require AAMVA to comply with certain privacy laws. *Id.* ¶ 204. AAMVA is thus concerned that complying with FMCSA's demand could breach these contractual obligations, especially given that nearly two dozen of its member States have objected to AAMVA's sharing their data.

On a federal level, the Driver Privacy Protection Act (DPPA) guards the interests of people whose "personal information" is "collected by States in the licensing of motor vehicles." *Maracich v. Spears*, 570 U.S. 48, 52 (2013). To that end, the DPPA restricts states and private parties from disclosing "a driver's personal information without the driver's consent." *Reno v. Condon*, 528 U.S. 141, 144 (2000). No person, AAMVA included, can disclose the personal data in "a motor vehicle record" that "identifies an individual" unless an exception applies. 18 U.S.C. § 2722(a). And certain "highly restricted personal information," such as "social security number[s]," receives even stricter protections. *Id.* § 2725(4). FMCSA has told AAMVA that the DPPA's government-use exception applies here. ECF 1-2 at 9; *see* 18 U.S.C. § 2721(b)(1). Maybe it does. But given the claims in this case, AAMVA is reasonably concerned about its liability under the DPPA.

Risk to AAMVA also exists under State law. AAMVA has identified fifteen states with privacy statutes potentially prohibiting the disclosure of the type of information contained in the master pointer records. *See, e.g.*, Cal. Pen. Code § 502 (criminalizing unauthorized access of DMV databases); Ga. Code § 40-5-2 (prohibiting use of government agency exception to disclose Social Security number and other sensitive information). Some of these laws bar disclosure of motor vehicle records for purposes of federal immigration enforcement. *See, e.g.*,

Colo. Rev. Stat. § 24-72-204; D.C. Code § 50-1401.01(b); 625 ILCS 5/6-110.3. AAMVA's response to FMCSA must also navigate these laws.

**III. If CDLIS went offline, it would have serious consequences.**

FMCSA coupled its requests for information from the CDLIS master pointer records with a threat to cancel AAMVA's grants and contracts. *See* ECF 1-2 at 21. If that happened, AAMVA would no longer be authorized (or funded) to operate CDLIS. As far as AAMVA can see, this would shutter the CDLIS system, likely leaving States unable to comply with their licensing obligations.

CDLIS is central to every State's commercial driver licensing program. States must query CDLIS before issuing, renewing, upgrading, or transferring licenses, 49 C.F.R. § 383.373(d), update entries in 10 days whenever a license is issued, *id.* § 384.373(h), and initiate "change state of record" transactions whenever a driver moves to another state, *id.* § 384.207. And any state that fails to comply with these requirements faces the loss of 10% of its federal highway funding, 49 U.S.C. §§ 31309, 31311, 31314(c), which can amount to hundreds of millions of dollars. States that fail to use CDLIS can also be banned from performing any commercial driver licensing and permitting, including issuance, renewals, transfers, and upgrades. 49 C.F.R. § 384.405.

Even if a State tried to issue commercial licenses without using CDLIS, that State would not be able to check with other jurisdictions to prevent commercial-driver licensing fraud. *Commercial Driver's License Information System (CDLIS)*, AAMVA (last visited Aug. 16, 2026) (explaining that state agencies use CDLIS "to ensure that each commercial driver has only one driver license and one complete driver record").[13] Such fraud can make the roads less safe. A driver's licensing status, convictions, disqualifications, and accident history can affect whether that driver is competent to operate a motor vehicle. Without CDLIS cross-checking

[13] Available at https://tinyurl.com/4xbh8pr8.

in place, it will be too easy for drivers to dodge disqualifications and licensing suspensions, the very behavior that motivated Congress to create CDLIS in the first place.

In sum, without CDLIS, AAMVA's members will be unable to comply with the federal commercial driver's license laws and rules that protect all drivers. Beyond that, the CDLIS platform is interconnected with all forms of driver licensing, so a shutdown of CDLIS would not only disrupt the issuance and renewals of commercial licenses, but could disrupt, or even stop, the issuance and renewal of any driver license in the United States. Some States could choose to keep running their commercial driver licensing programs without the CDLIS checks required by law, thus opening the door to potential fraud. Other States may not be "willing [to] take on these risks," and could stop issuing commercial driver's licenses altogether. ECF 1 ¶ 128. That would be a career-breaking problem for commercial drivers who need to update their licenses, change home states, or apply for a first-time license. And because commercial drivers "account for millions of jobs and billions of dollars in tax revenue," *Id.* ¶ 129, even a temporary pause in CDLIS operation would have significant downstream economic effects.

AAMVA believes that its operation of CDLIS has benefitted everyone. It plans to keep operating CDLIS until it can no longer legally do so. It asks the Court to consider CDLIS's value to highway safety as it resolves this motion and addresses the issues in this case.

## CONCLUSION

The Court should protect AAMVA's operation of CDLIS while the legal issues in this case are resolved.

Respectfully submitted,

*/s Jay C. Johnson*

Jay C. Johnson, VSB 47009
Scott Sheffler, pro hac vice pending
Emma Blaser, pro hac vice pending
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
jcjohnson@venable.com
202-344-4000

Kyle Keraga, pro hac vice pending
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
kkeraga@venable.com
410-244-7400

Counsel for Defendant
American Association of
Motor Vehicle Administrators

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record in this case.

*/s Jay C. Johnson*
Jay C. Johnson, VSB 47009
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
jcjohnson@venable.com
202-344-4000