**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| State of Illinois, et al.,<br>Plaintiffs<br>v.<br>United States Department of Transportation, et al.,<br>Defendants | No. 1:26-cv-2547 |

## DECLARATION OF CIAN CASHIN

I, Cian Cashin, pursuant to 28 U.S.C. § 1746, do hereby state and declare as follows:

1. My name is Cian Cashin.

2. I am over the age of 18 and competent to make this declaration, and I have personal knowledge of all facts set forth herein.

3. I currently serve as the Vice President of Government Affairs for the American Association of Motor Vehicle Administrators (AAMVA), which has been named as a defendant in the above-captioned case.

4. As Vice President of Government Affairs, I routinely review AAMVA's essential files in the course of my responsibilities. I am familiar with the essential documents governing the Commercial Driver's License Information System (CDLIS) and am prepared to attest to their contents and authenticity.

5. Exhibit A to this declaration is a true and correct copy of the Cooperative Agreement between AAMVA and the Federal Motor Carrier Safety Administration (FMCSA), which I obtained through the regular course of my responsibilities with AAMVA.

6. Exhibit B to this declaration is a true and correct copy of relevant excerpts of the CDLIS State Procedures Manual, which I obtained through the regular course of my responsibilities with AAMVA.

7. Exhibit C to this declaration is a true and correct copy of the emails that were exchanged between AAMVA and the Plaintiff States in the buildup to this litigation, which I obtained through the regular course of my responsibilities with AAMVA.

8. Exhibit D to this declaration is a true and correct copy of a letter AAMVA received from Danielle Pappas, a Deputy General Counsel with the Illinois Secretary of State's Office, on August 3, 2026. I reviewed this letter during the regular course of my responsibilities with AAMVA.

9. Exhibit E to this declaration is a true and correct copy of a letter AAMVA received from Steve Gordon, Director of the California Department of Motor Vehicles, on August 3, 2026. I reviewed this letter during the regular course of my responsibilities with AAMVA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 17, 2026

/s/ *Cian Cashin*

Cian Cashin

# EXHIBIT A

# COMMERCIAL DRIVER'S LICENSE INFORMATION SYSTEM (CDLIS)

## The OPERATION, MANAGEMENT, ADMINISTRATION, AND MODERNIZATION COOPERATIVE AGREEMENT (June 9, 2008)

## PREAMBLE

### BACKGROUND

The Commercial Motor Vehicle Safety Act of 1986, re-codified at 49 U.S.C. Chapter 313, established the requirements for participation by the States in the Commercial Driver's License (CDL) program. The goal of the statute is to improve highway safety by ensuring that drivers of large trucks and buses are qualified to operate those vehicles and to remove unsafe and unqualified drivers from the highways. The statute retained the States' right to issue a driver's license, but established minimum national standards which States must meet when licensing commercial motor vehicle drivers.

Pursuant to 49 U.S.C. §31309(a), the Secretary of the Department of Transportation (DOT) was required to establish or designate an information system to serve as the clearinghouse of information provided by the States about any individual who operates commercial motor vehicles, including his/her identification, licensing history, and disqualification history. This system, known as CDLIS, also includes information about any individual required to have a CDL who has been convicted of any of the disqualifying offenses listed in 49 C.F.R. 383.51.

In 1988, DOT's Federal Highway Administration (FHWA) entered into an agreement with the American Association of Motor Vehicle Administrators (AAMVA) and its former affiliate AAMVAnet, Inc. (AAMVAnet) to establish a communications network to implement CDLIS. The agreement designated AAMVAnet the CDLIS operator, directly responsible for managing and administering the information system. Section 106(b) of the Motor Carrier Safety Improvement Act of 1999 (MCSIA), transferred all legal documents in effect at the time of the statute's enactment, including the 1988 Designation Agreement, from FHWA to DOT's Federal Motor Carrier Safety Administration (FMCSA). It is the intent of the Parties that this Operation, Management, Administration, and Modernization Grant Agreement (Agreement) will supersede the Designation Agreement.

In August 2005, 49 U.S.C. §31309, as amended by section 4123, Pub. L. 109-59, 119 Stat. 1721, the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), provided FMCSA the authority to establish a modernization plan for CDLIS and to issue grant funding to States or an organization representing agencies and officials of States for the modernization of CDLIS.

On May 2, 2006, FMCSA published a Federal Register notice, the CDLIS Modernization Plan (71 FR 25885), detailing the statutory requirements for modernization, the phases of the modernization plan, and the availability of grant funding for AAMVA and the States to comply

with CDLIS modernization requirements. Since May 2006, FMCSA and AAMVA have entered into annual grant agreements under which AAMVA agreed to complete the tasks enumerated in the Modernization Plan.

The CDLIS Modernization was successfully completed by AAMVA, and the Modernized CDLIS was launched on [February 22, 2011]. In May 2012, the Parties mutually agreed to supplement the June 9, 2008 Operation, Management, Administration, and Modernization Cooperative Agreement between AAMVA and FMCSA for the purpose of clarifying certain matters and adding additional mutually agreed upon provisions. This Agreement, effective since June 9, 2008, continues to guide the relationship between the parties as it relates to the operation, management, administration, and modernization of CDLIS.

**PARTIES**

The Parties to this Agreement are AAMVA (also referred to herein as "Recipient") and FMCSA.

AAMVA represents agencies and officials of States for operation and modernization of CDLIS. AAMVA is a nonprofit corporation organized under the laws of the District of Columbia. AAMVA is the successor to AAMVAnet, Inc., a Virginia nonstock corporation organized under the laws of the Commonwealth of Virginia as a nonprofit corporation.

FMCSA was established as a separate administration within the U.S. Department of Transportation on January 1, 2000, pursuant to MCSIA.

**AUTHORITY**

This Agreement is executed under authority of 49 U.S.C. §31309, as amended by section 4123(a), of SAFETEA-LU; 31 U.S.C. §6301, et seq., the Federal Grant and Cooperative Agreement Act of 1977, as amended; 2 C.F.R. Part 215 and 49 C.F.R. Part 19, Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations (OMB Circular A-110); Cost Principles for Non-Profit Organizations (OMB Circular A-122, relocated to 2 C.F.R. Part 230); OMB Circular A-133, Audits of States, Local Governments, and Non-Profit Organizations; and Generally Accepted Accounting Principles (GAAP) as prescribed in Accounting Principles Board Opinions and other related materials issued by the American Institute of Certified Public Accountants.

**PURPOSE**

The Parties are entering into this Agreement to enable AAMVA to continue to serve as the manager, administrator, and operator of CDLIS in accordance with the terms of this Agreement and all applicable laws and regulations. The Parties also intend to set out their duties and responsibilities for the CDLIS Modernization Plan as set forth in the Federal Register notice published on May 2, 2006, and their annual grant agreements.

Specifically, the goals of this Agreement are to provide a framework for the ongoing operation, maintenance, administration, and enhancement of CDLIS by AAMVA and for modernization of

the CDLIS so that it complies with applicable Federal information technology security standards; provides for the electronic exchange of all information including the posting of convictions; contains self-auditing features to ensure that data is being posted correctly and consistently by the States; integrates an individual's CDL and the medical certificate as required in the final rule, "Medical Certification Requirements as Part of CDL,"; and provide a schedule for modernization of the system. In accordance with the Modernization Plan as required in 49 U.S.C. §31309(e)(3), States will fund future efforts to modernize CDLIS.

## ARTICLES OF RESPONSIBILITIES

### ARTICLE 1. Funding – Period of Availability

Federally appropriated funds obligated to this Agreement are available until expended. 49 U.S.C. §§31309 and 31313. This agreement incorporates any previous grant agreements and amendments that obligated funds and were executed by the Parties between September 1, 2006 and the execution of this agreement regarding the operation and maintenance of CDLIS.

### ARTICLE 2. Dates

The project period for CDLIS modernization began on September 1, 2006, which is the first day of the first month following the issuance of the first grant to AAMVA, as contemplated in the CDLIS Modernization Plan published in the Federal Register on May 2, 2006. The project period shall continue for such time as the Recipient is designated as Operator of CDLIS. The Recipient shall be designated as the Operator of CDLIS as long as it meets all of its responsibilities pursuant to this Agreement.

The Recipient and FMCSA shall agree upon a timeline for the phases of the CDLIS Modernization Plan, with the intention that all States will implement the modernized CDLIS software by December 31, 2010. The timeline shall be adjusted from time to time based on actual funds appropriated and other needs identified during the course of implementation of the CDLIS Modernization Plan.

### ARTICLE 3. Project Description

AAMVA shall continue to operate the current CDLIS and AAMVA shall ensure that the modernized CDLIS:

a. Complies with industry standards and with applicable Federal information technology security standards is required in Article 6;
b. Provides for the electronic exchange of all information including the posting of convictions;
c. Contains self-auditing features to ensure that data is being posted correctly and consistently by the States; and
d. Integrates the CDL and the medical certificate.

**ARTICLE 4. Driver's Privacy Protection Act of 1994, as amended**

AAMVA shall ensure that CDLIS is operated in accordance with the Driver's Privacy Protection Act of 1994, as amended, 18 U.S.C. §2721 et seq.

**ARTICLE 5. State Compliance with Commercial Driver's License Program**

To support and enhance State compliance, AAMVA shall ensure that CDLIS is operated in accordance with the regulations on State Compliance with Commercial Driver's License Program (49 C.F.R. Part 384).

**ARTICLE 6. Information Technology Security Standards**

**ARTICLE 6** is guided by 49 USC §31106 and all other applicable Federal Standards. The Federal Security Standards were amended after the Effective Date of this Agreement. The Federal Security Standards in effect in March 2013 follow:

AAMVA shall ensure that CDLIS is operated in accordance with the following Federal information security and privacy requirements but are not limited to as they may be amended from time to time during the term of this agreement: Federal Information Security Management Act of 2002 (FISMA), 44 U.S.C. §3541, et seq, National Institute of Standards and Technology (NIST) Guidelines; the E-Government Act of 2002 and the Privacy Act of 1974. AAMVA shall utilize the applicable documents from the 800-Series of Special Publications and the Federal Information Processing Standards (FIPS) from the National Institute of Standards and Technology in the development of the modernized CDLIS, or operation of the current CDLIS. AAMVA may consult with the FMCSA Information Security Officer and the FMCSA Privacy Officer for guidance on the applicability of these and other publications in these series not herein identified.

