**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>*Defendants*. | No. 1:26-cv-2547<br><br>Hon. Anthony J. Trenga |

**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION**

**[PROPOSED] ORDER**

Upon consideration, and for good cause shown, IT IS HEREBY ORDERED that Plaintiff States' motion for a preliminary injunction ("PI") is GRANTED.

**PRELIMINARY INJUNCTION**

The Court finds that Plaintiff States have demonstrated a likelihood of success on the merits of their claims, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that a preliminary injunction is in the public interest. In support of this Order, the Court makes the following findings:

1. This Court has jurisdiction to adjudicate the claims raised in Plaintiff States' first amended complaint and motion for preliminary injunction.

2. On July 23, 2026, Defendant Federal Motor Carrier Safety Administration (FMCSA) threatened Defendant American Association of Motor Vehicle Administrators (AAMVA) by demanding that it turn over the contents of a database—the Commercial Driver's License Information System (CDLIS)—containing the sensitive personal information of 17 million drivers (the Data Demand) or face immediate termination of all of AAMVA's federal contracts and funding, including approximately $10 million that funds the database itself, and the cooperative agreement that authorizes AAMVA to operate CDLIS.

3. FMCSA, which is a sub-agency of Defendant U.S. Department of Transportation (DOT), coordinated the Data Demand with the U.S. Department of Homeland Security (DHS), which issued a subpoena requesting the same records as the Data Demand and stating that it was doing so for immigration enforcement purposes.

4. On August 11, 2026, after AAMVA conveyed it needed more time and would not be able to produce the demanded data by August 17, Defendant FMCSA informed AAMVA that, if AAMVA did not produce the requested records by August 17, FMCSA would carry out its

threats to AAMVA, including terminating AAMVA's federal funding, filing an enforcement action to enforce the August 11, 2026, DHS subpoena, and considering terminating its contract with AAMVA.

5. FMCSA, DOT, the Secretary of Transportation, and the Administrator of FMCSA (collectively, "Federal Defendants") failed to consult, or even notify, Plaintiff States regarding the Data Demand, despite demanding millions of Plaintiff States' confidential records and threatening to take actions that—by shutting down the CDLIS database—could prevent Plaintiff States from issuing or renewing driver's licenses entirely, and cause the loss of up to eight percent of Plaintiff States' federal highway funds, which are conditioned on the States' use of CDLIS for commercial driver licensing.

6. Plaintiff States seek to protect their interest in maintaining public trust and ensuring that residents continue to apply for driver's licenses, and to protect their sovereign interest in enforcing their state laws and obligations that protect the privacy of CDLIS records. These interests clearly fall within the zones of interests to be protected by the Driver's Privacy Protection Act (DPPA) and the Privacy Act of 1974.

7. Plaintiff States are likely to prevail on their claims that Federal Defendants' actions are contrary to law in violation of the Administrative Procedure Act (APA). Federal Defendants have likely violated 49 U.S.C. § 31309(a) by issuing the Data Demand without consulting with the States. Federal Defendants have also likely violated the DPPA, which prohibits "any person" from knowingly "obtain[ing] or disclos[ing] any personal information[] from a motor vehicle record" unless one of fourteen enumerated exceptions applies. 18 U.S.C. § 2722(a); *see id.* § 2721(a)(1), (c). The sole exception identified by FMCSA as a basis for disclosure, the government use exception (18 U.S.C. § 2721(b)(1)), is likely not applicable here because Federal Defendants

1) have not shown that FMCSA will actually use all of the records it demands, 2) have not identified any particular statutory functions for which FMCSA intends to use the bulk data, and instead, 3) have made clear that they are not seeking the data solely for FMCSA's own use, but also so that FMCSA can share the information with DHS for use in connection with immigration enforcement. The Data Demand is also likely contrary to the Privacy Act of 1974 because Federal Defendants 1) violated the Privacy Act's notice requirements that FMCSA must satisfy before ingesting new data into a new or newly modified "system of records"; 2) have failed to articulate a specific purpose "required to be accomplished" by FMCSA that would justify the possession and maintenance of these records (*see id.* § 552a(e)(1)); and 3) violated prohibitions against disclosing personal information to third parties, including other federal agencies such as DHS. Federal Defendants also failed to comply with their own policy, developed pursuant to federal statute, by which other federal agencies can obtain access to information in CDLIS. *See* 49 U.S.C. § 31309(c); 70 Fed. Reg. 2455. Nothing in the record suggests that DHS followed FMCSA's policy, nor that FMCSA required DHS to do so—and even if DHS had followed the required procedures, the policy does not allow federal agencies to *obtain* CDLIS records in bulk, but only to *access* them as the States do, through individual queries. Thus, instead of complying with the policy, DHS in coordination with FMCSA twice served AAMVA with an administrative subpoena as an added coercive tactic to obtain custody of the States' records, contrary to law.

8. Plaintiff States are also likely to prevail on their claims that the Data Demand is arbitrary and capricious in violation of the Administrative Procedure Act, because Federal Defendants 1) have not provided a satisfactory explanation for the Data Demand; 2) failed to consider important aspects of the problem, including the costs and potential harms of taking possession of and sharing the sensitive personal information of 17 million individuals as well as

the dire consequences that would ensue if FMCSA carried out its threat to shut down CDLIS; 3) did not consider alternatives to the Data Demand; 4) did not acknowledge or explain the dramatic change in policy that the Data Demand embodies; 5) did not consider the reliance interests in having this data kept private; and 6) did not follow their own policy, developed pursuant to federal statute, by which other federal agencies can obtain access to information in CDLIS when lawful to do so. To the extent that Federal Defendants offered any rationale, it is unsubstantiated and pretextual, and is, in any event, likely to be found insufficient to meet the standard for reasoned agency decisionmaking that is required under the Administrative Procedure Act. In the absence of any substantive explanation for how the requested data transfer is related to FMCSA performing its statutory purpose, and given that FMCSA can already access CDLIS records by making individual queries just as any other user may, the compelling inference is that Federal Defendants seek these 17 million files in large part, if not primarily, for immigration enforcement, which is not part of FMCSA's statutory mandate.

