**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>*Defendants*. | No. 1:26-cv-2547<br><br>Hon. Anthony J. Trenga |

# PLAINTIFF STATES' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Kwame Raoul
*Attorney General of Illinois*
Cara Hendrickson†
*Executive Deputy Attorney General*
Katharine Roller†
*Complex Litigation Counsel*
Gretchen Helfrich†
*Deputy Chief, Special Litigation Bureau*
Molly Mauck†
*Assistant Attorney General*
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
115 South LaSalle St.
Chicago, IL 60603
312-814-3000

Counsel for the State of Illinois

† *Admitted pro hac vice*
*Additional counsel in signature block*

Jay Jones
*Attorney General of Virginia*
Tillman J. Breckenridge (#85647)
*Solicitor General*
Megan C. Keenan (#102489)
*Deputy Solicitor General*
Counsel of Record
Mikaela A. Phillips (#97164)
*Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Facsimile: (804) 786-1991
SolicitorGeneral@oag.state.va.us

Counsel for the Commonwealth of Virginia

August 27, 2026

# Table of Contents

I. The Court Correctly Concluded That It Has Jurisdiction and May Review the Data Demand. ..... 3

II. Federal Defendants' Concessions at Argument Reinforce That the Data Demand Is Unlawful. ..... 5

III. Federal Defendants May Not Rely on *Post Hoc* Justifications. ..... 6

IV. Federal Defendants Have Ignored the Legal Process for Requesting CDLIS Information. ..... 7

V. All Plaintiff States Are Entitled to Relief. ..... 9

The Commercial Driver's License Information System (CDLIS) protects the safety of America's roads and the people who travel on them. It supplies the States with valuable information about drivers applying for commercial driver's licenses (CDLs), and allows States to remain eligible to receive hundreds of millions of dollars in federal highway funds—all while ensuring that drivers' privacy is protected and States maintain control over their own records. That was true the day that this case was filed, and it is still true today, thanks to the temporary restraining order (TRO) entered by this Court on August 20, 2026, which enjoined the Federal Motor Carrier Safety Administration's (FMCSA) unlawful demand for 17 million CDLIS Master Pointer Records (MPRs) and its threatened shutdown of CDLIS, and thus of driver licensing nationwide (the Data Demand).

The Court should enter a preliminary injunction on the same terms as the existing TRO, and for the same reasons. Those reasons are laid out in both the Court's order and Plaintiff States' initial and reply briefs filed in support of their motion for a TRO, which the Court permitted Plaintiff States to incorporate by reference in any briefing on a motion for preliminary injunction—as Plaintiff States hereby do. *See* ECF No. 54 at 16.[1] As Plaintiff States' TRO briefing explained, Plaintiff States will suffer irreparable harm no matter how the American Association of Motor Vehicle Administrators (AAMVA) responds to this extraordinary demand. If AAMVA refuses, FMCSA (with the Department of Transportation (DOT) and their respective officers, hereinafter Federal Defendants) will terminate AAMVA's grants and contracts, causing CDLIS to shut down and thus preventing States across the nation from issuing or renewing CDLs and possibly *all* driver's licenses. But if AAMVA complies, the States will be divested of control over 17 million of their records, trust in Plaintiff States' ability to safeguard personal information will be irreparably damaged, and individuals will foreseeably be deterred from seeking driver's licenses. These harms both meet the standard for irreparable harm under the preliminary injunction test

[1] Plaintiff States' TRO briefing occasionally cites paragraphs of the original complaint (ECF No. 1), the operative pleading at the time. In the current operative complaint (the First Amended Complaint, ECF No, 77), the numbers of the paragraphs corresponding to those citations are increased by 3 (*e.g.*, a citation to ¶ 100 of ECF No. 1 corresponds to ¶ 103 of ECF No. 77).

(which is the same test that applies to a TRO), and, as the Court observed in its TRO order, place them well within the zone of interests of both the Driver's Privacy Protection Act (DPPA) and the Privacy Act of 1974. *See* ECF No. 54 at 7–8.

