**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>*Plaintiffs,*<br><br>and<br><br>AMERICAN FEDERATION OF TEACHERS,<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; DEREK D. BARR, in his official capacity as Administrator of the Federal Motor Carrier Safety Administration, and AMERICAN ASSOCIATION OF MOTOR VEHICLE ADMINISTRATORS,<br><br>*Defendants*. | Case No. 1:26-cv-2547 (AJT/IDD) |

**COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF**

American Federation of Teachers (AFT) brings this Complaint in Intervention seeking declaratory and injunctive relief and vacatur of final agency action under the Administrative Procedure Act (APA) to prevent the United States Department of Transportation (DOT) and the Federal Motor Carrier Safety Administration (FMCSA) from unlawfully obtaining sensitive personal information of AFT's commercial truck driver members from the American Association of Motor Vehicle Administrators (AAMVA). AFT alleges as follows:

1. On August 13, 2026, the States of Illinois, California, Virigina, Arizona, Colorado, Connecticut, Delaware, Hawai'i, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New Mexico, New York, Oregon, Vermont, Washington, and Wisconsin; the Governor of the State of Virginia; and the District of Columbia initiated this lawsuit to prevent Defendants DOT; Sean Duffy, in his official capacity as Secretary of Transportation; FMCSA; and Derek D. Barr, in his official capacity as Administrator of the FMCSA (collectively, Agency Defendants) from obtaining sensitive personal information contained in 17 million commercial driver's license records held by AAMVA, also a defendant in the original action. On August 25, 2026, Kentucky, Minnesota, and Rhode Island joined the original action as plaintiffs (collectively, with the original plaintiffs, the Plaintiff States).

2. AFT is a membership organization whose members include 13,500 workers in the U.S. transportation industry, including school bus drivers, maintenance drivers, civil engineers and inspectors. AFT members hold commercial driver's licenses (CDLs) issued by the states and, as a result, have sensitive personal information contained within the Commercial Driver's License Information System (CDLIS) operated by AAMVA. Agency Defendants' efforts to obtain all of AAMVA's CDL records harm AFT's members' interest in the privacy and confidentiality of their personal information—interests that are protected by federal law.

3. The Agency Defendants' actions to obtain CDLIS records are unlawful. Their actions are contrary to two federal laws that secure the privacy and confidentiality of driver's license information: the Driver's Privacy Protection Act and the Privacy Act of 1974 (the Privacy Act). Moreover, in attempting to obtain CDLIS records, Agency Defendants have taken action that is arbitrary and capricious. Agency Defendants' actions should be declared unlawful, set aside, and preliminarily and permanently enjoined.

## JURISDICTION

4. The Court has subject-matter jurisdiction over this action and over the claims raised in this complaint in intervention pursuant to 28 U.S.C. § 1331 (federal question).

## PARTIES

5. Plaintiff States are identified in Paragraphs 12–36 of the First Amended Complaint (ECF No. 77).

6. Plaintiff-Intervenor AFT, an affiliate of the AFL-CIO, is a national labor union representing approximately 1.875 million members, who reside in every U.S. state, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands. AFT's mission is to champion fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services, in part by advancing the interests of its members. AFT is affiliated with approximately 3,500 local unions throughout the United States. AFT's members include approximately 13,500 workers in the U.S. transportation industry, including school bus drivers and maintenance drivers who are required to hold CDLs. AFT estimates that 11,000 of its current members hold CDLs as a condition of their employment, including members in Florida, Illinois, Texas, New York, Colorado, Kansas, Montana, Alabama, Georgia, and New Mexico. AFT is headquartered in Washington, D.C.

7. Defendant DOT is an agency of the United States.

8. Defendant Duffy is the Secretary of Transportation and the head of DOT. He is sued in his official capacity.

9. Defendant FMCSA is an administration of DOT and is responsible for administering CDLIS on behalf of the states.

10. Defendant Derek D. Barr is the Administrator of FMCSA. He is sued in his official capacity.

11. Defendant AAMVA is named a defendant as a required party so that the Court may afford complete relief to AFT. AAMVA is a tax-exempt, nonprofit organization developing model programs in motor vehicle administration, law enforcement, and highway safety. It also serves as an information clearinghouse in these areas and acts as the international spokesperson for these interests. It represents the state, provincial, and territorial officials in the United States and Canada who administer and enforce motor vehicle laws. AAMVA's membership includes associations, organizations, and businesses that share an interest in the association's goals. It is the custodian of the CDLIS database that contains personal information about drivers who have obtained CDLs from a state. AAMVA is subject to service of process and its joinder will not deprive the court of subject-matter jurisdiction.

