**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>*Defendants*. | No. 1:26-cv-2547 (AJT/IDD) |

**MEMORANDUM OF LAW IN SUPPORT OF AMERICAN FEDERATION OF TEACHERS' MOTION TO INTERVENE AS PLAINTIFF**


Adam R. Pulver
(pro hac vice application forthcoming)
Nandan M. Joshi
(pro hac vice application forthcoming)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

*Counsel for Proposed Intervenor*


September 1, 2026

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Movant and Its Interests ........ 2

II. The Commercial Driver's License Information System ........ 2

III. FMCSA's Data Demand ........ 4

IV. This Litigation ........ 6

ARGUMENT ........ 8

I. AFT should be granted leave to intervene as of right. ........ 8

  A. The intervention motion is timely. ........ 9

  B. AFT has an interest in this litigation. ........ 9

  C. This action may impair AFT's interests. ........ 11

  D. The Plaintiff States do not adequately represent AFT's interests. ........ 12

II. In the alternative, AFT should be granted permissive intervention. ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alt v. United States Environmental Protection Agency*,
758 F.3d 588 (4th Cir. 2014) ... 9

*Alt v. United States Environmental Protection Agency*,
2012 WL 12892210 (N.D. W. Va. Oct. 9, 2012) ... 11

*American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*,
172 F.4th 361 (4th Cir. 2026) ... 10

*Back Bay Restoration Foundation, Ltd. v. United States Army Corps of Engineers*,
2019 WL 7817079 (E.D. Va. Sept. 25, 2019) ... 13

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022) ... 12

*Carcaño v. McCrory*,
315 F.R.D. 176 (M.D.N.C. 2016) ... 9

*Career Colleges and Schools of Texas v. United States Department of Education*,
98 F.4th 220 (5th Cir. 2024) ... 13

*Civil Rights Corp. v. Walker*,
2025 WL 3899824 (M.D.N.C. Oct. 30, 2025) ... 11, 12

*Corner Post, Inc. v. Board of Governors of Federal Reserve System*,
603 U.S. 799 (2024) ... 13

*DeOtte v. State*,
20 F.4th 1055 (5th Cir. 2021) ... 10

*Doe v. Oberweis Dairy*,
456 F.3d 704 (7th Cir. 2006) ... 10

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ... 13, 14

*GRID Networks LLC v. Quantum Leap Resources LLC*,
2023 WL 2733393 (E.D. Va. Mar. 31, 2023) ... 8

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) ... 10, 12

*JLS, Inc. v. Public Service Commission of West Virginia*,
321 F. App'x 286 (4th Cir. 2009) ........ 13

*Kalbers v. United States Department of Justice*,
22 F.4th 816 (9th Cir. 2021) ........ 10

*Lilly v. Crum*,
2019 WL 5268673 (S.D. W. Va. Oct. 17, 2019) ........ 10

*Montefiore Medical Center v. Robert F. Kennedy, Jr.*,
2026 WL 2547056 (D.D.C. Aug. 28, 2026) ........ 13

*Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n*,
646 F.2d 117 (4th Cir. 1981) ........ 11

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ........ 14

*Ohio Valley Environmental Coalition, Inc. v. McCarthy*,
313 F.R.D. 10 (S.D. W. Va. 2015) ........ 10

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*,
2005 WL 2338863 (D.S.D. Sept. 23, 2005) ........ 11

*Scardelletti v. Debarr*,
265 F.3d 195 (4th Cir. 2001) ........ 9

*Shenandoah Riverkeeper v. Ox Paperboard, LLC*,
2011 WL 1870233 (N.D. W. Va. May 16, 2011) ........ 11

*Sierra Club v. United States Environmental Protection Agency*,
2024 WL 3625682 (S.D. W. Va. Aug. 1, 2024) ........ 9, 10

*Spring Construction Co. v. Harris*,
614 F.2d 374 (4th Cir. 1980) ........ 11

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) ........ 11

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) ........ 8

*Teague v. Bakker*,
931 F.2d 259 (4th Cir. 1991) ........ 10

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) ........ 12

*United Guaranty Residential Insurance Co. of Iowa v. Philadelphia Saving Fund Society*, 819 F.2d 473 (4th Cir. 1987) .......... 12

*United States v. Griswold*, 2026 WL 2042375 (D. Colo. July 8, 2026) .......... 10

