**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>*Defendants*. | No. 1:26-cv-2547<br><br>Hon. Anthony J. Trenga |

# PLAINTIFF STATES' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Kwame Raoul
*Attorney General of Illinois*
Cara Hendrickson†
*Executive Deputy Attorney General*
Katharine Roller†
*Complex Litigation Counsel*
Gretchen Helfrich†
*Deputy Chief, Special Litigation Bureau*
Molly Mauck†
*Assistant Attorney General*
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
115 South LaSalle St.
Chicago, IL 60603
312-814-3000

Counsel for the State of Illinois

† *Admitted pro hac vice*

*Additional counsel in signature block*

Jay Jones
*Attorney General of Virginia*
Tillman J. Breckenridge (#85647)
*Solicitor General*
Megan C. Keenan (#102489)
*Deputy Solicitor General*
Counsel of Record
Mikaela A. Phillips (#97164)
*Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Facsimile: (804) 786-1991
SolicitorGeneral@oag.state.va.us

Counsel for the Commonwealth of Virginia

September 8, 2026

## TABLE OF CONTENTS

I. Federal Defendants' Jurisdictional Objections Lack Merit. .... 1

A. The Data Demand Is Final Agency Action. .... 1

B. The Hobbs Act Does Not Bar Review. .... 2

C. Plaintiff States Fall Within the Zone of Interests of the Privacy Act and the Driver's Privacy Protection Act. .... 4

II. Federal Defendants' Improper Post Hoc Rationalizations Fail to Justify Their Arbitrary and Capricious Data Demand. .... 5

III. Federal Defendants' Remaining Merits Arguments Fail. .... 7

IV. The Requested Relief Is Appropriate .... 8

In their brief in opposition to Plaintiff States' motion for preliminary injunction, Federal Defendants take on the impossible task of supplying a rational, truthful justification for an agency action that plainly lacked one at the time Federal Defendants acted. Rather than defending their contemporaneous rationales for the Data Demand—which this Court correctly held were insufficient—Federal Defendants have submitted yet another declaration containing an assortment of prohibited and pretextual *post hoc* justifications. But it is foundational APA law that an agency must defend its decision based on the rationales it gave at the time it acted. The new declaration is inconsistent with that rule and deeply flawed on its own terms. Federal Defendants further err in their attacks on this Court's jurisdiction, relying on a series of plainly inapposite cases, wrenching partial quotations out of context, and continuing to misapply the governing legal standards.

At bottom, Federal Defendants offer nothing to disturb this Court's well-reasoned conclusion that the Data Demand is likely unlawful. And they do not even attempt to argue that this Court erred in finding that the demand would inflict irreparable harm and that the equities favor the issuance of injunctive relief. Instead, they conclude their brief with an alarming plea for the Court to allow them to take unspecified "other adverse actions" against Plaintiff States and AAMVA in an attempt to seize by coercion what they cannot take by right. The Court should enter Plaintiff States' proposed preliminary injunction to protect Plaintiff States—and AAMVA, which now joins Plaintiff States' request for relief, ECF No. 100 at 5 (page numbers of filed documents cited herein are from the ECF header)—from Federal Defendants' unlawful demand.

## I. Federal Defendants' Jurisdictional Objections Lack Merit.

### A. The Data Demand Is Final Agency Action.

Federal Defendants claim (ECF No. 101, hereinafter PI Opp., at 3) that this Court erred in finding final agency action because it "did not heed" the Fourth Circuit's decision in *Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627 (4th Cir. 2024)—a decision that Federal Defendants themselves barely cited (*see* ECF Nos. 45, 85-1). But *Jake's Fireworks* is plainly distinguishable. In that case, the Fourth Circuit held that the Consumer Product Safety Commission did not take final agency action when its "Compliance Office"—a "subordinate, investigatory, and advisory"

body—issued a "Notice of Noncompliance" containing "preliminary findings and advice from agency staff." 105 F.4th at 632–33. That notice "represent[ed] the conclusions and advice of agency staff, not of the Commission itself," did not convey "a final determination" of the Commission "as to whether a violation has occurred," and thus "function[ed] more like a tentative recommendation than a final and binding determination." *Id.* at 632 (citation omitted).

