**IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 26-cv-2547 (AJT/IDD) |

**FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO AMERICAN FEDERATION OF TEACHERS' MOTION TO INTERVENE**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BENJAMIN T. HAYES
Senior Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
WILLIAM S. JANKOWSKI
(D.C. Bar No. 90021524)
LINDSEY E. GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3731
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

Counsel for Federal Defendants

## INTRODUCTION

The American Federation of Teachers ("AFT"), a national labor union with a mission serving interests completely unrelated to commercial motor vehicle safety, has moved to intervene in this action as a plaintiff alongside a coalition of twenty-four states and the District of Columbia. Contrary to their broad assertions, AFT is not entitled to intervene. Nor should the Court grant permissive intervention. While Defendants would not oppose participation as *amici curiae*, this Court should deny AFT's proposed request to intervene as an outright plaintiff. AFT has not demonstrated that the more than twenty Plaintiff States will not adequately represent their interests, to the extent any exist, as required to intervene under Federal Rule Civil Procedure 24(a)(2).

Furthermore, this Court should exercise its discretion to deny permissive intervention under Rule 24(b) because the presence of a national labor union committed to public education could have adverse effects on this litigation and produce no benefits beyond what could be gained by permitting AFT to participate as *amici*. This Court should deny the request.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides two avenues, as relevant here, upon which a party may seek intervention. A proposed intervenor "bears the burden of demonstrating to the court a right to intervene." *Arista Records, LLC v. Doe No. 1*, 254 F.R.D. 480, 481 (E.D.N.C. 2008) (alteration in original) (quoting *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). A proposed intervenor is only entitled to intervene as a matter of right under Rule 24(a)(2) if: (1) the application to intervene is timely; (2) the applicant has an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to

the litigation. *Houston General Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). Failure to meet even one of these requirements results in denial of as-of-right intervention. *Id*.

By contrast, district courts have broad discretion in granting permissive intervention under Rule 24(b). *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). The proposed intervenor must, on timely motion, "ha[ve] a claim or defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). Furthermore, "allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention." *McHenry v. Comm'r of Internal Revenue*, 677 F.3d 214, 227 (4th Cir. 2012).

## ARGUMENT

### I. AFT Is Not Entitled to Intervention as of Right.

#### A. AFT lacks a "significantly protectable interest."

Assuming arguendo that AFT has satisfied the first requirement as to timeliness, it nevertheless fails the remaining three requirements under Rule 24(a)(2). Although Rule 24 does not specify what type of interest a party must have to intervene as a matter of right, the Supreme Court has recognized that "'[w]hat is obviously meant ... is a significantly protectable interest.'" *Donaldson v. United States,* 400 U.S. 517, 531 (1971). Thus, "a general interest in the subject matter of pending litigation does not constitute a protectable interest within the meaning of Rule 24(a)(2)." *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993). The Fourth Circuit has adopted the same standard, indicating that the second requirement of Rule 24(a)(2) is satisfied if the alleged interest is a "significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). To be protectable, the putative intervenor's claim must bear

a close relationship to the dispute between the existing litigants and therefore must be direct, rather than remote or contingent. *Dairy Maid Dairy, Inc.*, 147 F.R.D. at 111.

AFT lacks a "significantly protectable interest" in this action. AFT broadly claims that it has an "interest in preventing the unlawful disclosure of its members' sensitive personal information." ECF No. 91 at 1. The facts do not suggest that is the case. AFT is a national labor union with "approximately 1.875 million members" who work across the United States in the areas of "pre-K through 12th-grade teachers; paraprofessionals, and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; nurses and other healthcare professionals; and retirees." ECF No. 92 at 2. Its mission encompasses "fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services." *Id.*

