**IN THE UNITED STATES DISTRICT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 1:26-cv-2547 (AJT/IDD) |

# FEDERAL DEFENDANTS' MOTION TO STAY THE COURT'S PRELIMINARY INJUNCTION PENDING APPEAL


BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY E. GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3731
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Counsel for Federal Defendants*

Federal Defendants respectfully request the Court stay its preliminary injunction, ECF No. 113, pending appeal of that Order to the United States Court of Appeals for the Fourth Circuit. *See* Notice of Appeal, ECF No. 134. To obtain a stay pending appeal, "the movant must establish four factors: (1) that the movant will likely succeed on the merits on appeal, (2) that the movant will suffer irreparable injury if the stay is denied, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest." *BDC Cap., Inc. v. Thoburn Ltd. P'ship*, 508 B.R. 633, 636 (E.D. Va. 2014) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). When, as here, the government is seeking a stay pending appeal, the public-interest and balance-of-the-equities factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because "it is generally logically inconsistent for a court to issue a . . . preliminary injunction and then stay that order, as the findings on which those decisions are premised are almost perfect opposites," a better approach is for the district court to "merely determine whether the Defendant's appeal presents an admittedly difficult legal question." *Maryland v. United States Dep't of Agric.*, 777 F. Supp. 3d 496, 500 (D. Md. 2025) (quotations omitted). "Otherwise, a district court would never stay an order pending appeal." *Id.*; *see also Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980) ("The likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal"), *aff'd*, 649 F.2d 863 (4th Cir. 1981).

Here, the factors strongly weigh in favor of a stay. Even though the Court has preliminarily ruled adversely on the merits, Federal Defendants have strong arguments for appeal—including serious questions as to whether the Court has jurisdiction to even enter an injunction—and the equities and public interest weigh against enjoining the Department of Transportation (DOT) from exercising its full array of authorities to oversee and maintain the Commercial Driver's License

Information System (CDLIS) and protect Americans from grave safety risks posed by unqualified commercial motor vehicle operators.

## I. Federal Defendants' arguments are meritorious but at least raise multiple difficult legal questions.

Federal Defendants' arguments are meritorious for the reasons explained in their prior briefing. At the very least, those arguments raise difficult legal questions on the final status of the agency action, the availability of review under the Hobbs Act, whether the data request falls within a clear condition Congress set on federal spending, and whether the data request was arbitrary and capricious or contrary to law under the Administrative Procedure Act ("APA").

1. The Court's conclusion that the August 11 Letter's request for data, which included warnings about the consequences for failure to comply, constituted a final agency action is in significant tension with governing precedent. Under *Bennett v. Spear*, a final action "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177-78 (1997) (quotations omitted).

The August 11 Letter was an interlocutory step before any actual grant or contract cancellations; it did not itself determine any rights, obligations or legal consequences but instead warned of consequences that were to follow later. Like the letter at issue in *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627 (4th Cir. 2024), the August 11 Letter was simply a request, not a final determination issued by on official authorized to impose binding legal consequences. *See id.* at 633. This Court distinguished *Jake's Fireworks* on the ground that the letter at issue in that case "indicated only that [the agency] '*may request*' compliance." PI Op., ECF No. 113 at 6. But in fact, like the August 11 Letter, the letter at issue *Jake's Fireworks* went a step further by unambiguously making a request. *Jake's Fireworks*, 105

F.4th at 633 ("The Notices informed Jake's Fireworks that sampling results indicated violations of the agency's fireworks regulations and stated that '*the staff requests*' that Jake's Fireworks destroy the products. Subsequent Notices stated that '*the staff* reiterates its *requests.*'"). The Court also failed to consider that, like the letter in *Jake's Fireworks*, the August 11 Letter was not issued by an official with legal authority to take final agency action. *Id*. ("The "lack[] [of] authority to issue binding final orders" meant that the deadline given to comply was "render[ed] . . . advisory."); *see* Declaration of Keith Graham, ECF No. 101-2.

