**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

STATE OF ILLINOIS, *et al.*,

*Plaintiffs*,

and

AMERICAN FEDERATION OF TEACHERS,

*Plaintiff-Intervenor,*

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,

*Defendants*.

No. 1:26-cv-2547 (AJT/IDD)

**PLAINTIFF-INTERVENOR AMERICAN FEDERATION OF TEACHERS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

*Counsel for Plaintiff-Intervenor AFT*

October 22, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. The Federal Defendants have not made a strong showing that they will succeed on the merits .......... 5

  A. The Federal Defendants are unlikely to succeed on their jurisdictional arguments. .......... 6

  B. The Federal Defendants are unlikely to succeed on their merits arguments. .......... 10

II. The Federal Defendants have not established irreparable harm. .......... 14

III. The public interest and the balance of the equities weigh against a stay. .......... 17

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Cases** **Pages**

*American Federation of Teachers v. Bessent*,
No. 25-1282, 2025 WL 1023638 (4th Cir. Apr. 7, 2025) .................................................. 5

*American Trucking Ass'n v. United States*,
755 F.2d 1292 (7th Cir. 1985) .......................................................................................... 9

*Bennett v. Spear*,
520 U.S. 154 (1997) ..................................................................................................... 6, 7

*Blitz v. Napolitano*,
700 F.3d 733 (4th Cir. 2012) ............................................................................................ 9

*Brake Plus NWA, Inc. v. U.S. Department of Transportation*,
176 F.4th 1037 (8th Cir. 2026) ......................................................................................... 7

*Ciba-Geigy v. U.S. Environmental Protection Agency*,
801 F.2d 430 (D.C. Cir. 1986) .......................................................................................... 7

*City of Alexandria v. Helms*,
728 F.2d 643 (4th Cir. 1984) ............................................................................................ 9

*CSI Aviation Services, Inc. v. U.S. Department of Transportation*,
637 F.3d 408 (D.C. Cir. 2011) .......................................................................................... 7

*Does 1–26 v. Musk*,
No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025) ................................................ 5

*Fehrman v. Hearst Consolidated Publications, Inc.*,
170 F. Supp. 95 (D. Md. 1959) ....................................................................................... 10

*Gaston v. LexisNexis Risk Solutions, Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ........................................................................... 13

*Genesis GSA Strategic One, LLC v. Howard County*,
No. 1:26-CV-00915-ABA, 2026 WL 3056874 (D. Md. Oct. 13, 2026) ............................ 5

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ......................................................................................................... 4

*Illinois v. U.S. Department of Homeland Security*,
No. 1:26-mc-00019-AJT-IDD (E.D. Va. Oct. 21, 2026) ........................................... 12, 13

*Jake's Fireworks Inc. v. Consumer Product Safety Commission*,
105 F.4th 627 (4th Cir. 2024) .......... 7, 8

*KalshiEX LLC v. Commodity Futures Trading Commission*,
119 F.4th 58 (D.C. Cir. 2024) .......... 4

*Maryland v. U.S. Department of Agriculture*,
777 F. Supp. 3d 496 (D. Md. 2025) .......... 5, 6

*McClatchy Co. v. Town of Chapel Hill*,
657 F. Supp. 3d 769 (M.D.N.C. 2023) .......... 13

*Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983) .......... 14

*North Carolina Green Party v. North Carolina State Board of Elections*,
620 F. Supp. 3d 407 (E.D.N.C. 2022) .......... 5

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 4, 5

*PFLAG, Inc. v. Trump*,
No. 25-1279, 2026 WL 1429738 (4th Cir. May 21, 2026) .......... 4, 5

*Regal Knitwear Co. v. National Labor Relations Board*,
324 U.S. 9 (1945) .......... 16

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) .......... 4

*Senior Executives Ass'n v. United States*,
891 F. Supp. 2d 745 (D. Md. 2012) .......... 17

*Senne v. Village of Palatine*,
784 F.3d 444 (7th Cir. 2015) .......... 12

*Soundboard Ass'n v. Federal Trade Commission*,
888 F.3d 1261 (D.C. Cir. 2018) .......... 7

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) .......... 5

*Trump v. California*,
No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) .......... 15

*United States v. Virginia*,
No. 3:26CV545, 2026 WL 2257488 (E.D. Va. Aug. 5, 2026) .......................................... 5

*US West Communications, Inc. v. Hamilton*,
224 F.3d 1049 (9th Cir. 2000) ........................................................................................ 8

