**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>*Plaintiffs*,<br><br>and<br><br>AMERICAN FEDERATION OF TEACHERS,<br><br>*Plaintiff-Intervenor,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>*Defendants*. | No. 1:26-cv-2547 (AJT/IDD) |

**PLAINTIFF-INTERVENOR AMERICAN FEDERATION OF TEACHERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR A STAY UNDER 5 U.S.C. § 705**

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

*Counsel for Plaintiff-Intervenor AFT*

October 28, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. AFT has standing to seek the relief sought. ........ 3

  A. This Court's September 17 preliminary injunction does not eliminate AFT's standing to seek a section 705 stay. ........ 3

  B. There is no conflict of interest among AFT members. ........ 6

II. AFT has satisfied the requirements for a section 705 stay. ........ 10

  A. That the August 17 date in FMCSA's letter has passed does not preclude section 705 relief. ........ 10

  B. AFT is likely to succeed on the merits ........ 12

    1. This Court likely has jurisdiction. ........ 12

    2. The Data Demand is likely contrary to the DPPA and Privacy Act, and arbitrary and capricious. ........ 14

  C. AFT members are likely to experience irreparable harm absent a stay. ........ 16

  D. The balance of the equities weighs in favor of a stay. ........ 17

III. The Court should stay the Data Demand, not application of the Data Demand as to specific AFT members' records. ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Pages**

*African Communities Together v. Lyons*,
799 F. Supp. 3d 362 (S.D.N.Y. 2025) ... 11

*Alliance for Retired Americans v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ... 16

*American Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ... 4, 16

*American Federation of State, County & Municipal Employees, AFL-CIO v. Social Security Administration*,
172 F.4th 361 (4th Cir. 2026) ... 4, 8

*American Federation of Teachers v. Bessent*,
765 F. Supp. 3d 482 (D. Md. 2025) ... 8

*American Trucking Ass'n, Inc. v. United States*,
755 F.2d 1292 (7th Cir. 1985) ... 13

*Associated General Contractors of Connecticut, Inc. v. City of New Haven*,
130 F.R.D. 4 (D. Conn. 1990) ... 9

*Association of American Railroads v. Hudson*,
144 F.4th 582 (4th Cir. 2025) ... 3

*Asylum Seeker Advocacy Project v. U.S. Citizenship & Immigration Services*,
808 F. Supp. 3d 708 (D. Md. 2025) ... 11

*Bennett v. Spear*,
520 U.S. 154 (1997) ... 12

*Blitz v. Napolitano*,
700 F.3d 733 (4th Cir. 2012) ... 13

*Cabrera v. U.S. Department of Labor*,
792 F. Supp. 3d 91 (D.D.C. 2025) ... 11, 19, 20

*California v. Health & Human Services*,
390 F. Supp. 3d 1061 (N.D. Cal. 2019) ... 4, 19

*California Ass'n of Private Postsecondary Schools v. DeVos*,
344 F. Supp. 3d 158 (D.D.C. 2018) ... 5

*Carcano v. McCrory*,
203 F. Supp. 3d 615 (M.D.N.C. 2016) ..................................................................... 18

*CASA, Inc. v. Trump*,
793 F. Supp. 3d 687 (D. Md. 2025) ..................................................................... 2, 4

*Center for Biological Diversity v. Regan*,
691 F. Supp. 3d 1 (D.D.C. 2023) ..................................................................... 11

*City of Alexandria v. Helms*,
728 F.2d 643 (4th Cir. 1984) ..................................................................... 13

*City of Evanston v. Sessions*,
No. 18 C 4853, 2018 WL 10228461 (N.D. Ill. Aug. 9, 2018) ..................................... 8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..................................................................... 3

*Diamond Alternative Energy, LLC v. Environmental Protection Agency*,
606 U.S. 100 (2025) ..................................................................... 6

*Doe v. Trump*,
157 F.4th 36 (1st Cir. 2025) ..................................................................... 20

*Finley Alexander Wealth Management, LLC v. M&O Marketing, Inc.*,
No. GJH-19-1312, 2020 WL 1322948 (D. Md. Mar. 20, 2020) ..................................... 9

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ..................................................................... 18

*Griffin v. Department of Labor Federal Credit Union*,
912 F.3d 649 (4th Cir. 2019) ..................................................................... 3

*International Fresh Produce Ass'n v. U.S. Department of Labor*,
758 F. Supp. 3d 575 (S.D. Miss. 2024) ..................................................................... 11

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*,
477 U.S. 274 (1986) ..................................................................... 10

*Jake's Fireworks Inc. v. U.S. Consumer Product Safety Commission*,
105 F.4th 627 (4th Cir. 2024) ..................................................................... 12

*Kingdom v. Trump*,
No. 1:25-CV-691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025) ................................ 11

*League of Women Voters of the United States v. U.S. Citizenship & Immigration Services*,
839 F. Supp. 3d 292 (D. Md. 2026) .......... 11, 20

*Lupyan v. Corinthian Colleges Inc.*,
761 F.3d 314 (3d Cir. 2014) .......... 9

*Make the Road New York v. Noem*,
No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) .......... 19

*Maryland Highways Contractors Ass'n v. Maryland*,
933 F.2d 1246 (4th Cir. 1991) .......... 6, 7, 8, 9

*Mayor & City Council of Baltimore v. Azar*,
392 F. Supp. 3d 602 (D. Md. 2019) .......... 2, 4

*Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983) .......... 16

*NAACP Anne Arundel County Branch v. City of Annapolis*,
133 F. Supp. 2d 795 (D. Md. 2001) .......... 8

*National Council of Nonprofits v. Office of Management & Budget*,
763 F. Supp. 3d 36 (D.D.C. 2025) .......... 4

*National Federation of Independent Business v. Department of Labor*,
595 U.S. 109 (2022) .......... 10

*PFLAG, Inc. v. Trump*,
No. 25-1279, 2026 WL 1429738 (4th Cir. May 21, 2026) .......... 18

*Piedmont & Arlington Life–Insurance Co. v. Ewing*,
92 U.S. 377 (1875) .......... 9

*R J Reynolds Tobacco Co. v. Food & Drug Administration*,
189 F.4th 432 (5th Cir. 2026) .......... 19

*Regeneron Pharms., Inc. v. U.S. Department of Health & Human Services*,
510 F. Supp. 3d 29 (S.D.N.Y. 2020) .......... 4

*Retired Chicago Police Ass'n v. City of Chicago*,
76 F.3d 856 (7th Cir. 1996) .......... 7

*Sierra Club v. U.S. Department of the Interior*,
899 F.3d 260 (4th Cir. 2018) .......... 6

*Skarbenchuk v. Edlow*,
No. CV SAG-26-03436, 2026 WL 2883315 (D. Md. Sept. 25, 2026) ............................... 4

*Soundboard Ass'n v. Federal Trade Commission*,
888 F.3d 1261 (D.C. Cir. 2018) ........................................................................... 12

*Sunny-Odio v. Trump*,
No. 26-CV-04816-RFL, 2026 WL 1763854 (N.D. Cal. June 18, 2026) ........................... 4

*Texas v. Biden*,
646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................................. 10, 11

*Texas v. U.S. Department of Health & Human Services*,
770 F. Supp. 3d 940 (E.D. Tex. 2025) ........................................................................ 11

*Trump v. CASA*,
606 U.S. 831 (2025) ..................................................................................................... 19

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 544 (1996) ....................................................................................................... 9

*United States v. Local 560 (I.B.T.)*,
974 F.2d 315 (3d Cir. 1992) ........................................................................................... 7

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) ........................................................................ 15

*US West Communications, Inc. v. Hamilton*,
224 F.3d 1049 (9th Cir. 2000) ...................................................................................... 13

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................................................... 20

*Weaver v. Federal Motor Carrier Safety Administration*,
744 F.3d 142 (D.C. Cir. 2014) ...................................................................................... 13

*Whitman-Walker Clinic, Inc. v. U.S. Department of Health & Human Services*,
485 F. Supp. 3d 1 (D.D.C. 2020) ................................................................................ 4, 5

**Statutes**

5 U.S.C. § 552a(e)(1) .................................................................................................... 14

5 U.S.C. § 552a(e)(4) .................................................................................................... 14

5 U.S.C. § 552a(e)(11) ............................................................................................. 14, 15

5 U.S.C. § 704 .......... 13

5 U.S.C. § 705 .......... 1, 10

18 U.S.C. § 2721(b)(1) .......... 14

28 U.S.C. § 2342 .......... 13

28 U.S.C. § 2342(3) .......... 13

**Regulations**

49 C.F.R. § 383.23(a)(2) .......... 5

49 C.F.R. § 501.8(d)(5) .......... 13

**Other Authorities**

Federal Motor Carrier Safety Administration, Notice, Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727 (June 21, 2006) .......... 14, 15

Charles Alan Wright & Arthur R. Miller, 11A Federal Practice & Procedure § 2948 (3d ed. 2013) .......... 11

## INTRODUCTION

On August 11, 2026, the Federal Motor Carrier Safety Administration (FMCSA) sent a letter to AAMVA demanding that AAMVA turn over "master pointer records" (MPRs) that contain sensitive personal data of thousands of driver members of Plaintiff-Intervenor American Federation of Teachers, among other people. Data Demand, ECF No. 1-2 at 21–22.[1] In the Data Demand, FMCSA stated that "[s]tates have no veto over the production of [the requested] records" and that AAMVA was "obligat[ed]" to produce them. *Id*. FMCSA has not withdrawn the Data Demand and has stepped away from its position that AAMVA is obligated to produce the MPRs without consulting with any states. And although this Court has issued a preliminary injunction barring AAMVA from turning over records it holds from *some* states, that injunction does not bar AAMVA from turning over records it holds from other states—including seven states in which AFT driver members are located. AFT has thus moved for an order staying the Data Demand, pursuant to this Court's authority to issue appropriate relief necessary "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

The Federal Defendants' opposition to AFT's request is largely based on the existence of this Court's September 17 preliminary injunction—an injunction that the Federal Defendants have appealed and asked this Court to stay. According to the Federal Defendants, the preliminary injunction eliminates both AFT's standing and any risk of irreparable harm. But, as courts have repeatedly recognized, the fact that one party has obtained preliminary relief against an agency action does not bar another party from obtaining overlapping "follow-on" preliminary relief,

[1] All citations to page numbers of filed documents refer to the page number in the ECF header as opposed to the page numbers at the bottom of the printed page.

particularly where, as here, the enjoined agency is appealing the first order. *See, e.g.*, *CASA, Inc. v. Trump*, 793 F. Supp. 3d 687, 698 (D. Md. 2025); *Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602, 618–19 (D. Md. 2019). Moreover, the existing preliminary injunction does not fully protect AFT's members from having their records unlawfully disclosed, because, as the Federal Defendants concede, Opp'n, ECF No. 157 at 6, that injunction does *not* preclude AAMVA from complying with the Data Demand as to data provided by non-plaintiff states. In light of the Federal Defendants' continued position that AAMVA is required to comply with their demand regardless of whether any state gives consent, and because AAMVA has not stated that it will not do so during the pendency of this litigation, a substantial risk of irreparable harm to AFT's members remains.

