**IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 1:26-cv-2547 (AJT/IDD) |

# FEDERAL DEFENDANTS' REPLY RE: MOTION TO STAY THE COURT'S PRELIMINARY INJUNCTION PENDING APPEAL

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3731
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Counsel for Federal Defendant*

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. The Court Need Not Second-Guess Its Previous Conclusions to Grant Relief. ................. 2

II. Federal Defendants Raise Difficult Legal Questions Over Which They Are Likely to Prevail. ........................................................................................................... 4

A. Jurisdiction ........................................................................................................ 4

B. Merits ................................................................................................................ 7

III. Federal Defendants Are Irreparably Harmed Absent a Stay. ........................................... 10

IV. The Public Interest and Balance of Equities Favor a Stay. ............................................... 11

## INTRODUCTION

A stay pending appeal is an appropriate measure to mitigate the ongoing irreparable harm to Federal Defendants' ability to execute their statutory responsibilities and ensure that all operators of commercial motor vehicles are qualified and do not threaten the safety of other drivers with whom they share the road. It is also necessary to resolve the ongoing strain on the Separation of Powers inherent to requiring that all federal agencies seek preclearance before exercising lawful authorities not at issue in this case.

Federal Defendants do not ask the Court to revisit or undermine its prior conclusions in order to grant relief. Rather, cases from within and outside of the Fourth Circuit make clear that a court may issue a stay even while maintaining confidence in its earlier rulings, particularly where—as here—the appeal raises difficult and substantial legal questions that warrant further appellate consideration.

Federal Defendants raise serious legal questions concerning both jurisdiction and the merits, over which they are likely to prevail. These include whether the August 11 Letter constitutes final agency action under the Administrative Procedure Act (APA); whether, if final, such action falls within the exclusive jurisdiction of the courts of appeals under the Hobbs Act; and whether the agency's data request was lawful under the Commercial Motor Vehicle Safety Act (CMVSA), the Driver's Privacy Protection Act (DPPA), the Privacy Act, and the APA's arbitrary-and-capricious standard. Each of these questions rests on substantial statutory and doctrinal considerations that have divided courts or have not yet been addressed in this context, underscoring why a stay is both necessary and appropriate.

The equities independently support a stay. Federal Defendants face irreparable harm from the injunction's sweeping restrictions, which impede the execution of their statutory

responsibilities, disrupt ongoing safety oversight functions, and intrude on core executive authority. The injunction's breadth has also produced concrete operational uncertainty, extending beyond this case to other federal agencies. By contrast, Plaintiffs' alleged harms are speculative and, even taken at face value, outweighed by the public's compelling interest in ensuring the safe administration of the Nation's commercial motor vehicle system.

Congress expressly charged DOT with maintaining access to information systems necessary to evaluate safety risks, oversee licensing integrity, and protect the traveling public. Preventing the agency from accessing data central to those objectives undermines the very statutory framework Congress enacted. Because the appeal presents substantial legal questions, because Federal Defendants face ongoing and irreparable harm absent relief, and because the balance of equities and public interest weigh decisively in Federal Defendants' favor, a stay is warranted. Federal Defendants therefore respectfully request that the Court grant their motion.

## ARGUMENT

### I. The Court Need Not Second-Guess Its Previous Conclusions to Grant Relief.

While the standard governing Federal Defendants' request for a stay largely mirrors the preliminary injunction standard, it "does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision . . . ." *Goldstein v. Miller*, 488 F. Supp. 156, 172-73 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981), and *aff'd sub nom. Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981). Otherwise, seeking a stay pending appeal would reduce the Federal Rules of Appellate Procedure (FRAP) to little more than a box-checking exercise. *See* FRAP Rule 8(a)(1)(A) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal."). That is why district courts have instead regularly asked "whether the Defendant's appeal presents an

admittedly difficult legal question." *United States v. Mosby*, No. 22-cr-000007-LKG, 2024 WL 3877613, at *7-8 (D. Md. Aug. 20, 2024) (quotation omitted).

