**IN THE UNITED STATES DISTRICT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 1:26-cv-2547 (AJT/IDD) |

**FEDERAL DEFENDANTS' MOTION TO STAY THE COURT'S SECTION 705 STAY PENDING APPEAL**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3731
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Counsel for Federal Defendants*

Federal Defendants respectfully request the Court stay its Order staying the August 11 Letter pursuant to 5 U.S.C. § 705, ECF No. 161 (the "Section 705 Stay"), pending appeal of that Order to the United States Court of Appeal for the Fourth Circuit. *See* Notice of Appeal, ECF No. 162. A stay under 5 U.S.C. § 705 is subject to the same legal standard governing a motion for a preliminary injunction. *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020). Thus, to obtain a stay of the Section 705 Stay, "the movant must establish four factors: (1) that the movant will likely succeed on the merits on appeal, (2) that the movant will suffer irreparable injury if the stay is denied, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest." *BDC Cap., Inc. v. Thoburn Ltd. P'ship*, 508 B.R. 633, 636 (E.D. Va. 2014) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). When, as here, the government is seeking a stay pending appeal, the public-interest and balance-of-the-equities factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because "it is generally logically inconsistent for a court to [order] . . . preliminary [relief] and then stay that order, as the findings on which those decisions are premised are almost perfect opposites," a better approach is for the district court to "merely determine whether the Defendant's appeal presents an admittedly difficult legal question." *Maryland v. United States Dep't of Agric.*, 777 F. Supp. 3d 496, 500 (D. Md. 2025) (quotations omitted). "Otherwise, a district court would never stay an order pending appeal." *Id.*; *see also Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980) ("The likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal"), *aff'd*, 649 F.2d 863 (4th Cir. 1981).

Federal Defendants acknowledge that the Court recently denied a stay pending appeal of its preliminary injunction, ECF No. 160, and that the legal arguments underlying both the

preliminary injunction and § 705 stay are largely identical. Nonetheless, the factors strongly weigh in favor of a stay here. Even though the Court has preliminarily ruled adversely on the merits, Federal Defendants have strong arguments for appeal—including serious questions as to whether the Court has jurisdiction over the matter to even enter an injunction—and the equities and public interest weigh against preventing the Department of Transportation (DOT) from exercising its full array of authorities to oversee and maintain the Commercial Driver's License Information System (CDLIS) and protect Americans from grave safety risks posed by unqualified commercial motor vehicle operators.

## I. Federal Defendants' arguments are meritorious but at least raise multiple difficult legal questions.

Federal Defendants' arguments are meritorious for the reasons explained in their prior briefing. At the very least, those arguments raise difficult legal questions on Plaintiff-Intervenor's standing, the final status of the agency action, the availability of review under the Hobbs Act, whether the data request was arbitrary and capricious or contrary to law under the Administrative Procedure Act ("APA"), and the scope of relief available under 5 U.S.C. § 705.

1. The Court did not have jurisdiction to enter the requested relief because Plaintiff-Intervenor failed to demonstrate standing. "[A] plaintiff must demonstrate . . . for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). The Court did not explain its analysis of Plaintiff-Intervenor's standing prior to issuing the Section 705 Stay. *See* Section 705 Stay at 2. Plaintiff-Intervenor lacked standing because its harms were speculative and not traceable to Federal Defendants; instead, they depended upon the actions of multiple third-parties (non-plaintiff States and AAMVA) that were unlikely to occur and far from "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Furthermore, Plaintiff-Intervenor failed to demonstrate it had associational standing and no conflicts of interest

amongst its membership. In particular, Plaintiff-Intervenor failed to explain why bulk access to its members' data causes cognizable injury, when individualized access—which Plaintiff-Intervenor does not dispute FMCSA has, and is entitled to have—is unproblematic.

2. The Court also lacked jurisdiction because Plaintiff-Intervenor did not challenge final agency action under the APA. The Court's contrary conclusion that the August 11 Letter's request for data, which included warnings about the consequences for failure to comply, is in significant tension with governing precedent. Under *Bennett v. Spear*, a final action "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177-78 (1997) (quotations omitted).