A. Additionally AAMVA shall ensure the following:
   a. Assign Responsibility for Security and Privacy. Assign responsibility for privacy and security of the system to a management official knowledgeable in the nature of the information and process supported by the application and in the management, personnel, operational, and technical controls used to protect it. This official shall assure that effective privacy and security products and techniques are appropriately used in the application and shall be contacted when a security or privacy incident occurs concerning the application.
   b. System Security Plan. Plan for adequate security for CDLIS system as part of AAMVA's information resources management (IRM) planning process. The security plan shall be consistent with guidance issued by the National Institute of Standards and Technology (NIST).
   c. Rules of the System. Establish a set of rules of behavior concerning use of, security in, and the acceptable level of risk for, the system. The rules shall be based on the needs of the various users of the system. The security required by the rules shall be only as stringent as necessary to provide adequate security for information in the system. Such rules shall clearly delineate responsibilities and expected behavior of all individuals with

access to the system. They shall include appropriate limits on interconnections to other systems and shall define service provision and restoration priorities. They shall also include guidance about appropriate safeguards to protect the confidentiality of personally identifiable information. Finally, they shall be clear about the consequences of behavior not consistent with the rules.

d. Training. Ensure that all individuals are appropriately trained in how to fulfill their security responsibilities before allowing them access to the system. Such training shall assure that employees are versed in the rules of the system, be consistent with guidance issued by NIST, and apprise them about available assistance and technical security products and techniques. Behavior consistent with the rules of the system and periodic refresher training shall be required for continued access to the system.
e. Specialized Training. Before allowing individuals access to the application, ensure that all individuals receive specialized training focused on their responsibilities and the application rules. This may be in addition to the training required for access the system. Such training may vary from a notification at the time of access (e.g., for members of the public using an information retrieval application) to formal training (e.g., for an employee that works with the application).
f. Personnel Controls. Screen individuals who are authorized to bypass significant technical and operational security controls of the system commensurate with the risk and magnitude of harm they could cause. Such screening shall occur prior to an individual being authorized to bypass controls and periodically thereafter. Incorporate controls such as separation of duties, least privilege and individual accountability into the application and application rules as appropriate.
g. Incident Response Capability. Ensure that there is a capability to provide help to users when a security or privacy incident occurs in the system and to share information concerning common vulnerabilities and threats. This capability shall share information with other organizations involved, consistent with NIST coordination, and should assist the agency in pursuing appropriate legal action, consistent with existing requirements. Privacy Incidents should be reported within one hour of discovery or detection to the FMCSA Information Security Officer at (202)493-0196 or FMCSASecurity@dot.gov.
h. Continuity of Support. Establish and periodically test the capability to continue providing service based upon the needs and priorities of the participants of the system in the event of failure of its automated support.
i. Technical Security. Ensure that cost-effective security products and techniques are appropriately used within the system. Ensure that appropriate security controls are specified, designed into, tested, and accepted in the application in accordance with appropriate guidance issued by NIST.
j. Information Sharing. Ensure that information shared from the application is protected appropriately, comparable to the protection provided when information is within the application.
k. System Interconnection. Obtain written management authorization, based upon the acceptance of risk to the system, prior to connecting with other systems. Where connection is authorized, controls shall be established which are consistent with the rules of the system and in accordance with guidance from NIST and other relevant requirements.

l. Public Access Controls. Where an application promotes or permits public access, additional security controls shall be added to protect the integrity of the application and the confidence the public has in the application. Such controls shall include segregating information made directly accessible to the public from official agency records.
m. Review of Security Controls. Perform an independent review or audit of the security controls in the system when significant modifications are made to the system, but at least every three years. The scope and frequency of the review should be commensurate with the acceptable level of risk for the system. Depending on the potential risk and magnitude of harm that could occur, consider identifying a deficiency pursuant to OMB Circular No. A-123, "Management Accountability and Control" and the Federal Managers' Financial Integrity Act (FMFIA), if there is no assignment of security responsibility, no security plan, or no authorization to process for a system.
n. Authorize Processing. Ensure that a management official authorizes in writing the use of the system based on an independent review or audit of the security controls implemented in the system before beginning or significantly changing processing in the system.. A complete copy of the authorization package will be provided to FMCSA IT Security Team for review, comment and recommendation. Use of the system shall be re-authorized at least every three years. The Parties agree that AAMVA will permit FMCSA IT Security Team to conduct periodic security self-assessment of the CDLIS central site. FMCSA will assess the security posture of the CDLIS yearly by completing the self-assessment referred to above. Each assessment will examine the managerial, technical, and operational controls of the CDLIS central component. AAMVA will implement the recommendations made by FMCSA resulting from each security and privacy assessment and review.
o. Review of Application Controls. Perform an independent review or audit of the security controls in each application at least every three years. Consider identifying a deficiency pursuant to OMB Circular No. A-123, "Management Accountability and Control" and the Federal Managers' Financial Integrity Act if there is no assignment of responsibility for security, no security plan, or no authorization to process for the application.
p. Authorize Processing. Ensure that a management official authorizes in writing use of the application by confirming that its security plan as implemented adequately secures the application. Results of the most recent review or audit of controls shall be a factor in management authorizations. The application must be authorized prior to operating and re-authorized at least every three years thereafter. Management authorization implies accepting the risk of each system used by the application.

B. Treatment of Personally Identifiable Information (PII)

AAMVA shall ensure all sensitive and Personally Identifiable Information (PII) has been identified on the CDLIS, and that effective safeguards are deployed to protect against its unauthorized disclosure in accordance with all current Federal and State privacy protection requirements during the course of this agreement.

C. Privacy Act Applicability

DOT has determined that CDLIS is not a Federal "system of records," as defined by the Privacy Act of 1974 (5 U.S.C. §552a), because the records in CDLIS are not controlled by DOT. Federal agencies obtaining access to CDLIS records may be subject to the Privacy Act, if they establish a

system of records with the information obtained from CDLIS. Such agencies may also need to provide a process for review and correction of those records. Prior to sharing CDLIS records with any Federal agency, other than FMCSA, AAMVA shall ensure that the agency has the appropriate Privacy Act measures in place, if applicable, regarding the collection, maintenance, dissemination and use of CDLIS records.

**ARTICLE 7. Availability of Information**

**ARTICLE 7** is guided by 49 USC § 31106 and all other applicable Federal Standards. The Federal Security Standards were amended after the Effective Date of this Agreement. The Federal Security Standards in Effect in March 2013 follow:

Upon request, AAMVA shall make available to the following designated entities information in the system as follows:

a. To a State authorized official as required to carry out the responsibilities under the Commercial Driver's License Program: information on all driver records but only as it relates to a particular official State task or function;
b. To FMCSA: all information on all driver records, including non-CDL holders who operate CMVs.
c. To third party service providers: access to CDLIS Central Site master pointer records only for the purpose of locating a commercial driver's State of record after the third party service provider has entered into an agreement with AAMVA and either (i) has received a copy of the signed written consent from the driver for release of the information pertaining to that driver or (ii) has entered into a written agreement with the party requesting CDLIS Central Site master pointer records requiring that it will not request CDLIS Central Site master pointer records for a driver unless and until it has received a copy of the written consent from the driver for release of the information pertaining to that driver. AAMVA or its authorized representative will conduct an annual review with each third party service provider to ensure that the provider is receiving and maintaining records of the written consent or of the written assurances from requesting parties that such parties have received the required written consent from the driver whose CDLIS information is being sought. These signed written consent forms must be retained for a period of 3years. In conducting these reviews of third party service providers, AAMVA or its authorized representative may utilize a reasonable sampling methodology in accordance with procedures approved in advance by FMCSA.

**ARTICLE 8. CDLIS Program Income**

A. Existing CDLIS System

The Parties agree that the Recipient shall retain program income earned as the result of operating the existing CDLIS provided that the Recipient shall use the retained program income to operate and maintain the existing CDLIS without funding from FMCSA to include all eligible activities associated with the following functions:

a. Maintain the network, hardware, and software needed for the sending and receiving of messages between the CDLIS Central Site and all of the jurisdictions;
b. Provide assistance to States when problems occur with messages between States;

c. Maintain a problem reporting system to track known problems and the resolution of the problem, and check progress of State resolution quarterly;
d. Provide information on problems to FMCSA quarterly (after contacting the State to determine progress fixing problem); and,
e. Create Structured Tests (A basic test, and specific tests for changes like MCSIA and Rail Road Highway Grade Crossing) conducted to ensure that a State's programming changes meet written specifications, the State is able to transmit and receive messages, and the State's system will not negatively impact other States or the CDLIS Central Site.

B. Modernized CDLIS System

The Parties agree that CDLIS Modernization Program Income shall be that income earned by the Recipient beginning on the first day of the first month (February 1, 2011) during which the new modernized CDLIS central site is operational and continuing thereafter as long as AAMVA is the FMCSA designated operator of CDLIS. The Parties agree that the Recipient shall retain CDLIS Modernization Program Income, provided that the Recipient shall operate and maintain the existing CDLIS (in accordance with subsection A of this Article) and fund future modernization efforts without funding from the FMCSA, to include all eligible activities associated with the following functions:

a. Maintain the network, hardware, and software needed for the sending and receiving of messages including the additional information required by SAFETEA-LU, between the CDLIS Central Site and all of the jurisdictions;
b. Provide assistance to States when problems occur with messages between States;
c. Maintain a problem reporting system to track known problems and the resolution of the problem, and check progress of State resolution quarterly;
d. Provide information on problems to the FMCSA quarterly (after contacting the State to determine progress made on fixing the problem);
e. Create Structured Tests (A basic test, and specific tests as may be required by program and system changes);
f. Perform Structured Testing with States (The basic test is to be performed at least once every 3 years. The basic test will be included with the specific tests, if it has been over 2 years since a State completed the basic testing);
g. Maintain documentation: State Procedures Manual, AAMVA Code Dictionary (ACD) Manual (uniform conviction and withdrawal codes), CDLIS System Specifications (or other documents that are created to support CDLIS), and Unified Network Interface (UNI) documentation as it applies to CDLIS;
h. Provide training on CDLIS Documentation: State Procedures Manual, ACD Manual, CDLIS System Specifications and implementation documents;
i. Provide training on UNI documentation as it applies to CDLIS;
j. Maintain the CDLIS Central Site in accordance with Federal Security Standards as described in Article 6; and
k. Retain a portion of program income to establish a fund designated for future modernization efforts.

For purposes of this Agreement, "modernization" of CDLIS shall include modifications to incorporate future technological developments and improvements with respect to existing CDLIS functionalities on the date of this Agreement. AAMVA, through action of its Board of Directors, shall establish CDLIS fees at a level that is adequate to provide revenues adequate to fund anticipated costs of carrying out AAMVA's obligations under this Agreement.