9. Plaintiff States are also likely to prevail on their claim that the Data Demand, with its threatened sanctions, violates the Spending Clause, because the CDLIS statute does not provide or identify any clear notice that States have agreed to surrender their records to FMCSA, or any other agency of the federal government, as a condition of receiving a portion of their federal highway funds. *See* 49 U.S.C. § 31311 (providing a detailed list of requirements for state participation in CDLIS). Moreover, the character of CDLIS as a clearinghouse that is intended to allow States to exchange with one another information owned by the States themselves reinforces the conclusion that the States did not knowingly or voluntarily agree to turn over their records to FMCSA by accepting federal highway funds.

10. Plaintiff States of Illinois, California, Maine, and the District of Columbia ("Contract Plaintiffs") are likely to succeed on their claims that AAMVA cannot lawfully disclose their records under its contracts with those States. Each of these states have entered into contracts with AAMVA to restrict what AAMVA may do with the State's proprietary and confidential driver information, and each imposes strict limitations on the disclosure of such information. The Data Demand does not fall within these strict limitations and none of Contract Plaintiffs have given AAMVA permission to disclose state data to FMCSA or DHS in response to the Data Demand. Rather, Contract Plaintiffs have unambiguously communicated that AAMVA does not have permission to carry out a bulk transmission of their respective data. AAMVA's transfer of Contract Plaintiffs' data to FMCSA or DHS likely would violate the respective contracts. *See* ECF No. 46 at 11.

11. Plaintiff States are likely to suffer irreparable harm in the absence of preliminary injunctive relief. The unauthorized disclosure of information provided to agencies, particularly when it involves a large-scale disclosure of sensitive information, constitutes irreparable harm. FMCSA provided no confidentiality assurances and openly admits that it intends to share the records with DHS for immigration enforcement. Such a large scale and unregulated distribution inevitably compromises and undermines the public's trust in Plaintiff States' promises to safeguard their residents' personal information. This could result in fewer people seeking driver's licenses, a drop in fee revenue, and a potential increase in unauthorized driving and the attendant public safety risks. Additionally, if Federal Defendants follow through on the threat to effectively shut down CDLIS by terminating the federal funding that sustains it and the cooperative agreement that authorizes AAMVA to operate it, Plaintiff States could lose the ability to issue commercial driver's licenses—and possibly *all* driver's licenses—and their ability to monitor and ensure the safe

operation of commercial motor vehicles within their respective borders would be impaired. Disclosure of the States' data would also impose significant compliance burdens on Plaintiff States, requiring some States to give notice to residents and necessitating revisions to official forms and communications. Plaintiff States would also lose the ability to superintend, secure, and verify their records, and the ability to enforce their own laws governing the use of this information if Federal Defendants succeed in taking custody of Plaintiff States' CDLIS data, creating a new database of State-owned information that the States can no longer update or correct. That creates an imminent and unacceptable risk that Federal Defendants, or other federal agencies with whom they share the data, will take adverse action against Plaintiff States or their residents based on out-of-date, incomplete, or erroneous information.

12. The balance of equities and public interest favor injunctive relief. Either the shutdown of CDLIS or the transfer of Plaintiff States' CDLIS data in response to Federal Defendants' Data Demand would be unlawful, and would irreparably harm Plaintiff States and the public. Maintaining the status quo by preliminarily enjoining Federal Defendants from carrying out their threats would not harm Federal Defendants because they have performed their statutory functions for decades without the demanded data and do not have a satisfactory explanation as to how obtaining this massive trove of data would assist them. Preliminary relief also would not harm AAMVA because AAMVA has not sought this disclosure. Preliminary injunctive relief is also in the public interest given the harm the termination of federal funding to AAMVA would cause since CDLIS would effectively cease its operations and impair Plaintiff States' ability to issue and renew CDLs and compromise the safe operation of commercial motor vehicles. Any shutdown of CDLIS, which is interconnected with all forms of driver licensing, could disrupt or even stop the issuance and renewal of any driver's licenses in the United States. *See* ECF No. 46 at 13.

Accordingly, it is hereby:

**ORDERED** that Defendant AAMVA, its officers, agents, servants, employees and attorneys, and those who are in active concert or participation with them, be, and the same hereby are, **ENJOINED** from transferring Plaintiff States' CDLIS Master Pointer Records, as requested in the Data Demand, to Federal Defendants or any other federal agency; and it is further

**ORDERED** that Federal Defendants, their officers, agents, servants, employees and attorneys, and those who are in active concert or participation with them, including without limitation the U.S. Department of Homeland Security, be, and the same hereby are, **ENJOINED**, from demanding and/or accepting transfer of Plaintiff States' CDLIS Master Pointer Records pursuant to the Data Demand, and **FURTHER ENJOINED** from taking any adverse actions against Plaintiff States or AAMVA based on the failure to transfer to them the requested information in the Data Demand including, without limitation, terminating or threatening to terminate AAMVA's federal contracts or funding, terminating or threatening to terminate Plaintiff States' federal contracts or funding, or taking any other action that could impair the operation of CDLIS or Plaintiff States' ability to issue commercial driver's licenses; and it is further

**ORDERED** that no security is required to be posted by Plaintiff States pursuant to Fed. R. Civ. P. 65.

SO ORDERED, this ____ day of ____________, 2026.

______________________________
Hon. Anthony J. Trenga
Senior United States District Judge