These serious harms are especially unjustified where, as here, Federal Defendants have conceded that they do not know what they will do with the information they have demanded, *e.g.*, Tr. at 28:23–25[2]—nor can they now seek to remedy this deficiency by offering new justifications in litigation. Under well-established law, FMCSA must stand on the vague, implausible, and plainly pretextual reasoning offered at the time it made the Data Demand, *i.e.*, that it intends to use the 17 million records to carry out its statutory functions under Title 49, which FMCSA concedes it has done *without* this massive trove of information for almost 40 years. *See* ECF No. 54 at 11. Moreover, as discussed at the TRO hearing, Federal Defendants have disregarded their own congressionally-directed regulations regarding other agencies' access to CDLIS data—further demonstrating the lawless and arbitrary nature of their actions. The hearing also featured new arguments from Federal Defendants about the Hobbs Act, 28 U.S.C. § 2342(3)(A), but those arguments cannot overcome the fact that, as this Court has already decided, the August 11 letter at issue here is neither a rule, a regulation, nor a final order as understood in the Hobbs Act, and thus that law does not deprive this Court of jurisdiction. ECF No. 54 at 7.

Finally, Plaintiff States respectfully request that the Court enter a preliminary injunction that covers all Plaintiff States, including the three recently added in a narrow amendment of Plaintiff States' complaint. All Plaintiff States stand to suffer the same harms, and Federal Defendants' actions are equally unlawful as to each and every Plaintiff State. For these reasons, and those stated in Plaintiff States' TRO briefing, their arguments at the TRO hearing, and the Court's TRO order, a preliminary injunction is warranted to prevent Federal Defendants from pursuing their illegal Data Demand or retaliating against noncompliance with that demand, and to

[2] Citations to the transcript (Tr.) of the TRO hearing on August 20, 2026, in this brief are to the rough version filed herewith; Plaintiff States requested an expedited certified transcript on August 20, 2026, shortly after the hearing concluded, but the certified version was not yet available as of the time of this filing. Plaintiff States will file the certified transcript as soon as it becomes available.

prevent AAMVA from transferring the 17 million records at issue to the federal government until final resolution of this case on the merits.

## I. The Court Correctly Concluded That It Has Jurisdiction and May Review the Data Demand.

This Court correctly held that it has jurisdiction and may review the Data Demand. As the Court explained, the Data Demand is final agency action because Defendants made an "unequivocal" threat to impose serious "legal consequences" on AAMVA—and, by extension, Plaintiff States—if it did not turn over the States' MPRs. ECF No. 54 at 6–7. That threat does not fall within the Hobbs Act's jurisdiction-channeling scheme because it is plainly not a regulation, rule, or final order as understood in that Act—terms that refer, respectively, to rules of general applicability and future effect, or orders that are the product of adjudications for which the agency has "compiled a record with an eye toward judicial review." *Weaver v. FMCSA*, 744 F.3d 142, 147 (D.C. Cir. 2014) (quoted in ECF No. 54 at 7). And Plaintiff States may raise claims under the DPPA and the Privacy Act because both statutes were enacted to protect the privacy of records, and Plaintiff States bring this suit to vindicate their sovereign interest in upholding laws and obligations that specifically protect such privacy, and their interest in ensuring that individuals trust the government to safeguard their data and are not deterred from seeking driver's licenses because they fear that doing so will expose their private information. *See* ECF No. 54 at 7–8.

Federal Defendants' arguments at the TRO hearing do not undermine these conclusions. Far from disputing that Federal Defendants made a clear-cut threat to eliminate AAMVA's funding if it did not comply with the Data Demand, Federal Defendants' counsel conceded that FMCSA's August 11 letter contained an "affirmative guarantee to terminate grants." Tr. at 16:3–4. An affirmative guarantee to impose a legal consequence is the very definition of final agency action. *See, e.g.*, *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436, 945 (D.C. Cir. 1986) (agency action is final if it expresses agency's "unequivocal position" to impose a legal consequence).