## FACTS

### A. CDLIS contains personal information of CDL holders.

12. An individual may not lawfully operate motor vehicles unless they first receive a driver's license from a state motor vehicle agency. States have traditionally been responsible for issuing both personal driver's licenses and CDLs.

13. In 1986, Congress enacted the Commercial Motor Vehicle Safety Act of 1986, Pub. L. No. 99-570, tit. XII, 100 Stat. 3207-170 (CMVSA). The CMVSA prohibits any individual from "operat[ing] a commercial motor vehicle without a valid commercial driver's license" or from having more than one driver's license. 49 U.S.C. § 31302.

14. The CMVSA recognizes that CDLs will be issued "by the States." *Id.* § 31308. The CMVSA authorizes the Secretary of Transportation to prescribe "minimum uniform standards for the issuance of commercial drivers' licenses and learner's permits by the States and for information to be contained on each of the licenses and permits." *Id.*

15. To facilitate coordination among the states in the issuances of CDLs, the CMVSA directs the Transportation Secretary to "maintain an information system" to "serve as a clearinghouse and depository of information about the licensing, identification, and disqualification of operators of commercial motor vehicles." *Id.* § 31309(a). The Secretary must "develop a policy on making information available" from this system that is "consistent with existing Federal information laws." *Id.* § 31106(e)(1); *see id.* § 31309(c).

16. The Transportation Secretary may name an "authorized operator" to "operate, maintain, develop, modernize, and enhance the information system." *Id.* § 31309(d). Since 1988, AAMVA has been the authorized operator of CDLIS, the information system required by the CMVSA. Commercial Driver's License Information System State Procedures Manual, Release 5.2.0, 76 Fed. Reg. 68328, 68329 (Nov. 4, 2011).

17. Among other things, CDLIS contains "the name, address, and physical description of the operator," and the "social security account number of the operator or other number or information the Secretary considers appropriate to identify the operator." 49 U.S.C. § 31309(b)(1). CDLIS also contains information on a CDL holder's date of birth and driver's license number. The records stored in CDLIS are called "pointer" records (Master Pointer Records) because they use the driver's personal information to "point" a user to additional information about the driver contained in state motor vehicle databases.

18. States that do not comply with CMVSA requirements lose federal highway funding. *Id.* § 31314(c). One such requirement is that states provide information about CDL applicants to CDLIS. *Id*. § 31311(a)(5), (7), (8), (23). In addition, states must share information with each other about CDL license holders. *See, e.g., id.* § 31311(a)(6), (8).

19. Thus, to operate a commercial vehicle, a driver must obtain a CDL from a state. To do so, the driver must provide the state with sensitive personal information. The state then shares that sensitive personal information with CDLIS in order to receive full highway funding and to be able to coordinate the regulation of CDLs with other states through CDLIS.

**B. Federal laws protect CDL holders' privacy.**

20. As pertinent here, two federal laws protect the privacy rights of CDL holders: the Driver's Privacy Protection Act, Pub. L. No. 103-322, tit. XXX, 108 Stat. 2099 (1994); *see* 18 U.S.C. §§ 2721–2725 (DPPA), and the Privacy Act, 5 U.S.C. § 552a.

21. First, enacted in 1994 to address concerns that personal information collected by states in the licensing of motor vehicle drivers was being released with resulting loss of privacy, the DPPA prohibits disclosure of personal information contained in state motor vehicle agencies' records, unless for a purpose permitted by an exception listed in 1 of 14 statutory subsections. *See* 18 U.S.C. § 2722(a). Under the DPPA, "personal information" means "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." *Id.* § 2725(3). An individual's "photograph or image, social security number, medical or disability information" is defined as "highly restricted personal information." *Id.* § 2725(5).

22. The DPPA thus applies to personal information that drivers provide to states to obtain CDLs and that states share with CDLIS.

23. The DPPA makes it unlawful for any person to "disclose personal information, from a motor vehicle record, for any use not permitted" by the DPPA. *Id.* § 2722(a). The DPPA permits disclosure of personal information "[f]or use by any government agency … in carrying out its functions." *Id.* § 2721(b)(1). This provision requires that "the actual information disclosed

… must be information that is used for the identified purpose." *Senne v. Vill. of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc); *accord McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 730 (4th Cir. 2020).

24. A person who violates the DPPA is subject to criminal penalties and to civil actions by individuals whose information was unlawfully disclosed. 18 U.S.C. §§ 2723, 2724.