*United States v. Hobbs*, 2026 WL 1382786 (W.D. Wash. May 18, 2026) .......... 10

*United States v. Virginia*, 282 F.R.D. 403 (E.D. Va. 2012) .......... 9

*Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214 (4th Cir. 1976) .......... 12

*Waffle House, Inc. v. National Labor Relations Board*, 2025 WL 602744 (D.S.C. Feb. 10, 2025) .......... 13

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1 .......... 7

**Statutes**

5 U.S.C. § 552a(b) .......... 6

5 U.S.C. § 552a(e)(1) .......... 6

5 U.S.C. § 552a(e)(2) .......... 6

5 U.S.C. § 552a(e)(4) .......... 6

5 U.S.C. § 552a(e)(11) .......... 6

5 U.S.C. § 552a(r) .......... 6

5 U.S.C. § 705 .......... 9, 14

18 U.S.C. § 2721(b)(1) .......... 4

18 U.S.C. § 2722(a) .......... 6

49 U.S.C. § 31302 .......... 2

49 U.S.C. § 31308 .......... 3

49 U.S.C. § 31309(a) .......... 3, 6

49 U.S.C. § 31309(b)(1) .......... 3

49 U.S.C. § 31309(d) ....................3

**Federal Register**

Commercial Driver's License Information System State Procedures Manual, Release 5.2.0, 76 Fed. Reg. 68328 (Nov. 4, 2011) ....................3

**Federal Rules**

Federal Rule of Civil Procedure 24(a) ....................10, 12

Federal Rule of Civil Procedure 24(a)(2) ....................1, 8, 10, 11, 12, 14

Federal Rule of Civil Procedure 24(b) ....................1, 14

Federal Rule of Civil Procedure 24(b)(1)(B) ....................14

Federal Rule of Civil Procedure 24(b)(3) ....................14

## INTRODUCTION

In this action, filed less than three weeks ago, twenty-four states and the District of Columbia seek judicial review of a demand by the Federal Motor Carrier Safety Administration (FMCSA) for disclosure of state records in the Commercial Driver's License Information System (CDLIS)—records that contain sensitive personal information of 17 million commercial drivers in the United States. Among those 17 million drivers are members of Movant American Federation of Teachers (AFT) in 12 states around the United States. AFT seeks to intervene as a plaintiff in this action to represent the distinct interests of the drivers whose information is at risk of being disclosed should FMCSA be allowed to enforce its data demand. AFT's and the Plaintiff States' interests in preventing disclosure of the records at issue differ in at least two key respects. First, while the Plaintiff States (and non-plaintiff states) provide and own the data contained in CDLIS, that data consists of sensitive personal information about individual drivers, including AFT members. Second, whereas the Plaintiff States seek to vindicate their interests in records "owned or provided" by those Plaintiff States, FMCSA's demand seeks AFT members' information in the CDLIS that is owned or provided by *non*-plaintiff states as well. No existing party to this suit represents those members' interests.

Given the differences between the Plaintiff States' interests and those of AFT and its members, the risk that AFT's interests will be impaired should this action proceed without it, and the likely inadequacy of representation of AFT and its members by the Plaintiff States, AFT is entitled to intervention as of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, the Court should grant permissive intervention under Rule 24(b).

## BACKGROUND

### I. Movant and Its Interests

AFT is a national labor union representing approximately 1.875 million members who work in every U.S. state, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands. *See* Porcari Decl. ¶ 4. Six divisions within AFT represent the broad spectrum of AFT's membership: pre-K through 12th-grade teachers; paraprofessionals and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; nurses and other healthcare professionals; and retirees. *See id.* ¶ 5. AFT's mission is to champion fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services, in part by advancing the interests of its members. *See id.* ¶ 7. AFT is committed to advancing these principles through community engagement, organizing, collective bargaining, and political activism, and especially through the work of its members. *See id.*

AFT is affiliated with approximately 3,500 local unions throughout the United States. *Id.* ¶ 4. AFT's members include approximately 11,000 workers in the U.S. transportation industry, including school bus drivers and maintenance drivers who are required to hold commercial driver's licenses (CDLs) as a condition of their employment. *See id.* ¶ 9. These drivers are located in multiple states, including Florida, Illinois, Texas, New York, Colorado, Kansas, Montana, Alabama, Georgia, and New Mexico. *Id.; see also* Jane Doe Decl. ¶ 2. These members, as a result, have sensitive personal information contained within the CDLIS. *See*, *e.g.*, Doe Decl. ¶¶ 2–4.