The Data Demand is obviously different. The August 11 letter from FMCSA's Chief Counsel speaks on behalf of "the Department of Transportation," conveys its determination that "DOT" is "entitled" to CDLIS records, and states that "DOT will pursue all available options to secure production, including canceling AAMVA's grants." ECF No. 1-2 at 21–22. This letter does not convey the "tentative recommendation" of a "subordinate official," but the decision of "the [agency] itself." *Jake's Fireworks*, 105 F.4th at 632. That is how Federal Defendants themselves have understood it, characterizing the letter as one that "FMCSA issued," ECF No. 45 at 9, and that conveyed "the Department of Transportation's request," ECF No. 85-1 (Hearing Tr.) 15:2–3.

The declaration of FMCSA's Chief Financial Officer adds nothing. Far from suggesting that "several steps would need to occur" before the agency terminates AAMVA's grants, PI Opp. at 5, that declaration asserts that FMCSA can terminate grants in a single step: by issuing a "written notification" stating that those grants no longer advance "Agency priorities." ECF No. 101-2 ¶¶ 14–15; *see id.* ¶ 7 (same as to contracts). As Federal Defendants' counsel admitted, the August 11 letter contains an "affirmative guarantee" that the agency will exercise that authority. Hearing Tr. 16:3–4. The fact that FMCSA's grants officer did not sign the letter is irrelevant given that the Chief Counsel issued the letter on behalf of DOT and articulated the position of the agency itself.

### B. The Hobbs Act Does Not Bar Review.

Federal Defendants are also incorrect that the Hobbs Act bars review. Federal Defendants' position is that when Congress used the term "final orders" in the Hobbs Act, it intended the term to be synonymous with the phrase "final agency actions." PI Opp. at 7–8. But both of the circuits on which Federal Defendants rely have said just the opposite. The D.C. Circuit held in *Weaver v. FMCSA* that the term "final orders" refers to decisions for which the agency has "compiled a record

with an eye toward judicial review," and that some "'actions' of the Secretary . . . are *not* . . . final orders" under this definition. 744 F.3d 142, 146–47 (D.C. Cir. 2014). Further, *Weaver* explained that the earlier opinions Federal Defendants cite that analogized the phrase "final orders" and "final agency actions" were describing them as "equivalent for the purposes of being final," not as "equivalent in all respects." *Id.* at 146. This language was not "dicta," PI Opp. at 10; it formed an essential premise of the court's conclusion that it lacked jurisdiction. *See Weaver*, 744 F.3d at 148. The Ninth Circuit cases that Federal Defendants cite do not concern the Hobbs Act, but they too have rejected Federal Defendants' construction of the term "order." In *MacLean v. DHS*, 543 F.3d 1145 (9th Cir. 2008), the Ninth Circuit held that to constitute an "order" for purposes of 49 U.S.C. § 46110, a decision must "possess[] four qualities," including that it is "supported by a reviewable administrative record." *Id.* at 1149 (cleaned up). The court reaffirmed in *Magassa v. Mayorkas* that only "[q]ualifying orders" under this standard—not all agency actions—are "agency orders under 49 U.S.C. § 46110." 52 F.4th 1156, 1165 (9th Cir. 2022).

Although the Fourth Circuit has not addressed the meaning of "final order" in the Hobbs Act, it gave a closely similar construction to the word "order" in *City of Alexandria v. Helms*, 728 F.2d 643 (4th Cir. 1984). There, it held that "the existence of a reviewable administrative record is a determinative factor in defining" whether a decision is "an order *vel non*" for purposes of the statutory predecessor to 49 U.S.C. § 46110. *Id.* at 646. The Fourth Circuit has adhered to that interpretation in the decades since. *See Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012).