AFT asserts that 11,000, or less than one percent of its members, are required to hold commercial driver's licenses (CDLs).[1] *Id.* AFT attached a "Jane Doe" declaration to its motion from an assistant driver trainer in Springfield, Oregon, a member of Oregon School Employees Association, an AFT affiliate, who applied for a CDL in California, and renewed her CDL in Oregon beginning in 2019.[2] ECF No. 92-2. But under that theory, AFT's interest is no greater than any association or organization that happens to have members issued CDLs. None of the sought data relates to AFT, and AFT has not shown that transferring Commercial Drivers License Information System (CDLIS) data would influence labor-related activities such as workers' conditions, wages, or collective bargaining agreements, or halt its missions referenced above. AFT

---

[1] AFT inconsistently claims that "AFT and its members," which would comprise over a million members, have an interest in this matter, and other times narrows the allegation to "the interest of AFT and its driver members," which comprises only 11,000 members. ECF No. 92 at 10.

[2] Oregon and California are Plaintiff States.

has not demonstrated that it maintains any ability to veto the production of CDL records of which it lacks any custodial possession whatsoever. Ignoring the miniscule connection between its members and CDLs, AFT claims that its "members" have a "stake in the matter that goes beyond a generalized preference that the case comes out a certain way." *Teague*, 931 F.2d at 261. That "stake" is supported through generalized assertions supporting an *individual's* right to challenge unauthorized access to personal information. *Id*. at 10. *See, e.g., Lilly v. Crum*, No 2:19-CV-00189, 2019 WL 5268673, at *2-3 (S.D. W. Va. Oct. 17, 2019) (an individual has a sufficient personal interest in his or her own personnel records as to permit him or her to intervene to prevent the disclosure of those records).

Additionally, AFT cites *United States v. Griswold*, No. 25-CV-03967-PAB-TPO, 2026 WL 2042375, at *4-5 (D. Colo. July 8, 2026), where the proposed intervenors were unopposed. There, Plaintiffs challenged the Attorney General's requested disclosure of electronic copies of Colorado voter registration information. *Id*. at *3. The two unopposed intervenors consisted of Colorado Alliance for Retired Americans, a "politically active and engaged group" with goals including "political participation," and an individual named member of that alliance, and Common Cause, a group aimed at "registering qualified people to vote," along with two individually named Colorado voters. *Id*. at *4-5. By contrast, AFT, a national labor union committed to education, lacks any mission or purpose attached to CDL data or even a political purpose sufficient to render a "significantly protectable interest" in this case. AFT cannot meet this stringent standard through an unknown "Jane Doe" *declarant* from an assistant driver trainer of an affiliate association, expressing "I do not want my information disclosed in such a way." ECF No. 92-2.

An intervenor must meet the requirements of Article III standing to possess intervention as of right under Rule 24(a)(2). *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (an

intervenor of right must demonstrate Article II standing when it seeks additional relief beyond that which plaintiff requests). To establish Article III standing, it is well-established that a plaintiff seeking compensatory relief must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, *Inc. v Robins*, 578 U.S. 330, 338 (2016). "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38 (1976). If the Court were to permit intervention despite a lack of standing, "then any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 195 (D.C. Circ. 2013).

"[I]n the ordinary case, an applicant who satisfies the 'interest' requirement of the intervention rule is almost always going to have a sufficient stake in the controversy to satisfy Article III as well." *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33 (1st Cir. 2000); *see also United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009) ("a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24.). The Fourth Circuit in an unpublished opinion has indicated that a movant seeking intervention as of right "must have standing to assert his claim in a separate action." *Patterson v. Shumate*, 912 F.2d 463 (4th Cir. 1990), 1990 WL 122240, at *2. AFT lacks standing to generally assert that Defendants seek the "unauthorized and unwarranted access" of its drivers' personal information. *Am. Fed'n of State, Cnty. & Mun. Emps., v. Soc. Sec. Adnin.*, 172 F.4th 361, 365 (4th Cir. 2026) (unauthorized access to personal data is analogous to intrusion upon seclusion tort). To that end, AFT has no standing to assert a claim that is functionally analogous