2. Moreover, if the agency action was final, then it was a "final order" reviewable only in the Court of Appeals. In holding otherwise, this Court diverged from the Ninth Circuit's conclusion that "a 'final agency action' is analytically equivalent to a 'final order' under the Hobbs Act." *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000); *see also Am. Trucking Ass'n, Inc. v. United States*, 755 F.2d 1292, 1296 (7th Cir. 1985). Further, the Court never identified what type of agency action the August 11 Letter was, if not a final order. *See* PI Op. at 7. The Court's divergence from two other federal appellate courts' views on this matter, combined with its inability to identify the type of agency action at issue, demonstrate that, at a minimum, "Defendant's appeal presents an admittedly difficult legal question." *Maryland*, 777 F. Supp. 3d 496, 500 (D. Md. 2025) (quotations omitted). Plaintiffs have all but admitted the difficulty of the legal question by filing a preemptive Hobbs Act petition for review in the court of appeals, *see* Petition for Review, *Illinois v. DOT*, No. 26-2407, Doc. 2-1 (4th Cir., Oct. 5, 2026), after concluding there was substantial enough risk of reversal to warrant "protect[ing] their right to judicial review in the event the district court is held to lack jurisdiction." *Id*. at 3.

3. It was also likely error to conclude that Federal Defendants' actions violated the Spending Clause. U.S. Const. art. I, § 8, cl. 1. To start, the Spending Clause and its clarity rule are

not triggered here: The Spending Clause speaks to conditions on funding, and there is no identified threat to the States' funding here, or threatened liability for their own (or their officers') conduct. *See Landor v. Louisiana Dep't of Corrs. & Pub. Safety*, 146 S. Ct. 1931, 1940-41 (2026) (describing "sanctions" for "violating conditions found in … Spending Clause legislation"). But even assuming the Clause might be implicated, the States were clearly on notice that the data they submitted to CDLIS would be accessible by the federal government. Congress enacted that condition clearly: "The Secretary may require a State, as a condition of an award of grant money under this section, to provide the Secretary access to all State licensing status and driver history records via an electronic information system, subject to section 2721 of title 18." 49 U.S.C. § 31106(c)(2). The statutory text thus gives States clear notice that their ability to receive federal highway funding may be conditioned on DOT's access to "all State licensing status and driver history records[.]" *Id*.

The Court did not address this section of statute, which—at the very least—affords Federal Defendants a strong argument warranting a stay of the preliminary injunction. Plus, the Court implicitly acknowledged that the States were clearly on notice that the federal government could access the CDLIS data—at least through non-bulk requests. *See* TRO Op. at 15 (acknowledging Federal Defendants may "access[] pointer records in CDLIS with specific individualized requests"); PI Op. at 11-12 (same). The Court distinguished, however, between this "access" right and the authority to take "custody" of the data. *See* PI Op. at 12-13. This distinction ignores the plain meaning of "access," which includes the ability to "obtain" something, *see* Federal Defs.' Br., ECF No. 101 at 11-12. It also overlooks the fact that DOT was never required to contract with AAMVA and could have chosen to operate CDLIS on its own. 49 U.S.C. § 31309(d). Thus, DOT was clearly authorized to take custody of the data as a condition on federal funding.

4. The Court's analysis of the APA issues in this case also indicates they pose difficult legal questions.

On arbitrariness and capriciousness, the Court failed to credit Federal Defendants' explanation of the need for and planned uses for the data to "verify[] [CDL] validity and conduct[] motor carrier safety assessments." ECF No. 45 at 22. Instead, it subjected Federal Defendants' explanation to heightened scrutiny when it should have upheld it so long as the agency's "path may reasonably [have] be[en] discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court also erred in concluding that the agency failed to adequately address a likely "dramatic change in policy." PI Op. at 11. The change-in-position doctrine only applies where the agency has actually articulated a policy from which it departed. *See FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 569-70 (2025) (explaining the applicability of the change-in-position doctrine). In any event, the States have no legitimate or serious reliance interest in any prior policy because the records are already accessible by the federal government (and have been accessed on a case-by-case basis), and DOT could have operated CDLIS on its own from the very beginning without using AAMVA as an intermediary. *See id.* at 585; 49 U.S.C. § 31309(d).