*Virginia Railway v. United States*,
272 U.S. 658 (1926) ........................................................................................................ 4

*Weaver v. Federal Motor Carrier Safety Administration*,
744 F.3d 142 (D.C. Cir. 2014) .................................................................................. 3, 9, 10

**Statutes**

5 U.S.C. § 552a(e)(1) ......................................................................................................... 13

5 U.S.C. § 704 ...................................................................................................................... 9

5 U.S.C. § 705 ...................................................................................................................... 3

18 U.S.C. § 2721(b)(1) .................................................................................................. 11, 12

28 U.S.C. § 2342 .................................................................................................................. 8

28 U.S.C. § 2342(3) ............................................................................................................. 9

**Regulations**

49 C.F.R. § 501.8(d)(5) ........................................................................................................ 8

## INTRODUCTION

Commercial drivers' licenses (CDLs), like other drivers' licenses, are issued by the states—not by the federal government. But to enable states to share information in order to eliminate the practice of drivers obtaining multiple CDLs from different jurisdictions to evade the consequences of multiple traffic infractions or suspensions, nearly forty years ago, the federal government authorized the creation of the Commercial Driver's License Information System (CDLIS). Managed by a nonprofit organization called the American Association of Motor Vehicle Administrators (AAMVA), the CDLIS contains detailed personal information that applicants for CDLs—like the driver members of Plaintiff-Intervenor American Federation of Teachers (AFT)—are required to provide to state agencies, including their social security numbers, addresses, and dates of birth. Over the last four decades, CDL-issuing jurisdictions have used CDLIS to share driver information in furtherance of its purposes without compromising privacy. And over those four decades, the federal government has repeatedly acknowledged that the CDLIS is *not* a federal records system and that the data contained in it belongs to the States.

In August 2026, however, the Federal Motor Carrier Safety Administration (FMCSA) demanded that the AAMVA turn over the CDLIS master pointer records (MPRs) for millions of drivers. Twenty-four states and the District of Columbia (the Plaintiff States) challenged the demand and moved for a preliminary injunction, which this Court granted. The Court found that the demand is likely unlawful on *six* independent grounds, and recognizing that the Federal Defendants have been unable "to give any understandable substantive explanation for how the limited but highly sensitive information … would contribute in any meaningful way to any of [their] stated, mostly hypothetical uses," PI Order, ECF No. 113 at 11, issued an order largely

maintaining the status quo, and enjoining the transfer of CDLIS data provided by the Plaintiff States.

Nearly a month later, the Federal Defendants appealed and moved for a stay of the preliminary injunction pending appeal. They argue that "difficult legal questions" and the fact that the injunction would stop the Executive Branch from doing what it wants entitle it to extraordinary relief. But this Court correctly found that the requirements for a preliminary injunction were satisfied and thus barred the irreversible, unlawful disclosure of drivers' sensitive personal information. The federal government has for forty years carried out its statutory responsibilities without obtaining the access to records it now demands, and it has not demonstrated any urgent need for upsetting the status quo while it prosecutes its appeal of this Court's preliminary injunction. The motion for a stay pending appeal should therefore be denied.

## BACKGROUND

As discussed in more detail in the Court's temporary restraining order (TRO), ECF No. 54 at 1–2, and PI Order, ECF No. 113 at 3–6, this case arises out of FMCSA's request that AAMVA provide it with each and every pointer record within the CDLIS for the last five years, which culminated in an August 11, 2026 letter which stated that, if AAMVA did not comply with this data demand, the Department of Transportation (DOT) "w[ould] pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the [DHS] subpoena, and considering terminating its contract with AAMVA." ECF No. 1-2 at 21.

After twenty-one states and the District of Columbia commenced this action, this Court entered an administrative stay enjoining AAMVA "from providing the demanded data and information to any Defendant, or any other agency acting in coordination with Defendants" and enjoining any defendant "from taking any adverse actions to implement or enforce, or that are

otherwise related to, its data demand." ECF No. 25 at 2. On August 20, 2026, the Court issued a TRO. *See* ECF No. 54. In so doing, the Court first explained that it had jurisdiction because the August 11 letter from FMCSA constituted a "final agency action" under the APA, and that review of that action was not vested in the court of appeals pursuant to the Hobbs Act. *Id.* at 6–7 (citing *Weaver v. FMCSA*, 744 F.3d 142, 146 (D.C. Cir. 2014)). Turning to the merits, the Court concluded that the Plaintiff States were likely to succeed on the merits of their APA, spending clause, and contract claims. *See id.* at 8–13. The Court also found that irreparable harm was likely absent relief, explaining that "the 17 million records at issue here, the overwhelming portion of which no doubt includes data on U.S. citizens, will not be disclosed to a small number of individuals with confidentiality obligations." *Id.* at 13–14. Finally, the Court found the equities and the public interest favored the requested injunction. *See id.* at 14–15.