The Federal Defendants' other arguments against the requested stay are makeweights. They argue that AFT lacks associational standing because of a "conflict of interest" amongst its members, but their speculation about disagreement among AFT members about the wisdom of the challenged action does not create a conflict of interest. Rather, AFT is asking this Court to protect all its driver members' personal information, and all AFT driver members would benefit. In addition, their argument that section 705 relief is not available because the effective date in the Data Demand has passed ignores the plain text of section 705 and the numerous court decisions rejecting similar arguments. Moreover, the Federal Defendants barely address AFT's likelihood of success on the merits, instead largely relying on arguments that this Court has already rejected.

As to the other section 705 factors, the seventeen days between this Court's grant of intervenor status to AFT and its stay motion is irrelevant to the harm analysis, and the generic argument that the Court should not impose "burdens" on the Government is not entitled to any

weight given a failure to identify any specific burden that would result from the requested relief. Finally, their suggestion that any relief granted by the Court should be limited to a single AFT member ignores an avalanche of precedent about the scope of relief available under section 705.

The Court should stay the Data Demand in its entirety pending judicial review.

## ARGUMENT

### I. AFT has standing to seek the relief sought.

An association like AFT has standing where "its members would have standing to sue in their own right, … the interests it seeks to vindicate are germane to its mission, and … its claims can be litigated without the participation of individual members as parties to the suit." *Ass'n of Am. R.R. v. Hudson*, 144 F.4th 582, 589 (4th Cir. 2025). The Federal Defendants make two arguments that, in their view, indicate that AFT lacks "standing for the relief it seeks." Opp'n, ECF No. 157 at 5 (capitalization altered). Both are inconsistent with precedent and lack support in the factual record.

#### A. This Court's September 17 preliminary injunction does not eliminate AFT's standing to seek a section 705 stay.

The Federal Defendants' first argument is that AFT has not identified "a member who may have standing," because AFT member John Doe has not "establish[ed] that he faces any imminent injury traceable to Federal Defendants' data request and redressable by a § 705 stay," in light of this Court's September 17 preliminary injunction. Opp'n, ECF No. 157 at 6. Notwithstanding that injunction, however, the Data Demand poses "a 'real or imminent threat' that [AFT members] will suffer an injury in the future," which is all that is necessary to establish standing to seek prospective relief. *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

The Data Demand purports to compel the turnover of private information of AFT driver members, in both the Plaintiff States and elsewhere, including information of Declarants Jane Doe and John Doe. As explained in AFT's opening memorandum, ECF No. 132 at 18–20, "disclosing plaintiffs' members' personally identifiable information … inflicts a harm" that gives those members standing to sue. *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 368 (4th Cir. 2026) (en banc).

The Federal Defendants do not dispute this. Rather, they state that—in light of the September 17 preliminary injunction and isolated comments from AAMVA in this litigation—this harm is no longer sufficiently imminent. But the Federal Defendants cite no authority for the proposition that a preliminary injunction obtained by one party can eliminate another party's standing. To the contrary, given the inherently temporary nature of preliminary relief, "district courts frequently issue overlapping preliminary injunctions on the same subject matter"—especially where the first injunction is being appealed. *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025); *see, e.g.*, *Skarbenchuk v. Edlow*, No. CV SAG-26-03436, 2026 WL 2883315, at *4 (D. Md. Sept. 25, 2026); *Sunny-Odio v. Trump*, No. 26-CV-04816-RFL, 2026 WL 1763854, at *2 (N.D. Cal. June 18, 2026); *CASA*, 793 F. Supp. 3d at 698; *Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, 763 F. Supp. 3d 36, 57 n.9 (D.D.C. 2025); *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 41 n.4 (S.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020); *Baltimore v. Azar*, 392 F. Supp. 3d at 618–19; *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065–66 (N.D. Cal. 2019). Although those courts addressed the issue in the context of the irreparable harm requirement, their reasoning applies to standing as well, since a court would not

issue a preliminary injunction to a plaintiff that lacks standing, and a plaintiff faces a "more demanding burden of demonstrating irreparable injury" for purposes of preliminary relief than in establishing standing. *Whitman-Walker*, 485 F. Supp. 3d at 59 (quoting *Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018)).