Far from being Federal Defendants "own invented standard," Plaintiff States' Opposition, ECF No. 156 at 2 n.2 (Pl. States' Opp'n), the "admittedly difficult legal question" approach has been followed by district courts within the Fourth Circuit and beyond. *Maryland v. U.S. Dep't of Agric.*, 777 F. Supp. 3d 496, 500 (D. Md. 2025); *Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478 (N.D. W. Va. 1996); *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, No. 2:07-CV-00122, 2007 WL 9717802 (S.D. W. Va. Oct. 11, 2007); *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, No. CV 3:08-0979, 2010 WL 11565166 (S.D. W. Va. May 4, 2010); *United States v. Navarro*, No. CV 22-2292 (CKK), 2023 WL 2663014 (D.D.C. Mar. 28, 2023); *Cooper v. U.S. Postal Serv.*, 246 F.R.D. 415 (D. Conn. 2007); *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882 (E.D. Cal. 2004).

Plaintiffs resist the approach by arguing that it would be a "replacement for . . . the *Nken* factors" articulated by the Supreme Court. Pl. States' Opp'n at 1 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). But *Nken* recognized that although the stay factors have "substantial overlap" with the preliminary injunction factors, they are not "one and the same." *Nken*, 556 U.S. at 434. The "admittedly difficult legal question" standard *satisfies*—rather than replaces—the stay requirement that a movant must make a strong showing of a likelihood of success on the merits; thus, it is not inconsistent with *Nken's* rejection of the lower "mere possibility" of success standard. *Id.*; *see also* Plaintiff-Intervenor's Opposition, ECF No. 155 at 5 (Pl.-Interv.'s Opp'n).

Even if the Court is skeptical of the "admittedly difficult legal question" approach, however, *Nken* should not be interpreted to require a district court to reverse its merits findings prior to staying its own injunction. "[O]therwise, a district court would *never* stay an order pending

appeal, as every court that renders a judgment does so in the belief that its judgment is the correct one." *Maryland*, 777 F. Supp. 3d at 500 (quotation omitted).

## II. Federal Defendants Raise Difficult Legal Questions Over Which They Are Likely to Prevail.

### A. Jurisdiction

1. On the issue of final agency action, Federal Defendants are likely to prevail on their view that the outcome here is governed by *Jake's Fireworks Inc. v. Consumer Product Safety Commission*, 105 F.4th 627 (4th Cir. 2024). Plaintiffs argue that Federal Defendants have conflated the two different "requests" at issue in *Jake's Fireworks*: the request in the local Compliance Office's letter to Jake's Fireworks that it destroy its hazardous substances, and the request the Compliance Office suggested it would make of the full Commission to issue an administrative complaint in the event of Jake's Fireworks' noncompliance.[1] *See* Pl. States' Opp'n at 2. Even if the latter request is the relevant point of comparison, however, the result is the same: the Compliance Office's letter, like the August 11 Letter to AAMVA, did not conclude any action but instead foresaw future action by the authorized official.

The Fourth Circuit's analysis depended on its finding that "[i]t is the Commission itself, not its Compliance Office, that makes final determinations on whether goods are banned hazardous substances under the Federal Hazardous Substances Act and the Consumer Product Safety Act." *Jake's Fireworks*, 105 F.4th at 631. Similarly, here, it is the grants officer and contracts officer, not FMSCA's Chief Counsel, that makes final determination on whether to cancel grants or contracts. *See* Declaration of Keith Graham, ECF No. 101-2 (Graham Decl.). And those determinations must be preceded by several other non-final, intermediary steps. *See id.* ¶ 15

[1] Federal Defendants respectfully withdraw their previous erroneous quotation of the Court, ECF No. 136 at 2 (inadvertently inserting the word "compliance" into a quotation attributed to the Court), and apologize for the error.

("Before a grant may be terminated, the Agency must issue a formal written notification specifying the reason for termination, the effective date, and instructions for settling remaining allowable expenses."); *id*. ¶¶ 7-8 (discussing different possible procedures for terminating contracts under the Federal Acquisition Regulation).

Even if the Compliance Office had made an affirmative guarantee to Jake's Fireworks to issue the administrative complaint, it would have still been the "intermediate ruling" of an official without final decisionmaking authority. *Jake's Fireworks*, 105 F.4th at 630. The final agency action test pertains to the ultimate action contemplated (there, issuing an administrative complaint: here, cancelling grants and contracts), not any intermediate step beforehand or communicated intent to pursue an action. *See id*.