The August 11 Letter was an interlocutory step before any actual grant or contract cancellations; it did not itself determine any rights, obligations or legal consequences but instead warned of consequences that were to follow later. Like the letter at issue in *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627 (4th Cir. 2024), the August 11 Letter was simply a request, not a final determination issued by on official authorized to impose binding legal consequences. *See id.* at 633. Like the letter in *Jake's Fireworks*, the August 11 Letter was not issued by an official with legal authority to take final agency action. *Id.* ("The "lack[] [of] authority to issue binding final orders" meant that the deadline given to comply was "render[ed] . . . advisory."); *see* Declaration of Keith Graham, ECF No. 101-2.

3. Moreover, if the agency action was final, then it was a "final order" reviewable only in the Court of Appeals. In holding otherwise, this Court diverged from the Ninth Circuit's conclusion that "a 'final agency action' is analytically equivalent to a 'final order' under the Hobbs Act." *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000); *see also Am.*

*Trucking Ass'n, Inc. v. United States*, 755 F.2d 1292, 1296 (7th Cir. 1985). Further, the Court never identified what type of agency action the August 11 Letter was, if not a final order. *See* PI Op. at 7. The Court's divergence from two other federal appellate courts' views on this matter, combined with its inability to identify the type of agency action at issue, demonstrate that, at a minimum, "Defendant's appeal presents an admittedly difficult legal question." *Maryland*, 777 F. Supp. 3d 496, 500 (D. Md. 2025) (quotations omitted).

4. The Court's analysis of the APA issues in this case also indicates they pose difficult legal questions.

On arbitrariness and capriciousness, the Court failed to credit Federal Defendants' explanation of the need for and planned uses for the data to "verify[] [CDL] validity and conduct[] motor carrier safety assessments." ECF No. 45 at 22. Instead, it subjected Federal Defendants' explanation to heightened scrutiny when it should have upheld it so long as the agency's "path may reasonably [have] be[en] discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court also erred in concluding that the agency failed to adequately address a likely "dramatic change in policy." PI Op. at 11. The change-in-position doctrine only applies where the agency has actually articulated a policy from which it departed. *See FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 569-70 (2025) (explaining the applicability of the change-in-position doctrine). In any event, the Plaintiff-Intervenor has no legitimate or serious reliance interest in any prior policy because the records are already accessible by the federal government (and have been accessed on a case-by-case basis), and DOT could have operated CDLIS on its own from the very beginning without using AAMVA as an intermediary. *See id.* at 585; 49 U.S.C. § 31309(d).

On the Driver's Privacy Protection Act ("DPPA"), the Court's rejection of DOT's expressed need for the data to carry out its statutory responsibilities conflicts with the text of the DPPA exception "[f]or use by any government agency . . . in carrying out its functions." 18 U.S.C. § 2721(b)(1); *see also* 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of DPPA lead sponsor Rep. Jim Moran) (DPPA "authorizes unlimited access to personal information for courts, law enforcement, governmental agencies, and for other driver and automobile safety purposes."). The Court's conclusion is also contrary to the Seventh Circuit's view that "the personal information collected [is] 'for use' in connection with the [government's] duties, *whether or not each item of information . . . would ever be used*." *Senne v. Village of Palatine*, 784 F.3d 444, 447 (7th Cir. 2015) (emphasis added).

On the Privacy Act, the Court did not even discuss the system of records DOT intends to house the CDLIS data within before reaching its conclusion that it could not lawfully do so. *See* TRO Op. at 10. FMCSA has an existing system of records named the Electronic Document Management System (EDMS), which covers "[a]ll operators of interstate commercial motor vehicles, licensed or unlicensed." Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727, 35727 (June 21, 2006). For reasons previously discussed by Federal Defendants, ECF No. 45 at 18-20, this system satisfies the Privacy Act requirements relevant here, and at the very least, it raises questions more difficult than the Court's limited analysis suggests.