The Parties agree that the following eligible activities may be funded by CDLIS Modernization Program Income:

l. Develop and implement digital imaging technologies to allow for the exchange of digital images between jurisdictions and better identify driver license applicants;
m. Operate and maintain the Interprovincial Record Exchange (IRE) communication bridge developed and implemented with Canadian Council of Motor Transport Administrators (CCMTA) to enable U.S. and Canadian jurisdictions to exchange driver status data on commercial vehicle operators interactively; and
n. Other activities related to CDLIS and other federal transportation program objectives jointly approved by the AAMVA and FMCSA.

C. Annual Report of Prospective Use of Program Income
AAMVA shall provide an annual financial report to FMCSA regarding: the total expenditures of money by AAMVA on activities as described in Article 8(B)(a)-(q) and forecasting the use of Program Income in the upcoming 12-month period. The reporting period shall be October 1 to September 30 and the report shall be due no later than October 1 of each 12-month period.

D. Quarterly Report of Program Income
AAMVA shall provide a financial report within six months of the execution of this agreement regarding the total revenues and expenditures of program income by AAMVA since August 31, 2006 to June 30, 2008. Thereafter, AAMVA shall provide a quarterly financial report to FMCSA regarding the total revenues and expenditures of the program income by AAMVA on activities as described in Article 8(B)(a)-(q). The reporting period shall be January 1 to March 31; April 1 to June 30; July 1 Sept 30 and October 1 to December 31. Each report shall be due no later than 60 calendar days of the last day of the quarter. In addition, AAMVA will provide the audited financial report for each fiscal year (October 1 to September 30) no later than January 31 of the following fiscal year.

E. Annual Fiscal Management Review
The parties will meet annually to review AAMVA's level of effort devoted to each eligible activity, address future modernization requirements and efforts, and identify and agree on any required funding levels for ongoing activities and future modernization efforts.

**ARTICLE 9. Allowability of Costs**

The costs of Federal financial assistance performed or administered by nonprofit organizations are determined by the provisions of OMB Circular A-122 (relocated to 2 C.F.R. Part 230).

**ARTICLE 10. Indirect Costs**

In order for indirect costs to be chargeable to this Agreement, the Recipient must first establish an appropriate indirect cost rate. FMCSA will accept any current indirect cost rate or allocation plan previously approved for Recipient by a cognizant Federal agency. The Recipient is responsible for ensuring that independent audits are conducted in accordance with the existing Federal auditing and reporting standards set forth in OMB Circular A-133. The audit report must be submitted to FMCSA to support any future indirect cost proposals. This Indirect Costs provision does not operate to waive the limitations on Federal funding provided in this document. The Recipient's audited final indirect costs are allowable only insofar as they do not cause the Recipient to exceed the total program costs.

**ARTICLE 11. Budget Revisions/Reallocation of Amounts**

The Recipient must obtain prior written approval from the FMCSA Agreement Officer (AO) to transfer amounts budgeted for indirect costs to absorb increases in direct costs, or vice versa. The Recipient must also obtain prior written approval from the FMCSA AO to transfer amounts budgeted for direct cost categories when the cumulative value of such transfers will exceed 10% of the value of the Federal share of this Agreement. When requesting such approval, a written request suffices.

**ARTICLE 12. Intellectual Property Rights**

The Recipient shall make available to FMCSA copies of all work developed in performance with this agreement, including but not limited to software and data. FMCSA and others acting on its behalf shall have unlimited rights to obtain, reproduce, publish or otherwise use the data, software and other work developed in the performance of this Agreement pursuant to 49 C.F.R. §19.36.

Recipient retains ownership of system data and the software comprising CDLIS. Pursuant to 35 U.S.C. §202, FMCSA hereby reserves a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States any subject invention throughout the world.

**ARTICLE 13. Acknowledgment of Support and Disclaimer**

FMCSA retains license rights to all developed software and documentation under this Agreement in the event the Recipient is unable to continue supporting the functionality of this software. A procedure for ensuring the availability of the software source code and accompanying documentation shall be worked out as one of the early requirements of this Agreement. FMCSA will not make this source code available to any other source without the approval of the Recipient unless the Recipient ceases to support this software for any reason.

**ARTICLE 14. Site Visits**

FMCSA, through its authorized representatives, has the right, at all reasonable times, to make site visits to review project accomplishments and management control systems and to provide such technical assistance as may be required. If any site visit is made by the FMCSA on the premises of the Recipient or a sub-grantee or third party contractor or subcontractor under this Agreement, the Recipient shall provide and shall require these entities to provide all reasonable facilities and assistance for the safety and convenience of FMCSA representatives in the performance of their duties. All site visits and evaluations shall be performed in such a manner as will not unduly delay work.

**ARTICLE 15. Section 508 of the Rehabilitation Act**

All electronic and information technology (EIT) products rendered under this Agreement shall comply with Section 508 of the Rehabilitation Act and the Access Board Standards (36 C.F.R. Part 1194) and Guidelines, available for viewing at http://www.section 508.gov. Unless otherwise indicated, the Recipient represents by signature on this Agreement that all EIT products developed under this Agreement comply with the Access Board standards.

**ARTICLE 16. Special Requirements of the Agreement**

A. Non-Endorsement Statement
An acknowledgement of FMCSA support and a disclaimer of endorsement must appear in any publication of any material, whether copyrighted or not, based on or developed under this Agreement in the following terms:

> "This material is based upon work supported by the U.S. Department of Transportation/Federal Motor Carrier Safety Administration under Operation, Management, Administration, and Modernization Cooperative Agreement. Any opinions, findings, conclusions or recommendations expressed in this publication are those of the Author(s) and do not necessarily reflect the view of the U.S. Department of Transportation."

B. Reprints of Publications
At such time as any article resulting from work under this Agreement is published in a scientific, technical, or professional journal or publication, two reprints of the publication shall be sent to the AO, clearly referenced with the Agreement Number and other appropriate identifying information.

**ARTICLE 17. AO and Agreement Officer's Technical Representative (AOTR)**

The AO may designate an AOTR to assist in monitoring the work under this Agreement. If appointed, the AOTR will oversee the technical administration of this Agreement and act as technical liaison with the performing organization. The AOTR is not authorized to change this Agreement, to make any commitments or otherwise obligate the FMCSA or authorize any changes which affect the agreement funding schedule or other terms or conditions.

The AO is the only individual who can legally commit or obligate FMCSA for the expenditure of public funds. The technical administration of this agreement shall not be construed to authorize the revision of the terms and conditions of performance.

**ARTICLE 18. Reimbursements and Project Administration**

The Recipient's claims for reimbursement for expenses incurred under this project are made on Standard Form 270, Request for Advance Reimbursement. The Recipient shall designate the official(s) responsible for submitting and certifying vouchers, and the official(s) designated shall submit his/her signature(s) to FMCSA, CDL Division. The CDL Division will maintain the signatures on file. The designated Recipient official must sign the Standard Form 270. Reimbursements will be made using Electronic Funds Transfer to an account designated by Recipient.

The FMCSA CDL Division is responsible for ensuring costs incurred are eligible, allowable, reasonable, and authorized by the grant agreement. Advance payments are not authorized. Requests for reimbursement should be submitted to:

U.S. Department of Transportation
Federal Motor Carrier Safety Administration
ATTN: Selden Fritschner, Chief, CDL Division (MC-ESL)
1200 New Jersey Avenue, S.E.
W65-332
Washington, D.C. 20590

**ARTICLE 19. Reporting Requirements and Schedule**

A. Submission of Reports
The Recipient shall submit two copies (one to the AO and one to the AOTR) of all required reports, invoices and documents, under transmittal letter referencing the Agreement number, as follows:

Submit one copy to the Agreement Officer at the following address:

> U.S. Department of Transportation
> Federal Motor Carrier Safety Administration
> 1200 New Jersey Avenue, S.E. W65-316
> Washington, D. C. 20590

ATTN: Name, AO

Submit one copy to the Agreement Officer's Technical Representative at the following address:

U.S. Department of Transportation
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue, S.E. W65-332
Washington, D.C. 20590
ATTN: Selden Fritschner

B. Report Format and Content
The Recipient should submit the following:

| ITEM | APPROXIMATE DUE DATE |
|---|---|
| Monthly Project Status Report | 15th of the month |
| Executive Steering Committee Report | Prior to the Executive Steering Committee Meeting |
| Request for Advance Reimbursement (SF 270) | Submitted as part of each invoice |
| Contract-to-Date financial Summary | Submitted as part of each invoice |
| Detail Invoice Report by task | Submitted as part of each invoice |
| Project Status Reports regarding the status of each ongoing Task by Phase under this Agreement. The Quarterly Executive Steering Committee Report should suffice to meet this requirement. It should consist of a narrative-type description of activities conducted during the reporting period. Each report will set forth concise statements covering activities relevant to this Agreement and will include:<br>Accomplishments to date, including percentage of completion for each phase.<br>Identification of work to be accomplished during the next reporting period.<br>Identification of any problems encountered that would affect the completion of the work within the time and money constraints as set forth in this Agreement, together with recommended solutions to such problems.<br>Estimated cost shown in the proposal for the current Phase, including FMCSA and AAMVA shares.<br>Total expended to date, including percentage of monies spent to date. | On a quarterly basis |

| | |
|---|---|
| Current and cumulative costs expended versus scheduled costs, including cost share. | |

C. Submission of Notices

All notices to be given under the terms of this Agreement shall be deemed given when delivered in person or by private courier service.

If to Recipient:

Neil D. Schuster
President and Chief Executive Officer
American Association of Motor Vehicle Administrators
4301 Wilson Boulevard, Suite 400
Arlington, VA 22203

If to FMCSA:

U.S. Department of Transportation
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue, S.E.
MC-ESL W65-332
Washington, D. C. 20590
ATTN: Selden Fritschner

**ARTICLE 20. Travel and Per Diem**

Travel requirements under this Agreement shall be met using the most economical form of transportation available. If economy class transportation is not available, Recipient must submit a written justification for use of higher class travel indicating dates, times, and flight numbers.

**ARTICLE 21. Financial Management System**

Within 30 days after the Effective Date of this Agreement as specified in Article 24, the Recipient is required to implement a financial management system adequate for monitoring the accumulation of costs and revenue and in accordance with the financial management system requirements of generally accepted accounting principles (GAAP) as prescribed in Accounting Principles Board Opinions and other related materials issued by the American Institute of Certified Public Accountants.

**ARTICLE 22. Governing Regulations**

A. Federal Standards

All applicable Federal Statutes and regulations guide this Agreement. This Agreement is not intended to conflict with current laws, regulations, Executive Orders, Federal Security Standards, or DOT directives. If any term of this Agreement is inconsistent with such authority, then the

term shall be invalid, but the remaining terms and conditions of this Agreement shall remain in full force and effect.