As to the Hobbs Act, Federal Defendants reiterated their position at the TRO hearing that the phrase "final order" in the Hobbs Act is equivalent to "final agency action." *See* Tr. at 16:12–

19. But as the D.C. Circuit explained in *Weaver*, that position is irreconcilable with the fact that the Hobbs Act itself uses the terms "final order" and "final agency actions" to mean different things. *Weaver*, 744 F.3d at 146; *compare also* 28 U.S.C. § 2342(3) ("rules, regulations, or final orders"), *with id.* § 2342(7) ("final agency actions"). *U.S. West Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049 (9th Cir. 2000), is not to the contrary. *Cf.* Tr. at 18:5–6, 18:24–19:3. That opinion held merely that "agency *orders* are 'final orders' for purposes of the Hobbs Act" if they satisfy the APA's requirements for finality. *U.S. West Commc'ns, Inc.*, 224 F.3d at 1054–55 (citation modified) (emphasis added). Relying on that interpretation, the Ninth Circuit held that an undoubted "order" of the Federal Communications Commission—which was literally entitled "First Local Competition Order"—fell within the scope of the Hobbs Act because this "Order" was "neither 'tentative' nor 'interlocutory.'" *Id.* at 1055. The Ninth Circuit therefore had no occasion to consider, and did not address, whether a final agency action that is *not* an order—that is, a decision that is not the product of an adjudication for which the agency has "compiled a record with an eye toward judicial review," *Weaver*, 744 F.3d at 147, may somehow qualify as a "final order" within the meaning of the Hobbs Act.

Finally, Federal Defendants incorrectly suggested at the TRO hearing that Plaintiff States rely on a *parens patriae* theory to satisfy the zone of interests test for the DPPA and the Privacy Act. *See* Tr. at 20:2–6, 21:13–21. That is wrong. Plaintiff States are not asserting such a theory. They seek to protect their *own* interests in preserving the privacy of CDLIS records: in particular, they seek to protect their sovereign interest in enforcing their state laws and obligations that protect the privacy of such records, and their interest in ensuring that residents continue to apply for CDLs, which are critical to public safety and the States' economies and provide a source of revenue for Plaintiff States. *See, e.g.*, ECF No. 3-4 ¶¶ 26–32. Those interests are easily sufficient to satisfy the zone-of-interests test under the APA, which the Supreme Court has time and again reiterated "is not meant to be especially demanding" and precludes suit only where the "interests [the plaintiff] asserts" are "so marginally related or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E-Be-Nash-She-*

*Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224–25 (2012) ("[W]e have always conspicuously included the word 'arguably' in the test to indicate that the benefit of the doubt goes to the Plaintiff."). Plaintiff States' interest in ensuring drivers continue to entrust the States with their personal data is "'sufficiently congruent'" with the statutes' "'intended beneficiaries'" for the States to be "'suitable challengers'" to enforce these two privacy laws. *California v. Trump*, 963 F.3d 926, 942 (9th Cir. 2020) (quoting *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Defense*, 87 F.3d 1356, 1359 (D.C. Cir. 1996)).

## II. Federal Defendants' Concessions at Argument Reinforce That the Data Demand Is Unlawful.

As this Court explained in its TRO order, the Data Demand is unlawful on numerous grounds. Defendants concededly did not "consult with the States," as required by 49 U.S.C. § 31309(a), before threatening to make one of two massive changes to CDLIS—either rendering the system inoperative, or assuming custody of every MPR for the first time in the system's four-decade history. *See* ECF No. 54 at 8–9. They have demanded a trove of highly restricted personal information protected by the DPPA without explaining how any—let alone all—of that information will be used in carrying out DOT's functions. *Id.* at 9–10. They seek to ingest 17 million records into DOT's systems without establishing an applicable system of records, demonstrating that those records are relevant and necessary for carrying out any agency function required by law, or identifying a routine use that would permit their re-disclosure. *Id.* at 10. And they have insisted that they be granted *custody* of every MPR in CDLIS when the statute merely requires those records be made *available* to DOT—a requirement that DOT itself has long made clear is satisfied simply by granting it access to records through individual CDLIS searches. *Id.* at 12. What is more, the Data Demand is arbitrary and capricious because Federal Defendants' letters to AAMVA contain no explanation of why or how the transfer of records to FMCSA would advance the agency's stated objectives, as opposed to the agency's unstated purpose of transferring those records to the Department of Homeland Security (DHS) for immigration enforcement. *Id.* at 10–11.