25. AAMVA is subject to the DPPA's requirements. AAMVA thus may not lawfully disclose personal information or highly restricted personal information to Agency Defendants without the consent of the driver, *id.* §§ 2721(b)(11), (13); 2722, unless an exception permitting non-consensual disclosure applies.

26. The DPPA does not constrain the federal government's actions. Accordingly, if Agency Defendants obtain possession of CDLIS records from AAMVA, the DPPA would cease to protect the personal sensitive information of CDL holders from disclosure by Agency Defendants.

27. Second, enacted in 1974, the Privacy Act "protect[s] the privacy of individuals in [federal] information systems." Pub. L. No. 93-579, 88 Stat. 1896, § 2(a)(5). The Privacy Act provides "safeguards for an individual against an invasion of personal privacy by requiring Federal agencies … to … collect, maintain, use, or disseminate any record of identifiable personal information in a manner that assures that such action is for a necessary and lawful purpose [and] that adequate safeguards are provided to prevent misuse of such information." *Id.* § 2(b)(4). The statute also requires agencies to "establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity[.]" 5 U.S.C. § 552a(e)(10).

28. Under the Privacy Act, "the term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." *Id.* § 552a(a)(4). "[T]he term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).

29. Under the Privacy Act, an agency must publish a notice of "the existence and character of [its] system[s] of records" in the Federal Register when such systems are established or revised. *Id.* § 552a(e)(4). This "System of Records Notice" (SORN) must describe "(A) the name and location of the system; (B) the categories of individuals on whom records are maintained in the system; (C) the categories of records maintained in the system; (D) each routine use of the records contained in the system, including the categories of users and the purpose of such use; (E) the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records; (F) the title and business address of the agency official who is responsible for the system of records; (G) the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him; (H) the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and (I) the categories of sources of records in the system." *Id.*

30. An agency also must provide 30 days' notice and an opportunity to comment prior to publishing a SORN that describes "any new use or intended use of the information in the

system." *Id.* § 552a(e)(11). When an agency "proposes to establish or make a significant change in a system of records," the Privacy Act also requires the agency to "provide adequate advance notice of any such proposal" to designated congressional committees and the Office of Management and Budget (OMB) "to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of individuals." *Id.* § 552a(r).

31. The Privacy Act provides that "[e]ach agency that maintains a system of records shall … maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." *Id.* § 552a(e)(1).

32. Agency Defendants have not published a SORN with respect to the CDL information that it seeks to obtain from AAMVA. On information and belief, Agency Defendants have not complied with other provisions of the Privacy Act with respect to that information.

**C. Agency Defendants' actions to obtain CDLIS information**

33. On June 25, 2026, FMCSA sent a letter to AAMVA making an unprecedented demand: that AAMVA turn over records containing the name, date of birth, state of record, license number, and social security number of every driver in the entire CDLIS database going back five years, comprising some 17 million "pointer" records. Compl., Ex. 1, ECF No. 1-2 at 2–3.

34. In a response sent on June 30, AAMVA raised several concerns. AAMVA asked "that FMCSA provide AAMVA the specific intended use of the information" in order to "understand what agency or agencies will use the information and for what government function or functions." *Id*. at 3. AAMVA also noted that "the data set presently requested seems likely to create a Privacy-Act-covered system of records" and "ask[ed] that you please share your analysis of whether this dataset will be a federal system of records under the Privacy Act and provide us any pertinent system of records notice ('SORN')." *Id.* at 4.

35. In response to the June 30 letter, FMCSA did not identify a provision of the CMVSA that it would use the requested data to carry out. Instead, it stated that "FMCSA will use the CDLIS data as part of our statutory and regulatory oversight in our ongoing efforts to ensure the integrity and issuance of Commercial Driver's Licenses (CDLs) and Commercial Motor Vehicles (CMVs)." *Id.* at 5. With respect to the Privacy Act, FMCSA did not identify a SORN applicable to this data. Instead, it stated that it "will handle all legal coordination necessary under the Privacy Act." *Id.* at 5–6.

36. AAMVA responded on July 10, 2026. It explained that, to comply with the DPPA, it "must at least know what government agency will use the records for what government function." *Id.* at 7. It also reiterated that AAMVA's member states have a "meaningful role under the federal Privacy Act when the source records are state records." *Id.* at 8.