### II. The Commercial Driver's License Information System

In 1986, Congress enacted the Commercial Motor Vehicle Safety Act of 1986, Pub. L. No. 99-570, tit. XII, 100 Stat. 3207-170 (CMVSA). The CMVSA prohibits any individual from operating a commercial motor vehicle without a valid CDL and from having more than one driver's license. 49 U.S.C. § 31302. The CMVSA recognizes that CDLs will be issued "by the States." *Id.*

§ 31308. The CMVSA authorizes the Secretary of Transportation to prescribe "minimum uniform standards for the issuance of commercial drivers' licenses and learner's permits by the States and for information to be contained on each of the licenses and permits." *Id.*

To facilitate coordination among the states in the issuances of CDLs, the CMVSA directs the Transportation Secretary to "maintain an information system" to "serve as a clearinghouse and depository of information about the licensing, identification, and disqualification of operators of commercial motor vehicles." *Id.* § 31309(a). The Transportation Secretary may name an "authorized operator" to "operate, maintain, develop, modernize, and enhance the information system." *Id.* § 31309(d). Since 1988, the American Association of Motor Vehicle Administrators (AAMVA) has been the authorized operator of the information system required by the CMVSA, known as CDLIS. *See* Commercial Driver's License Information System State Procedures Manual, Release 5.2.0, 76 Fed. Reg. 68328, 68329 (Nov. 4, 2011).

Among other things, CDLIS contains "the name, address, and physical description of the operator" and the "social security account number of the operator or other number or information the Secretary considers appropriate to identify the operator." 49 U.S.C. § 31309(b)(1). The CDLIS also contains information on a CDL holder's date of birth and driver's license number, as well as a field indicating "whether the number in the [social security number (SSN)] field is an SSN, a substitute SSN, or a pseudo SSN." *See* Collier Decl., ECF No. 85-2 ¶ 10. The records stored in CDLIS are called "pointer" records (Master Pointer Records, or MPRs) because they use the driver's personal information to "point" a user to additional information about the driver contained in state motor vehicle databases. *Id.*; *see* AAMVA Products & Services Catalog, ECF No. 1-3 at 29.

The CMVSA requires states to provide information about CDL applicants to CDLIS. 49 U.S.C. § 31311(a)(5), (7), (8), (23). States that do not comply with these requirements may lose their federal highway funding. *Id*. § 31314(c).

**III. FMCSA's Data Demand**

On June 25, 2026, FMCSA sent a letter to AAMVA demanding that it turn over data from each and every pointer record within the CDLIS for the last five years (the "Data Demand"). ECF No. 1-2 at 2. AAMVA responded five days later, advising FMCSA that it was "working to assess feasibility" of compliance with the Data Demand "from both a technical and legal standpoint." *Id.* at 3. AAMVA noted concerns about whether the requested data disclosure would violate state and federal law, including the Driver's Privacy Protection Act (DPPA) and the Privacy Act, and whether the Data Demand was authorized under the Cooperative Agreement between FMCSA and AAMVA that governs the CDLIS. *Id.* at 3–4. AAMVA also asked "that FMCSA provide AAMVA the specific intended use of the information," stating that it "must understand what agency or agencies will use the information and for what government function or functions" in order to assess the lawfulness of disclosure under the DPPA and "other relevant privacy laws." *Id.* at 3.

FMCSA responded by disputing AAMVA's reading of the Cooperative Agreement and stating that "FMCSA will use the CDLIS data as part of our statutory and regulatory oversight in our ongoing efforts to ensure the integrity and issuance of Commercial Driver's Licenses (CDLs) and Commercial Motor Vehicles (CMVs)." *Id.* at 5. FMCSA stated that the disclosure of CDLIS data would thus be a permissible use under 18 U.S.C. § 2721(b)(1). *Id.* The agency further advised that "FMCSA will handle all legal coordination under the Privacy Act," and it "strongly encourage[d]" AAMVA to comply with the Data Demand. *Id.* at 5–6.