Contrary to Federal Defendants' suggestion (PI Opp. at 8–9), the history of the Hobbs Act does not help them either. As they note, the Hobbs Act initially permitted review only of "final orders." Pub. L. No. 81-901, § 2, 64 Stat. 1129 (1950). Then-Judge Scalia explained that Congress envisioned this term would ensure that courts of appeals would decide Hobbs Act cases "'upon the records made before the administrative agencies,'" usually after "structured 'proceedings' in which at least some persons may acquire party status." *Simmons v. I.C.C.*, 716 F.2d 40, 43 & n.1 (D.C. Cir. 1983) (quoting H.R. Rep. No. 81-2122, at 4 (1950); S. Rep. No. 81-2617, at 4 (1950)). Over time, Congress gradually amended subsection (3) to permit review of "rules" and

"regulations," and added a subsection (7) that permits review of "final agency actions." Had Congress wished to cover all "agency actions" in subsection (3)—and thereby universally permit appellate review without the benefit of a record or the structured proceedings the drafters envisioned—it would have incorporated the term wholesale, as it did in subsection (7), rather than incrementally adding terms that describe just a subset of "agency actions."

Finally, Federal Defendants do not dispute that this Court correctly found that the demand was not based on "any kind of an adjudication" or a record "compiled . . . with an eye toward judicial review." ECF No. 54 (hereinafter, TRO Order) at 7 (quoting *Weaver*, 744 F.3d at 147). Instead, they claim that the demand must be a "final order" because, by "[p]rocess of elimination," it cannot be any other kind of "agency action." PI Opp. at 10. That is not the method any circuit applies in interpreting the term "order." *See supra* pp. 3–4. Regardless, Federal Defendants are wrong on their own terms. The Data Demand is a "sanction": contrary to Federal Defendants' partial quotation, that term is defined to include not just the "withholding of relief" or "imposition of a penalty," PI Opp. at 11, but any "requirement" or "other compulsory or restrictive action," 5 U.S.C. § 551(10). More broadly, the APA's definition of "agency action" states that the term "includes" the listed items, not that it is limited to them. 5 U.S.C. § 551(13); *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) (a "definition . . . introduced with the verb 'includes' instead of 'means' . . . makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive"). And it encompasses not just the listed items but "equivalent[s] . . . thereof," 5 U.S.C. § 551(13), thus including other "discrete" actions the agency may take, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

### C. Plaintiff States Fall Within the Zone of Interests of the Privacy Act and the Driver's Privacy Protection Act.

Federal Defendants continue to apply the incorrect standard in assessing whether Plaintiff States fall within the statutory zone of interests. As their own authority explains, the zone of interests test here is "not especially demanding" and "cover[s] anyone even '*arguably* within the zone of interests to be protected or regulated by the statute in question.'" *FDA v. R.J. Reynolds*

*Vapor Co.*, 606 U.S. 226, 232–33 (2025). That test does not require a plaintiff to fall within the cause of action for the underlying statute. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 175 (1997). Rather, the APA itself supplies a cause of action that "entitles anyone 'adversely affected or aggrieved by agency action . . . to judicial review.'" *R.J. Reynolds*, 606 U.S. at 232 (quoting 5 U.S.C. § 702).

As this Court explained, Plaintiff States satisfy this lenient test because they assert interests in the privacy of CDLIS data that are at least "arguably . . . related" to the interests the Privacy Act and the Driver's Privacy Protection Act seek to protect. *See* TRO Order 7–8. (Needless to say, Plaintiff States do not think the Court's conclusion was "wrong." *Contra* PI Opp. at 12.) Plaintiff States do not assert "*parens patriae* standing," *id.*; rather, they assert their *own* interests in preserving the privacy of CDLIS data—including ensuring that individuals are not deterred from using state services and that the contractual and statutory privacy protections the States themselves adopted are observed. *See* ECF No. 85 at 6–7. That straightforward assertion of the States' sovereign interests bears no resemblance to the "thinly veiled attempt[s] to circumvent the limits on *parens patriae* standing" that Federal Defendants reference. *See Haaland v. Brackeen*, 599 U.S. 255, 295 n.11 (2023) (rejecting State's effort to "assert third-party standing on behalf of" its residents); *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (same).