to a tort claim on behalf of a small segment of its members and supported through a Jane Doe declaration. And even if an individual who happens to be a member of AFT might have an interest in the litigation, such an interest is not "germane to the organization's purpose," a prerequisite for associational standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Likewise, AFT would fail as a plaintiff because it cannot establish a cause of action under the Privacy Act. The "class of persons" granted a right to sue under the Privacy Act and Driver's Privacy Act ("DPPA") are "individual[s]". *See* 5 U.S.C. § 552a(g)(1) ("the individual may bring a civil action against the agency"); 18 U.S.C. § 2724(a) (the "individual to whom the information pertains . . . may bring a civil action in a United States district court"). The Privacy Act's definition of "individual" does not include national or local labor unions: "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2); *see also* Pub. L. 93–579, 88 Stat 1896 (Dec. 31, 1974) ("The purpose of this Act is to provide certain safeguards *for an individual*. . ..") (emphasis added). Thus, the exclusive means of judicial review for a Privacy Act challenge is limited to "individuals." *Block v. N.D.*, 461 U.S. 273, 286, n.22 (1983) (§ 702 provides no authority to grant relief "when Congress has dealt in particularity with a claim and [has] intended a specified remedy to be the exclusive remedy").

In short, an intervenor must have a "stake in the matter that goes beyond a generalized preference that the case comes out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). AFT fails to show that it has any "significantly protectable interest" that would be impaired if the court denied its motion to intervene.

**B. Plaintiff States adequately represents AFT's interests.**

Even assuming AFT has a significantly protectable interest, denying its motion to intervene would not impair or impede its ability to protect that interest, and (most importantly), the Plaintiff

States adequately represent AFT's alleged interests. As Defendants have explained, Plaintiff States' alleged property interests are outside the zone of interests for their Privacy Act and DPPA claims, and the States cannot assert the privacy interests of their citizens in a suit against the Federal Government. ECF. No. 101 at 9. If, however, the Court disagrees with Defendants, then Plaintiff States adequately represent AFT's interests.

As the Fourth Circuit has explained, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Virginia v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir. 1976); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Reichhold, Inc.*, No. 1:06CV939, 2008 WL 90186 (M.D.N.C. Jan. 8, 2008) (same). AFT may overcome this presumption only by demonstrating "adversity of interest, collusion, or nonfeasance." *Westinghouse Elec*., 542 F.2d at 216.

The presumption applies here. AFT admits that it "share[s] the goal of having the Data Demand set aside as unlawful." ECF No. 92 at 12. AFT "agrees with the Plaintiff States' arguments on the merits," and, if allowed to intervene, would "promptly file a short motion for a stay of the Data Demand in its entirety . . . largely adopting the Plaintiff States' merits arguments." *Id*. at 9. This is neither helpful nor efficient. While AFT claims that its alignment with Plaintiff States does not "dictate precisely the same approach to the conduct of litigation," ECF No. 92 at 12 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 539 (1972)), mere "disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy," *Stuart*, 706 F.3d at 353. *See also United States v. N. Carolina*, No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014) (same); *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests.").

AFT's Jane Doe declarant, albeit only connected to AFT through an affiliate association, exemplifies that any interests are adequately represented. Jane Doe's CDL data is connected to Oregon, a Plaintiff State. ECF No. 92-2 at ¶ 2. AFT appears to be attempting to expand the litigation by adding in members that have CDL data contained in states that have not filed suit (Florida, Texas, Kansas, Montana, Alabama, and Georgia), a potential litigative tactic, and a convenient method of alleging that Plaintiff States do not represent its members interests. ECF No. 92 at 13. Allowing AFT to intervene risks the type of intervention application of which a district court should be especially wary; "piling on parties" which can "result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). The Court should deny AFT's request to intervene as a matter of right because denying the request does not impede any interest, and Plaintiff States adequately represent its interests, to the extent any exist.