On the Driver's Privacy Protection Act ("DPPA"), the Court's rejection of DOT's expressed need for the data to carry out its statutory responsibilities conflicts with the text of the DPPA exception "[f]or use by any government agency . . . in carrying out its functions." 18 U.S.C. § 2721(b)(1); *see also* 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of DPPA lead sponsor Rep. Jim Moran) (DPPA "authorizes unlimited access to personal information for courts, law enforcement, governmental agencies, and for other driver and automobile safety purposes."). The Court's conclusion is also contrary to the Seventh Circuit's view that "the personal information collected [is] 'for use' in connection with the [government's] duties, *whether or not*

*each item of information . . . would ever be used*." *Senne v. Village of Palatine*, 784 F.3d 444, 447 (7th Cir. 2015) (emphasis added).

On the Privacy Act, the Court did not even discuss the system of records DOT intends to house the CDLIS data within before reaching its conclusion that it could not lawfully do so. *See* TRO Op. at 10. FMCSA has an existing system of records named the Electronic Document Management System (EDMS), which covers "[a]ll operators of interstate commercial motor vehicles, licensed or unlicensed." Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727, 35727 (June 21, 2006). For reasons previously discussed by Federal Defendants, ECF No. 45 at 18-20, this system satisfies the Privacy Act requirements relevant here, and at the very least, it raises questions more difficult than the Court's limited analysis suggests.

On state consultation, the Court erred in rejecting Federal Defendants' argument that consultation was not required here. It is undisputed that DOT need not consult with the States when it accesses the CDLIS records one-by-one. Nor is there a textual basis to conclude that consultation need not be required for one-by-one requests but required for bulk requests of the very same type of data. This Court concluded otherwise, even though it is highly counterintuitive to conclude that Congress intended to require Federal Defendants to consult with all 50 States before taking any routine investigative action. But the Court's "role [is] to make sense rather than nonsense out of the *corpus juris*," *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991), not adopt an interpretation that causes "highly counterintuitive result[s]" and undermines the effective functioning of the scheme Congress created, *see Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338, 360 (2021) (courts should reject an interpretation that has a "highly counterintuitive result").

## II. Federal Defendants will be irreparably injured without a stay.

"[A] stay applicant can[] demonstrate irreparable harm from a threshold error," such as a Court's exercise of jurisdiction where it is lacking. *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025); *see also Trump v. California*, No. 26A124, 2026 WL 2473573, at *5 (U.S. Aug. 24, 2026) (same); *Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs.*, --- F.4th ----, No. 26-1321, 2026 WL 2969474, at *5 (1st Cir. Oct. 2, 2026); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time [the government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury").

In addition to the irreparable harm to DOT specifically, the Court's broad injunction is imposing ongoing irreparable harm to the federal government, including agencies that are not defendants in this case.

The Constitution vests the "entire" executive power in the President. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). But the Court has in effect seized a portion of that power for itself. The Court's offer that "to the extent any federal officer or agency is unclear whether an actually contemplated action, decision or course of conduct would be in violation of the Court's Order, those concerns can be brought to the Court for a ruling," is untenable. Order Denying Clarification at 1. The prospect of advance judicial approval is no remedy for the order's chilling effect on the exercise of legitimate Executive Branch authorities because it exchanges presidential supervision over the execution of the laws with judicial supervision.. *Cf. Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("an agency under the direction of the executive branch . . . must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*,

657 F.2d 298, 406 (D.C. Cir. 1981) ("The authority of the President to control and supervise executive policymaking is derived from the Constitution.").

Further, any hypothetical ruling from this Court on on a planned exercise of Executive Branch authorities would be an advisory opinion to the Executive Branch, which courts are strictly forbidden from issuing. *Clinton v. Jones*, 520 U.S. 681, 700 (1997) ("the judicial power to decide cases and controversies does not include the provision of purely advisory opinions to the Executive"); *Case of Hayburn*, 2 U.S. 408, 410 (1792) (doubting the "propriety of giving an opinion in a case which has not yet come regularly and judicially before us"). Such limitations exist to ensure that judges resolve justiciable controversies, not supervise "day-to-day agency management." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

**III. The remaining stay factors favor granting a stay pending appeal.**

The remaining factors also favor granting a stay. Plaintiffs have not established irreparable harm if this Court grants a stay, and the public interest and the balance of the equities weigh in favor of a stay.