On September 17, 2026, the Court granted the Plaintiff States' motion for a preliminary injunction, reaffirming each of its earlier conclusions as to the appropriateness of preliminary relief. PI Order, ECF No. 113.

The Court subsequently granted permissive intervenor status to AFT, a national labor union whose membership includes approximately 11,000 workers in the U.S. transportation industry, including school bus drivers and maintenance drivers in Alabama, California, Colorado, Florida, Georgia, Illinois, Kansas, Michigan, Minnesota, Montana, New Mexico, New York, Oklahoma, Oregon, and Texas. ECF No. 114. On October 8, 2026, AFT moved for a stay of the Data Demand pursuant to 5 U.S.C. § 705. ECF No. 131. A hearing on that motion is scheduled for November 4, 2026.

Eight days after the Court issued the preliminary injunction, the Federal Defendants filed a motion to "clarify" that the injunction "applies only to the specific statutory authorities on which

the Federal Defendants have relied or, alternatively, to modify and narrow the scope of the injunction accordingly," ECF No. 118 at 1. The Court denied that motion, on the ground that the scope of the injunction was "clear on its face with respect to the transfer of the files constituting the Data Demand." ECF No. 124. At the same time, the Court stated that, to the extent that "any federal officer or agency is unclear" as to whether a specific action was within the scope of the injunction, such "concerns can be brought to the Court for a ruling." *Id.*

On October 8, 2026, twenty-one days after the Court entered the preliminary injunction, the Federal Defendants noticed an appeal and a motion to stay the preliminary injunction pending appeal. The Federal Defendants did not seek expedition of their motion.

**LEGAL STANDARD**

A stay pending appeal is "an exercise of judicial discretion," *Virginia Railway v. United States*, 272 U.S. 658, 672 (1926), granted only in "extraordinary circumstances." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). In determining whether to exercise that discretion, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). "The first two factors are the 'most critical,'… [a]nd a showing of irreparable injury is necessary for a stay." *PFLAG, Inc. v. Trump*, No. 25-1279, 2026 WL 1429738, at *3 (4th Cir. May 21, 2026) (Benjamin, J., concurring) (quoting *Nken*, 556 U.S. at 434 and citing *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024)).

## ARGUMENT

### I. The Federal Defendants have not made a strong showing that they will succeed on the merits.

To obtain a stay pending appeal, an applicant must make a "strong showing that he is likely to succeed on the merits." *PFLAG*, 2026 WL 1429738, at *3 (Benjamin, J., concurring) (quoting *Nken*, 556 U.S. at 428); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *3 (4th Cir. July 1, 2025) (same); *AFT v. Bessent*, No. 25-1282, 2025 WL 1023638, at *1 (4th Cir. Apr. 7, 2025) (Agee, J., concurring) (same); *Does 1–26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *2 (4th Cir. Mar. 28, 2025) (Quattlebaum, J., concurring) (same).

Citing non-binding authority, the Federal Defendants argue that, here, where a district court is considering whether to stay its own order pending appeal, a movant should be required to show only the existence of a "difficult legal question." Fed. Defs.' Motion to Stay (Motion), ECF No. 136 at 2 (quoting *Maryland v. USDA*, 777 F. Supp. 3d 496, 500 (D. Md. 2025)). Neither the Fourth Circuit nor the Supreme Court has suggested that district courts should apply this lower standard, though, and district courts throughout this circuit regularly require a "strong showing" of a likelihood of success in order to obtain a stay pending appeal. *See, e.g.*, *Genesis GSA Strategic One, LLC v. Howard Cnty.*, No. 1:26-CV-00915-ABA, 2026 WL 3056874, at *1 (D. Md. Oct. 13, 2026); *United States v. Virginia*, No. 3:26CV545, 2026 WL 2257488, at *2 (E.D. Va. Aug. 5, 2026); *N.C. Green Party v. N.C. State Bd. of Elections*, 620 F. Supp. 3d 407, 410 (E.D.N.C. 2022). This requirement overlaps with the merits requirement in obtaining a preliminary injunction, "not because [a stay pending appeal and a preliminary injunction] are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434.