Further, while the preliminary injunction issued by this Court does prevent AAMVA from disclosing the personal information of some of AFT's driver members, including Jane Doe, whose data was provided to CDLIS by one of the Plaintiff States, it does *not* preclude AAMVA from doing so with respect to the personal information of AFT driver members supplied to it by other states. These other states include seven states in which AFT driver members, including AFT member declarant John Doe, work. *See* Second Porcari Decl., ECF No. 132-1 ¶ 9; John Doe Decl., ECF No. 132-2, ¶ 2.[2] Notably, while AAMVA filed a response to AFT's motion for a stay, it did not commit that it would not turn over data from non-plaintiff states pending the conclusion of these proceedings. *See* AAMVA Response, ECF No. 154. And FMCSA has repeatedly stated that AAMVA is *required* to do just that—whether or not those states consent. *See, e.g.*, Data Demand, ECF No. 1-2 at 5 ("It is clear from the language that AAMVA must provide this information upon request and that FMCSA is entitled to receive this information."); *id.* at 21 (referring to AAMVA's delay in producing records "unacceptable" as "[s]tates have no veto over the production of records that AAMVA is holding on DOT's behalf"). That the Federal Defendants are barred from taking

---

[2] Those states are Alabama, Florida, Georgia, Kansas, Montana, Oklahoma, and Texas. Moreover, because the Data Demand seeks information going back five years, and because federal regulations require drivers to hold CDLs issued by the state in which they live, not in which they work, 49 C.F.R. § 383.23(a)(2), AFT driver members' information may have been provided to the CDLIS by additional states.

action against AAMVA for not complying with the Data Demand does not eliminate the risk that AAMVA may comply with respect to non-plaintiff states. *Cf. Diamond Alternative Energy, LLC v. EPA,* 606 U.S. 100, 114 (2025) (finding plaintiffs had standing to challenge regulations despite need for third-party action, where such action was "the whole point of the [challenged] regulations").

The Federal Defendants also briefly raise the question of redressability, asserting that, "AAMVA and the non-plaintiff States like Texas would remain free to voluntarily authorize and execute the transmission of the CDLIS data even if the August 11 Letter were set aside." Opp'n, ECF No. 157 at 8. But to satisfy the redressability requirement, a plaintiff need only show that "the requested relief would at least mitigate, if not eliminate, the alleged harm." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018). Setting aside the Data Demand would do just that.

**B. There is no conflict of interest among AFT members.**

Citing the Fourth Circuit's decision in *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991), the Federal Defendants assert that AFT fails the third requirement of associational standing—that individual member participation be unnecessary for resolution of the case—because some AFT members might disagree with AFT's position in this lawsuit, thus creating a "conflict of interest." Opp'n, ECF No. 157 at 8–10. The Federal Defendants offer no evidence to support this hypothesis, which, in any event, does not show the existence of a conflict of interest, much less one that would call into question AFT's ability to represent its members' interests.

In *Maryland Highways*, the Fourth Circuit held that the third associational standing requirement is not satisfied where there are "actual conflicts of interest" between an association's members that "would require that the individual members come into the lawsuit to protect their interests." 933 F.2d at 1253. There, the plaintiff contractor association sought to challenge a law under which a portion of state procurement contracts was set aside for "minority business enterprises" (MBEs). 933 F.2d at 1248. Some of the plaintiff association's members *were* MBEs, though. *Id.* at 1253. Because some members of the association would directly benefit from the law being struck down, and other members would be harmed, the Fourth Circuit found that these "conflicting interests," combined with irregularities in the process by which the association decided to bring that suit, made it necessary for MBE members to participate in the suit to protect their interests. *Id.*

This case in no way resembles either *Maryland Highways*, or *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996), cited in Opp'n, ECF No. 157 at 8, where the Seventh Circuit found "[a] direct, detrimental effect to some members' interests" precluded associational standing, *id.* at 864. The relief AFT is seeking in this action would benefit all AFT driver members equally: Every driver member's data would be protected from disclosure. There is no conflict of interest where a challenged policy would "violate the rights of all members," even if not every member "would choose to pursue those rights individually." *United States v. Local 560 (I.B.T.)*, 974 F.2d 315, 342 n.15 (3d Cir. 1992) (rejecting challenge to associational standing on the basis of possible disagreement amongst union members). And while the Court need not give any credence to the Federal Defendants' unfounded assertion that, somehow, the requested stay would be detrimental to drivers' safety, Opp'n, ECF No. 157 at 9, any such hypothetical detriment

would also apply to all of AFT's driver members, not some subset of them. Further, unlike in *Maryland Highways*, there is no suggestion here that, in deciding to participate in this litigation, AFT used an irregular procedure that prejudiced the interests of a subset of its members. To the contrary, AFT has a longstanding record of "advocat[ing] for the protection and safeguarding of AFT members' personal data, in courts, legislatures, and elsewhere." Second Porcari Decl., ECF No. 132-1, ¶ 152; *see, e.g.*, *AFSCME*, 172 F.4th 361 (litigation brought by AFT and others seeking to protect disclosure of members' personal information to members of the Department of Government Efficiency); *Am. Fed'n of Teachers v. Bessent*, 765 F. Supp. 3d 482 (D. Md. 2025) (subsequent history omitted) (same).

The Federal Defendants do not dispute these facts. Their conflict-of-interest theory rests solely on the unsupported assertion that "[t]here is a strong likelihood that there are as many members of AFT who support FMCSA's actions challenged in this case as there are members like John Doe, who oppose them." Opp'n, ECF No. 157 at 9. But a policy disagreement—much less a defendant's speculation as to such a disagreement—does not create a conflict of interest. *See City of Evanston v. Sessions*, No. 18 C 4853, 2018 WL 10228461, at *3 (N.D. Ill. Aug. 9, 2018) (holding that "differences in policy preference" among association members "do not amount to a profound conflict"); *see also NAACP Anne Arundel Cnty. Branch v. City of Annapolis*, 133 F. Supp. 2d 795, 803 (D. Md. 2001) (rejecting argument similar to that raised by Federal Defendants, and explaining, "[t]he NAACP is not required to show that every African-American member of the community opposes the ordinance or will not benefit from it. Rather, the NAACP must show that it can adequately represent its membership"). As one court put it, "[u]nanimity among [an association]'s members is not a requirement for its standing. Resolution of frictions within [the

association]'s membership is a matter of its governance." *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 130 F.R.D. 4, 10 (D. Conn. 1990).