Plaintiffs argue that the FMSCA Chief Counsel's letter bound DOT to a future course of action because it purported to speak on behalf of the entire agency. *See* Pl. States' Opp'n at 3. But government employees ordinarily cannot bind the federal government through the exercise of apparent authority. *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419–20 (1990) (no apparent agency against the federal government to require payment of benefits); *United States v. Johnson*, 43 F.4th 771, 781–82 (7th Cir. 2022) ("The doctrine of apparent authority generally does not apply to sovereigns" (quoting Restatement (Third) of Agency § 2.03 cmt. g (Am. L. Inst. 2006))); *Est. of Bennett v. Comm'r*, 935 F.2d 1285 n. 1 (4th Cir. 1991) ("The Supreme Court has reversed every lower court finding of estoppel against the Government it has reviewed."). Like in *Jakes Fireworks*, the "lack[] [of] authority to issue binding final orders" meant that the FMSCA chief counsel's letter was "render[ed] . . . advisory." 105 F.4th at 633; *see also Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div. v. Loc. 134, Int'l Bhd. of Elec. Workers, AFL-CIO*, 419 U.S. 428,

444 (1975) (declining to find that "intense pressure, practically, to conform" made an agency action final).

2. If the August 11 Letter is final, then the Hobbs Act only permits jurisdiction in the appropriate court of appeals. Plaintiffs read *U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000), narrowly to have only decided when "agency *orders* are 'final orders' for the purposes of the Hobbs Act, not which agency actions constitute 'orders' in the first place." Pl. States' Opp'n at 3. But even if the latter is the more apt legal question for present purposes, this Court has never addressed what kind of agency action the August 11 Letter was if not an order.

*Weaver v. FMCSA* was wrongly decided, 744 F.3d 143 (D.C. Cir. 2014); even if it were binding upon this Court, however, it does not dictate the outcome here. *Contra* Pl. States' Opp'n at 3. The *Weaver* Court reasoned that because 28 U.S.C. § 2342(7) expressly covers "final agency actions," Congress must not have meant to cover all final agency actions when it used different language in Section 2342(3). *Weaver*, 744 F.3d at 146. But the Court failed to recognize that the Hobbs Act was not enacted all at once. The language of Section 2342(3) originated in 1950 (at the time it covered "final orders"; "rules" and "regulations" were added later). *See* Pub. L. 81-901, 64 Stat. 1129 (1950). When Congress added Section 2342(7) more than forty years later, it likely used the "final agency action" formulation to mirror a provision it was cross-referencing, not to suggest a narrow construction of Section 2342(3). *See* Pub. L. 102-365, § 5(c), 106 Stat. 972, 975 (1992).

In any event, *Weaver* concerned a challenge to the mere existence of a record in a database, not a request to turn over the database, thus the challenged "action" was far outside any plausible conception of an "order." In *Weaver* "both sides agree[d] that FMCSA's activity (or inactivity) vis-à-vis Weaver d[id] not qualify as a rule, regulation or final order." *Weaver*, 744 F.3d at 144.

Thus, unlike here, where the issue has been squarely presented to the Court and disputed by the Parties, the *Weaver* Court did not need to identify the type of agency action.

Process of elimination confirms that, if the August 11 Letter can be called a "final agency action," it must be an order. *Cf. Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div.*, 419 U.S. at 443 (an "order" is a direction to "anybody to do anything"); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312 (7th Cir. 1980) ("'order,' is broadly defined" under the APA). The APA only discusses a finite set of possible agency actions: "rule[s], order[s], license[s], sanction[s], relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). No party has contended that the August 11 letter is a rule (over which the Hobbs Act would also preclude review in this Court). It is not a "license," as it is not an "agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." *Id.* § 551(8). Even if it were, a "license" is simply a subgenus of an "order." 5 U.S.C. § 551(6). It is not a sanction, *see id.* § 551(10), as it does not directly implement any penalty but simply suggests future ones will be forthcoming if AAMVA does not comply with the request. *See* TRO Opinion, ECF No. 54 at 9 (describing any possible sanctions as "threatened sanctions," not final sanctions). And it is also obviously not "relief." *See* 5 U.S.C. § 551(11). Nor is it the "denial" of some agency action. The only remaining option is an "order," over which the Hobbs Act prohibits district courts from exercising jurisdiction.