5. Finally, the Court exceeded its remedial authority under 5 U.S.C. § 705, which envisions a Court will "postpone the effective date" of agency action only to the "extent necessary to prevent irreparable injury." The August 11 Letter's effective date had clearly passed by the time Plaintiff-Intervenor requested relief, therefore the Court could not "postpone" it any further. The August 11 Letter requested "production by August 17[.]" ECF No. 1-2 at 22. Whether the effective

date of the letter was the date it was issued, August 11, or the date it requested compliance by, August 17, both dates have long passed; therefore, "[g]iven this litigation's current procedural posture, 5 U.S.C. § 705 is inapposite." *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 863 (N.D. Tex. 2022) (declining to postpone an August 2022 effective date in October 2022); *see also Becerra v. United States Dep't of Interior*, 276 F. Supp. 3d 953, 964 (N.D. Cal. 2017) ("The plain language of the statute authorizes postponement of the 'effective date,' not 'compliance dates.'"); *Safety-Kleen Corp. v. EPA*, No. 92-1629, 1996 U.S. App. LEXIS 2324 (D.C. Cir. Jan. 19, 1996). Furthermore, in issuing a broad stay rather than one tailored the irreparable harm claimed by Plaintiff-Intervenor's member, the Court exceeded limitations on non-party relief identified by the Supreme Court in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

**II. Federal Defendants will be irreparably injured without a stay.**

"[A] stay applicant can[] demonstrate irreparable harm from a threshold error," such as a Court's exercise of jurisdiction where it is lacking. *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025); *see also Trump v. California*, No. 26A124, 2026 WL 2473573, at *5 (U.S. Aug. 24, 2026) (same); *Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs.*, --- F.4th ----, No. 26-1321, 2026 WL 2969474, at *5 (1st Cir. Oct. 2, 2026); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time [the government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury").

The Court's Section 705 Stay, layered on top of its broad preliminary injunction, is imposing ongoing irreparable harm to the federal government, including agencies that are not defendants in this case, by chilling their ability to carry out their lawful authorities. The Court's refusal to clarify that its injunction does not "impose restrictions upon the federal government's

exercise of legal authorities not at issue in or implicated by this litigation, including statutory authorities (including criminal authorities) possessed by departments or agencies that are not parties to this case," sweeps in lawful agency actions and deters agencies from engaging in them under threat of contempt. Federal Defs.' Mot. to Clarify, ECF No. 118 at 1; *see also* Order Denying Clarification, ECF No. 124. The Section 705 Stay only compounds these harms by adding further ambiguity over what actions are lawful; for example, it is unclear now whether a non-Plaintiff State could release its data to Federal Defendants, or other agencies, without violating the stay of the data request. New operational burdens like this add to the irreparable harm already inuring to Federal Defendants.

The Constitution vests the "entire" executive power in the President. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). But the Court has in effect seized a portion of that power for itself. The Court's offer that "to the extent any federal officer or agency is unclear whether an actually contemplated action, decision or course of conduct would be in violation of the Court's Order, those concerns can be brought to the Court for a ruling," is untenable. Order Denying Clarification at 1. Requiring the Executive Branch to seek preclearance from the Judicial Branch before engaging in a contemplated course of action strains the Separation of Powers, by substituting presidential supervision over the execution of the laws with judicial supervision. *Cf. Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("an agency under the direction of the executive branch . . . must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981) ("The authority of the President to control and supervise executive policymaking is derived from the Constitution.").

Further, any hypothetical ruling from this Court on preclearance would be an advisory opinion to the Executive Branch, which courts are strictly forbidden from issuing. *Clinton v. Jones*,

520 U.S. 681, 700 (1997) ("the judicial power to decide cases and controversies does not include the provision of purely advisory opinions to the Executive"); *Case of Hayburn*, 2 U.S. 408, 410 (1792) (doubting the "propriety of giving an opinion in a case which has not yet come regularly and judicially before us"). Such limitations exist to ensure that judges resolve justiciable controversies, not supervise "day-to-day agency management." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

In addition to the irreparable harm to the Executive Branch at large, the injunction, and now the Section 705 Stay, is also irreparably harming DOT's ability to tackle the urgent safety issues posed by unqualified operators of commercial motor vehicles. Third Liberatore Declaration at ¶¶ 4-9. The CDLIS data is needed to identify these unqualified operators and remove them from the road before they cause crashes resulting in injuries or fatalities. *Id.* ¶ 7 Without the data, DOT is irreparably harmed by the hinderance to carrying out its statutory obligation to oversee State CDL issuance and ensure national compliance and uniformity. *Id.* ¶¶ 8- 9.