B. Administrative Requirements

The Parties to this Agreement acknowledge that their performance shall be governed by and in compliance with "Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and other Non-profit Organizations," 2 C.F.R. Part 215; 49 C.F.R Part 19), and any other Federal laws and regulations that may be applicable.

C. Execution in Counterparts

This Agreement may be executed in two or more fully or partially executed counterparts each of which shall be deemed an original binding the signer thereof against the other signing party, but all counterparts together shall constitute one and the same instrument.

**ARTICLE 23. Amendments**

Any amendments to this Agreement must be made in writing, signed by all parties and specifically referred to as an amendment to this Agreement.

**ARTICLE 24. Effective Date**

By their signatures below, the Parties agree to incorporate supplemental language into the June 9, 2008 CDLIS Operation, Management, Administration, and Modernization Cooperative Agreement. The Effective Date of this CDLIS Operation, Management, Administration, and Modernization Cooperative Agreement remains June 9, 2008.

**ARTICLE 25. Transition and/or Termination Plan**

A. Termination.

a. Termination by Mutual Agreement. At any time during the term of this Agreement, the parties may, by written agreement, terminate the status of AAMVA as the Operator of CDLIS under this Agreement on such terms as both parties agree.

b. Termination for Cause. Either party may issue a Notice of Termination under this Agreement upon a material breach by the other party upon 180 days prior written notice, unless the defaulting party cures such breach within such period, or, if the breach is one that is curable but requires more than 180 days to cure, develops a plan to cure such breach within a mutually agreeable and reasonable period of time and diligently proceeds according to such plan until the breach is cured.

c. Termination by FMCSA without Cause. At any time during the term of this Agreement FMCSA may issue a Notice of Termination with respect to the appointment of AAMVA as the Operator of CDLIS if FMCSA determines that a termination is in the interest of FMCSA. FMCSA shall terminate by delivering a Notice of Termination to AAMVA.

d. Termination by AAMVA without Cause. AAMVA may at any time during the Term of this Agreement issue to FMCSA a Notice of Termination.

B. Obligations of the Parties following the Issuance of a Notice of Termination. Except as otherwise agreed by the parties in writing, the parties agree that following the issuance of a Notice of Termination in accordance with this Agreement, they shall have the following obligations:

a. On the first business day of the month immediately following the month in which a Notice of Termination is issued there shall begin an 18-month Transition Period during which the parties shall act in accordance with the provisions of this Article 25 to effectuate the orderly transfer of the obligations of the CDLIS Operator from AAMVA to another organization specified by FMCSA in accordance with this Agreement.

b. Following the issuance of a Notice of Termination, all provisions of this Agreement shall remain in full force and effect until the last business day of the 18th month of the Transition Period, at which time the obligations of the parties under this Agreement, except as otherwise provided in this Agreement, shall terminate.

c. At all times following the issuance of a Notice of Termination the parties shall cooperate in good faith toward the end of accomplishing the transfer of CDLIS Operator responsibilities.

d. On or before 60 days following the beginning of the Transition Period FMCSA shall designate in writing a successor CDLIS Operator ("Successor Operator") and shall enter into a written agreement with AAMVA under which FMCSA shall provide fair and equitable compensation to AAMVA for all work (and associated reasonable expenses incurred) to accomplish the orderly transfer of CDLIS Operator obligations to the Successor Operator. The Transition Period automatically shall be extended by the number of days of any delay in the designation of a successor CDLIS Operator beyond the foregoing 60-day deadline. The existence of such an agreement shall be a condition precedent to AAMVA's obligation to provide services not otherwise within the scope of its duties as CDLIS Operator.

e. On or before 90 days following the beginning of the Transition Period, FMCSA, AAMVA and the Successor Operator shall agree on a detailed plan ("Transition Plan") that provides for the orderly transition of responsibilities as CDLIS Operator from AAMVA to the Successor Operator. The Transition Period automatically shall be extended by the number of days of any delay in the agreement on a Transition Plan beyond the foregoing 90-day deadline.

**ARTICLE 26. CDLIS as State-to-State Platform**

AAMVA agrees not to perform actions that will supersede or interfere with the authority of the Secretary of Transportation to establish and operate motor carrier, commercial motor vehicle, and driver information systems and data analysis programs as required under the provisions of 49

U.S.C. §§ 31106 and 31309. The Department of Transportation shall be notified of any system changes that affect the system as it relates to motor carriers, commercial motor vehicle, and commercial driver's licenses.

In accordance with the Bayh-Dole Act, as amended by the Technology Transfer Commercialization Act of 2000 (P.L. 106-404), agreements AAMVA enters into with third parties shall not supersede or interfere with the Department of Transportation's royalty-free, nonexclusive and irrevocable license to obtain, reproduce, publish, or otherwise use the Commercial motor vehicle information systems platform and authorize others to do so for federal purposes. 35 U.S.C. § 202.

**ARTICLE 27. Program Financial Audit**

AAMVA agrees to complete an independent financial statement audit of CDLIS as mutually agreed upon by both Parties. AAMVA agrees to provide the results of the audit to FMCSA and provide corrective action plans, if necessary, to FMCSA for approval.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

By: [signature]

William A. Quade
Associate Administrator for Enforcement and Program Delivery

Date: 3/18/13

AMERICAN ASSOCIATION OF MOTOR VEHICLE ADMINISTRATORS

By: [signature]

Neil D. Schuster
President and Chief Executive Officer
American Association of Motor Vehicle Administrators

Date: 3.20.13

# EXHIBIT B

AAMVA
American Association of Motor Vehicle Administrators




# SPEXS

## State Pointer Exchange Services

DISCLAIMER: This CDLIS SPM is a draft copy and is under review.
This must not be referenced as the final documentation.

Satisfying all Commercial Driver's License Information System (CDLIS) and State-to-State (S2S) functional requirements (This field is optional.)

## CDLIS State Procedures Manual

Document Version c.0

*The version number of this document is independent and distinct from the version number of the SPEXS System Specification (AMIE) and the S2S State Procedures Manual. See §1.2 Document Versioning for more information.*

**AAMVA - Official Use Only**

This document provides the standard administrative practices for jurisdictions using the CDLIS functionality of SPEXS. This document supports:

- CDLIS-only participants: functional releases 5.3, 5.4, 5.5
- CDLIS+S2S participants: functional releases 6.0, 6.1, 6.2, 6.3



**OUR VISION**

*Safe drivers*
*Safe vehicles*
*Secure identities*
*Saving lives!*

# 5 CDLIS DATA ELEMENTS

The CDLIS data elements (i.e., the types of driver information used in CDLIS) are described in the Data Dictionary Appendix of the *SPEXS System Specification*. For example, the type of conviction is identified by the CONVICTION OFFENSE ACD CODE. The formatting rules for CDLIS data elements are in the *SPEXS System Specification* and *ACD Manual*. For example, the CONVICTION OFFENSE ACD CODE is a three-character code beginning with an alpha character followed by two digits and all valid values are listed in the ACD Manual. (See **Additional Documentation** (on page 3).) The following sections provide an overview of the types of CDLIS data and data retention and record availability requirements for jurisdictions by role.

## 5.1 CDLIS DATA RECORDS

CDLIS contains three types of data records:

- Data stored at the CDLIS Central Site (including the Master Pointer Record (MPR))
- Driver History Record (DHR) data
- Ancillary data records

These three types are described in the following sections.

### 5.1.1 Data Stored at the CDLIS Central Site

#### 5.1.1.1 CDLIS Master Pointer Record

The CDLIS Master Pointer Record (MPR) contains only sufficient information that the Central Site needs to properly identify a driver. This information includes the driver's current SOR. The SOR maintains the MPR at the CDLIS Central Site. The MPR contains the following information:

Primary driver identification data for the following:

- SOR and driver license number
  - Driver name
  - Driver DOB
  - Driver SSN
  - Driver SSN (last five numbers only)
- Driver sex
- The date and time the driver was added to CDLIS
- The date and time the record was last updated
- Indicator of a change state of record in progress
- Indicator if the SSN is one assigned by the Social Security Administration (SSA), a substitute SSN ("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"), or a pseudo SSN (see **Appendix A: Substitute and Pseudo Social Security Numbers** (on page 166) for a discussion on substitute and pseudo SSNs)

See **Rules for Managing Driver Records** (on page 108) for rules and procedures for managing the MPR.

**Transitional Note:** During the transitional period, the following additional fields are stored on the Master Pointer Record. Once the last state has implemented CDLIS 5.1, these fields may be removed from the Central Site:

- Driver Sex
- Driver Social Security Number (all digits)

#### 5.1.1.2 Other Data Maintained at the CDLIS Central Site

The CDLIS Central Site also maintains the following information for each driver:

- A list of other records considered possible duplicate records for the same driver

# 6 CDLIS Transactions

CDLIS transactions are predefined exchanges of driver information in sets of specified types of messages. A transaction is a series of messages sent to accomplish a specific business function. CDLIS transactions enable each jurisdiction to:

- Query both the CDLIS Central Site as well as other jurisdictions.
- Report and negate out-of-state convictions (ROOSC) and withdrawals (ROOSW).
- Transfer the driver history to a New SOR.
- Update the CDLIS Central Site MPRs owned by the jurisdiction.

The following sections, which are excerpted from the *SPEXS System Specification*, describe the business process for each CDLIS transaction shown in the table below. The following explanations apply to the column headings:

- "Tran Code"—indicates the transaction code of the transaction, which is cited in the section heading in the *SPEXS System Specification* (see **Additional Documentation** (on page 3)).
- "Transaction Name"—indicates the designation for the transaction, which is cited in the *SPEXS System Specification.*
- "(Originating Message)"—indicates the two character code for the type of message that is the first message in the transaction.
- "Origin" and "Destination"—indicates the nodes in the transaction, according to the following abbreviations:
  - CS = CDLIS Central Site
  - FMCSA = Federal Motor Carrier Safety Administration
  - SOC = State of Conviction
  - SOI = State of Inquiry
  - SOR = State of Record
  - SOW = State of Withdrawal
  - TPSP = Third Party Service Provider
  - Clearinghouse = Drug and Alcohol Clearinghouse

The following table lists the CDLIS transactions that are part of the *SPEXS System Specification*.