Federal Defendants' concessions at the TRO hearing only reaffirm these conclusions. At the hearing, the Court gave Federal Defendants' counsel numerous opportunities to explain why DOT suddenly requires custody of, rather than simply access to, records in CDLIS—or, indeed, what DOT intends to do with the records once it obtains them. Federal Defendants' counsel repeatedly conceded that he was "not sure how the line level staff at the Department of Transportation would apply the data." Tr. at 28:23–25; *see id.* at 27:10-15, 33:4–13. Instead, Federal Defendants' counsel speculated that the "administrative record will likely reveal how DOT intends to use the data." *Id.* at 27:25–28:6; *see id.* at 33:13–16.

Those concessions are fatal to Federal Defendants' case, especially in this preliminary posture. "It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citation modified). If even Federal Defendants' counsel cannot identify in the agency's decisional documents any explanation as to why FMCSA requires *custody* of the records, rather than the query-by-query *access* it has long enjoyed and continues to enjoy, then that is proof-positive that no such justification exists. *See* ECF No. 54 at 9–10 (distinguishing between FMCSA's existing "access" to "specific MPRs" and the "bulk transfer" FMCSA has demanded). And without such a justification, Federal Defendants cannot satisfy the multiple statutes that require an agency to demonstrate that assuming custody of these sensitive records will assist it in fulfilling some government function, *see, e.g.*, 18 U.S.C. § 2721(b)(1) (DPPA); 5 U.S.C. § 552a(e)(1), nor the basic reasoned decisionmaking requirements of the APA itself.

## III. Federal Defendants May Not Rely on *Post Hoc* Justifications.

To the extent Federal Defendants attempt to supply a justification for seeking custody of these records in their preliminary injunction opposition, the Court should reject that effort. An agency "may not provide new [reasons]" for its actions in post-decision declarations, statements, or litigation filings. *Regents*, 591 U.S. at 21; *see Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept appellate counsel's *post hoc*

rationalizations for agency action"). Instead, if an agency wishes to provide a new rationale for its action, it must "deal with the problem afresh by taking *new* agency action" that "compl[ies] with the procedural requirements" for agency decisionmaking. *Regents*, 591 U.S. at 21 (citation modified). A court may not consider "facts and justifications for agency action provided to a reviewing court for the first time." *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467 (4th Cir. 2013); *see Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020), *as amended* (Jan. 14, 2020) ("post-hoc rationalizations have traditionally been found to be an inadequate basis for review" (quoting *Dow*, 707 F.3d at 467–68) (citation modified)).

Federal Defendants had ample opportunity, in their letters to AAMVA, to lay out their grounds for the Data Demand. They must now rest on those grounds, and only those grounds, in justifying the action. *See* ECF No. 1-2 at 9, 14–21. No later justification, whether offered in a declaration, at a hearing, or in subsequent briefing, is relevant, nor may it properly be considered by the Court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (affirming the "simple but fundamental rule of administrative law" that a court "must judge the propriety of such action solely by the grounds invoked by the agency[,]" and may not "substitut[e] what it considers to be a more adequate or proper basis.").

## IV. Federal Defendants Have Ignored the Legal Process for Requesting CDLIS Information.

As Plaintiff States addressed at the hearing, existing FMCSA policy promulgated pursuant to 49 U.S.C. § 31309(c) further demonstrates why the Data Demand is both contrary to law and arbitrary and capricious. Pursuant to federal statute, the Secretary of Transportation and FMCSA developed a policy by which other federal agencies can obtain access to information in CDLIS. The record indicates that FMCSA's policy was not followed here, and in any event, as the Court stated in its TRO order, that policy provides only for "'access to,' not custody of, 'information in CDLIS,'" ECF No. 54 at 12 (quoting 70 Fed. Reg. 2454, 2455 (Jan. 13, 2005)), and thus does not permit the bulk transfer Federal Defendants have demanded here. *See also* Declaration of Andrew Collier ("Collier Decl.") ¶¶ 15, 19.