37. In its July 24 follow-up letter to AAMVA, FMCSA reiterated its view that its request was covered by the government functions exception to the DPPA, because "FMCSA intends to use this data to execute its statutory safety and regulatory mandates under 49 U.S.C. §§ 311 and 313, including verifying CDL validity and conducting motor carrier safety assessments." *Id.* at 9. FMCSA also stated that it was authorized to make "subsequent redisclosure[s] to federal partner agencies … provided the data is used strictly in furtherance of legitimate government functions." *Id.* FMCSA did not identify in writing any particular other agency to which it intended to disclose the data, or for what function such other agency intended to use it. FMCSA also asserted that "[r]elevant System of Records Notices (SORNs) will be provided under separate cover." On information and belief, as of the time of this filing, no SORNs have been provided. *Id.*

38. On July 24, AAMVA responded with confirmation that it intended to comply with FMCSA's demand. *Id.* at 11. AAMVA asked FMCSA to "not carry through" on threats to terminate AAMVA's federal grants and contracts. *Id.* at 11–12. AAMVA also requested that DOT "confirm in writing that AAMVA's production of the pointer records will be an act carried out on behalf of, and at the specific direction of, DOT under AAMVA's agreements with DOT, and thereby subject to liability protection under the government contractor defense or related doctrines of derivative sovereign immunity." *Id.* at 11.

39. On August 7, AAMVA advised FMCSA that compliance with the agency's demand would create significant questions as to AAMVA's "compliance with … state civil laws prohibiting disclosure of information contained in [Master Pointer Records], and even certain state criminal laws prohibiting disclosure of information contained in [Master Pointer Records]." *Id.* at 13. AAMVA indicated that its analysis of the DPPA was "also informed by the Department of Homeland Security ('DHS') subpoena served upon AAMVA in person on Tuesday, July 28," which "called for production of exactly the same information as demanded through FMCSA" and which was "coordinated" with the FMCSA. *Id*. at 14.

40. On August 11, FMCSA sent AAMVA a letter rejecting AAMVA's position that CDLIS was comprised of "state data" and finding it "unacceptable" that AAMVA may decline to produce all of the CDLIS records. *Id.* at 21. Stating that DOT had "no choice but to take immediate action to secure the production of the requested pointer records," the letter advised that DHS "will reissue the administrative subpoena it previously withdrew" and that "[u]nless AAMVA provides DOT with the requested records by August 17, DOT will pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the subpoena, and considering terminating its contract with AAMVA." *Id.*

41. That same day, DHS served a second subpoena on AAMVA seeking the same information as demanded by FMCSA. Compl., Ex. 6, ECF No. 1-12.

**D. Harm to AFT and its members**

42. AFT's members include CDL holders whose personal information appears in CDLIS. Because CDLs are required to operate commercial motor vehicles, CDL holders, including members of AFT, do not have the option of removing their personal information from CDLIS to avoid having AAMVA disclose that information to Agency Defendants. Moreover, CDL holders have no ability to require deletion of the last five years of data sought by Agency Defendants from CDLIS.

43. DOT has repeatedly assured CDL holders that their personal information in CDLIS would be protected from unauthorized disclosure. DOT noted in a 2022 Privacy Impact Assessment that "FMCSA is not the owner of the data." DOT, Privacy Impact Assessment: Federal Motor Carrier Safety Administration (FMCSA) State Compliance Records Enterprise (SCORE) System, p. 8 (Aug. 15, 2022). In 2024, FMSCA again explained that "FMCSA does not own CDLIS, and [CDLIS] is not a Federal system of records" under the Privacy Act. Commercial Driver's License (CDL) Standards; Incorporation by Reference of a New State Procedures Manual (SPM), 89 Fed. Reg. 50235, 50237 (June 13, 2024). That statement echoed Agency Defendants' 2011 assurance that "CDLIS is not a Federal Privacy Act system of records, but a distributed relational database maintained and operated by the States." DOT, Privacy Impact Assessment for CDLIS (Jan. 11, 2011), https://www.transportation.gov/individuals/privacy/pia-commercial-drivers-license-information-system-cdlis-gateway. The 2011 statement also advised drivers that "[m]aintaining the privacy of CDL driver [personally identifiable information] is a paramount consideration" for Agency Defendants. *Id.*

44. By requiring AAMVA to turn over AFT members' personal information, Agency Defendants' actions have harmed those members by depriving them of privacy and confidentiality protections guaranteed to them by federal law.

45. The DPPA secures AFT members' personal information held by AAMVA against non-consensual disclosure to government agencies unless a statutory exception applies. Agency Defendants' actions would compel AAMVA to turn over that information without regard to whether a statutory exception applies, and AAMVA has signaled that it will provide the requested information to Agency Defendants if it is given immunity from liability. If the information is given to Agency Defendants, AFT members would lose the privacy and confidentiality protections that the DPPA affords.