FMCSA and AAMVA continued to have discussions over the Data Demand, in which FMCSA made "an explicit threat of termination of all of AAMVA's federal grants and contracts

and potential litigation if AAMVA did not inform [the Department of Transportation (DOT)] by [July 24, 2026] whether AAMVA intend[ed] to produce the 17 million pointer records." *Id.* at 11. On that day, AAMVA informed FMCSA that "AAMVA intend[ed] to disclose the records in compliance with applicable law, mindful of our regulatory obligations and the rights of the data owners," but that it was first "providing notice of the circumstances to [its] member jurisdictions, as they are the owners of the data." *Id*. AAMVA also asked that FMCSA "not carry through on [its earlier] threats." *Id*. at 12.

On July 28, 2026, the U.S. Department of Homeland Security (DHS) served an administrative subpoena upon AAMVA, seeking the same information as the Data Demand. *Id.* at 14. The subpoena's stated purpose was the production of documents "in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws." *Id.* "FMCSA staff separately indicated via email that FMCSA and DHS had coordinated on their data demands and that the subpoena would be withdrawn due to AAMVA's efforts to cooperate with FMCSA." *Id.* In light of this development, and recognizing that "more than twenty jurisdictions had formally objected to AAMVA's proposed production of" CDLIS data, AAMVA informed FMCSA that it was reevaluating compliance with the Data Demand, and that it was considering whether to "facilitat[e] an opt-in or opt-out choice by the states whether to authorize AAMVA's transmission of that state's data." *Id.* at 14.

On August 11, 2026, FMCSA replied to AAMVA, asserting that AAMVA's position was "unacceptable." *Id.* at 21. FMCSA argued that CDLIS data was "not 'state data,'" that "[s]tates have no veto over the production of records that AAMVA is holding on DOT's behalf," and that the records were "urgently needed for the federal government to help prevent fatal trucking accidents." *Id.* at 21. FMCSA stated that DHS would "reissue the administrative subpoena it

previously withdrew," and that, unless AAMVA provided DOT with the requested records by August 17, 2026, "DOT w[ould] pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the [DHS] subpoena, and considering terminating its contract with AAMVA." *Id.*

**IV. This Litigation**

On August 13, 2026, twenty-one states and the District of Columbia commenced this action against the U.S. Department of Transportation, the Secretary of Transportation Sean Duffy, FMCSA, FMCSA Administrator Derek Barr (collectively, the "Agency Defendants"), and AAMVA. ECF No. 1.[1] They challenged FMCSA's data demand and asked the Court to declare it unlawful, set it aside, and issue injunctive relief prohibiting the Agency Defendants from implementing or enforcing the Data Demand as to any records owned or provided by the Plaintiff States, from terminating any grants based on the Data Demand, and from accepting from AAMVA any transfer of records owned or provided by the Plaintiff States. *Id.* at 51. Their complaint included seven causes of action. All twenty-two jurisdictions asserted (1) that the Data Demand violates 49 U.S.C. § 31309(a), which requires the Secretary to "consult with the States in carrying out" the CDLIS statute; (2) that the Data Demand violates the DPPA—in particular, its prohibition on obtaining or disclosing personal information from a motor vehicle record unless one of fourteen enumerated exceptions applies, 18 U.S.C. § 2722(a); (3) that the Data Demand is contrary to multiple provisions of the Privacy Act, including 5 U.S.C. §§ 552a(b); (e)(1), (2), (4), and (11); and (r); (4) that the Data Demand exceeds FMCSA's statutory authority, as the CDLIS statute does

[1] As noted below, Kentucky, Minnesota, and Rhode Island subsequently joined the case on August 25, 2026. ECF No. 77. As used with respect to events preceding that date, the term "Plaintiff States" refers to the original group of 22 plaintiffs. As used with respect to events from August 25, 2026, the term refers to the current group of 25 plaintiffs.

not provide clear notice that states must agree to turn over their data as a condition of participation; (5) that the Data Demand is arbitrary and capricious; and (6) that the Data Demand violates the Constitution's Spending Clause, U.S. Const. art. I, § 8, cl. 1. *Id.* ¶¶ 137–198. In addition, Plaintiffs Illinois, California, Maine, and the District of Columbia raised a claim against AAMVA asserting that compliance with the Data Demand would violate their contracts with AAMVA. *Id.* ¶¶ 199–205.