## II. Federal Defendants' Improper Post Hoc Rationalizations Fail to Justify Their Arbitrary and Capricious Data Demand.

As this Court has already found, Federal Defendants' contemporaneous justifications for the Data Demand are arbitrary and capricious because they fail "to explain why or how the bulk transfer of MPRs . . . is rationally related to their stated goals" or account for "the costs and potential harms" and "reliance interests" implicated by the Data Demand. TRO Order at 11. Undeterred by the Court's conclusion, or by the longstanding rule that courts cannot consider "facts and justifications for agency action provided to a reviewing court for the first time," *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 468 (4th Cir. 2013), Federal Defendants have submitted a new declaration by a FMCSA employee offering a grab bag of just

such *post hoc* justifications. *See* Second Liberatore Decl., ECF No. 101-1. None of those rationales appear in the August 11 letter, FMCSA's prior correspondence with AAMVA, or the declarant's own prior declaration in this case, *see* ECF Nos. 1-2, 45-2. And Federal Defendants' claim that the declaration merely "provide[s] additional detail explaining the contemporaneous reason for requesting data," PI Opp. at 16, cannot survive a cursory glance at the nine-page declaration, which contains more than twenty statutory or regulatory citations that do not appear in the August 11 letter and discusses aspects of the CDL program never before mentioned in the record in this case.

Under black-letter APA law, this court may not consider these *post hoc* rationalizations for agency action. PI Opp. at 16; ECF No. 85 at 8–9. But even if the Court were to consider the declaration, its explanations remain arbitrary and capricious for at least three independent reasons.

First, the Second Liberatore Declaration still fails to rationally explain why FMCSA needs the demanded data. Many of the proposed uses the declaration suggests cannot actually be carried out with CDLIS data, because the necessary information is not contained in CDLIS in the first place. For example, CDLIS does not contain any information about where a driver received "[t]raining," Second Liberatore Decl. ¶¶ 20(e), 23; a driver's "employer," *id.* ¶¶ 23, 27; DUI convictions, *id.* ¶¶ 27, 20(c); "violation[s]," "crash[es]," or "significant safety incidents," *id.* ¶¶ 19, 22, 28; "medical" information, *id.* ¶ 20(b); "testing" information, *id.* ¶ 23; a driver's "CDL expiration date[]," *id.* ¶¶ 16–17; or whether a driver's CDL is a "non-domiciled CDL" versus a "standard CDL," *id.* ¶¶ 20(a), 23, 29. Others are purely speculative, stating that "FMCSA *may use*" the demanded data with no indication that the agency has any present intention of doing so—much less that it had such an intention at the time the demand was made. *Id.* ¶ 17 (emphasis added); *see also id.* ¶ 30. In addition, even where the declaration identifies information in CDLIS records that the agency would ostensibly use, it fails to explain why it needs *custody* of those records to perform those functions. The declaration claims, for instance, that FMCSA would use the records to conduct "continuous performance monitoring" of various State regulatory requirements, *id.* ¶¶ 20(a)–(e). But FMCSA's copy of CDLIS would be out-of-date from the moment its records were removed from State control, and more so with every passing day, rendering it useless for

"continuous . . . monitoring" of any kind. Likewise, all of the "investigation and enforcement" and "collections" uses the declaration offers can and must be carried out via individual queries, because FMCSA asserts that it would be seeking information about individual drivers. *See, e.g.*, *id.* ¶¶ 12–14 (suggesting FMCSA would seek the social security numbers of drivers "who have defaulted on payment of monetary civil penalties"); *id.* ¶¶ 8–11 (asserting FMCSA would use records to ensure it "has correctly identified individuals subject to investigation or enforcement"); *id.* ¶ 22 (FMCSA already uses "individual quer[ies]" to look up drivers identified in crash reports).