## II. Permissive Intervention Should Be Denied.

"The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention." *Puerto Rico Tel. Co. v. San Juan Cable, LLC*, 298 F.R.D. 28, 30 (D.P.R. 2014). Indeed, "[i]f there is no right to intervene under Rule 24(a), it is it is wholly discretionary with the court whether to allow intervention under Rule 24(b)." *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 584 (M.D.N.C. 1976) (internal quotations omitted).

Permissive intervention should be denied here for a variety of reasons. Denial will not harm AFT because it has no protectable interest at stake in this litigation and Plaintiff States adequately protects any conceivable interest it may have. ("Courts are understandably reluctant to grant

permissive intervention to an applicant where interests are already fully represented by one of the existing parties."). *Penobscot Nation v. Mills,* 2013 U.S. Dist. LEXIS 85045, *14, 2013 WL 3098042 (2013) (quoting 6 James Wm. Moore et al., Moore's Federal Practice ¶ 24.10[2][d] (2000)). In short, "[i]ntervention of the type which is sought in this action would serve no useful purpose, would cause unnecessary delay and time expenditure, and would thus unduly prejudice the adjudication for all concerned." *Grogan*, 70 F.R.D. at 584 (internal quotations omitted). Because AFT would only "muddy the waters unnecessarily," the Court should deny permissive intervention. *Id.*

Indeed, even where "there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Grogan.*, 70 F.R.D. at 584 (internal quotations omitted); *see also Hopwood v. State*, No. CIV. A-92-CA-563-SS, 1994 WL 242362, at *2 (W.D. Tex. Jan. 20, 1994) (citations omitted) ("[T]he existence of a common question of law or fact will not automatically entitle a movant to intervene."). The court still retains "the discretion to determine the fairest and most efficient method of handling the lawsuit." *Hopwood v. State*, No. CIV. A-92-CA-563-SS, 1994 WL 242362, at *2 (W.D. Tex. Jan. 20, 1994) (citations omitted); *see also id*. at *1 (denying intervention in part because "as a practical matter, the prospective intervenors and the Defendants have the same ultimate objective in this lawsuit—the preservation of the admissions policy and procedure currently used by the law school").

Here, AFT admits that it has the same set aside objective and plans to largely adopt Plaintiff States' briefing at this juncture. ECF No. 92 at 9. The fairest and most efficient path forward then would be to allow AFT to participate as *amici curiae* rather than receiving duplicative briefing, or denial altogether to the extent AFT plans on simply adopting Plaintiff States' arguments. *See Stuart*, 706 F.3d at 355 (While a would-be intervenor may prefer party status to that of friend-of-

court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto."). Thus, this Court should deny permissive intervention. *McHenry*, 677 F.3d at 227 (allowing the submission of an amicus brief is an adequate alternative to permissive intervention).

**III. The Court Should Appropriately Limit the Scope of Intervention.**

Should this Court grant the motion, AFT's participation in this matter should be limited. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) ("[E]ven where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action."). Particularly, the Court should bar AFT from "injecting collateral issues into the litigation." *See id.* (collecting cases). Conditions can be imposed "to ensure the fair, efficacious, and prompt resolution of the litigation." *Id.*

If granted, the Court should require AFT to strictly confine their "arguments to the existing claims in the action and refrain from raising new claims or collateral issues[.]" *Farmer v. EPA*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024). Further, as AFT limits their challenges under the APA in their proposed Complaint, the Court should exclude them from serving or otherwise pursuing discovery. ECF No. 91-2.

**CONCLUSION**

For the reasons stated above, the Court should deny AFT's Motion to Intervene.

//

//

Dated: September 15, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BENJAMIN T. HAYES
Senior Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
WILLIAM S. JANKOWSKI
(D.C. Bar No. 90021524)
LINDSEY E. GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3982
Email: Matthew.Mezger@usdoj.gov

Counsel for Federal Defendants