Plaintiffs have not established that they would be irreparably harmed if AAMVA honors FMSCA's request. The declarations from State Departments of Motor Vehicles broadly claim that States are being harmed because they would "lose control and oversight" over their confidential records. *E.g.*, ECF No. 3-13 ¶ 28. But those declarations do not explain how that purported loss of oversight represents a *harm* to the States. FMCSA has expressly assured that the requested data would be held within an established System of Records in accordance with the Privacy Act of 1974. ECF No. 1-2 at 9; *contra* TRO Op. at 14. Plaintiffs have made no showing that the requested data will be improperly disclosed or made public at all.

Nor do Plaintiffs' fears about a (lawful)[1] disclosure to another federal agency change the analysis. Courts have "declined to find irreparable injury" from the disclosure of private information "where the challenged disclosure is not 'public'" but instead is to a small number of "individuals obligated to keep [the information] confidential." *Univ. of Cal. Student Ass'n v. Carter*, 766 F. Supp. 3d 114, 121 (D.D.C. 2025). Under those circumstances, a court can fashion "adequate . . . corrective relief" after the fact or order those individuals to return or destroy the records. *Id.* (citation omitted). Because adequate relief would be available at a later date, such harms are speculative and not irreparable. *See Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

To the extent that Plaintiffs have demonstrated irreparable harm at all, it is heavily outweighed by the "the respect due [to] coordinate branches of government," *Baker v. Carr*, 369 U.S. 186, 217 (1962), and Federal Defendants' need for the "data to ensure that States issue CLPs and CDLs to drivers who are qualified, properly trained, and do not pose significant safety risk[.]" Declaration of Thomas Liberatore, ECF 45-1 at ¶ 17. The public has an interest in ensuring that CDLs and Commercial License Permits are appropriately regulated and issued. This data is crucial to "the Agency's efforts to ensure that every driver permitted to operate an 80,000-pound commercial motor vehicle on the Nation's roadways is properly verified, tested, licensed, and qualified." Second Declaration of Thomas Liberatore, ECF 101-1 at ¶ 29. The preliminary injunction disrupts Federal Defendants' efforts to ensure the integrity and issuance of CDLs and Commercial License Permits, thus significantly harming that interest. Indeed, the CMVSA

[1] The Court's concern that FMSCA has not followed its own policy for data sharing with other agencies is premature, *see* PI Op. at 11, as there is no reason to suspect that FMSCA would not execute the appropriate data sharing agreement.

contemplates DOT will have access to information systems established under chapter 313 of title 49 for the express purpose of "evaluat[ing] the safety fitness of motor carriers and drivers" and "develop[ing] strategies to mitigate safety problems." 49 U.S.C. § 31106(a)(3)(B), (C). Limiting DOT's access will severely harm the public interest—as identified expressly in the CMVSA—in ensuring that the Nation's roadways are safe for public use. That equity too weighs strongly in the Federal Defendants' favor.

"[T]he public's trust in the Plaintiff States' promises to safeguard its residents' personal information," TRO Op. at 14, is plainly outweighed by the public's trust in the federal government's promises to safeguard their physical safety on the Nation's roadways. That is especially true because Plaintiffs do not have "a particularly weighty interest in their reliance" on relief that this Court "likely lacked jurisdiction to enter." *Am. Fed'n of Gov't Emps. Loc. 2305*, 2026 WL 2969474, at *5. Thus, the balance of equities decisively tips in Federal Defendants' favor.

***

For these reasons, Federal Defendants respectfully request that the Court stay its injunction pending appeal.

//

//

//

Dated: October 8, 2026

Respectfully submitted,

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY E. GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

*Counsel for Federal Defendants*