The well-established “strong showing” standard makes good sense for an additional reason: If a defendant could obtain a stay of a preliminary injunction pending appeal based solely on the existence of “difficult legal questions,” district courts’ authority to issue preliminary injunctive relief in a considerable number of cases would be nullified. Moreover, it makes little sense for district courts to stay their own preliminary injunctions pending appeal where the appellate court, applying the traditional requirement of a strong likelihood of success on the merits, would not grant a stay. Indeed, in the one case on which the Federal Defendants rely, the district court concluded that the government was not entitled to a stay when—as here—the legal questions “are complex and involve issues of first impression” if “the Government simply rehashes the same arguments that the Court considered in detail and rejected in the Memorandum accompanying the Preliminary Injunction Order.” *Maryland*, 777 F. Supp. 3d at 500. Under either the traditional standard or that which the Federal Defendants propose, then, the merits factor weighs against the requested stay.

### A. The Federal Defendants are unlikely to succeed on their jurisdictional arguments.

The Federal Defendants continue to press two jurisdictional arguments, neither of which have merit and both of which this Court thoroughly addressed in its two decisions granting preliminary relief. *See* TRO, ECF No. 54 at 6–8; PI Order, ECF No. 113 at 3–7.

First, the Federal Defendants argue that the August 11 Letter demanding AAMVA turn over the MPRs or face, in the words of that letter, “immediate action,” ECF No. 1-2 at 21, was not final agency action. As this Court has twice concluded, that letter plainly satisfies the two-part standard for finality set out in *Bennett v. Spear*, 520 U.S. 154 (1997). *See* TRO, ECF No. 54 at 6–7; PI Order, ECF No. 113 at 3–7. On its face, the letter “mark[s] the consummation of the agency's decisionmaking process” and is not “tentative or interlocutory.” *Bennett*, 520 U.S. at 178. The

agency's demand that AAMVA turn over the MPRs was a final, considered one, and the agency was clear that it would not continue negotiating. To the contrary, the letter states that, given AAMVA's decision, "DOT has no choice but to take immediate action to secure the production of the requested pointer records," unless *AAMVA* "reconsider[ed] its position." ECF No. 1-2 at 21–22.

Second, the letter was one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted). The letter reflected FMCSA's (erroneous) determination that AAMVA had an "obligation to produce DOT's own records to DOT," and that a failure to comply with that supposed obligation would result in "immediate action." ECF No. 1-2 at 21. This "definitive statement of the agency's legal position" and demand that AAMVA comply is similar to other letters courts have found to constitute final agency action. *CSI Aviation Services, Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011); *see Brake Plus NWA, Inc. v. U.S. Dep't of Transp.*, 176 F.4th 1037, 1041–44 (8th Cir. 2026) (holding that letter issued by NHTSA Chief Counsel stating agency's view of law and threatening further action constituted final agency action); *Ciba-Geigy v. EPA*, 801 F.2d 430, 436–37 (D.C. Cir. 1986) (concluding that letter from an agency official stating the agency's position and threatening enforcement action unless the company complied constituted final agency action). Like the letters at issue in those cases, in this case, "[n]ot only did [DOT's] statement of position admit of no ambiguity, but it gave no indication that it was subject to further agency consideration or possible modification." *Ciba-Geigy*, 801 F.2d at 436–37.

Despite the firmness of the letter's text, the Federal Defendants continue to argue that the Fourth Circuit's decision in *Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627 (4th Cir. 2024), compels a different conclusion. *See* Motion, ECF No. 136 at 3. But as this Court has explained, *see* PI

Order, ECF No. 113 at 6–7, that case is inapposite. There, the Fourth Circuit held that a non-compliance notice issued by an office with only "advisory and investigatory functions" failed to meet the "consummation" requirement of *Bennett*. *Jake's Fireworks*, 105 F.4th at 631–32. Staff in that office lacked "the power to make a final determination as to whether a violation has occurred and whether to pursue enforcement;" they could only make recommendations to the ultimate decisionmakers. *Id.* at 632. Thus, the non-compliance notice was not "properly attributable to the agency itself." *Id.* at 631 (quoting *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)). The August 11 Letter, by contrast, states DOT's final conclusion that AAMVA has an obligation to provide the requested data and states that DOT will "take immediate action" based on AAMVA's failure to comply. ECF No. 1-2 at 21. And unlike the notice at issue in *Jake's Fireworks*, the letter was sent by FMCSA's Chief Counsel, whom by regulation, has the power to issue such an "authoritative interpretation" of the relevant laws. 49 C.F.R. § 501.8(d)(5).