Citing *Maryland Highways*, the Federal Defendants assert that AFT has the burden of showing that there is no conflict of interest. Opp'n, ECF No. 157 at 6. The cited language, though, simply recognized the principle that the plaintiff generally has "the burden of proving it ha[s] standing to sue." *Maryland Highways*, 933 F.2d at 1252. Neither the Supreme Court nor the Fourth Circuit has held that proof of an absence of a conflict of interest is an affirmative element of associational standing, and this Court should not hold as such—particularly since "such a burden would likely be impossible to carry as it would require a [plaintiff] to essentially prove a negative." *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2020 WL 1322948, at *4 n.5 (D. Md. Mar. 20, 2020); *see also Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 322 (3d Cir. 2014) (citing *Piedmont and Arlington Life–Ins. Co. v. Ewing*, 92 U.S. 377, 380 (1875)) ("The law has long recognized that such an evidentiary feat [of proving a negative] is next to impossible."). "The third prong" of the associational standing test "is best seen as focusing on matters of administrative convenience and efficiency." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 545 (1996). To require that an association show every member supports the litigation would run counter to "convenience and efficiency," and effectively eliminate associational standing. Moreover, as applied to AFT, doing so would run afoul of the Supreme Court's recognition that "union[s], selected by the employees following procedures governed by a detailed body of federal law and serving as the duly authorized collective-bargaining representative of the employees," are authorized to speak for their members. *Id.* at 556 n.6. The Federal Defendants have provided "absolutely no reason to doubt the ability of the [AFT] to

proceed here on behalf of its aggrieved members," and the Court should decline to graft a new requirement onto the "settled principles of associational standing." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986).

**II. AFT has satisfied the requirements for a section 705 stay.**

**A. That the August 17 date in FMCSA's letter has passed does not preclude section 705 relief.**

The Federal Defendants assert that this Court may not grant relief under section 705 because there is "no effective date to postpone," or "any effective date has clearly passed," referencing the fact that FMCSA's August 11 letter demanded the turnover of the MPRs by August 17, 2026. Opp'n, ECF No. 157 at 12. That argument is inconsistent with the text of section 705. Section 705 contains two sentences. The first sentence allows agencies to themselves "postpone the effective date of action" they have taken "pending judicial review." 5 U.S.C. § 705. The second sentence, which is the basis of AFT's motion, more broadly grants reviewing courts the authority "to issue all necessary and appropriate process to postpone the effective date of an agency action *or* to preserve status or rights pending conclusion of the review proceedings," "to the extent necessary to prevent irreparable injury." *Id.* (emphasis added). "The greater limitation on agencies exists because 'agencies are creatures of statute' and, thus, 'possess only the authority that Congress has provided.'" *Texas v. Biden*, 646 F. Supp. 3d 753, 770 (N.D. Tex. 2022) (quoting *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022)). Courts, on the other hand, have "inherent authority to stay agency action to facilitate judicial review." *Id.* at 771. In giving courts the power to not just "postpone the effective date" of an agency action, but to also take other action necessary to "preserve status or rights" pending review, section 705 authorizes courts to temporarily restore "the last peaceable uncontested status existing between the parties before the

dispute developed" regardless of the effective date. *Id.* (quoting Wright & Miller, 11A Fed. Prac. & Pro. § 2948 (3d ed. 2013)).

Thus, "[w]hile some courts have held that an *agency* may not issue a § 705 stay for an already-effective action because that would amount to an amendment requiring a period of notice and comment, that reasoning plainly does not apply to courts." *Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 106 (D.D.C. 2025) (citing *Ctr. for Biological Diversity v. Regan*, 691 F. Supp. 3d 1, 8 (D.D.C. 2023)). As multiple courts have explained, given the text and structure of section 705, "[w]hether the effective date of [an action] has passed, is irrelevant to [a reviewing] [c]ourt's ability to issue a Section 705 stay." *Texas v. Biden*, 646 F. Supp. 3d at 770; *see Afr. Communities Together v. Lyons*, 799 F. Supp. 3d 362, 383 (S.D.N.Y. 2025), *modified on other grounds*, 833 F. Supp. 3d 348 (S.D.N.Y. 2026); *Cabrera*, 792 F. Supp. 3d at 106; *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *5 (D.D.C. June 3, 2025); *Texas v. U.S. Dep't of Health & Hum. Servs.*, 770 F. Supp. 3d 940, 957 (E.D. Tex. 2025); *Int'l Fresh Produce Ass'n v. United States Dep't of Lab.,* 758 F. Supp. 3d 575, 593 n.12 (S.D. Miss. 2024). "Courts— including the Supreme Court—routinely stay already-effective agency action under Section 705." *Texas v. Biden*, 646 F. Supp. 3d at 770 (collecting cases); *see also, e.g.*, *League of Women Voters of the U.S. v. U.S. Citizenship & Immigr. Servs.*, 839 F. Supp. 3d 292, 351 (D. Md. 2026) (staying policy effective August 2025 in August 2026); *Asylum Seeker Advoc. Project v. U.S. Citizenship & Immigr. Servs.*, 808 F. Supp. 3d 708, 722 (D. Md. 2025) (issuing stay of July 2025 memo in October 2025). Therefore, that August 17 has passed does not preclude the court from restoring the last uncontested status—under which there was no pending demand that AAMVA turn over the MPRs.