**B. Merits**

1. Plaintiffs argue that consultation was required with the States because FMSCA's request for bulk access to the Commercial Driver's License Information System (CDLIS) would allegedly contravene the purpose of the CMVSA. *See* Pl. States' Opp'n at 4. That argument is exceedingly difficult to square with CMVSA assignment of ultimate responsibility for the CDLIS database to DOT. 49 U.S.C. § 31309(a). Nothing in the CMVSA delineates between query-level

access and bulk access to CDLIS, and DOT was never required to contract with a third-party to operate the system, *see id*. § 31309(d). If DOT had decided to operate CDLIS on its own, it would have necessarily had bulk access to the entirety of the data.[2] Rather than contravening the CMVSA, DOT's bulk access is plainly envisioned by it. The greater power to operate the entire CDLIS database and set the information availability policy, *id*. § 31309(c), must include the lesser power of accessing the data within that database. *Cf. Patchak v. Zinke*, 583 U.S. 244, 252 (2018) ("Congress' greater power to create lower federal courts includes its lesser power to limit the jurisdiction of those Courts" (quotation omitted)). Accessing the CDLIS data is simply not the type of action for which Congress contemplated consultation would be required.

2. The data request is also lawful under DPPA's government-use exception. Plaintiffs' argument that the exception requires an explanation of how the agency intends to use each datum is inconsistent with *Senne v. Village of Palatine*, which held that the existence of "a number of permissible uses of the personal information" is sufficient to satisfy the government-use exception. 784 F.3d 444, 446 (7th Cir. 2015). That approach does not require that the government pair each individual piece of data obtained to a particular one of those specified uses. To the contrary, in *Senne* "the personal information collected by [a government agency] was 'for use' in connection with the [agency's] duties, whether or not each item of information . . . would ever be used." *Id.* at 447 (emphasis added).

3. Many of the Privacy Act's requirements Plaintiffs allege to have been violated, such as rules on sharing records with other agencies, apply to records already housed within a

[2] The States contend this "changes nothing" because if DOT had operated the system from the beginning, they "would have had an opportunity then to negotiate the terms of their data sharing with FMCSA." Pl. States' Opp'n at 7. They do not assert, however, that these terms would or even could prevent bulk access to the data, a critical part of maintaining and operating CDLIS.

system of records. Plaintiffs put the cart before the horse by arguing these requirements have been violated before DOT has ever had the opportunity to comply with them. The only Privacy Act question relevant at this point is whether the agency has a system of records capable of housing the data it requested. It does. *See* Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727, 35727 (June 21, 2006).

4. The agency satisfied the requirement that it reasonably explain its need for the data, thus its actions were not arbitrary and capricious. The August 11 Letter expressed that DOT needs the requested data "to help prevent fatal trucking accidents involving the many drivers to whom States have improperly issued Commercial Driver's Licenses." ECF No. 1-2 at 21. Numerous earlier communications underscore DOT's reasons for the request. DOT "conduct[s] routine reviews and data analysis to oversee the national CDL program." *Id.* at 2. It intends to use the data "as part of [its] statutory and regulatory oversight in [its] ongoing efforts to ensure the integrity and issuance of [CDLs] and Commercial Motor Vehicles (CMVs)." *Id.* at 5. And DOT further explained that, to execute its "statutory safety and regulatory mandates under 49 U.S.C. Chapters 311 and 313," it would use the requested data to "verify[] [CDL] validity and conduct[] motor carrier safety assessments." *Id.* at 9; *see also*, *e.g.*, 49 U.S.C. § 31305 (requiring agency to ensure that commercial drivers are fit to operate commercial motor vehicles); 49 U.S.C. § 31310 (requiring agency to ensure that commercial drivers do not present safety risks). That reasoning provides ample basis—directly rooted in DOT's statutory authorities—to request the data at issue here. The Court misapplied the APA's deferential review standard by declining to "uphold" the agency's explanation even though the agency's path could "reasonably be discerned." *Bacardi & Co. v. Squires*, 179 F.4th 237, 244 (4th Cir. 2026).

5. The Spending Clause claim is also unlikely to succeed. Congress clearly authorized the contemplated access prior to the States accepting funds when it provided that "[t]he Secretary may require a State, *as a condition of an award of grant money* under this section, to *provide the Secretary access to all State licensing status and driver history records* via an electronic information system, subject to section 2721 of title 18." 49 U.S.C. § 31106(c)(2) (emphasis added). The statutory text thus gives States clear notice that their ability to receive federal highway funding may be conditioned on DOT's access to "all State licensing status and driver history records[.]" *Id*.