## III. The remaining stay factors favor granting a stay pending appeal.

The remaining factors also favor granting a stay. Plaintiff-Intervenor has not established irreparable harm if this Court grants a stay, and the public interest and the balance of the equities weigh in favor of a stay.

Plaintiff-Intervenor has not established that they would be irreparably harmed if AAMVA honors FMSCA's request. For Plaintiff-Intervenor to encounter any harm, AAMVA would need to pursue the opt-in or opt-out choice it was considering, Texas (its member's home State) would need to authorize transmission of its data, and AAMVA would need to decide to transmit that data to Federal Defendants prior to the resolution of litigation. Each of these uncertainties undermines any likelihood Plaintiff-Intervenor will be irreparably harmed absent relief.

Nor do Plaintiff-Intervenor's fears about a (lawful)[1] disclosure to another federal agency change the analysis. Courts have "declined to find irreparable injury" from the disclosure of private information "where the challenged disclosure is not 'public'" but instead is to a small number of "individuals obligated to keep [the information] confidential." *Univ. of Cal. Student Ass'n v. Carter*, 766 F. Supp. 3d 114, 121 (D.D.C. 2025); *see also AFSCME v. Social Sec. Admin.*, 172 F.4th 361, 373-74 (4th Cir. 2026) (en banc). Under those circumstances, a court can fashion "adequate . . . corrective relief" after the fact or order those individuals to return or destroy the records. *Id.* (citation omitted). Because adequate relief would be available at a later date, such harms are speculative and not irreparable. *See Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

To the extent that Plaintiff-Intervenor has demonstrated irreparable harm at all, it is heavily outweighed by the "the respect due [to] coordinate branches of government," *Baker v. Carr*, 369 U.S. 186, 217 (1962), and Federal Defendants' need for the "data to ensure that States issue CLPs and CDLs to drivers who are qualified, properly trained, and do not pose significant safety risk[.]" Declaration of Thomas Liberatore, ECF 45-1 at ¶ 17. The public has an interest in ensuring that CDLs and Commercial License Permits are appropriately regulated and issued. This data is crucial to "the Agency's efforts to ensure that every driver permitted to operate an 80,000-pound commercial motor vehicle on the Nation's roadways is properly verified, tested, licensed, and qualified." Second Declaration of Thomas Liberatore, ECF 101-1 at ¶ 29. The preliminary injunction and Section 705 Stay disrupt Federal Defendants' efforts to ensure the integrity and

[1] The Court's concern that FMSCA has not followed its own policy for data sharing with other agencies is premature, *see* PI Op. at 11, as there is no reason to suspect that FMSCA would not execute the appropriate data sharing agreement.

issuance of CDLs and Commercial License Permits, thus significantly harming that interest. Indeed, the CMVSA contemplates DOT will have access to information systems established under chapter 313 of title 49 for the express purpose of "evaluat[ing] the safety fitness of motor carriers and drivers" and "develop[ing] strategies to mitigate safety problems." 49 U.S.C. § 31106(a)(3)(B), (C). Limiting DOT's access will severely harm the public interest—as identified expressly in the CMVSA—in ensuring that the Nation's roadways are safe for public use. That equity too weighs strongly in the Federal Defendants' favor.

Plaintiff-Intervenor does not have "a particularly weighty interest in their reliance" on relief that this Court "likely lacked jurisdiction to enter." *Am. Fed'n of Gov't Emps. Loc. 2305*, 2026 WL 2969474, at *5. Thus, the balance of equities decisively tips in Federal Defendants' favor.

***

For these reasons, Federal Defendants respectfully request that the Court stay its Section 705 Stay pending appeal.

//

//

//

Dated: November 3, 2026

Respectfully submitted,

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
LINDSEY GILMAN
(AZ Bar No. 034003)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

*Counsel for Federal Defendants*