*Table 2: CDLIS Transactions in the SPEXS System Specification*

| Tran Code | Transaction Name and (Originating Message) | Origin and Destination of Originating Message |
|---|---|---|
| CD01 | Search Inquiry (IM or IO) | SOI to CS |
| CD02 | Verification Inquiry (IN) | SOI to CS |
| CD03 | State-to-State Status Request (SG) | SOI to SOR |
| CD04 | State-to-State History Request (SB) | SOI to SOR |
| CD05 | AKA Data Inquiry (IK) | SOI to CS |
| CD06 | Employer Inquiry (IW) | TPSP to CS |
| CD07 | Add Pointer (UA) | SOR to CS |
| CD08 | Change State of Record (UD) | New SOR to CS |
| CD09 | Change Pointer Data (UC) | SOR to CS |
| CD10 | Delete Master Pointer Record (UE) | SOR to CS |
| CD11 | Report Out-of-State Conviction (HA) | SOC to SOR via CS |
| CD12 | Negate Out-of-State Conviction (HH) | SOC to SOR via CS |
| CD14 | Mark Unique (UG) | SORs to CS |
| CD15 | Update AKA Data (UK) | SOR to CS |

# EXHIBIT C

**From:** Roller, Katharine
**To:** Grossman, Ian
**Cc:** Reich, Mitchell (OAG); Sheffler, Scott S.; Blaser, Emma R. W.; Cashin, Cian; Fernan, Patrick
**Subject:** RE: FMCSA Data Demand
**Date:** Thursday, August 6, 2026 11:10:19 AM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png
image006.png
image007.png
image008.png

---

**Caution: External Email**

---

Thanks very much for the swift response, Ian. We're looking forward to the conversation.

Thank you again,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

---

**From:** Grossman, Ian <IGrossman@aamva.org>
**Sent:** Thursday, August 6, 2026 10:06 AM
**To:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Sheffler, Scott S. <sssheffler@venable.com>; Blaser, Emma R. W. <erblaser@venable.com>; Cashin, Cian <CCashin@aamva.org>; Fernan, Patrick <PFernan@aamva.org>
**Subject:** EXTERNAL: RE: FMCSA Data Demand

Hello Katharine,

Thank you for the message. We would welcome a conversation with you. I am unavailable today, but our counsel and other AAMVA executives working the issue (all copied here) can meet with you at 2:00pm ET. Please send this group a meeting invite with a link to your preferred meeting platform and the right group will join you at 2:00. Thanks for reaching out.

Regards,
Ian

**Ian Grossman**
President & CEO

Phone: 703.439.7365
Email: igrossman@aamva.org
aamva.org

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Thursday, August 6, 2026 8:48 AM
**To:** Grossman, Ian <IGrossman@aamva.org>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>
**Subject:** FMCSA Data Demand

**WARNING:** This email originated from outside of AAMVA. Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Ian,

I hope you're doing well. I am reaching out from the Attorney General's Offices of Illinois and Washington, D.C. My colleague Mitchell Reich and I would appreciate an opportunity to talk with you today about the data demand made to AAMVA by FMCSA. We're available any time before 4:30 ET, and would be grateful to speak with you as early as is convenient.

Thank you,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

**From:** Sheffler, Scott S.
**To:** Roller, Katharine; Cashin, Cian
**Cc:** Reich, Mitchell (OAG); Blaser, Emma R. W.
**Subject:** Re: FMCSA Data Demand
**Date:** Friday, August 7, 2026 7:19:04 PM

Katharine,

That sounds good. I'll get the Zoom invite out by early tomorrow. Talk to you then.

Kind regards,
Scott

Get Outlook for iOS

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Friday, 07 August 2026 19:16:34
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>; Cashin, Cian <ccashin@aamva.org>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Blaser, Emma R. W. <ERBlaser@Venable.com>
**Subject:** Re: FMCSA Data Demand

**Caution: External Email**

---

Scott,

That would be great. We appreciate you making the time. Would 8:45 ET be too early?

Thanks,
Katharine

Get Outlook for iOS

---

**From:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Sent:** Friday, August 7, 2026 5:43 PM
**To:** Roller, Katharine <Katharine.Roller@ilag.gov>; Cashin, Cian <ccashin@aamva.org>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Blaser, Emma R. W. <ERBlaser@Venable.com>
**Subject:** EXTERNAL: Re: FMCSA Data Demand

Katharine,

Would it be possible for us to aim for Monday morning, any time before 10am?

If so, I am happy to send an invite. I am away from my computer at the moment, but am happy to send the invite by tomorrow morning.

I have also copied Cian from AAMVA, who would likely join us on Monday as well.

Best,
Scott

Get Outlook for iOS

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Friday, 07 August 2026 18:17:27
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Blaser, Emma R. W. <ERBlaser@Venable.com>
**Subject:** FMCSA Data Demand

**Caution: External Email**

---

Dear Scott,

Thank you again for agreeing to our request for a call to follow up on our written objections to AAMVA's planned disclosure of CDLIS data on August 17th. We appreciate your acknowledgment of our concerns, and especially appreciate the candor of the discussion.

In response to our question yesterday about AAMVA's plans regarding the planned disclosure, you stated that AAMVA would share updated information about its position with both FMCSA and the states on Monday. We have recently seen the letter that AAMVA sent FMCSA today, which is perhaps the updated information to which you were referring.

As I'm sure you can appreciate, AAMVA's plan to disclose our data on August 17th—ten days from now—is still of significant concern. The letter to FMCSA sent earlier today does not obviate those concerns, because the date of planned disclosure remains the same. In light of the short time remaining before that date, I'm reaching out to ask to speak with you again as early as possible on Monday morning—or, if you are available sooner, you can reach me at 773-519-1842.

Best,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

*********************************************************************************************
This electronic mail transmission may contain confidential or privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
*********************************************************************************************

| | |
|---|---|
| **From:** | Sheffler, Scott S. |
| **To:** | Roller, Katharine |
| **Cc:** | Reich, Mitchell (OAG); Seth Goldstein; Grossman, Ian; Cashin, Cian; Fernan, Patrick |
| **Subject:** | RE: FMCSA data demand |
| **Date:** | Monday, August 10, 2026 3:39:00 PM |

Thank you, Katharine.

Kind regards,
Scott

Scott S. Sheffler, Esq. | Venable LLP
t 202.344.4956 | f 202.344.8300 | m 202.805.1994
600 Massachusetts Avenue, NW, Washington, DC 20001

SSSheffler@Venable.com | www.Venable.com

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Monday, August 10, 2026 3:26 PM
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** RE: FMCSA data demand

**Caution: External Email**

Scott,

Confirming receipt and thank you very much for the quick response. Having received these assurances from AAMVA, we do not plan to file today. We will keep in touch and hope you will keep this line of communication open as well.

Best regards,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is*

*strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

---

**From:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Sent:** Monday, August 10, 2026 12:43 PM
**To:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** EXTERNAL: RE: FMCSA data demand

Katharine,

Both of the below clarifications are fine. On the first, you are correctly interpreting the assurance provided.

On the second, AAMVA is happy to count days as you suggest. Although not necessarily something that will be at issue, since we are into considerable detail on this front and to avoid any future confusion, we will consider initial notice date to be the calendar date on which notice is sent, based on eastern time zone (*i.e.*, Washington, DC time).

Understood on the continued objection to disclosure regardless of advance notice being provided.

Thank you again for the discussion today.

Best,
Scott

Scott S. Sheffler, Esq. | Venable LLP
t 202.344.4956 | f 202.344.8300 | m 202.805.1994
600 Massachusetts Avenue, NW, Washington, DC 20001

SSSheffler@Venable.com | www.Venable.com

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Monday, August 10, 2026 1:04 PM
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** RE: FMCSA data demand

**Caution: External Email**

---

Scott,

Thank you for the quick response, and for your willingness to work with the States on this – we appreciate it very much. We have two related points of clarification, for which we need a

response by 2 p.m. Eastern Time.

*First*, AAMVA's agreement not to produce the MPR data of the below 22 jurisdictions to the U.S. federal government without five business days' advance notice of the intended production means that AAMVA will *not* be producing the MPR data of the below 22 jurisdictions on or before August 17th, because our jurisdictions have not received the five business days' notice that AAMVA has agreed to for such a production. Is that correct?

*Second*, five business days' notice means that five full business days must elapse between receipt of the notice and commencement of production. For example, if AAMVA gave notice tomorrow, August 11th, the soonest it could produce the MPR data of the below 22 jurisdictions to the federal government would be August 19th. Is that AAMVA's understanding as well?

In closing, we wish to reaffirm on behalf of the below 22 jurisdictions that we continue to object to the production of our MPR data to the U.S. federal government, with or without notice. Please continue to keep our States apprised of all communications AAMVA receives from FMCSA or other federal agencies, including any new subpoenas. Thanks very much again for working with us on this, and for your candor and courtesy.

Best regards,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

---

**From:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Sent:** Monday, August 10, 2026 10:43 AM
**To:** Roller, Katharine <Katharine.Roller@ilag.gov>

**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** EXTERNAL: RE: FMCSA data demand

Thank you, Katharine.

We appreciate the additional information. AAMVA has authorized me to confirm that AAMVA will not produce the MPR data of the below 22 jurisdictions to the U.S. federal government without five business days' advance notice of the intended production.

AAMVA appreciates the dialogue and looks forward to continued open communication on this difficult matter.

Please feel free to convey news of this assurance to counsel for the jurisdictions on whose behalf you have reached out.

Kind regards,
Scott

Scott S. Sheffler, Esq. | Venable LLP
t 202.344.4956 | f 202.344.8300 | m 202.805.1994
600 Massachusetts Avenue, NW, Washington, DC 20001

SSSheffler@Venable.com | www.Venable.com

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Monday, August 10, 2026 11:34 AM
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** RE: FMCSA data demand

**Caution: External Email**

---

Scott,

Following up on our earlier discussion, the full list of States that are prepared to jointly file for relief today is below. Responding to your email, yes, I can confirm that Mitch, Seth, and I are authorized to represent the positions of these 22 jurisdictions in discussion of possible litigation on this matter. We look forward to hearing from you by 1 p.m. Eastern Time.

Best regards,
Katharine

Arizona
California
Colorado

Connecticut
Delaware
District of Columbia
Hawaii
Illinois
Maine
Maryland
Massachusetts
Michigan
Nevada
New Jersey
New Mexico
New York
Oregon
Pennsylvania
Vermont
Virginia
Washington
Wisconsin

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

---

**From:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Sent:** Monday, August 10, 2026 9:44 AM
**To:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>

**Subject:** EXTERNAL: RE: FMCSA data demand

Katharine,

Thank you. Confirming receipt, and that we appreciate the open dialogue and collegiality as well.

We will look forward to the list of states making the assurance request. As discussed today, AAMVA has previously provided such an assurance in writing to California.