Section 12007(e) of the Commercial Motor Vehicle Safety Act of 1986 originally specified four entities authorized to access information in CDLIS: the Secretary of Transportation, the States, current and prospective employers of individuals who operate commercial motor vehicles, and employed persons who operate commercial motor vehicles. Pub. L. 99-570 § 12007(e). That restriction remained in effect until 1998, when Congress directed the Secretary of Transportation to develop a policy on making information in the CDLIS system available. 49 U.S.C. § 31309(c) ("Information in the information system shall be made available and subject to review and correction in accordance with the policy developed under section 31106(e)."). The Secretary, through FMCSA, developed that policy more than two decades ago in 2005. *See* 70 Fed. Reg. at 2454. And the policy includes the mechanism by which other federal agencies may gain access to information in CDLIS:

> It is FMCSA's policy that another Federal agency may request access to information in CDLIS by written submission to FMCSA's Chief Safety Officer. In the request, the applicant must state the legal basis and the need for access to CDLIS. A Federal agency will be required to execute a Memorandum of Understanding (MOU) with the Department of Transportation and/or FMCSA before access to CDLIS data will be provided.

*Id.* at 2455.

Notably, that policy does not provide any mechanism for federal agencies to obtain *custody* of the underlying State records, as FMCSA and DHS seek to do here. *See id.*; Collier Decl. ¶ 15. And even if DHS sought only *access* to CDLIS, meaning the ability to query the database for individual records, the policy does not provide any means for another federal agency to request or obtain access to CDLIS data without (a) submitting a written request to FMCSA's Chief Safety Officer stating the legal basis and the need for access to CDLIS, and (b) executing a Memorandum of Understanding with DOT and/or FMCSA. *See* 70 Fed. Reg. at 2455. Nothing in the record suggests that DHS followed this process. On the contrary, rather than following this established process, DHS—twice, and in coordination with FMCSA—served AAMVA with an administrative subpoena as an added coercive tactic to obtain custody of the States' records. *See e.g.*, ECF No. 77 ¶¶ 1, 83–112; ECF No. 1-2 at 14, 21–22; ECF No. 1-12; ECF No. 3-12 ¶¶ 31–36; Collier Decl.

¶ 20. That Federal Defendants' approach violates FMCSA's own policy, established at Congress's direction, further establishes the impropriety and arbitrariness of their actions, as well as their disregard for statutory authority.

**V. All Plaintiff States Are Entitled to Relief.**

On August 25, 2026, Plaintiff States filed a first amended complaint adding three additional Plaintiff States: Kentucky, Minnesota, and Rhode Island (the "New Plaintiff States"). *See generally* ECF No. 77 (First Am. Compl.); Fed. R. Civ. P. 15(a)(1)(B). The first amended complaint otherwise does not make any substantive changes to Plaintiff States' allegations, claims, or factual bases for those claims. *See* ECF No. 77-1 (redline showing changes to complaint). Because the New Plaintiff States are similarly situated to the other Plaintiff States, *compare, e.g.*, ECF No. 3-12 (Bellows Decl.), *with* Declaration of Walter R. Craddock ("Craddock Decl."), Plaintiff States respectfully request that the Court grant a preliminary injunction that includes the New Plaintiff States in addition to the original parties.

A preliminary injunction is warranted to protect the New Plaintiff States for the same reasons that a TRO was warranted (and a preliminary injunction is warranted) as to the original Plaintiff States. The New Plaintiff States raise the same legal claims as the original Plaintiff States and are therefore equally likely to succeed on the merits of their claims. *See* ECF No. 77-1; ECF No. 77; *cf. State Farm Mut. Auto. Ins. Co. v. Tri-Borough N.Y. Med. Prac., P.C.*, 120 F.4th 59, 78–79 (2d Cir. 2024) (noting that an amended complaint to add 16 defendants and additional factual details did not "materially change[] the substantive basis" for the claims); *see also* ECF No. 3 (Plaintiff States' Brief in Supp. of TRO); ECF No. 54 (TRO).

Additionally, the New Plaintiff States demonstrate that they face the same types of irreparable harms from Defendants' challenged conduct. *See, e.g.*, Declaration of Matthew Cole ("Cole Decl.") ¶¶ 25–40; Declaration of Carrie Buchholz ("Buchholz Decl.") ¶¶ 26–39; Craddock Decl. ¶¶ 27–41; ECF No. 54 (TRO) at 13–14. For example, the New Plaintiff States' ability to issue CDLs and to monitor and ensure the safe operation of commercial motor vehicles within

their borders would be impaired or lost. *See, e.g.*, Cole Decl. ¶¶ 26, 32–35; Buchholz Decl. ¶¶ 27, 33–36; Craddock Decl. ¶¶ 28, 32–37. New Plaintiff States also face similar irreparable harms to public safety, public trust, and exercising their sovereign police powers. *See, e.g.*, Cole Decl. ¶¶ 15, 25–40; Buchholz Decl. ¶¶ 16, 26–39; Craddock Decl. ¶¶ 15, 27–41.