46. The Privacy Act secures AFT members' personal information held by federal agencies. Agency Defendants, however, seek possession of CDLIS records before they have undertaken the procedural steps required by the Privacy Act to secure personal information collected and maintained by federal agencies.

**FIRST CAUSE OF ACTION**
**Violation of Administrative Procedure Act**
**Agency Action Not in Accordance with Law – Driver's Privacy Protection Act**

47. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law." 5 U.S.C. § 706(2)(A).

48. The Agency Defendants' demand that AAMVA turn over CDLIS data is final agency action subject to judicial review.

49. The DPPA prohibits disclosure of CDLIS data without a driver's consent unless a statutory exception applies.

50. The sole exception that FMCSA has identified as a basis for the disclosure demand is the government-use exception in 18 U.S.C. § 2721(b)(1). Agency Defendants have not satisfied

the requirements of that exception because they have not shown that the requested five years' worth of CDLIS data will be used to carry out an agency function.

51. In addition, Agency Defendants seek CDLIS data for the purpose of turning the records over to DHS for immigration enforcement. Obtaining records to share them with another agency does not fall within the government-use exception.

52. The Agency Defendants' action is not in accordance with the DPPA.

**SECOND CAUSE OF ACTION**
**Violation of Administrative Procedure Act**
**Agency Action Not in Accordance with Law – Privacy Act**

53. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law. 5 U.S.C. § 706(2)(A).

54. The Agency Defendants' demand that AAMVA turn over CDLIS data is final agency action subject to judicial review.

55. FMCSA and DOT are agencies under the Privacy Act. Personal information in CDLIS sought by Agency Defendants constitutes records covered by the Privacy Act. The transfer of the CDLIS records to Agency Defendants will establish a system of records under the Privacy Act.

56. FMCSA has not issued a SORN notifying the public of its intention to create a new system of records to hold CDLIS records and providing the public with an opportunity to comment. No existing system of records would permit Agency Defendants to hold CDLIS records in an existing system of records. Agency Defendants also have not notified congressional committees or OMB of their intent to create a system of records for CDLIS data.

57. Agency Defendants also seek to maintain records on individuals that are not relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President.

58. Agency Defendants' action is not in accordance with law because they seek to collect records on individuals in violation of the Privacy Act.

**THIRD CAUSE OF ACTION**
**Violation of Administrative Procedure Act**
**Arbitrary and Capricious Agency Action**

59. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

60. The Agency Defendants' demand that AAMVA turn over CDLIS data is final agency action subject to judicial review.

61. In requiring AAMVA to turn over CDLIS data, FMCSA sharply departed from its prior policy of treating CDLIS operated by AAMVA as a database of records outside the control of the federal government. Agency Defendants have failed to provide a reasoned explanation for their change in position or even to acknowledge that they are departing from their longstanding position.

62. Agency Defendants have also failed to consider important aspects of their new position. Agency Defendants have not adequately considered how requiring AAMVA to turn over the CDLIS database will affect drivers' reliance interests in prior assurances of privacy and confidentiality. They also have not adequately evaluated how the loss of confidence in such privacy and confidentiality protections will impact drivers' willingness to obtain CDLs in the future, or whether the agency has alternative means of achieving whatever statutory functions Agency Defendants seek to carry out.

63. Agency Defendants' correspondence with AAMVA further demonstrates that they lack a substantial purpose for this data to carry out their duties under the CMVSA and that they instead are requiring AAMVA to turn over records on 17 million CDL drivers to advance DHS's goal of enforcing the immigration laws.

64. For these reasons, the Agency Defendants' action is arbitrary and capricious.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenor AFT requests that this Court:

A. Declare that the Agency Defendants' demand that AAMVA provide CDLIS data to them is unlawful;

B. Set aside and vacate Agency Defendants' demand that AAMVA provide CDLIS data to them;

C. Stay and preliminarily and permanently enjoin AAMVA from sending CDLIS data to Agency Defendants, and Agency Defendants from obtaining CDLIS data from AAMVA;

D. Award AFT its costs and reasonable attorneys' fees; and

E. Grant such other relief as this Court may deem just and proper.

Dated: September 1, 2026

Respectfully submitted,

/s/ Mark Hanna

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

Adam R. Pulver
(pro hac vice application forthcoming)
Nandan M. Joshi
(pro hac vice application forthcoming)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

*Counsel for Plaintiff-Intervenor*