Along with their complaint, the Plaintiff States filed a motion for a temporary restraining order (TRO) "enjoining FMCSA's demand for Plaintiff States' data and ordering AAMVA not to produce Plaintiff States' demanded records to FMCSA or DHS." ECF No. 3 at 27. The same day, the Court entered an administrative stay enjoining AAMVA "from providing the demanded data and information to any Defendant, or any other agency acting in coordination with Defendants" and enjoining any defendant "from taking any adverse actions to implement or enforce, or that are otherwise related to, its data demand." ECF No. 25 at 2. The Court also set an expedited schedule for briefing and hearing on the TRO motion. *Id*. The Agency Defendants filed an opposition to the TRO motion, arguing that the Plaintiff States are not likely to succeed on the merits—raising both jurisdictional and merits arguments—and that the balance of the equities and public interest did not favor the States. ECF No. 45. Among their arguments, the Agency Defendants asserted that the Plaintiff States cannot bring claims based on violations of the Privacy Act and DPPA because "the CDLIS information does not concern them." *Id.* at 16. AAMVA filed a response to the TRO motion in which it "took no view on most of th[e] legal issues" raised, while suggesting it disagreed with FMCSA's interpretation of its Cooperative Agreement with AAMVA, and had concerns as to whether compliance with the Data Demands would trigger liability under the DPPA, AAMVA's contracts, and applicable state laws. ECF No. 46 at 3, 8–10.

On August 20, 2026, the Court issued the TRO requested by the Plaintiff States. ECF No. 54. It also set an expedited briefing and hearing schedule for a motion for a preliminary injunction. *Id.* at 16. On August 25, 2026, the Plaintiff States filed an amended complaint including the same seven causes of action, but adding Kentucky, Minnesota, and Rhode Island as additional plaintiffs. ECF No. 77.

The Plaintiff States filed their motion for a preliminary injunction on August 26, 2026. ECF No. 84. In their motion, they asked the Court to enjoin AAMVA "from transferring Plaintiff States' CDLIS Master Pointer Records, as requested in the Data Demand, to Federal Defendants or any other federal agency," to enjoin the Federal Defendants "from demanding and/or accepting transfer of Plaintiff States' CDLIS Master Pointer Records pursuant to the Data Demand," and to enjoin the Federal Defendants "from taking any adverse actions against Plaintiff States or AAMVA based on the failure to transfer to them the requested information in the Data Demand." Plaintiff States' Proposed Order, ECF No. 84-1 at 8.

Defendants' response is due on or before September 3, 2026, and the Court will hold a hearing on September 10, 2026. *See* ECF No. 54 at 16.

## ARGUMENT

### I. AFT should be granted leave to intervene as of right.

"Under Rule 24(a)(2), intervention shall be permitted when a movant timely requests intervention and demonstrates '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" *GRID Networks LLC v. Quantum Leap Res. LLC*, No. 1:22-cv-00805 (MSN/IDD), 2023 WL 2733393, at *3 (E.D. Va. Mar. 31, 2023) (quoting *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013)). AFT satisfies each of these requirements.

**A. The intervention motion is timely.**

"In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). All three factors support AFT's motion.

As to the first factor, this case is at its earliest stages, and the defendants have yet to file responsive pleadings. "Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely." *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) (citing *Scardelletti v. Debarr*, 265 F.3d 195, 203 (4th Cir. 2001)); *see also Carcaño v. McCrory,* 315 F.R.D. 176, 178 (M.D.N.C. 2016) (finding that an intervention motion filed "just nine days after Plaintiffs filed their motion for preliminary injunction" was timely).

As to the second factor, AFT's participation in this case is unlikely to result in any prejudicial delay. While there is a motion for a preliminary injunction pending, AFT's participation need not delay resolution of that motion. AFT agrees with the Plaintiff States' arguments on the merits. Should AFT's motion for intervention be granted, AFT would promptly file a short motion for a stay of the Data Demand in its entirety pursuant to section 705 of the Administrative Procedure Act (APA), 5 U.S.C. § 705, largely adopting the Plaintiff States' merits arguments.

Finally, since AFT was not tardy in filing this motion, the third factor is irrelevant.

**B. AFT has an interest in this litigation.**

To satisfy the interest requirement, "[t]he Fourth Circuit requires intervenors to show they 'stand to gain or lose by the direct legal operation of the district court's judgment' in the pending action." *Sierra Club v. EPA*, No. CV 3:24-0130, 2024 WL 3625682, at *6 (S.D. W. Va. Aug. 1,

2024) (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)). "[T]his inquiry looks to see if the intervenor 'has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.'" *Id.* (quoting *DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021)).