Second, the agency action remains arbitrary and capricious—even if the Court accepts Federal Defendants' *post hoc* justifications at face value—because the declaration provides no evidence that FMCSA considered the range of factors that the APA requires Federal Defendants to consider. It offers no consideration of the costs of seizing the demanded data or of shutting down CDLIS if that demand is rebuffed; of alternative means to address FMCSA's purported needs besides ingesting or shutting down the database wholesale; or of the States' and commercial drivers' reliance interests in FMCSA's current policy of accessing CDLIS through individual queries. As this Court explained, the APA requires an agency to consider all these matters before acting. *See* TRO Order at 10–11.

Third, the declaration is transparently pretextual. As this Court explained, FMCSA is seeking CDLIS data "in large part, if not primarily, for immigration enforcement." *Id.* at 11. The Second Liberatore Declaration does not attempt to dispel that inference or justify that use of the data. It therefore continues to supply an improperly pretextual justification. *See Dep't of Com. v. New York*, 588 U.S. 752, 781, 785 (agency may have "other unstated reasons" for acting, but its *stated* reasons must be genuine).

## III. Federal Defendants' Remaining Merits Arguments Fail.

On the remaining merits claims, Federal Defendants largely repeat points they already made at the TRO stage, *see* PI Opp. at 18–19 (statutory consultation requirement), or refer to their TRO filings without elaboration, *see id.* at 19–20 (Privacy Act). This Court properly rejected those arguments, and Federal Defendants offer no reason to revisit those conclusions.

Federal Defendants briefly attempt to rebut this Court's conclusion that the Data Demand likely violates the Spending Clause by invoking 49 U.S.C. § 31106(c)(2). PI Opp. at 13–14. But that late-breaking statutory citation provides them no help. The Secretary's access to CDLIS records is governed by 49 U.S.C. § 31309(c), which states that information in CDLIS "shall be made available . . . in accordance with the policy developed under section 31106(e)." Federal Defendants do not dispute that the "policy that FMCSA has promulgated under Section 31309(c) nowhere mentions . . . an entitlement" to take custody of records. TRO Order at 12. Section 31106(c)(2), by contrast, allows the Secretary "access to all State *licensing status and driver history records*." 49 U.S.C. § 31106(c)(2) (emphasis added). The records Federal Defendants seek—pointer records—do not concern a person's "licensing status" or "driver history," and so fall outside the scope of this provision. *See* ECF No. 46 at 10 (distinguishing "driver records" from "pointer records"). And, in any event, the term "access" here is naturally understood to refer to the ability to view the pointer records, not obtain custody of them, as FMCSA's longstanding practice and its own dictionary definition confirm. *See* PI Opp. at 13 ("obtain *or* make use of" (quoting Merriam-Webster's Online Dictionary) (emphasis altered)).

Federal Defendants also attempt to resuscitate their arguments under the Driver's Privacy Protection Act by relying on the Second Liberatore Declaration. *Id.* at 19. But, as noted above, that declaration supplies a *post hoc* justification that may not properly be considered in an APA suit. And, in any event, the declaration fails to provide a plausible explanation of how the agency will use the CDLIS data, *see supra* pp. 6–8, or refute the Court's conclusion that FMCSA improperly seeks the data to share it with DHS for immigration enforcement, *see* TRO Order at 10.

## IV. The Requested Relief Is Appropriate

Finally, Federal Defendants' arguments on the scope of relief only emphasize the need for the requested injunction. A "district court may issue a preliminary injunction that provides the plaintiff 'complete relief'" from the violation at issue. *dmarcian, Inc. v. DMARC Advisor BV*, 182 F.4th 289, 305 (4th Cir. 2026) (citation omitted). This remains true in APA cases, despite Federal Defendants' suggestion otherwise. *See, e.g.*, *Roe v. Dep't of Def.*, 947 F.3d 207, 234 (4th Cir.

2020); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 89 & n.6, 124 (D. Md. 2025). And, regardless, Plaintiffs' claims are not grounded solely in the APA.