Second, arguing that the Hobbs Act, 28 U.S.C. § 2342, provides exclusive jurisdiction for this action in the courts of appeals, the Federal Defendants argue this Court "diverged" from the Ninth Circuit's decision in *US West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000). Motion, ECF No. 136 at 4. As this Court already recognized, though, *US West* is "readily distinguishable." PI Order, ECF No. 113 at 7. In the language on which the Federal Defendants rely, the Ninth Circuit recognized that the same two-prong *Bennett* standard applies in determining whether an order is "final" for purposes of review under the Hobbs Act as applies in determining finality of agency actions under the Administrative Procedure Act. *See US West*, 224 F.3d at 1055. The dispute in that case was not whether the action being discussed—an "Order" issued by the Federal Trade Commission after receiving extensive comments—was an "order" for purposes of the Hobbs Act, but rather whether it was a "final" order. *See id.* at 1054–55.

The Seventh Circuit's analysis in *American Trucking Ass'n v. United States*, 755 F.2d 1292, 1296 (7th Cir. 1985), cited by the Federal Defendants, Motion, ECF No. 136 at 4, similarly focuses on finality—concluding the challenged action was not reviewable under the Hobbs Act because it did "not to purport to announce rules of law nor do they impose an obligation, determine a right or liability or fix a legal relationship." *Am. Trucking Ass'n*, 755 F.2d at 1297.

As the D.C. Circuit has explained, these cases "do not confront the structure of the Hobbs Act; instead they address only the question whether such actions are equivalent for the purposes of being final and therefore permitting judicial review. Being equivalent for the purposes of finality, however, does not make them equivalent in all respects." *Weaver*, 744 F.3d at 146. *Weaver* is the only court of appeals decision to address the question relevant here: whether a particular final agency action is an "order" under the Hobbs Act. There, the court explicitly rejected the Federal Defendants' argument that "any activity" taken by DOT under one of the statutes listed in 28 U.S.C. § 2342(3) "that qualifies as a 'final agency action' under 5 U.S.C. § 704 also constitutes a 'final order' (if it is not a 'rule' or 'regulation') under § 2342(3)." 744 F.3d at 146. Rather, the court concluded that the Hobbs Act "appears to contemplate 'actions' of the Secretary [of Transportation] under the named statutes that are *not* rules, regulations or final orders, i.e., a residue of agency activity subject to initial review in the district court." *Id.* Whether an action is an order or falls within that "residue," the court concluded, turns on whether the agency "compiled a record with an eye toward judicial review." *Id.* at 147. Notably, the Fourth Circuit uses this same standard to determine whether an action is an "order" under other statutes. *See Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012); *City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir. 1984).

Applying the *Weaver* standard, this Court held in its TRO decision that the Data Demand is not a rule or regulation, and that FMCSA did not "engage in any kind of adjudication or 'compile

a record with an eye toward judicial review' that would make the August 11 letter a 'final order.'" TRO, ECF No. 54 at 7 (quoting *Weaver*, 744 F.3d at 147). The Federal Defendants do not dispute this application of *Weaver*; they simply argue that *Weaver* was wrongly decided. But the fact that, for the Federal Defendants to prevail on appeal, the Fourth Circuit would not only have to create a circuit split and depart from the ruling of the one court of appeals that *has* addressed the relevant statutory question, but also depart from its own circuit precedent as to the meaning of "order" under analogous statutes, indicates that the Federal Defendants are not likely to prevail on appeal. And the Federal Defendants' inability to point to any cases that have held otherwise undercuts their assertion that this presents a "difficult legal question." Motion, ECF No. 136 at 4.

Finally, that the Plaintiff States, like AFT, filed a protective petition for review under the Hobbs Act is not itself an "admi[ssion] [of] the difficulty of the legal question." ECF No. 136 at 4. Regardless of the Federal Defendants' likelihood of success on their jurisdictional arguments, the fact remains that the Federal Defendants are continuing to raise those jurisdictional arguments. In light of the 60-day deadline for filing a petition under the Hobbs Act, filing a protective petition for review is simply responsible lawyering, not a concession as to the strength of the Federal Defendants' arguments. *See also Fehrman v. Hearst Consol. Publ'ns, Inc.*, 170 F. Supp. 95, 96 (D. Md. 1959) ("[S]omething more than such protective action is required to constitute acquiescence or waiver.").