### B. AFT is likely to succeed on the merits.

As the Federal Defendants acknowledge, Opp'n, ECF No. 157 at 14, each of their arguments as to the merits has already been rejected by the Court. The Federal Defendants provide no persuasive reason for the Court to reject its earlier holdings.

#### 1. This Court likely has jurisdiction.

The Federal Defendants raise two jurisdictional challenges: (1) that the Data Demand is not a final agency action, and (2) that exclusive jurisdiction to challenge the Data Demand lies in the courts of appeals. *See* Opp'n, ECF No. 157, at 14–15. As the Court already held, *see* PI Order, ECF No. 113 at 6–7, the Fourth Circuit's decision in *Jake's Fireworks Inc. v. U.S. Consumer Product Safety Commission*, 105 F.4th 627 (4th Cir. 2024), does not suggest the Data Demand was not a final agency action. There, the Fourth Circuit held that a non-compliance notice issued by an office with only "advisory and investigatory functions" failed to meet the "consummation" requirement of *Bennett v. Spear*, 520 U.S. 154 (1997). *Jake's Fireworks*, 105 F.4th at 631–32. Staff in that office lacked "the power to make a final determination as to whether a violation has occurred and whether to pursue enforcement;" they could only make recommendations to the ultimate decisionmakers. *Id.* at 632. Thus, the non-compliance notice was not "properly attributable to the agency itself." *Id.* at 631 (quoting *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)). FMCSA's August 11 Letter, by contrast, states DOT's final conclusion that AAMVA has an obligation to provide the requested data and states that DOT will "take immediate action" based on AAMVA's failure to comply. ECF No. 1-2 at 21. And unlike the notice at issue in *Jake's Fireworks*, the letter was sent by FMCSA's Chief Counsel, who by regulation, has the power to issue such an "authoritative interpretation" of the relevant laws. *See*

49 C.F.R. § 501.8(d)(5).

In arguing that the Hobbs Act, 28 U.S.C. § 2342, provides exclusive jurisdiction for this action in the courts of appeals, the Federal Defendants continue to rely on cases that address the question of finality under the Hobbs Act, not, as relevant here, what constitutes an "order" under the Hobbs Act. *See* Opp'n, ECF No. 157 at 15 (citing *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000); *Am. Trucking Ass'n, Inc. v. United States*, 755 F.2d 1292, 1296 (7th Cir. 1985)). The only court of appeals decision to address the latter question explicitly rejected the Federal Defendants' argument that "any activity" taken by DOT under one of the statutes listed in 28 U.S.C. § 2342(3) "that qualifies as a 'final agency action' under 5 U.S.C. § 704 also constitutes a 'final order' (if it is not a 'rule' or 'regulation') under § 2342(3)." *Weaver v. FMCSA*, 744 F.3d 142, 146 (D.C. Cir. 2014). In *Weaver*, the court concluded that the Hobbs Act "appears to contemplate 'actions' of the Secretary [of Transportation] under the named statutes that are *not* rules, regulations or final orders, i.e., a residue of agency activity subject to initial review in the district court." *Id.* Whether an action is an order or falls within that "residue," the court concluded, turns on whether the agency "compiled a record with an eye toward judicial review." *Id.* at 147. Notably, the Fourth Circuit uses this same standard to determine whether an action is an "order" under other statutes. *See Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012); *City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir. 1984). Applying that standard, this Court already held in its TRO decision that the Data Demand is not a rule or regulation, and that FMCSA did not "engage in any kind of adjudication or 'compile a record with an eye toward judicial review' that would make the August 11 letter a 'final order.'" TRO, ECF No. 54 at 7 (quoting *Weaver*, 744 F.3d at 147).

**2. The Data Demand is likely contrary to the DPPA and Privacy Act, and arbitrary and capricious.**

AFT is likely to prevail on the merits of its three Administrative Procedure Act (APA) claims. First, as to AFT's APA claim based on the Driver's Privacy Protection Act (DPPA), the Federal Defendants maintain the Data Demand is consistent with the "government use" exception set out in 18 U.S.C. § 2721(b)(1). As this Court has held, that exception does not apply, as the Federal Defendants have not shown that FMCSA will use the requested data in performing its statutory duties. *See* PI Order, ECF No. 113, at 8–9; *see also Illinois v. U.S. Department of Homeland Security*, No. 1:26-mc-00019-AJT-IDD, ECF No. 89 at 14 (E.D. Va. Oct. 21, 2026) (recognizing that government use exception requires identification of a "particularized and narrowly defined" use). AFT is thus likely to succeed on its first cause of action. Compl., ECF No. 115, ¶¶ 45–52.

Second, AFT is also likely to succeed on its second cause of action, which is based on the Federal Defendants' failure to comply with the Privacy Act's notice requirements, 5 U.S.C. § 552a(e)(4), (e)(11), and the fact they seek to maintain records on individuals that are not relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President, contrary to 5 U.S.C.§ 552a(e)(1). This Court already held that the Data Demand was likely unlawful in both respects. *See* PI Order, ECF No. 113 at 9.