While the States speculate that they may have behaved differently had DOT not used an authorized operator, AAMVA, *see* Pl. States' Opp'n at 7, they do *not* allege that they would have declined highway funding if DOT had retained full operational responsibility for CDLIS, which would have necessarily entailed bulk access. So not only is the Spending Clause not implicated because there is no threat to the States' funding, *see Landor v. Louisiana Dep't of Corrs. & Pub. Safety*, 609 U.S. 59, 67-68 (2026) (describing "sanctions" for "violating conditions found in . . . Spending Clause legislation"), it is also not implicated because the States do not allege they were prevented from "exercise[ing] their choice" to accept or decline funding "knowingly, cognizant of the consequences of their participation." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

## III. Federal Defendants Are Irreparably Harmed Absent a Stay.

In addition to the irreparable harm Federal Defendants are experiencing "from a threshold error" in exercising jurisdiction, *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025), and the impediment to tackling the urgent safety issues posed by unqualified operators of commercial motor vehicles, *see* Third Liberatore Declaration, ECF No. 136-1 ¶¶ 4-9, Federal Defendants, and

other government agencies,[3] are perceptibly impaired in their ability to execute their statutory authorities due to the overbroad language the injunction employs and the Court declined to clarify.

While Plaintiffs dismiss Federal Defendants' harms as "specter[s]," Pl. States' Opp'n at 8, the harms to the Separation of Powers associated with requiring judicial preclearance of executive actions are very real. Plaintiffs assert that Federal Defendants' earlier request for clarification of the injunction is the same as a request for preclearance because both ask for a "hypothetical ruling." *See* Pl. States' Opp'n at 8. Not so. A ruling on a motion for clarification is concrete and not hypothetical—it asks for more details on what the Order means as a facial matter "because district courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004). As the Supreme Court has explained, if a party believes an "[i]njunction was improper," then they should "challenge[] it" in "the court of first instance." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). Unlike preclearance, a motion for clarification does not ask for the Order to be applied to a hypothetical set of future facts. Thus, it is not inconsistent for Federal Defendants to have sought clarification and to now raise harms associated with preclearance.

**IV. The Public Interest and Balance of Equities Favor a Stay.**

Moreover, any irreparable harm to Plaintiffs is outweighed by the "the respect due [to] coordinate branches of government," *Baker v. Carr*, 369 U.S. 186, 217 (1962), and Federal Defendants' need for the "data to ensure that States issue CLPs and CDLs to drivers who are qualified, properly trained, and do not pose significant safety risk[.]" Declaration of Thomas Liberatore, ECF 45-2 ¶ 17. The public has an interest in ensuring that CDLs and Commercial

[3] Plaintiffs argue that the harm to other agencies is "irrelevant to the legal standard anyway." Pl. States' Opp'n at 8. The harms to the Federal Government at large are harmful to Federal Defendants as components of the broader entity. However, if the Court disagrees, it should at least consider them as part of the public interest and balance of the equities analysis.

Learner's Permits are appropriately regulated and issued. This data is crucial to "the Agency's efforts to ensure that every driver permitted to operate an 80,000-pound commercial motor vehicle on the Nation's roadways is properly verified, tested, licensed, and qualified." Second Declaration of Thomas Liberatore, ECF 101-1 ¶ 29. The preliminary injunction disrupts Federal Defendants' efforts to ensure the integrity and issuance of CDLs and Commercial License Permits, thus significantly harming that interest. Indeed, the CMVSA contemplates DOT will have access to information systems established under chapter 313 of title 49 for the express purpose of "evaluat[ing] the safety fitness of motor carriers and drivers" and "develop[ing] strategies to mitigate safety problems." 49 U.S.C. § 31106(a)(3)(B), (C). Limiting DOT's access will severely harm the public interest—as identified expressly in the CMVSA—in ensuring that the Nation's roadways are safe for public use. Thus, the balance of equities decisively tips in Federal Defendants' favor.

***

For these reasons, Federal Defendants respectfully request that the Court stay its injunction pending appeal.

//

//

//

Dated: October 28, 2026

Respectfully submitted,

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

*Counsel for Federal Defendants*