Relatedly, I gather from the below that you have received authorization to represent the positions of the 22 jurisdictions at issue in discussion of possible litigation on this matter. To ensure clarity on our end, please do so confirm when you provide the list later today. We are happy to consider you (or you, Mitchell and Seth) the main point(s) of contact on the threatened litigation but want to be certain we correctly understand the attorney roles and authorities as the matter continues to develop. Confirmation by email is fine.

Finally, on the matter of service of process if needed, AAMVA will accept service by email through Cian Cashin:

> Cian Cashin
> Vice President, Government Affairs, AAMVA
> ccashin@aamva.org

Kind regards,
Scott

Scott S. Sheffler, Esq. | Venable LLP
t 202.344.4956 | f 202.344.8300 | m 202.805.1994
600 Massachusetts Avenue, NW, Washington, DC 20001

SSSheffler@Venable.com | www.Venable.com

---

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Monday, August 10, 2026 9:46 AM
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Grossman, Ian <igrossman@aamva.org>; Cashin, Cian <ccashin@aamva.org>; Fernan, Patrick <pfernan@aamva.org>
**Subject:** FMCSA data demand

**Caution: External Email**

---

Counsel,

Thanks very much for making the time to meet with us earlier this morning. This email is to memorialize that conversation.

As we shared with you on the call, we would like to let the Board of Directors process play out. Unfortunately, a Board decision on August 14th, with disclosure of our States' records still planned for the following business day, August 17th, would not give us enough time to seek relief for our States in the event of an unfavorable Board decision. For that reason, as long as

disclosure is still planned for August 17th, we have no choice but to seek relief from a court today, and we are authorized to do so. The relief we would seek would include a temporary restraining order.

On the call, we stated that, in order not to file today, we will need an assurance that our States' data will not be turned over to FMCSA on or before the 17th, and will not be turned over thereafter without at least 5 business days' notice. We need this assurance in writing by 1:00 p.m. ET, and we need it to apply to all the States we represent, not only Illinois, the District of Columbia, and California.

On that last point, you asked us to share the list of States that are prepared to jointly file for relief today. We will send you that list as soon as possible, pending approval from said States. There are 21 States, and the District of Columbia.

Finally, please let us know if you are willing to accept service by email on behalf of AAMVA.

Thank you again for your willingness to make time to talk with us during a very busy time. We truly appreciate the dialogue and collegiality.

Best regards,
Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

*****************************************************************************************
This electronic mail transmission may contain confidential or privileged information. If

you believe you have received this message in error, please
notify the sender by reply
transmission and delete the message without copying or
disclosing it.
***********************************************************
***********************

**From:** Sheffler, Scott S.
**To:** Roller, Katharine
**Cc:** Hendrickson, Cara; Keenan, Megan C.; Seth Goldstein; Reich, Mitchell (OAG); Fernan, Patrick; Cashin, Cian
**Subject:** RE: AAMVA: Federal data demands
**Date:** Thursday, August 13, 2026 8:46:00 AM

---

Katharine,

Thank you for letting us know. We reaffirm that we will accept process electronically via Cian Cashin.

Kind regards,
Scott

Scott S. Sheffler, Esq. | Venable LLP
t 202.344.4956 | f 202.344.8300 | m 202.805.1994
600 Massachusetts Avenue, NW, Washington, DC 20001

SSSheffler@Venable.com | www.Venable.com

**From:** Roller, Katharine <Katharine.Roller@ilag.gov>
**Sent:** Thursday, August 13, 2026 8:14 AM
**To:** Sheffler, Scott S. <SSSheffler@Venable.com>
**Cc:** Hendrickson, Cara <Cara.Hendrickson@ilag.gov>; Keenan, Megan C. <mkeenan@oag.state.va.us>; Seth Goldstein <seth.goldstein@doj.ca.gov>; Reich, Mitchell (OAG) <mitchell.reich@dc.gov>; Fernan, Patrick <pfernan@aamva.org>; Cashin, Cian <ccashin@aamva.org>
**Subject:** AAMVA: Federal data demands

**Caution: External Email**

---

Scott,

I hope you are well. Thank you very much, as always, for your collegiality and courtesy in what I know has been a very difficult time for AAMVA.

Pursuant to your request on our last call, I wanted to let you know that the 22 jurisdictions we represent intend to file suit against AAMVA and various federal actors today in the Eastern District of Virginia. That will include filing a motion for a temporary restraining order against the federal defendants and against AAMVA. It will also include a motion to quash the DHS subpoena and to stay AAMVA's compliance with the subpoena, on behalf of the same 22 jurisdictions and the State of Minnesota.

As discussed in our prior correspondence, we will serve AAMVA via email to ccashin@aamva.org, copying you, when our papers are on file.

Best regards,

Katharine

Katharine Roller (she/her)
Complex Litigation Counsel
Office of the Illinois Attorney General
115 South LaSalle
Chicago, Illinois 60603
773-519-1842
Katharine.roller@ilag.gov

*State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.*

# EXHIBIT D

OFFICE OF THE SECRETARY OF STATE

**ALEXI GIANNOULIAS** • Secretary of State

August 3, 2026

VIA ELECTRONIC MAIL ONLY (ccashin@aamva.org)
Cian Cashin
Vice President of Government Affairs
American Association of Motor Vehicle Administrators (AAMVA)
4250 Fairfax Drive, Suite 1000
Arlington, VA 22203

Re: Federal Motor Carrier Safety Administration Request for Commercial Driver's License Information System Pointer Records from AAMVA

Dear Mr. Cashin,

Thank you for providing the Illinois Secretary of State (ILSOS) with the July 27, 2026, memorandum from AAMVA President and CEO Ian Grossman informing AAMVA-member states that the Federal Motor Carrier Safety Administration (FMCSA) has requested approximately 17 million Commercial Driver's License Information System (CDLIS) Master Pointer Records (MPRs), including 431,483 records maintained by the State of Illinois.

ILSOS values its partnership with AAMVA and the FMCSA, and shares a firm commitment to highway safety and the federal CDL program. But this extraordinary and unprecedented data demand is inconsistent with the purpose of CDLIS, and violates Illinois and federal law.

We understand from Mr. Grossman's July 24, 2026, letter to FMCSA that FMCSA has pressured AAMVA to comply with this demand by making "an explicit threat of termination of AAMVA's federal grants and contracts," which would "have immediate negative impacts on all jurisdictions, including the inability for all 50 states and the District of Columbia to issue or renew any CDL as well as non-CDL driver licenses." But ILSOS urges AAMVA not to allow that to sway its judgment. Handing over this massive body of personal data is bad for drivers, bad for state members, and against the law.

Illinois maintains CDLIS Master Pointer Records for a sole, limited purpose: to support state driver licensing agencies (SDLAs) in administering the federal commercial driver's license program and upholding the "one driver, one record" requirement in compliance with FMCSA regulations. The MPRs kept by CDLIS enable SDLAs to identify where a driver's official record resides so states can exchange information necessary to make informed licensing decisions and prevent individuals from

obtaining a CDL in one state while their driving privileges are suspended, revoked or sanctioned in another state.

Your memorandum states that AAMVA is “preparing to transmit the data within the next few weeks” but has offered states the opportunity to identify specific laws or agreements that may limit or restrict disclosure or sharing of that data. To be clear, ILSOS believes that releasing Illinois’ CDLIS data under the circumstances raises serious concerns and would result in imminent violations of both state and federal law. As a result, ILSOS strongly urges that AAMVA not transmit the requested data.

ILSOS appreciates AAMVA’s efforts to engage FMCSA and obtain written assurances and confirmation from the federal agency regarding its intended use of the data and compliance with the Federal Driver’s Privacy Protection Act (DPPA). FMCSA has stated that it intends to *“*use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313, including verifying Commercial Driver's License (CDL) validity and conducting motor carrier safety assessments.” But that vague explanation does not provide a reasonable justification for this extraordinary demand. Moreover, FMCSA has also stated its intent to re-disclose the data to other federal agencies by stating that "any subsequent redisclosure to federal partner agencies is authorized pursuant to 18 U.S.C. § 2721(c) and § 2721(b)(1), provided the data is used strictly in furtherance of legitimate government functions*…*”

ILSOS has serious legal concerns that the data FMCSA is requesting will be re-disclosed to or accessed by other federal agencies for purposes having nothing to do with motor carrier safety, whether or not that is FMCSA’s intent. Recent federal court opinions have recognized that federal agencies in the past year have attempted to consolidate personal information to create centralized federal databases containing private information, including social security numbers, in violation of the Privacy Act of 1974, 5 U.S.C. Section 552a. *See, e.g.*, *League of Women Voters v. U.S. Dept. of Homeland Security*, --- F. Supp. 3d ___, 2026 WL 1784297, at *1 (D.D.C. June 22, 2026) (“In the past year, several federal agencies have joined forces to create a centralized federal database that contains the private information of United States citizens . . . . But decades ago, Congress put protections in place to prevent precisely this type of centralized data bank.”). ILSOS is particularly concerned that Illinois data disclosed to FMCSA could ultimately be provided to other federal agencies or databases for civil immigration enforcement or other purposes unrelated to commercial driver licensing or highway safety. Such use would be in direct conflict with privacy protections under Illinois law and in violation of Illinois’ TRUST Act, 5 ILCS 805/1 et. seq.

The Illinois Vehicle Code (625 ILCS 5/ et seq.), administered by ILSOS, strictly limits the disclosure of highly restricted personal information (“HPRI”), including Social Security numbers (625 ILCS 5/1-125.9) and personal identifying information (“PII”), such as names, addresses, dates of birth, and driver’s license numbers (625 ILCS 5/1-159.2). Of particular concern, 625 ILCS 5/6-110.3 provides that the Secretary of State “**may not release or make accessible in any manner**” (emphasis added), HPRI or PII to “any immigration agent as defined by the Illinois Trust Act” i.e. an *“…*agent of federal Immigration and Customs Enforcement, federal Customs and Border Protection, or any similar or successor agency.” (5 ILCS 805/10). These are statutory protections resulting from clearly defined state legislative directives governing the handling of sensitive driver’s license information.

ILSOS remains committed to working with AAMVA and the FMCSA to administer motor vehicle and commercial driver licensing laws to ensure highway safety and preserve the integrity of the nation's CDL program. However, those objectives must be achieved in a manner that respects and abides by both federal privacy protections and Illinois law. Given the FMCSA's apparent intent to re-disclose or make available data transmitted by AAMVA, ILSOS strongly urges that AAMVA refrain from providing Illinois' CDLIS data to FMCSA.

Thank you for your consideration.