Finally, for the same reasons this Court concluded that the balance of equities and public interest favor a TRO to protect Plaintiff States, those factors likewise favor a preliminary injunction protecting the New Plaintiff States as well. *See* ECF No. 54 at 14–15.

In similar circumstances, courts have expanded injunctions to include newly added plaintiff states. *See, e.g.*, Text Order, *State of California v. U.S. Dep't of Transp.*, No. 25-cv-208 (D.R.I. July 17, 2025) (granting motion to amend preliminary injunction because "Plaintiff has shown through their submission that the preliminary injunction should apply to newly added Plaintiffs . . . for all the reasons the Court has previously ruled the preliminary injunction should apply to the original state Plaintiffs"); *see also* Dkt. No. 127 (Order), *State of California v. U.S. Dep't of Health and Hum. Servs.*, No. 25-cv-5536 (VC) (N.D. Cal. Sept. 22, 2025) (granting motion to amend preliminary injunction to include newly added states). Accordingly, the Court should issue a preliminary injunction that protects all Plaintiff States' CDLIS data—including that of the three New Plaintiff States—from being turned over to the Federal Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court enter an order preliminarily enjoining Federal Defendants' demand for Plaintiff States' CDLIS data and preliminarily enjoining AAMVA from producing Plaintiff States' records pursuant to that demand.

* * *

DATED: August 27, 2026

Respectfully Submitted,

**KWAME RAOUL**
Attorney General of Illinois

/s/ Katharine Roller
Cara Hendrickson†
*Executive Deputy Attorney General*
Katharine Roller†
*Complex Litigation Counsel*
Gretchen Helfrich†
*Deputy Chief, Special Litigation Bureau*
Molly Mauck†
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.,
Chicago, IL 60603
312-814-3000
Cara.Hendrickson@ilag.gov
Katharine.Roller@ilag.gov
Gretchen.Helfrich@ilag.gov
Molly.Mauck@ilag.gov
*Counsel for Plaintiff State of Illinois*

**JAY JONES**
Attorney General of Virginia

/s/ Megan C. Keenan
Tillman J. Breckenridge (#85647)
*Solicitor General*
Megan C. Keenan (#102489)
*Deputy Solicitor General*
*Counsel of Record*
Mikaela A. Phillips (#97164)
*Assistant Solicitor General*
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
mkeenan@oag.state.va.us
mphillips@oag.state.va.us
*Counsel for Plaintiff Commonwealth of Virginia*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

/s/ Mitchell P. Reich
Mitchell P. Reich†
*Senior Counsel to the Attorney General*
Karthik Reddy†
*Special Assistant Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth St. NW
Washington, DC 20001
202-279-1261
Mitchell.Reich@dc.gov
*Counsel for Plaintiff District of Columbia*

**ROB BONTA**
Attorney General of California

/s/ David Green
Thomas S. Patterson*
Michael L. Newman*
*Senior Assistant Attorneys General*
Seth E. Goldstein*
Robin L. Goldfaden*
*Supervising Deputy Attorneys General*
David Green†
Maria Buxton†
Chase Goldstein†
Ezra Kautz†
Emilia P. E. Morris†
*Deputy Attorneys General*
1300 I Street, Suite 125
Sacramento, CA 95814
916-210-6242
David.Green@doj.ca.gov
*Counsel for Plaintiff State of California*

**KRISTIN MAYES**
Attorney General of Arizona

*/s/ Mary M. Curtin*
Mary M. Curtin†
*Senior Litigation Counsel*
Arizona Attorney General's Office
2005 N. Central Ave.
Phoenix, AZ 85004
602-542-3333
Mary.Curtin@azag.gov
ACL@azag.gov
*Counsel for Plaintiff State of Arizona*