AFT and its members have such a stake here. The Data Demand seeks records that contain AFT members' sensitive personal information. *See* Doe Decl. ¶¶ 2–4. As the Fourth Circuit, sitting *en banc*, recently explained, "unauthorized and unwarranted access to a person's sensitive personal information is an intentional intrusion into 'private affairs or concerns.'" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 369 (4th Cir. 2026) (*en banc*) (quoting Restatement (Second) of Torts § 652B (Am. L. Inst. 1977)). The interest of AFT and its driver members in preventing such an intrusion on its members' private affairs or concerns is analogous to interests that courts have frequently found to satisfy Rule 24(a). *See*, *e.g.*, *Kalbers v. DOJ*, 22 F.4th 816, 827 (9th Cir. 2021) (finding Rule 24(a) satisfied where a putative intervenor asserted that its "interest in the non-disclosure of its documents is protected under Exemption 4 of the [Freedom of Information Act]"); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (holding that interests in preventing disclosure of non-parties' medical information justified intervention); *United States v. Griswold*, No. 25-CV-03967-PAB-TPO, 2026 WL 2042375, at *5 (D. Colo. July 8, 2026) (holding that an organization's interest in protecting its members' statutorily protected privacy rights satisfied Rule 24(a)(2)); *United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 1382786, at *2 (W.D. Wash. May 18, 2026) (same); *Lilly v. Crum*, No. 2:19-CV-00189, 2019 WL 5268673, at *1 (S.D. W. Va. Oct. 17, 2019) (collecting cases and recognizing that "[a]n individual has a sufficient personal interest in his or her own personnel records as to permit him or her to intervene to prevent the disclosure of such records"). And "associations may intervene to assert their members' interest." *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D.

10, 18 n.2 (S.D. W. Va. 2015) (citing *In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991)).

**C. This action may impair AFT's interests.**

"Whether an interest might be impaired by the litigation is a liberal standard; any 'practical disadvantage' will suffice." *Civil Rights Corp. v. Walker*, No. 1:24CV943, 2025 WL 3899824, at *3 (M.D.N.C. Oct. 30, 2025) (quoting *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 121 (4th Cir. 1981)). In this action, the Plaintiff States ask the Court to determine the lawfulness of the Data Demand. A decision on the legal issues presented could impair AFT's interests "by imposing a legal precedent that no factual distinctions would overcome." *Alt v. EPA*, No. 2:12-CV-42, 2012 WL 12892210, at *5 (N.D. W. Va. Oct. 9, 2012). Specifically, a judgment in Defendants' favor would permit them to coerce AAMVA to comply with the Data Demand with respect to every state's data, and AAMVA has indicated that it will comply if it would not face liability for doing so. *See* ECF No. 1-2 at 11 (confirming willingness to comply if AAMVA receives "liability protection"); AAMVA's TRO Resp., ECF No. 46 at 8–10 (addressing AAMVA's concerns about liability risks). While Movant would not "be legally bound as a matter of *res judicata*," "[s]everal courts have held that *stare decisis* by itself supplies the practical disadvantage that is required for intervention under Rule 24(a)(2)." *Alt v. EPA*, 2012 WL 12892210, at *5 (first quoting *Shenandoah Riverkeeper v. Ox Paperboard, LLC*, No. 3:11-CV-17, 2011 WL 1870233, at *3 (N.D. W. Va. May 16, 2011), and second citing *Stone v. First Union Corp.*, 371 F.3d 1305 (11th Cir. 2004); *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 2005 WL 2338863 (D.S.D. Sept. 23, 2005)); *cf. Spring Constr. Co. v. Harris*, 614 F.2d 374, 377

(4th Cir. 1980) (holding that, under 1966 amendments to Rule 24(a), "in order to intervene of right, a party need not prove that he would be bound in a res judicata sense by any judgment in the case").

**D. The Plaintiff States do not adequately represent AFT's interests.**

A putative intervenor "satisfies Rule 24(a)'s third requirement if it is shown that representation of its interest '*may be*' inadequate." *In re Sierra Club*, 945 F.2d at 779–80 (quoting *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987)). While "[t]he Fourth Circuit has traditionally held that, 'when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented,' … the Supreme Court recently described this presumption as applying 'only when interests overlap fully .... Where the absentee's interest is similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation.'" *Civil Rights Corp.*, 2025 WL 3899824, at *3 (first quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); second quoting *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–97 (2022)).