Here, Plaintiff States seek the complete relief needed to preserve the status quo and nothing more. Federal Defendants cannot show otherwise. They ask to have the scope of relief narrowed to allow them to take "other adverse actions" against Plaintiff States and AAMVA. PI Opp. at 20. But any "adverse actions" premised on the illegal Data Demand would themselves be unlawful. And Defendants' admitted intention to pursue further unnamed adverse actions to facilitate their unlawful demand only emphasizes the propriety of the requested relief. After all, "an injunction that can be evaded is not one that provides complete relief." *dmarcian, Inc.*, 182 F.4th at 305.

Federal Defendants also assert that any relief should not cover DOT's Office of Inspector General (DOT-OIG). PI Opp. at 20. Although they do not explain how DOT-OIG could legitimately seek to take custody of CDLIS data under its authority, they raise the hypothetical that DOT-OIG might seek to do so. This, too, strongly suggests that Federal Defendants are already looking for ways to evade a preliminary injunction that would protect the States' data. In any event, the targeted order that Plaintiff States seek should not impair DOT-OIG from carrying out its general functions. And should DOT-OIG have a legitimate ground for seeking records from AAMVA in the future, unrelated to the subject of this litigation, and should the injunction then somehow pose a hurdle, Federal Defendants can seek to revise any issued injunction at that time.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court enter the proposed preliminary injunction order (ECF No. 84-1).

DATED: September 8, 2026

**KWAME RAOUL**
Attorney General of Illinois

/s/ Katharine Roller
Cara Hendrickson†
*Executive Deputy Attorney General*
Katharine Roller†

Respectfully submitted,

**JAY JONES**
Attorney General of Virginia

/s/ Megan C. Keenan
Tillman J. Breckenridge (#85647)
*Solicitor General*
Megan C. Keenan (#102489)

*Complex Litigation Counsel*
Gretchen Helfrich†
*Deputy Chief, Special Litigation Bureau*
Molly Mauck†
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.,
Chicago, IL 60603
312-814-3000
Cara.Hendrickson@ilag.gov
Katharine.Roller@ilag.gov
Gretchen.Helfrich@ilag.gov
Molly.Mauck@ilag.gov
*Counsel for Plaintiff State of Illinois*

*Deputy Solicitor General*
*Counsel of Record*
Mikaela A. Phillips (#97164)
*Assistant Solicitor General*
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
mkeenan@oag.state.va.us
mphillips@oag.state.va.us
*Counsel for Plaintiff Commonwealth of Virginia*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

*/s/ Mitchell P. Reich*
Mitchell P. Reich†
*Senior Counsel to the Attorney General*
Karthik Reddy†
*Special Assistant Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth St. NW
Washington, DC 20001
202-279-1261
Mitchell.Reich@dc.gov
*Counsel for Plaintiff District of Columbia*

**ROB BONTA**
Attorney General of California

*/s/ David Green*
Thomas S. Patterson*
Michael L. Newman*
*Senior Assistant Attorneys General*
Seth E. Goldstein*
Robin L. Goldfaden*
*Supervising Deputy Attorneys General*
David Green†
Maria Buxton†
Chase Goldstein†
Ezra Kautz†
Emilia P. E. Morris†
*Deputy Attorneys General*
1300 I Street, Suite 125
Sacramento, CA 95814
916-210-6242
David.Green@doj.ca.gov
*Counsel for Plaintiff State of California*

**KRISTIN MAYES**
Attorney General of Arizona

*/s/ Mary M. Curtin*
Mary M. Curtin†
*Senior Litigation Counsel*
Arizona Attorney General's Office
2005 N. Central Ave.
Phoenix, AZ 85004
602-542-3333
Mary.Curtin@azag.gov
ACL@azag.gov
*Counsel for Plaintiff State of Arizona*

**PHIL WEISER**
Attorney General of Colorado

*/s/ Gabe Podesta*
Gabe Podesta†
Sarah H. Weiss†
*Senior Assistant Attorneys General*
1300 Broadway, 10th Fl.
Denver, CO 80203
720-508-6000
Gabe.Podesta@coag.gov
Sarah.Weiss@coag.gov
*Counsel for Plaintiff State of Colorado*