**B. The Federal Defendants are unlikely to succeed on their merits arguments.**

This Court found that the Data Demand was likely unlawful on five different grounds, each one of which independently would justify a preliminary injunction: (1) FMCSA's failure to comply with the statutory consultation requirement; (2) the incompatibility of the Data Demand with the DPPA; (3) the incompatibility of the Data Demand with the Privacy Act; (4) the arbitrary and capricious nature of FMCSA decisionmaking; and (5) the lack of clear notice as required by the

Spending Clause. *See* PI Order, ECF No. 113 at 8–13.[1] As to the Privacy Act and arbitrary and capricious claims, the Court found the Data Demand likely unlawful for multiple reasons, any of which would be sufficient to support a preliminary injunction. To obtain a reversal of the preliminary injunction on the merits, the Federal Defendants would have to show that this Court erred as to each and every one of these holdings. They are not likely to do so as to any one, much less as to all of them.

For the reasons stated by the Plaintiff States, and as recognized by the Court in its prior orders, the Federal Defendants are unlikely to prevail in their appeal as to the statutory consultation requirement and the Spending Clause.

As to the DPPA, this Court correctly concluded that the Agency Defendants' "demand that the AAMVA transfer the MPRs would likely violate the DPPA." PI Order, ECF No. 113 at 8. The only statutory basis the Agency Defendants invoke for obtaining the MPRs is the DPPA's exception that permits nonconsensual disclosure of records "for use by any government agency … in carrying out its functions." 18 U.S.C. § 2721(b)(1). As this Court has explained, that exception "is likely not applicable here because the Federal Defendants have not made any credible showing that FMCSA will actually use all of the records it demands or that there is a particular statutory function for which FMCSA intends to use the bulk data." PI Order, ECF No. 113, at 8. Indeed, as the Court observed, FMCSA seeks the data not "solely for [its] own use in discharge of its own statutory mandates," but to share that information with "DHS for use in connection with immigration enforcement." *Id.* at 8–9.

[1] The Court also held that compliance with the Data Demand would likely violate the terms of contracts between AAMVA and four licensing jurisdictions. PI Order, ECF No. 113 at 13. AAMVA has not appealed that holding, and the Federal Defendants do not reference it in their motion to stay.

The Federal Defendants offer no new arguments to call into question the analysis that this Court has already undertaken. They assert only that the Court's DPPA ruling conflicts with *Senne v. Village of Palatine*, 784 F.3d 444 (7th Cir. 2015). *See* Motion, ECF No. 136 at 6–7. But *Senne* did not deal with a situation like this one, where a government agency has not explained how the requested information would be used to carry out its functions. There, the Seventh Circuit held that the disclosure of personal information on a parking ticket was lawful, given the ample, undisputed evidence that the police department at issue used the personal information on parking tickets in various, specific ways in carrying out its functions. *Senne*, 784 F.3d at 446. The plaintiff's argument was "not that personal information on a parking ticket has no utility to the police but that the police made no use of the personal information on *his* parking ticket." *Id.* at 447. The Seventh Circuit held that, to fall within section 2721(b)(1), all that mattered was that the "personal information collected by the Palatine police department … was 'for use' in connection with the department's duties, whether or not each item of information, such as [the plaintiff's] address, would ever be used." *Id*. At the same time, as this Court explained in its recent order quashing the Department of Homeland Security's subpoena to AAMVA in a related case, *Senne* "recognized that while an agency's 'use' for personal information need not be 'immediate or certain' to come within the government use exception, the use must be particularized and narrowly defined." *Illinois v. U.S. Department of Homeland Security*, No. 1:26-mc-00019-AJT-IDD, ECF No. 89 at 14 (E.D. Va. Oct. 21, 2026) (quoting *Senne*, 784 F.3d at 446). This Court's conclusion that, the government use exception does not apply here "given the absence of any credible substantive explanation for how the requested data transfer is needed for FMCSA to perform its statutory purpose," is entirely consistent with that decision. PI Order, ECF No. 113 at 11. Moreover, as the Court concluded with respect to DHS in the related case, FMCSA "cannot conceivably 'use'—nor