In opposing AFT's motion, the Federal Defendants make no argument relevant to section 552a(e)(1), but simply assert that a 2006 System of Records Notice (SORN) for FMCSA's "Electronic Document Management System," or "EDMS", covers the data they demand here. Opp'n, ECF 157 at 16–17 (citing FMCSA, Notice, Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727, 35727 (June 21, 2006)). On its face, however, that SORN is inapplicable. There,

FMCSA described EDMS as a "centralized document repository application for archiving and accessing documents relevant to FMCSA business processes," which would be utilized for "compliance reviews and inspections on motor carrier operations and inspections of commercial motor vehicles." 71 Fed. Reg. at 35728. There is no evidence that MPRs are relevant to these business processes. And in the SORN's listing of the categories of records to be included in EDMS, FMCSA made no reference to CDLIS MPRs or other driver identity records. *Id.* at 35727–28. Rather, it referred to incident-specific records about motor carriers, such as "crash reports," "safety audits," and "driver enforcement case documents" like "notice[s] of claim." *Id.* This SORN would not have been adequate to advise the public that EDMS would be used to host a third-party-sourced data bank of driver identifying information untethered to any incident-specific record, as required under the Privacy Act. *See United States v. Weber*, 816 F. Supp. 3d 1168, 1193–94 (C.D. Cal. 2026) (rejecting government's argument that existing SORNs applied to new use where it would not "put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity"). If FMCSA plans on storing the MPR data in the EDMS, this is a "new use" requiring new notice and comment per section 552a(e)(11).

Finally, the Federal Defendants do not engage with AFT's arguments that the Data Demand is likely arbitrary and capricious, given the agency's failure to draw a rational connection between the data sought and their statutory responsibilities or to consider the costs and harms of disclosure of personal information. *See* Mem. in Supp. of Stay, ECF No. 132 at 23–24. Instead, they incorrectly argue that the Court erroneously applied "heightened scrutiny" in its earlier analysis. Opp'n, ECF No. 157 at 14. But to require an agency to show a rational relationship between its

action and its stated goals, and to have considered costs, potential harms, and alternatives, is consistent with the "narrow" "scope of review under the 'arbitrary and capricious' standard." *Motor Vehicle Mfr. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). AFT is thus likely to succeed on its arbitrary-and-capricious claim.

**C. AFT members are likely to experience irreparable harm absent a stay.**

As explained in AFT's opening memorandum, the Data Demand creates a risk of disclosure of AFT driver members' personal information, which would not be redressable after the fact. That risk is particularly acute for AFT driver members whose information was provided to AAMVA by non-plaintiff states. *See* Mem. in Supp. of Stay, ECF No. 132 at 24–26.

In arguing otherwise, the Federal Defendants first repeat their argument that this Court's preliminary injunction eliminates any risk of such harm to AFT's driver members. Opp'n, ECF No. 157 at 10. As discussed above, though, at 3–6, the preliminary injunction does not eliminate the risk of harm to AFT driver members whose information was provided to AAMVA by non-plaintiff states. Even putting aside that important point, the Federal Defendants cite "no authority that holds that issuing a duplicative injunction is a bar to preliminary injunctive relief." *Am. Encore*, 152 F.4th at 1121. "[A] prior injunction may later be appealed or modified, so the existence of such an injunction is not necessarily adequate to protect the interests of other parties." *All. for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 110–11 (D.D.C. 2025). Here, the Federal Defendants already *have* appealed this Court's preliminary injunction. And because the Federal Defendants argued against that preliminary injunction on grounds that do not apply to AFT's requested relief, there is a risk that it might be modified or vacated for reasons inapplicable here. *See* Fed. Defs.' Opp'n to PI Motion, ECF No. 101 at 11–12 (arguing Plaintiff States are outside

the Privacy Act and DPPA's zone of interests); Fed. Defs.' Motion for Clarification, ECF 118 at 2–4 (raising concerns about the scope of the preliminary injunction).

Second, the Federal Defendants assert that AFT "has made no showing that the requested data will be improperly disclosed or made public at all." Opp'n, ECF No. 157 at 10–11. This is incorrect: The disclosure of MPR data to FMCSA *itself* is improper, and that injury will not be able to be remedied at the close of this litigation. Moreover, the Federal Defendants have admitted that they intend to send the data that they obtain to the Department of Homeland Security for immigration enforcement purposes. *See, e.g.*, Fed. Defs.' Opp'n to PI Motion, ECF No. 45 at 22, 26–27. That second improper disclosure would also irreparably harm AFT driver members' privacy interests.

Finally, the Federal Defendants assert that adequate relief will be available at a later date—without engaging with AFT's argument in its opening memorandum explaining why, in this case, no such relief would be available. *See* Mem. in Supp. of Motion for Stay, ECF No. 132 at 25–26. As explained there, the DPPA does not authorize relief against the federal government, and the remedy against the federal government available under the Privacy Act is inapplicable to the Federal Defendants' violations here. *Id.*