Sincerely,

Danielle Pappas
Deputy General Counsel
Illinois Secretary of State's Office

# EXHIBIT E

CALIFORNIA STATE TRANSPORTATION AGENCY GAVIN NEWSOM, *Governor*

**OFFICE OF THE DIRECTOR**
**DEPARTMENT OF MOTOR VEHICLES**
P.O. BOX 932328
SACRAMENTO, CA 94232-3280

August 3, 2026

<u>*Sent Via Email to:*</u>
Cian Cashin
Vice President of Government Affairs
American Association of Motor Vehicle Administrators
4250 Fairfax Drive, Suite 1000
Arlington, VA 22203

Dear Mr. Cashin:

The California Department of Motor Vehicles (California DMV) is in receipt of American Association of Motor Vehicle Administrator's (AAMVA) President and CEO Ian M. Grossman's July 27, 2026, Memorandum to the U.S. State Driver Licensing Agency Chief Administrators, informing driver licensing agencies of the demand from the Federal Motor Carrier Safety Administration (FMCSA) for AAMVA to provide Commercial Driver's License Information System (CDLIS) Master Pointer Records (MPRs) for approximately 17 million drivers in the United States. That Memorandum gave the state agencies only one week to respond. While I am writing now to meet that deadline, as an initial matter, I am concerned that AAMVA is not affording state agencies or AAMVA itself sufficient time to consider the very serious legal concerns that FMCSA's unprecedented demand has raised.

I strongly urge that AAMVA not rush this process, including to give agencies like ours an adequate opportunity to weigh the issues involved and, relatedly, to give the Board the opportunity for more meaningful discussion and a formal vote on the matter. Because of the unreasonably short notice provided—less than 24 hours—some jurisdictions such as Maine, Texas, and New Hampshire could not attend. For California's part, our Board member was unable to fully participate in the Board's prior discussion on this matter, but he was forced to listen in while on a commercial flight where he could not speak freely. For present purposes, and until such time as we indicate otherwise in writing, California does not consent to the disclosure of its data nor to any records

holding such data in response to FMCSA's pending demand or any similar bulk demand.

The California DMV strongly opposes AAMVA's proposed disclosure of the MPRs to FMCSA. As AAMVA is aware, these records reflect sensitive, legally protected personal data, including Social Security Numbers, that California DMV and the State Driver Licensing Agencies more broadly have shared under strict confidentiality agreements. Moreover, FMCSA has provided no legitimate reason it needs to obtain this data en masse rather than make individual queries of the CDLIS database, as it has done in the past. It is no secret that the federal government has been amassing and centralizing the personal information of Americans to use in myriad ways including for immigration enforcement.[1] Giving FMCSA an unfettered copy of this trove of personal information puts that data at risk of being similarly misused. As detailed below, disclosing this information to FMCSA would violate the explicit terms of AAMVA's contract with the California DMV. It would further violate federal and state laws meant to protect individual privacy. And while FMCSA claims its contract with AAMVA authorizes the disclosure, AAMVA itself has rightly informed FMCSA that FMCSA misreads the contract. For these reasons, we ask that you commit in writing, by the close of business on **August 6, 2026**, that you will not disclose the California DMV's data, as reflected in the MPRs or otherwise, in response to FMCSA's request and that, if you are considering disclosure, you provide the California DMV with at least five business days' notice before any disclosure. Should AAMVA not agree to do so, we will be forced to pursue available legal avenues to enforce the California DMV's rights under the contract and all other applicable law.

## I. AAMVA's proposed disclosure is prohibited by the contract governing California's participation in CDLIS.

FMCSA's request covers troves of sensitive information about California drivers—information that the California DMV shared with AAMVA pursuant to the parties' July 2025 contract governing CDLIS. *See* attached (hereinafter "the

[1] *See* Exec. Order No. 14243, 90 Fed. Reg. 13,681 (Mar. 20, 2025) (directing federal agencies to eliminate so-called "information silos" and ensure "unfettered access to comprehensive data from all State programs" in furtherance of the Administration's goals.); *see also* Makena Kelly & Vittoria Elliott, *DOGE Is Building a Master Database to Surveil and Track Immigrants*, Wired (April 18, 2025), https://www.wired.com/story/doge-collecting-immigrant-data-surveil-track/ ("DOGE is knitting together immigration databases from across DHS and uploading data from outside agencies including the Social Security Administration (SSA), as well as voting records, sources say.")

Agreement"). As set forth in the Agreement, that data "remains DMV's exclusive property." Agreement, Ex. B ¶ B(1). Accordingly, DMV retains the right to control how that information is used and shared. Indeed, the Agreement dictates that "DMV information provided under this Agreement . . . **must not be shared without written permission from the DMV**." Agreement, Ex. B at 2 ¶ B(1). The California DMV does not consent to AAMVA sharing any of the California DMV's data with FMCSA in response to its request for bulk information. If FMCSA needs the California DMV's bulk data for a legitimate purpose, it must request that data from the California DMV, not AAMVA, which has no right to share it. *See id.* ("Disclosure of this data does not transfer ownership of information to the Contractor.").[2]

This strict limitation on sharing the California DMV's data with third parties is reiterated elsewhere in the Agreement. For example, per AAMVA's own security requirements, the parties agreed not to "disclose or make available" any confidential information "to any person or for any purpose or object except as authorized by this agreement." *Id.* App'x 1 at 2 ¶ 2(b)(II); *see also id.* Ex. B at 2 ¶ B(2) ("[I]nformation obtained under this Agreement shall not be . . . released . . . for any purpose other than identified in this Agreement."); *id.* at 4 ¶ B(9) ("Disclosure of any DMV information to any person or entity not specifically authorized in this Agreement is strictly prohibited.").[3] Nowhere does the Agreement authorize the sharing of bulk data with FMCSA or any other party, nor authorize disclosing it for any of the vague purposes FMCSA describes.

Further, even if disclosure to FMCSA were permissible under the Agreement, which it is not, AAMVA would be responsible for "ensur[ing]" FMCSA "adhere[s] to" the Agreement's "Information Security and Privacy Provisions" (Ex. B). *Id.* Ex. B at 1. Among other protections, this would require that FMCSA provide written assurances it will not disseminate the data outside of FMCSA, and that the information will only be used for FMCSA's commercial licensing program oversight responsibilities, and for no other purpose. *See* Agreement, Ex. B, p. 1.

---

[2] The Agreement contemplates that any disclosure required by law would have to come from the California DMV, not from AAMVA. It states: "AAMVA will reasonably assist DMV in responding to any disclosure imposed by applicable state and federal laws." *Id.* The Agreement does not impose the same requirement on the California DMV, as the data remains the California DMV's property, not AAMVA's.

[3] Further, even if disclosure to FMSCA were permissible under the Agreement, which it is not, AAMVA would be responsible for "ensur[ing]" FMSCA "adhere[s] to" the Agreement's "Information Security and Privacy Provisions" (Ex. B). *Id.* Ex. B at 1.

Should AAMVA violate any of these provisions by sharing the California DMV's data with FMCSA, such a disclosure would "constitute a material breach" of the Agreement and would cause the California DMV irreparable harm. *Id.* App'x 1 at 5 ¶ 6 ("Either Party's failure to comply with the provisions of this Agreement concerning the use, disclosure, protection or safeguarding of Confidential Information or Protected Data shall constitute a material breach of this Agreement.").

Moreover, AAMVA agreed to comply with state and federal privacy laws, which prohibit the sharing of the requested bulk data, as explained further below. It also expressly acknowledged in the Agreement that "under California Penal Code § 502, it is a public offense to knowingly and without permission . . . copy, or otherwise use any DMV data. Such action can be prosecuted civilly or criminally and is punishable by fine and/or imprisonment." Agreement, Ex. B at 3 ¶ B(4), Appx. 1 at 2 ¶ 3.a. As a member of AAMVA, the California DMV strongly urges AAMVA's leadership to avoid taking any action that could expose the organization to such liability.

## II. AAMVA's contract with FMCSA does not authorize the proposed disclosure.

As AAMVA has correctly observed, the CDLIS Cooperative Agreement of June 9, 2008 ("FMCSA Agreement"), does not authorize FMCSA to demand, nor AAMVA to provide, the millions of pointer records FMCSA now seeks. FMCSA has argued that Article 7 paragraph (b) of that agreement establishes its authority to demand these records, which states that "upon request, AAMVA shall make available" "to FMCSA" "all information on all *driver records*, including non-CDL holders who operate CMVs." (Emphasis added.) "Driver records" are different from the pointer records that FMCSA has requested. The term "driver records" has a specific meaning in the CDLIS context; it refers to "the electronic record of the individual CDL driver's status and history *stored by the State-of-Record*." 49 CFR § 383 (emphasis added). And the reference in paragraph (b) to "driver record," and not "pointer records," is intentional. Indeed, the very next line of the agreement refers to the disclosure of "pointer records," confirming that FMCSA understood the difference between the two data sets, and limited paragraph (b) only to "driver records." Thus, contrary to FMCSA's current assertion, Article 7 does not require the disclosure of pointer records to FMCSA.

**III. AAMVA's proposed disclosure would violate federal law.**

**Driver's Privacy Protection Act of 1994**

AAMVA's disclosure of the pointer records to FMCSA would violate the Driver's Privacy Protection Act of 1994 (the DPPA).

The DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments and their contractors. 18 U.S.C. §§ 2721(a); *Reno v. Condon*, 528 U.S. 141, 143 (2000). It generally bars these entities from disclosing a driver's personal information without the driver's consent. 18 U.S.C. §§ 2721(a). It authorizes disclosure only in limited circumstances. Relevant here, it provides that personal information "*may*" be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1) (emphasis added). Courts have emphasized that this provision "must be read narrowly," *see Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc), consistent with the statutory text and Congress's "chief aim of privacy protection," *id.*

Here, FMCSA argues that disclosure is permissible under this provision. Invoking 18 U.S.C. § 2721(b)(1), it asserts that it "intends to use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313, including verifying Commercial Driver's License (CDL) validity and conducting motor carrier safety assessments," and it goes on to claim that "[d]irect access to this data enables FMCSA to fulfill its core responsibilities under 49 U.S.C. § 113, constituting a clear exercise of 'carrying out its functions' under federal law." FMCSA July 24, 2026, letter.