**PHIL WEISER**
Attorney General of Colorado

*/s/ Gabe Podesta*
Gabe Podesta†
Sarah H. Weiss†
*Senior Assistant Attorneys General*
1300 Broadway, 10th Fl.
Denver, CO 80203
720-508-6000
Gabe.Podesta@coag.gov
Sarah.Weiss@coag.gov
*Counsel for Plaintiff State of Colorado*

**WILLIAM TONG**
Attorney General of Connecticut

*/s/ Vianca Malick*
Vianca Malick†
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Vianca.Malick@ct.gov
*Counsel for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of Delaware

/s/ *Ian R. Liston*
Ian R. Liston†
*Director of Impact Litigation*
Vanessa L. Kassab*
*Deputy Attorney General*
Anuradha Sivaram†
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov
*Counsel for Plaintiff State of Delaware*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

*/s/ Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes†
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
808-586-1360
kaliko.d.fernandes@hawaii.gov
*Counsel for Plaintiff State of Hawaiʻi*

**ANDY BESHEAR**
Governor for Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. Travis Mayo*
*General Counsel*
Sam Flynn*
*Chief Deputy General Counsel*
Laura C. Tipton*
*Deputy General Counsel*
Office of the Governor
501 High Street, 2nd Floor
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov

sam.flynn@ky.gov
laurac.tipton@ky.gov
*Counsel for Governor Andy Beshear*

**AARON M. FREY**
Attorney General of Maine

/s/ *Halliday Moncure*
Halliday Moncure†
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Halliday.Moncure@maine.gov
*Counsel for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ *Yasmin Dagne*
Yasmin Dagne†
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-223-1580
ydagne@oag.maryland.gov
*Counsel for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ *Gerard J. Cedrone*
Gerard J. Cedrone†
*Deputy State Solicitor*
Michelle Pascucci†
*State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
617-963-2282
Gerard.Cedrone@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

/s/ *Neil Giovanatti*
Neil Giovanatti*
*Assistant Attorney General*
P.O. Box 30212
Lansing, MI 48909
517-241-1050
GiovanattiN@michigan.gov
*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

/s/ *Lindsey E. Middlecamp*
Lindsey E. Middlecamp*
*Special Counsel, Rule of Law*
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-0711
Lindsey.Middlecamp@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

**AARON D. FORD**
Attorney General of Nevada

/s/ *K. Brunetti Ireland*
K. Brunetti Ireland*
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov
*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Amanda McElfresh*
Amanda McElfresh†
*Deputy Attorney General*
New Jersey Office of the Attorney General
124 Halsey Street
Newark, NJ 07101
609-696-5363
Amanda.McElfresh@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Anjana Samant*
Anjana Samant*
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov
*Counsel for Plaintiff State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

*/s/ Rabia Muqaddam*
Rabia Muqaddam†
*Chief Counsel for Federal Initiatives*
Matthew Conrad†
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
212-416-8333
Rabia.Muqaddam@ag.ny.gov
Matthew.Conrad@ag.ny.gov
*Counsel for Plaintiff State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
Scott P. Kennedy*
*Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880
Scott.Kennedy@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

**JOSH SHAPIRO**
Governor for Commonwealth of Pennsylvania

*/s/ Jacob B. Boyer*
Jennifer C. Selber*
Jacob B. Boyer†
Governor's Office of General Counsel
30 North 3rd Street
Suite 200
Harrisburg, PA 17101
JacobBoyer@pa.gov
*Counsel for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Patrick Reynolds*
Patrick Reynolds*
*Special Assistant Attorney General*
Rhode Island Attorney General’s Office
150 South Main Street
Providence, RI 02903
(401) 274-4400
preynolds@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont

<u>*/s/ Ryan Patrick Kane*</u>
Ryan Patrick Kane†
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
802-828-3171
Ryan.Kane@vermont.gov
*Counsel for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

<u>*/s/ Brian Keenan*</u>
Brian Keenan†
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
608-266-0020
Brian.Keenan@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

**NICHOLAS W. BROWN**
Attorney General of Washington

<u>*/s/ Lauryn K. Fraas*</u>
Lauryn K. Fraas†
*Assistant Attorney General*
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
206-464-7744
Lauryn.Fraas@atg.wa.gov
*Counsel for Plaintiff State of Washington*

† *Admitted pro hac vice*
* *Pro hac vice forthcoming*