Thus, here, that AFT and the Plaintiff States share the goal of having the Data Demand set aside as unlawful does not ensure the Plaintiff States are adequate representatives of AFT's interests. For one, Plaintiff States' interests in preventing disclosure of their records are of a different nature than AFT's interest in preventing disclosure of records *about* its members. As the Agency Defendants put it, the Plaintiff States "do not allege their own privacy interests will be harmed." ECF No. 45 at 16. Accordingly, although AFT and the Plaintiff States' interests are aligned, "they may not always dictate precisely the same approach to the conduct of the litigation." *Trbovich v. United Mine Workers*, 404 U.S. 528, 539 (1972) (holding that differences in the interests of the Secretary of Labor and union members warranted intervention). "Even when a

governmental agency's interests appear aligned with those of a particular private group at a particular moment in time, 'the government's position is defined by the public interest, not simply the interests of a particular group of citizens.'" *JLS, Inc. v. Pub. Serv. Comm'n of W.V.*, 321 F. App'x 286, 290 (4th Cir. 2009) (brackets removed) (quoting *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986)). Accordingly, courts regularly allow private parties to intervene on the same side as government entities where the interests are not identical. *See, e.g.*, *Waffle House, Inc. v. NLRB*, No. CV 3:24-6751-MGL, 2025 WL 602744, at *3 (D.S.C. Feb. 10, 2025); *Restoration Found., Ltd. v. U.S. Army Corps of Eng'rs*, No. 2:19-CV-323, 2019 WL 7817079, at *1 (E.D. Va. Sept. 25, 2019).

The interests of the Plaintiff States and AFT and its members are also different in scope. The Plaintiff States have an interest in preventing the unauthorized disclosure of data of CDL applicants in only those states. *See* Am. Compl., ECF No. 77 at 51–52. AFT, however, has an interest in preventing the unauthorized disclosure of all of its members' data contained in the CDLIS—including data provided by Florida, Texas, Kansas, Montana, Alabama, and Georgia. These different interests may have real consequences.[2] Plaintiffs' motion for a preliminary injunction, which seeks injunctive relief relating to "Plaintiff States' CDLIS Master Pointer Records," Proposed Order, ECF No. 84-1 at 8, illustrates the point. Such relief would not fully protect AFT's interests.

* * *

[2] Although the interest of Plaintiff States is specific to the data those States provided, this Court is nonetheless authorized to vacate the Data Demand in its entirety, because the power to "set aside" an unlawful agency action provided by section 706 of the APA "is not party-restricted." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830–43 (2024) (Kavanaugh, J., concurring) (discussing availability of non-party-restricted relief under the APA); *Montefiore Med. Ctr. v. Kennedy*, No. CV 24-1810 (LLA), 2026 WL 2547056, at *6–10 (D.D.C. Aug. 28, 2026) (rejecting the government's request for party-specific relief for unlawful agency action).

Since AFT satisfies all of the requirements of Rule 24(a)(2), it is entitled to intervene as of right.

**II. In the alternative, AFT should be granted permissive intervention.**

Should the Court not conclude that AFT is entitled to intervene as of right, it should grant permissive intervention pursuant to Rule 24(b). Under that rule, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, as discussed above, AFT's motion is timely, given the early stage of the case. And there can be no dispute that AFT's claims raise the same common questions of both law and fact as the Plaintiff States' claims. Both the Plaintiff States and AFT challenge the lawfulness of the same action, and each of AFT's claims as to why the challenged action is unlawful is also raised by the Plaintiff States. Finally, there would be no undue delay or prejudice to the original parties' rights given the early stage of the case. As noted above, permitting AFT to intervene would not delay resolution of the States' pending motion for a preliminary injunction, and, should intervention be granted, AFT would promptly file a motion for a stay of the Data Demand in its entirety pursuant to 5 U.S.C. § 705. Allowing AFT to bring its claims in this action, rather than requiring it to file a separate action, would be in the interests of both the parties and the Court, and consistent with the Fourth Circuit's recognition that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller*, 802 F.2d at 729 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

## CONCLUSION

For the foregoing reasons, this Court should grant AFT's motion to intervene as plaintiff in this action.

Dated: September 1, 2026

Respectfully submitted,

/s/ Mark Hanna
Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

Adam R. Pulver
(pro hac vice application forthcoming)
Nandan M. Joshi
(pro hac vice application forthcoming)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

*Counsel for Proposed Intervenor*