**WILLIAM TONG**
Attorney General of Connecticut

**KATHLEEN JENNINGS**
Attorney General of Delaware

*<u>/s/ Vianca Malick</u>*
Vianca Malick†
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Vianca.Malick@ct.gov
*Counsel for Plaintiff State of Connecticut*

*<u>/s/ Ian R. Liston</u>*
Ian R. Liston†
*Director of Impact Litigation*
Vanessa L. Kassab*
*Deputy Attorney General*
Anuradha Sivaram†
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov
*Counsel for Plaintiff State of Delaware*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

*<u>/s/ Kalikoʻonālani D. Fernandes</u>*
Kalikoʻonālani D. Fernandes†
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
808-586-1360
kaliko.d.fernandes@hawaii.gov
*Counsel for Plaintiff State of Hawaiʻi*

**ANDY BESHEAR**
Governor for Commonwealth of Kentucky

*<u>/s/ S. Travis Mayo</u>*
S. Travis Mayo*
*General Counsel*
Sam Flynn*
*Chief Deputy General Counsel*
Laura C. Tipton*
*Deputy General Counsel*
Office of the Governor
501 High Street, 2nd Floor
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
sam.flynn@ky.gov
laurac.tipton@ky.gov
*Counsel for Governor Andy Beshear*

**AARON M. FREY**
Attorney General of Maine

*<u>/s/ Halliday Moncure</u>*
Halliday Moncure†
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Halliday.Moncure@maine.gov
*Counsel for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

*<u>/s/ Yasmin Dagne</u>*
Yasmin Dagne†
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-223-1580
ydagne@oag.maryland.gov
*Counsel for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

*<u>/s/ Gerard J. Cedrone</u>*
Gerard J. Cedrone†
*Deputy State Solicitor*
Michelle Pascucci†
*State Trial Counsel*

**DANA NESSEL**
Attorney General of Michigan

*<u>/s/ Neil Giovanatti</u>*
Neil Giovanatti*
*Assistant Attorney General*
P.O. Box 30212
Lansing, MI 48909

Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
617-963-2282
Gerard.Cedrone@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

517-241-1050
GiovanattiN@michigan.gov
*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

*/s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp*
*Special Counsel, Rule of Law*
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-0711
Lindsey.Middlecamp@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

**AARON D. FORD**
Attorney General of Nevada

*/s/ K. Brunetti Ireland*
K. Brunetti Ireland†
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov
*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Amanda McElfresh*
Amanda McElfresh†
*Deputy Attorney General*
New Jersey Office of the Attorney General
124 Halsey Street
Newark, NJ 07101
609-696-5363
Amanda.McElfresh@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Anjana Samant*
Anjana Samant*
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov
*Counsel for Plaintiff State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

*/s/ Rabia Muqaddam*
Rabia Muqaddam†
*Chief Counsel for Federal Initiatives*
Matthew Conrad†
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
212-416-8333
Rabia.Muqaddam@ag.ny.gov
Matthew.Conrad@ag.ny.gov
*Counsel for Plaintiff State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
Scott P. Kennedy*
*Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880
Scott.Kennedy@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

**JOSH SHAPIRO**
Governor for Commonwealth of Pennsylvania

*/s/ Jacob B. Boyer*
Jennifer C. Selber*

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Patrick Reynolds*
Patrick Reynolds*

Jacob B. Boyer†
Governor's Office of General Counsel
30 North 3rd Street
Suite 200
Harrisburg, PA 17101
JacobBoyer@pa.gov
*Counsel for Governor Josh Shapiro*

*Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400
preynolds@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont

*/s/ Ryan Patrick Kane*
Ryan Patrick Kane†
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
802-828-3171
Ryan.Kane@vermont.gov
*Counsel for Plaintiff State of Vermont*

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Lauryn K. Fraas*
Lauryn K. Fraas†
*Assistant Attorney General*
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
206-464-7744
Lauryn.Fraas@atg.wa.gov
*Counsel for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

*/s/ Brian Keenan*
Brian Keenan†
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
608-266-0020
Brian.Keenan@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

† *Admitted pro hac vice*
* *Pro hac vice forthcoming*