does it attempt to specify how it can use—each particular piece of protected personal information contained in the 17 million sought-after records, dating back five years, to effectuate 'its functions.'" *Illinois v. DHS* Order, at 15. That FMCSA intends to turn the information over to DHS is not enough; as multiple courts have recognized, an agency's turning protected information over to someone else is not "using" that information "in carrying out its functions" as required to invoke § 2721(b)(1). *See McClatchy Co. v. Town of Chapel Hill*, 657 F. Supp. 3d 769, 777–78 (M.D.N.C. 2023); *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 346–47 (W.D.N.C. 2020). Indeed, "it would be nonsensical to hold that a permissible governmental 'function' under the DPPA is to publicly disclose personal information[.]" *Gaston*, 483 F. Supp. 3d at 346.

With respect to the Privacy Act, the Court held that "the transfer of the MPRs as demanded in the Data Demand would likely violate" the statute in three separate ways. ECF No. 113 at 9. First, the Federal Defendants "have not complied with the Act's notice requirements that FMCSA must satisfy before including new data into a new or newly modified 'system of records.'" *Id.* Second, the Federal Defendants have not "articulate[d] a specific purpose 'required to be accomplished' by FMCSA that would justify the possession and maintenance of these records." *Id.* (quoting 5 U.S.C. § 552a(e)(1)). And third, the Federal Defendants "intend to transfer the Data to third parties, including other federal agencies, such as DHS, in likely violation of prohibitions against disclosing personal information." *Id.* The Federal Defendants do not contend the Court erred but assert that the TRO opinion "did not even discuss" the existing system of records for CDLIS data. Motion, ECF No. 136 at 6. Yet their motion fails to explain how that omission is relevant to the three likely violations identified by the Court in issuing its preliminary injunction. Further, the Plaintiff States have explained that FMCSA's existing system of records does not apply to the CDLIS data demanded by the Federal Defendants, *see* Pl. States TRO Reply, ECF

No. 49 at 11–12, and the Federal Defendants do not offer any rebuttal to that argument. They are thus not likely to succeed on the merits of their Privacy Act arguments.

Finally, the Court has explained the many ways in which the Data Demand is likely arbitrary and capricious. The Federal Defendants have been unable "to explain how this data is needed to accomplish their goals [and] do not explain why or how the bulk transfer of MPRs for the first time in AAMCA or FMCSA's history is rationally related to their stated goals" of carrying out review and analysis of the CDL program. TRO, ECF No. 54 at 11. The Federal Defendants have also failed to consider the "costs and potential harms of disclosing the sensitive personal information of 17 million individuals as well as the reliance interests in having this data kept private." *Id*. And they have not overcome the "inference that they seek these 17 million files in large part, if not primarily, for immigration enforcement," an arbitrary decision because immigration enforcement "is not part of [their] statutory mandate." *Id*. The Federal Defendants' stay motion does not engage with most of these findings at all, instead incorrectly arguing that the Court erroneously applied "heightened scrutiny" in this analysis, Motion, ECF No. 136 at 6. But to require an agency to show a rational relationship between its action and its stated goals, and to have considered costs, potential harms, and alternatives, is consistent with the "narrow" "scope of review under the 'arbitrary and capricious' standard." *Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Federal Defendants thus are not likely to succeed on their defense to the Plaintiff States' arbitrary-and-capricious claim.

**II. The Federal Defendants have not established irreparable harm.**

In granting the preliminary injunction, the Court found that there would be no harm to the Federal Defendants "because they retain their demonstrated abilities to perform their statutory

functions, as they have done for decades, without the demanded data," and because they were unable to provide "a satisfactory explanation as to how obtaining this wholesale transfer of data would materially assist them." PI Order, ECF No. 113 at 14. In seeking a stay pending appeal, the Federal Defendants do not attempt to explain why these conclusions were incorrect or otherwise show how the maintenance of the status quo required by the preliminary injunction creates any harm.

The Federal Defendants make two cursory arguments; both lack merit. First, the Federal Defendants suggest that irreparable harm exists any time the Executive is enjoined. *See* Motion, ECF No. 136 at 8. But in each of the cases on which the Federal Defendants rely, the reviewing court found that the injunction would hinder a federal defendant's performance of some lawful function. *See, e.g.*, *Trump v. California*, No. 26A124, 2026 WL 2473573, at *5 (U.S. Aug. 24, 2026) (finding irreparable harm where injunction was "preventing [the Government] from even trying to lawfully implement the Order"). Here, the Federal Defendants have not made any such showing.