**D. The balance of the equities weighs in favor of a stay.**

As to the final section 705 factor, the balance of the equities, the Federal Defendants make two cursory arguments. First, they argue that AFT "failed to explain the delay in seeking preliminary relief almost two months after Plaintiff States sought relief." Opp'n, ECF No. 157 at 137. But AFT moved to intervene in this action on September 1, 2026, while the Plaintiff States' motion for a preliminary injunction was pending, and they could not seek a stay until that motion

for intervention was granted. AFT proposed expediting the hearing on that motion, but the Federal Defendants opposed. *See* Notice of Hearing, ECF No. 93 at 1. As an equitable matter, the Federal Defendants cannot take advantage of delay to which they themselves contributed. Thus, the relevant time period is the 17 days between this Court's granting of the motion to intervene on September 21, 2026, ECF No. 114, and the date of filing the instant motion, October 8, 2026. But whether measured as 17 days, or the 56 days from when this case was filed, any delay in AFT's request for preliminary relief is not of the length that courts have found undercuts a claim of irreparable harm. *Compare Carcaño v. McCrory*, 203 F. Supp. 3d 615, 650 (M.D.N.C. 2016) (holding that seven-week delay in seeking preliminary relief did not undermine claim of irreparable harm) *with PFLAG, Inc. v. Trump*, No. 25-1279, 2026 WL 1429738, at *4 (4th Cir. May 21, 2026) (Benjamin, J., concurring) (finding that delay of "more than a year" weighed against finding irreparable injury).

In any event, "[t]he key question" is not the specific number of days but "'whether the delay was reasonable' or instead 'a decision by the party to sit on its rights.'" *PFLAG*, 2026 WL 1429738, at *4 (quoting *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016)). Here, AFT made clear it would be filing its motion for a section 705 stay should its motion to intervene be granted, *see* Motion to Intervene, ECF No. 91 at 2, and did just that in less than three weeks. That is less time than Federal Defendants took to file their motion for a stay of the preliminary injunction pending appeal—in which they asserted irreparable harm despite waiting 21 days after this Court entered that preliminary injunction to file their motion. Here, AFT's short delay was reasonable. Thus, "although [AFT] has not prosecuted this case as quickly as the Plaintiff States," it has moved more quickly than Federal Defendants and "has not slept on its rights." *California v. HHS*, 390 F.

Supp. 3d at 1067 (granting preliminary relief despite movant's five-month delay).

The Federal Defendants also contend that the requested relief would "add further burdens to th[e] Federal Defendants," without explaining what those burdens are. Opp'n, ECF No. 157 at 13. As such, it is difficult for AFT to respond. To the extent the Federal Defendants suggest that a stay would burden them by depriving them of access to AFT members' data, that suggestion is in tension with the Federal Defendants' argument that AFT members' data is not likely to be turned over to them absent a stay. More fundamentally, though, the Federal Defendants have not shown how their lack of access to AFT members' data will impose any burden on their lawful execution of their statutory authorities, as the Court explained in granting the preliminary injunction. *See* PI Order, ECF No. 113 at 14.

**III. The Court should stay the Data Demand, not application of the Data Demand as to specific AFT members' records.**

In its opening memorandum, AFT explained that, under a wide body of authority, relief under section 705 is not party-restricted. Mem. in Supp. of Stay, ECF No. 132, at 27–28 (collecting cases). Instead, section 705 "permit[s] wholesale… stays of agency action." *Cabrera*, 792 F. Supp. 3d at 106. Ignoring the cases cited by AFT, the Federal Defendants assert that the Court should "limit the stay's effect to John Doe." Opp'n, ECF No. 157 at 14. According to the Federal Defendants, the limits on the scope of preliminary injunctions announced by the Supreme Court in *Trump v. CASA*, 606 U.S. 831 (2025), apply to stays issued under section 705. Numerous courts have rejected that argument, holding instead that "*CASA* does not control the scope of relief available under Section 705." *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *34 (D.C. Cir. Nov. 22, 2025) (statement of Millett and Childs, JJ.); *see R J Reynolds Tobacco Co. v. Food & Drug Admin.*, 189 F.4th 432, 448 (5th Cir. 2026) (stating that "*CASA*'s reasoning

is rooted wholly in equitable principles and therefore does not foreclose the statutory relief" under 705); *League of Women Voters of the U.S. v. U.S. Citizenship & Immigr. Servs.*, 839 F. Supp. 3d 292, 351 (D. Md. 2026) (collecting cases and holding that section 705 stays are not governed by *CASA*). Rather, the relief available under section 705 of the APA mirrors the form of relief available under section 706 of the APA—vacatur—and is not "limited to the parties before the reviewing court." *Cabrera*, 792 F. Supp. 3d at 106–107.

Even if section 705 relief *were* party-restricted, though, relief would be appropriately targeted to *all* of AFT's members—not just John Doe as the Federal Defendants suggest. That is inherent in the concept of associational standing—which exists where the remedy sought by the association "will inure to the benefit of [all] those members of the association actually injured," even though not every such member participates in the litigation, because the association is deemed to be the "appropriate representative of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To limit relief to individual members who participate in the litigation, or otherwise require an association to show injury on a member-by-member basis, would defeat the entire purpose of associational standing. Yet that is what the Federal Defendants suggest in proposing relief be limited to John Doe. *See also Doe v. Trump*, 157 F.4th 36, 80 (1st Cir. 2025) (rejecting government's argument that, post-*CASA*, preliminary injunction should be limited to "only the two members whom the organizations identified in seeking associational standing").

**CONCLUSION**

For the foregoing reasons, this Court should grant AFT's motion to stay the Data Demand.

Dated: October 28, 2026

Respectfully submitted,

/s/ Mark Hanna
Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

*Counsel for Plaintiff-Intervenor AFT*