This vague, highly generalized statement is insufficient to justify the bulk disclosure of the confidential information of 17 million persons. Under 18 U.S.C. § 2721(b)(1), AAMVA may disclose personal information to FMCSA only if *each* piece of data for *each* person would be "[f]or use" by FMCSA "in carrying out its functions." *See Senne*, 695 F.3d at 606 ("the actual information disclosed . . . must be information that is *used* for the identified purpose"; [w]hen a particular piece of disclosed information is not *used* to effectuate that purpose in any way, the exception provides no protection for the disclosing party." (emphasis in original)). AAMVA raised this very issue to FMCSA. It explained that it "must consider whether each data element requested is necessary to the governmental purposes for which it was requested. In other words, we must at

least know what government agency will use the records for what government function." AAMVA July 10, 2026, letter.

But in fact, FMCSA has not provided information sufficient to allow AAMVA to determine whether disclosure could be permissible under the DPPA. While vaguely alluding to various planned uses, FMCSA has not explained how disclosure of millions of highly sensitive records would help it fulfill its goals. It never explained, for example, why the disclosure of 17 million social security numbers is necessary to "verify[] Commercial Driver's License (CDL) validity," "conduct[] motor carrier safety assessments," and "fulfill its core responsibilities." FMCSA July 24, 2026, letter. That some records may be helpful to FMCSA in carrying out its legitimate governmental functions cannot be sufficient under the DPPA's exception to justify the disclosure of the records of 17 million individuals. Disclosure is particularly problematic for those individuals who are in the CDLIS database but neither have a commercial credential nor any commercial violation history—and so plainly will not have their data used for the vague purposes FMCSA has described. Therefore, FMCSA's request for this information violates the DPPA. *See United States v. Weber*, 816 F. Supp. 3d 1168, 1195 (C.D. Cal. 2026).

Nor could FMCSA provide a legally sufficient justification for the mass bulk data demand it has presented to AAMVA. As you know, like state licensing agencies, FMCSA has access to CDLIS for purposes of querying information on individual drivers. For decades now this level of access has been sufficient for FMCSA to carry out its legitimate governmental functions. In the history of AAMVA's maintenance of the CDLIS, FMCSA has never purported to have, or evinced, need for any bulk data pull, let alone one of the magnitude seen here. Despite the unprecedented nature of its current request, FMCSA has identified no specific reason why such a break from past practice is necessary now.

More problematic still, FMCSA has indicated that it plans to disclose any provided information more broadly "to federal partner agencies," which according to FMCSA, also have a general intent to use the data for their legitimate, governmental functions. To accept FMCSA's request, then, would be to convert a statutory scheme with the "chief aim of privacy protection," *see Senne*, 695 F.3d at 606, into a statutory scheme that facilitates bulk disclosure of personal information across the federal government and potentially beyond. And if any state or local governmental body—or even any "private person" acting on their behalf, 18 U.S.C. § 2721(b)(1)—asserts a similar vague interest in these records for, say, driver safety, then, in the view of FMCSA, they too would apparently be entitled to highly sensitive information for millions of drivers. The

upshot would be to inappropriately transform a provision that "must be read narrowly," *see Senne*, 695 F.3d at 606, into a provision without meaningful limits.

This, of course, is not the federal government's first attempt to obtain highly sensitive personal information on a bulk scale and to use this information for purposes that Congress never authorized.[4] As one court recently wrote: "In the past year, several federal agencies have joined forces to create a centralized federal database that contains the private information of United States citizens, including Social Security numbers, citizenship status, and other sensitive data." *See, e.g.*, *League of Women Voters v. U.S. Dept. of Homeland Security*, __ F. Supp. 3d __, 2026 WL 1784297, at *1 (D.D.C. June 22, 2026). But as this same court explained, "decades ago, Congress put protections in place to prevent precisely this type of centralized data bank." *Id.* The DPPA is an important piece of this effort to safeguard personal information—and it does not authorize the bulk disclosure of the data here.

Furthermore, even if DPPA did permit the disclosure of the data FMCSA requests (it does not), it certainly does not *require* that disclosure. Rather, the law gives states discretion to determine whether disclosure is warranted and to whom, because it is the states' responsibility to protect its residents from having their data broadly disclosed or misused. California has done just that: in its contract with AAMVA, it has prohibited the disclosure of its residents' data without the state's express consent. *See* Agreement, Ex. B at 2 ¶ B(1). AAMVA is bound by that provision, even if DPPA would otherwise permit such a disclosure.

**Federal Privacy Act of 1974**

AAMVA's disclosure of the pointer records to FMCSA would also appear to violate the Privacy Act of 1974.

Congress enacted the Privacy Act to "provide certain safeguards for an individual against an invasion of personal privacy," by requiring government agencies to maintain accurate records and providing individuals with more control over the gathering, dissemination, and accuracy of information about themselves. Pub. L. No. 93-579, § 2(b), 88 Stat. 1896 (1974). To that end, the Act gives agencies detailed instructions for managing "systems of records"—a term

---

[4] *See, e.g.*, Kimberly Kindy & Amanda Seitz, *Trump administration hands over Medicaid recipients' personal data, including addresses, to ICE*, AP News (July 17, 2025), https://apnews.com/article/immigration-medicaid-trump-ice-ab9c2267ce596089410387bfcb40eeb7.

defined to mean "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S. Code § 552a(a)(5).

Among other requirements, the Act provides that when an agency "establish[es] or revis[es]" a "system of records" containing retrievable information about individuals, it must "publish in the Federal Register . . . a notice of the existence and character of the system of records." 5 U.S.C. § 552a(e)(4). This notice, commonly called a System of Records Notice or SORN, must identify the agency's intended uses and disclosures of those records. *Id*. § 552a(e)(4). At least 30 days before publishing a SORN, the agency must also publish notice in the Federal Register "of any new use or intended use of the information in the system" and provide an opportunity for interested parties to submit "written data, views, or arguments to the agency." *Id*. § 552a(e)(11). Thus, before an agency can establish or revise a system of records, it must provide notice and an opportunity for public comment at least 30 days in advance.

In its communications with AAMVA, FMCSA appears to acknowledge that the Privacy Act is applicable here. *See also* CDLIS Cooperative Agreement, Art. 6 at 6-7. But it asserts that it "will maintain this data within established Systems of Records in accordance with the Privacy Act of 1974" and would provide relevant SORNs "under separate cover." FMCSA July 24, 2026 letter. At this stage, however, California has not seen these referenced SORNs. We have thus been asked to provide comments about FMCSA's extraordinary request, under an extremely expedited timeline, without even receiving adequate information to evaluate FMCSA's compliance with federal law. This alone warrants a pause in this process to allow time for AAMVA to share the relevant information with the states before seeking comments. At this juncture, AAMVA appears not to have any basis for concluding that the requirements of the Privacy Act have been met. And knowing that the federal government has recently struggled to comply with the Privacy Act (*see, e.g.*, *League of Women Voters*, 2026 WL 1784297, at *21), we have serious concerns about FMCSA's compliance with the Privacy Act, as well as other federal privacy statutes.

## IV. AAMVA's Proposed Disclosure Would Violate State Law.

AAMVA's proposed bulk disclosure to FMCSA would also violate California law that AAMVA explicitly agreed to follow in its contract with the California DMV. Agreement, Ex. B at 1. This includes the Information Practices Act, the Vehicle

Code, and other state law provisions designed to protect the confidentiality of personal information contained in the pointer records.

The California Information Practices Act ("IPA," California Civil Code § 1798 et seq.) strictly prohibits the disclosure of personal information by state agencies, including the California DMV, subject to limited exceptions. California Civil Code § 1798.1. For purposes of the IPA, "personal information" means "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, the individual's name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history." California Civil Code § 1798.3(a).

Among other types of limited disclosure that the IPA permits, "[a]n agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed . . . [t]o a person, or to another agency if the transfer is necessary for the transferee agency to perform its constitutional or statutory duties, and the use is compatible with a purpose for which the information was collected and the use or transfer is in accordance with Section 1798.25." California Civil Code § 1798.24(e). Disclosure is also permitted "[t]o a governmental entity if required by state or federal law." California Civ il Code § 1798.24 (f).

FMCSA's stated purposes for collecting this data are so vague that the California DMV cannot determine whether the data would be used for some permissible purpose. Moreover, AAMVA's contract with the California DMV specifically limits the disclosure and use of the CDLIS database. A bulk disclosure to FMCSA, and not strictly tailored for the use for which the California DMV permitted disclosure to the AAMVA, would violate not only the DPPA but California's IPA.

California Government Code § 11015.5 likewise prohibits the transfer of personal information to private entities and other agencies unless permitted by the IPA. Cal. Gov. Code § 11015.5(b) (A state agency shall not distribute or sell any electronically collected personal information about users to any third party without prior written permission from the user, except as required to investigate possible violations of Section 502 of the Penal Code or as authorized under the Information Practices Act.).

In addition, the California Vehicle Code contains numerous privacy protections that AAMVA's proposed wholesale dissemination would violate. For example,

California Vehicle Code § 1808.47 explicitly states that "[n]o agent shall obtain or use any confidential or restricted records for any purpose other than the reason the information was requested." California Vehicle Code § 1808.47.

Other Vehicle Code provisions state that records received by the department to prove residence, identity, or lawful presence are not public records and cannot be disclosed except in limited circumstances (e.g., in response to subpoena for individual records in a criminal proceeding or court order, or in response to law enforcement request to address an urgent health or safety need). See, e.g., Cal. Veh. Code § 12801.9(j) and (k); 12800.7. Even then, the records cannot be produced unless "the law enforcement agency certifies in writing the specific circumstances that do not permit authorities time to obtain a court order." Cal. Veh. Code § 12800.7(b).

***

For all of these reasons, the California DMV directs AAMVA not to disclose the California DMV's data to FMCSA, and urges AAMVA to respect the contractual and other legal rights of state licensing agencies that reach a similar conclusion, not to mention the rights of the 17 million affected individuals. Acquiescence to FMCSA's unprecedented demand would not only violate the parties' contract and various laws, as described above, but would also breach the trust that exists between our organizations, which have worked together productively for many years. More importantly, it would erode the public's trust in the nation's motor vehicle licensing programs.

As requested above, by August 6, 2026, please confirm, in writing, that AAMVA does not intend to disclose bulk California DMV information to FMCSA, and will provide the California DMV with at least five business days' notice if that intention changes. If AAMVA cannot provide such assurances, please provide the California DMV with a written explanation of AAMVA's intended response to FMCSA's request by August 6. If we do not receive any response by August 6, we will interpret AAMVA's silence as a concession that it has decided to imminently disclose the California DMV's bulk data in violation of its contract with the California DMV and the federal and state laws described above.

In addition to your written response, we would appreciate the opportunity to meet with representatives from AAMVA to further discuss these issues. Our team can be available at your earliest convenience. In the meantime, please do not hesitate to reach out with any questions.

Sincerely,

STEVE GORDON, Director
Department of Motor Vehicles