The Federal Defendants' second argument appears to be tied to their concerns about the scope of the preliminary injunction. They have made no merits argument that the preliminary injunction is overbroad on its face, though. Rather, their argument appears to be grounded in the Court's denial of their motion for clarification—an order that they also do not challenge on the merits. *See* Motion, ECF No. 136 at 8. In so doing, the Federal Defendants mischaracterize the Court's ruling.

In relevant part, the preliminary injunction enjoins "DOT, FMCSA, Secretary of Transportation, and the Administrator of FMCSA, their officers, agents, servants, employees and attorneys, and those who are in active concert or participation with them … from taking any

adverse actions against the Plaintiff States or the AAMVA based on the failure to transfer to them the information requested in the Data Demand." PI Order, ECF No. 113 at 16. In their motion to clarify that injunction, the Federal Defendants stated that they "do not understand the Court's preliminary injunction to impose restrictions upon the federal government's exercise of legal authorities not at issue in or implicated by this litigation." ECF No. 118 at 1. Yet they asked the Court to rewrite the terms of the injunction "to clarify that [it] applies only to the specific statutory authorities on which the Federal Defendants have relied." *Id*. at 3.

In denying that motion, the Court neither endorsed nor rejected the Federal Defendants' "understanding" of the scope of the injunction. Rather, it held that clarification was not necessary because the injunction was "clear on its face with respect to the transfer of the files constituting the Data Demand." ECF No. 124 at 1. At the same time, the Court confirmed it would be receptive to addressing "any actually contemplated action, decision or course of conduct" if a federal officer or agency were unclear as to whether the contemplated conduct was prohibited. *Id.* The Court's openness to further motions practice does not, as the Federal Defendants suggest, *see* Motion, ECF No. 136 at 7, impose an additional burden on the Executive Branch. Nothing in the Court's rulings requires any Executive official to obtain an "advance judicial approval" of its action. *Id.* at 8.

Nor, contrary to the Federal Defendants' assertion, Motion, ECF No. 136 at 9, would there be anything improper with the Court ruling on whether a specific action is within the scope of the injunction, were any party to file a motion seeking such a ruling. The Federal Defendants are wrong to suggest that such a ruling would be a "strictly forbidden" advisory opinion. *Id.* To the contrary, the Supreme Court has encouraged lower courts to issue such rulings when there are "doubts as to the applicability of [an] injunction" as to a particular "concrete situation." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).

Finally, to the extent that the Federal Defendants' arguments about irreparable harm allude to their ability to enforce the related Department of Homeland Security subpoena, any such arguments are moot given this Court's quashal of that subpoena on independent legal grounds.

**III. The public interest and the balance of the equities weigh against a stay.**

In arguing that the remaining factors support their requested stay, the Federal Defendants completely ignore this Court's findings that the "large-scale disclosure of sensitive personal information" would impose harms on both the Plaintiff States "and their residents," and that those harms "are substantial and irreparable." PI Order, ECF No. 113 at 11, 13–14; *see* TRO, ECF No. 54 at 13–14. "Such a large-scale, unregulated, and irreversible distribution inevitably compromises and undermines the public's trust in the Plaintiff States' promises to safeguard their residents' personal information, possibly resulting in fewer people seeking driver's licenses, a drop in fee revenue, and a potential increase in unauthorized driving and the attendant public safety risks." PI Order, ECF No. 113 at 13–14. This is plainly not in the public interest.

The Federal Defendants suggest that any harms associated with wrongful disclosure can be remediated after the fact. But the wide dissemination of millions of drivers' information "is a bell that one cannot unring." *Senior Executives Ass'n v. United States*, 891 F. Supp. 2d 745, 755 (D. Md. 2012). As this Court has already found, "the 17 million records at issue here … will not be disclosed to a small number of individuals with confidentiality obligations," and "FMCSA has provided no confidentiality assurances and openly admits that it intends to share the records with DHS so that it can be used for immigration enforcement, among other things." TRO, ECF No. 54 at 13–14.

**CONCLUSION**

For the foregoing reasons, this Court should deny the Federal Defendants' motion for a stay pending appeal.

Dated: October 22, 2026

Respectfully submitted,

/s/ Mark Hanna

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

*Counsel for Plaintiff-Intervenor AFT*