**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

STATE OF ILLINOIS, *et al.*,

*Plaintiffs*,

and

AMERICAN FEDERATION OF TEACHERS,

*Plaintiff-Intervenor,*

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,

*Defendants*.

No. 1:26-cv-2547 (AJT/IDD)

**PLAINTIFF-INTERVENOR AMERICAN FEDERATION OF TEACHERS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY SECTION 705 STAY PENDING APPEAL**

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

*Counsel for Plaintiff-Intervenor AFT*

November 13, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 1

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. The Federal Defendants have not made a strong showing that they will succeed on the merits .......... 4

A. The Federal Defendants are unlikely to succeed on their jurisdictional arguments. .......... 5

B. The Federal Defendants are unlikely to succeed on their merits arguments. .......... 8

C. The Federal Defendants are unlikely to succeed on their arguments about the availability and scope of § 705 relief. .......... 10

II. The Federal Defendants have not established irreparable harm. .......... 11

III. The public interest and the balance of the equities weigh against a stay. .......... 12

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Cases** **Pages**

*American Trucking Ass'n v. United States*,
755 F.2d 1292 (7th Cir. 1985) ........ 7

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 6

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 5

*Coalition for Independent Technology Research v. Rubio*,
836 F. Supp. 3d 215 (D.D.C. 2026) ........ 12

*Genesis GSA Strategic One, LLC v. Howard County*,
No. 1:26-CV-00915-ABA, 2026 WL 3056874 (D. Md. Oct. 13, 2026) ........ 4

*Griffin v. Department of Labor Federal Credit Union*,
912 F.3d 649 (4th Cir. 2019) ........ 5

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ........ 3

*Illinois v. U.S. Department of Homeland Security*,
No. 1:26-mc-00019-AJT-IDD, ECF No. 89 (E.D. Va. Oct. 21, 2026) ........ 8

*Jake's Fireworks Inc. v. Consumer Product Safety Commission*,
105 F.4th 627 (4th Cir. 2024) ........ 7

*KalshiEX LLC v. Commodity Futures Trading Commission*,
119 F.4th 58 (D.C. Cir. 2024) ........ 3

*Lowy v. Daniel Defense, LLC*,
167 F.4th 175 (4th Cir. 2026) ........ 6

*Make the Road New York v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026) ........ 12

*Maryland v. U.S. Department of Agriculture*,
777 F. Supp. 3d 496 (D. Md. 2025) ........ 4, 5

*Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983) ........ 10

*North Carolina Green Party v. North Carolina State Board of Elections*,
620 F. Supp. 3d 407 (E.D.N.C. 2022)....................................................................... 4

*Nken v. Holder*,
556 U.S. 418 (2009).................................................................................................. 3, 4

*PFLAG, Inc. v. Trump*,
No. 25-1279, 2026 WL 1429738 (4th Cir. May 21, 2026)............................................. 3

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983).................................................................................................. 3

*Senior Executives Ass'n v. United States*,
891 F. Supp. 2d 745 (D. Md. 2012)........................................................................... 12

*Senne v. Village of Palatine*,
784 F.3d 444 (7th Cir. 2015) ....................................................................................... 8

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025).................................................. 4

*Trump v. California*,
No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026)................................................. 11

*United States v. Virginia*,
No. 3:26CV545, 2026 WL 2257488 (E.D. Va. Aug. 5, 2026) ........................................ 4

*US West Communications, Inc. v. Hamilton*,
224 F.3d 1049 (9th Cir. 2000) ..................................................................................... 7

*Virginia Railway v. United States*,
272 U.S. 658 (1926).................................................................................................... 3

*Weaver v. Federal Motor Carrier Safety Administration*,
744 F.3d 142 (D.C. Cir. 2014)................................................................................... 2, 7

**Statutes**

5 U.S.C. § 552a(e)(1)..................................................................................................... 9

5 U.S.C. § 705.......................................................................................................... 1, 2, 3

18 U.S.C. § 2721(b)(1) ..................................................................................................... 8

28 U.S.C. § 2342............................................................................................................... 7

**Regulations**

49 C.F.R. § 501.8(d)(5) .......... 7

## INTRODUCTION

On October 29, 2026, this Court exercised its authority pursuant to 5 U.S.C. § 705 to stay the August 11, 2026, data demand (Data Demand) issued by Defendant Federal Motor Carrier Safety Administration (FMCSA) to Defendant American Association of Motor Vehicle Administrators (AAMVA). Through the Data Demand, FMCSA sought to compel AAMVA to turn over master pointer records (MPRs) that contained the sensitive personal information of commercial drivers, including members of Plaintiff-Intervenor American Federation of Teachers—records that AAMVA has held for four decades and to which FMCSA has never been granted mass access. *See* 705 Stay Order, ECF No. 161. The stay issued by this Court "preserves the status quo that has been in effect for nearly forty years" while this litigation continues. Order Denying Stay of Prelim. Inj., ECF No. 160 (PI Stay Denial) at 1.

The Federal Defendants now ask this Court to disrupt the status quo by staying the 705 order pending appeal. In doing so, they simply repeat arguments already rejected by this Court. The Court should deny the motion.

## BACKGROUND

As discussed in more detail in the Court's temporary restraining order (TRO), ECF No. 54 at 1–2, and order granting a preliminary injunction, ECF No. 113 at 3–6, this case arises out of FMCSA's demand that AAMVA provide it with each and every pointer record within the CDLIS for the last five years. FMCSA threatened that, if AAMVA did not comply with the Data Demand, the Department of Transportation (DOT) "w[ould] pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the [DHS] subpoena, and considering terminating its contract with AAMVA." ECF No. 1-2 at 21.

After twenty-one states and the District of Columbia commenced this action, this Court first entered an administrative stay enjoining AAMVA "from providing the demanded data and information to any Defendant, or any other agency acting in coordination with Defendants" and enjoining any defendant "from taking any adverse actions to implement or enforce, or that are otherwise related to, its data demand," ECF No. 25 at 2, and then issued a TRO, *see* ECF No. 54. In granting a TRO, the Court explained that it had jurisdiction because the August 11 letter from FMCSA constituted a "final agency action" under the APA, and that review of that action was not vested in the court of appeals pursuant to the Hobbs Act. *Id.* at 6–7 (citing *Weaver v. FMCSA*, 744 F.3d 142, 146 (D.C. Cir. 2014)). Turning to the merits, the Court concluded that the Plaintiff States were likely to succeed on the merits of their APA, spending clause, and contract claims. *See id.* at 8–13. The Court also found that irreparable harm was likely absent relief, explaining that "the 17 million records at issue here, the overwhelming portion of which no doubt includes data on U.S. citizens, will not be disclosed to a small number of individuals with confidentiality obligations." *Id.* at 13–14. Finally, the Court found that the equities and the public interest favored the requested injunction. *See id.* at 14–15.

On September 17, 2026, the Court granted the Plaintiff States' motion for a preliminary injunction, affirming each of its earlier conclusions as to the appropriateness of preliminary relief. *See* PI Order, ECF No. 113. On October 8, 2026, the Federal Defendants noticed an appeal from the preliminary injunction, *see* ECF No. 134, and moved for a stay pending appeal, *see* ECF No. 135. This Court denied that motion on October 30, 2026. *See* ECF No. 160.

On October 8, 2026, Plaintiff-Intervenor American Federation of Teachers (AFT) moved for a stay of the Data Demand pursuant to 5 U.S.C. § 705. *See* ECF No. 131. The Court granted that motion on October 30, 2026, and stayed the Data Demand in its entirety pending review. *See*

705 Stay Order, ECF No. 161. In so doing, the Court held "that AFT has standing to seek the relief sought in the Motion To Stay, the Court has jurisdiction to grant the Motion to Stay, and for the reasons stated in its [September 17, 2026] Preliminary Injunction Order, the factors governing the issuance of the requested stay weigh in AFT's favor and the issuance of the requested stay is proper under 5 [U.S.C.] § 705." *Id.* at 2.

The Federal Defendants noticed an appeal from that order the same day. ECF No. 162. On November 3, 2026, the Federal Defendants moved the Court to stay its section 705 stay order. ECF No. 166. They did not seek expedition of their motion.

## LEGAL STANDARD

A stay pending appeal is "an exercise of judicial discretion," *Virginia Railway v. United States*, 272 U.S. 658, 672 (1926), granted only in "extraordinary circumstances." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). In determining whether to exercise that discretion, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). "The first two factors are the 'most critical,'… [a]nd a showing of irreparable injury is necessary for a stay." *PFLAG, Inc. v. Trump*, No. 25-1279, 2026 WL 1429738, at *3 (4th Cir. May 21, 2026) (Benjamin, J., concurring) (quoting *Nken*, 556 U.S. at 434 and citing *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024)).

## ARGUMENT

### I. The Federal Defendants have not made a strong showing that they will succeed on the merits.

To obtain a stay pending appeal, an applicant must make a "strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 426; *see Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *3 (4th Cir. July 1, 2025).

Citing non-binding authority, the Federal Defendants argue that, here, where a district court is considering whether to stay its own order pending appeal, a movant should be required to show only the existence of a "difficult legal question." Fed. Defs.' Motion to Stay (Motion), ECF No. 167 at 2 (quoting *Maryland v. USDA*, 777 F. Supp. 3d 496, 500 (D. Md. 2025)). Neither the Fourth Circuit nor the Supreme Court has suggested that district courts should apply this lower standard, though, and district courts throughout this circuit regularly require a "strong showing" of a likelihood of success in order to obtain a stay pending appeal. *See, e.g.*, *Genesis GSA Strategic One, LLC v. Howard Cnty.*, No. 1:26-CV-00915-ABA, 2026 WL 3056874, at *1 (D. Md. Oct. 13, 2026); *United States v. Virginia*, No. 3:26CV545, 2026 WL 2257488, at *2 (E.D. Va. Aug. 5, 2026); *N.C. Green Party v. N.C. State Bd. of Elections*, 620 F. Supp. 3d 407, 410 (E.D.N.C. 2022). The required merits showing for obtaining a stay is similar to the required merits showing for obtaining a preliminary injunction, "not because [a stay pending appeal and a preliminary injunction] are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434.

The well-established "strong showing" standard makes good sense for an additional reason: If a defendant could obtain a stay of a preliminary injunction pending appeal based solely on the existence of "difficult legal questions," district courts' authority to issue preliminary injunctive

relief in a considerable number of cases would be nullified. Moreover, it makes little sense for district courts to stay their own preliminary injunctions pending appeal where the appellate court, applying the traditional requirement of a strong likelihood of success on the merits, would not grant a stay. Indeed, in the one case on which the Federal Defendants rely, the district court concluded that the government was not entitled to a stay when the legal questions "are complex and involve issues of first impression" if —as here— "the Government simply rehashes the same arguments that the Court considered in detail and rejected in the Memorandum accompanying the Preliminary Injunction Order." *Maryland*, 777 F. Supp. 3d at 500.

Here, under either the traditional standard or that which the Federal Defendants propose, the merits factor weighs against the requested stay. *See* PI Stay Denial, ECF No. 160 at 2 n.2 (concluding that a stay of the preliminary injunction was "not warranted" under either standard).

**A. The Federal Defendants are unlikely to succeed on their jurisdictional arguments.**

The Federal Defendants suggest that they are likely to prevail on a number of jurisdictional arguments. First, they rehash their standing arguments—asserting that AFT lacks standing because its harms are "speculative" and "not traceable to Federal Defendants." Motion, ECF No. 167 at 3. As AFT previously explained, though, the Data Demand poses "a 'real or imminent threat' that [AFT members] will suffer an injury in the future,' which is all that is necessary to establish standing to seek prospective relief.'" *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)), *quoted in* AFT 705 Reply, ECF No. 158 at 10. The Data Demand purports to compel the turnover of private information of AFT driver members, in both the Plaintiff States and elsewhere, including information of Declarants Jane Doe and John Doe. This unauthorized disclosure is not speculative, but rather the entire point of the Data Demand. Where an agency action is designed to provoke a

third-party response, that response is traceable to that agency action. *Cf. Lowy v. Daniel Defense, LLC*, 167 F.4th 175, 196–97 (4th Cir. 2026) (recognizing that traceability requirement is satisfied where "the defendants' conduct had a predictable effect" on the actions of third parties).

The Federal Defendants also assert that AFT "failed to demonstrate it had associational standing and no conflicts of interest amongst its membership." Motion, ECF No. 167 at 3–4. As AFT previously explained, though, it satisfies all the requirements of associational standing. The Federal Defendants' speculation that some AFT members may have policy disagreements with one another is not evidence of a conflict of interest. *See* AFT 705 Reply, ECF No. 158 at 14–16. And the relief AFT seeks in this action would benefit all AFT driver members equally by protecting every driver member's data from disclosure.

Next, the Federal Defendants argue that the August 11 Letter demanding that AAMVA turn over the MPRs or face, in the words of that letter, "immediate action," ECF No. 1-2 at 21, was not final agency action. As this Court has twice explained, however, that letter satisfies the two-part standard for finality set out in *Bennett v. Spear*, 520 U.S. 154 (1997). *See* TRO, ECF No. 54 at 6–7; PI Order, ECF No. 113 at 3–7. On its face, the letter "mark[s] the consummation of the agency's decisionmaking process" and is not "tentative or interlocutory." *Bennett*, 520 U.S. at 178. It contains a final, considered demand that AAMVA turn over the MPRs; the letter is clear that FMCSA will not continue negotiating. Rather, the letter states that, given AAMVA's decision, "DOT has no choice but to take immediate action to secure the production of the requested pointer records," unless *AAMVA* "reconsiders its position." ECF No. 1-2 at 21–22. And the letter was one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted), because it reflects FMCSA's (erroneous) determination that AAMVA has an "obligation to produce DOT's own records to

DOT," and states that a failure to comply with that supposed obligation will result in "immediate action." ECF No. 1-2 at 21. While the Federal Defendants continue to point to *Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627 (4th Cir. 2024), *cited in* Motion, ECF No. 167 at 4, that case is inapposite for the reasons this Court has already explained. *See* PI Order, ECF No. 113 at 6–7. Notably, unlike the notice at issue in *Jake's Fireworks*, FMCSA's letter was sent by FMCSA's Chief Counsel, whom, by regulation, has the power to issue "authoritative interpretation[s]" of the relevant laws. 49 C.F.R. § 501.8(d)(5).

Finally, arguing that the Hobbs Act, 28 U.S.C. § 2342, provides exclusive jurisdiction for this action in the courts of appeals, the Federal Defendants again argue this Court "diverged" from the Ninth Circuit's decision in *US West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000). Motion, ECF No. 167 at 4. As this Court already recognized, *US West* is "readily distinguishable." PI Order, ECF No. 113 at 7. That decision, along with the decision in *American Trucking Ass'n v. United States*, 755 F.2d 1292, 1296 (7th Cir. 1985), also cited by the Federal Defendants, *see* Motion, ECF No. 167 at 4–5, holds only that the standard for finality is the same under the Hobbs Act and the Administrative Procedure Act (APA). As the D.C. Circuit explained in holding that those decisions are irrelevant to the question of whether a particular final agency action is one within the meaning of the word "order" in the Hobbs Act, "[b]eing equivalent for the purposes of finality… does not make [the Hobbs Act and the APA] equivalent in all respects." *Weaver v. FMCSA*, 744 F.3d 142, 146 (D.C. Cir. 2014). And the Federal Defendants do not dispute that, under the analysis set out by the D.C. Circuit in *Weaver*, the Data Demand is not a Hobbs Act "order" and thus that jurisdiction properly lies in this Court. The Federal Defendants cannot show that the Fourth Circuit is likely to diverge from *Weaver*.

**B. The Federal Defendants are unlikely to succeed on their merits arguments.**

In issuing the section 705 stay, the Court incorporated by reference its earlier conclusions that the Data Demand was likely unlawful on several independent grounds. *See* 705 Stay Order, ECF No. 161 at 2. The Federal Defendants' attacks on those conclusions lack merit.

As to the Driver's Privacy Protection Act (DPPA), this Court correctly concluded that the Agency Defendants' "demand that the AAMVA transfer the MPRs would likely violate the DPPA." PI Order, ECF No. 113 at 8. The only statutory basis the Agency Defendants invoke for obtaining the MPRs is the DPPA's exception permitting nonconsensual disclosure of records "for use by any government agency … in carrying out its functions." 18 U.S.C. § 2721(b)(1). As this Court has explained, that exception "is likely not applicable here because the Federal Defendants have not made any credible showing that FMCSA will actually use all of the records it demands or that there is a particular statutory function for which FMCSA intends to use the bulk data." PI Order, ECF No. 113 at 8. Indeed, as the Court observed, FMCSA seeks the data not "solely for [its] own use in discharge of its own statutory mandates," but to share that information with "DHS for use in connection with immigration enforcement." *Id.* at 8–9.

The Federal Defendants continue to assert that this conclusion conflicts with *Senne v. Village of Palatine*, 784 F.3d 444 (7th Cir. 2015). *See* Motion, ECF No. 167 at 6. But *Senne* did not deal with a situation like this one, where a government agency has not explained how the requested information would be used to carry out its functions. As this Court explained in its recent order quashing the Department of Homeland Security's subpoena to AAMVA in a related case, *Senne* "recognized that while an agency's 'use' for personal information need not be 'immediate or certain' to come within the government use exception, the use must be particularized and narrowly defined." *Illinois v. DHS*, No. 1:26-mc-00019-AJT-IDD, ECF No. 89 at 14 (E.D. Va. Oct. 21, 2026) (quoting *Senne*, 784 F.3d at 446). This Court's conclusion that the government-use

exception does not apply here "given the absence of any credible substantive explanation for how the requested data transfer is needed for FMCSA to perform its statutory purpose," is entirely consistent with that decision. PI Order, ECF No. 113 at 11. Moreover, as the Court concluded with respect to DHS in the related case, FMCSA "cannot conceivably 'use'—nor does it attempt to specify how it can use—each particular piece of protected personal information contained in the 17 million sought-after records, dating back five years, to effectuate 'its functions.'" *Illinois v. DHS*, ECF No. 89 at 15.

With respect to the Privacy Act, this Court has held that "the transfer of the MPRs as demanded in the Data Demand would likely violate" the statute in three separate ways. PI Order, ECF No. 113 at 9. First, the Federal Defendants "have not complied with the Act's notice requirements that FMCSA must satisfy before including new data into a new or newly modified 'system of records.'" *Id.* Second, the Federal Defendants have not "articulate[d] a specific purpose 'required to be accomplished' by FMCSA that would justify the possession and maintenance of these records." *Id.* (quoting 5 U.S.C. § 552a(e)(1)). And third, the Federal Defendants "intend to transfer the Data to third parties, including other federal agencies, such as DHS, in likely violation of prohibitions against disclosing personal information." *Id.* The Federal Defendants' sole rejoinder is to assert that the TRO opinion "did not even discuss" the existing system of records for CDLIS data. Motion, ECF No. 167 at 6. Yet their motion fails to explain how that omission is relevant to the three likely violations identified by the Court. Further, AFT has explained how FMCSA's existing system of records does not apply to the CDLIS data demanded by the Federal Defendants, *see* AFT 705 Reply, ECF No. 158 at 21–22, and the Federal Defendants do not offer any rebuttal to that argument. They are thus not likely to succeed on the merits of their Privacy Act arguments.

Finally, the Court has explained the many ways in which FMCSA's Data Demand is likely arbitrary and capricious: The Federal Defendants have been unable "to explain how this data is needed to accomplish their goals [and] do not explain why or how the bulk transfer of MPRs for the first time in AAMCA [sic] or FMCSA's history is rationally related to their stated goals" of carrying out review and analysis of the CDL program. TRO, ECF No. 54 at 11. The Federal Defendants have also failed to consider the "costs and potential harms of disclosing the sensitive personal information of 17 million individuals as well as the reliance interests in having this data kept private." *Id.* And they have not overcome the "inference that they seek these 17 million files in large part, if not primarily, for immigration enforcement," an arbitrary decision because immigration enforcement "is not part of [their] statutory mandate." *Id.* The Federal Defendants' stay motion does not engage with most of these findings, instead arguing, incorrectly, that the Court erroneously applied "heightened scrutiny" in this analysis. Motion, ECF No. 167 at 6. But to require an agency to show a rational relationship between its action and its stated goals, and to have considered costs, potential harms, and alternatives, is consistent with the "narrow" "scope of review under the 'arbitrary and capricious' standard." *Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Federal Defendants are thus not likely to prevail in showing that the Data Demand was not arbitrary or capricious.

**C. The Federal Defendants are unlikely to succeed on their arguments about the availability and scope of § 705 relief.**

The Federal Defendants also repeat their arguments that courts are unable to grant relief under section 705 of the APA after an effective date has passed, and that the section 705 stay should have been "tailored" to a single member. Motion, ECF No. 167 at 6–7. As AFT previously explained, these arguments have been considered, and rejected, by numerous courts as inconsistent with the text and structure of section 705. *See* AFT 705 Reply, ECF No. 158 at 17–18 (collecting

cases for the proposition that "whether the effective date of an action has passed is irrelevant to a reviewing court's ability to issue a Section 705 stay"); 26–27 (collecting cases for the proposition that "*CASA* does not control the scope of relief available under Section 705"). The Federal Defendants provide no basis for departing from this authority.

## II. The Federal Defendants have not established irreparable harm.

The Federal Defendants assert that the section 705 stay irreparably harms them in two ways. Neither argument has support in the record.

First, the Federal Defendants suggest that irreparable harm exists any time an agency action is stayed. *See* Motion, ECF No. 167 at 6–7. But in each of the cases on which the Federal Defendants rely, the reviewing court found that the challenged injunction would hinder a federal defendant's performance of some *lawful* function. *See, e.g.*, *Trump v. California*, No. 26A124, 2026 WL 2473573, at *5 (U.S. Aug. 24, 2026) (finding irreparable harm where injunction was "preventing [the Government] from even trying to lawfully implement the Order"). Here, the Federal Defendants have not made any such showing. And as the Court found in granting the preliminary injunction, there is no harm to the Federal Defendants "because they retain their demonstrated abilities to perform their statutory functions, as they have done for decades, without the demanded data," and because they were unable to provide "a satisfactory explanation as to how obtaining this wholesale transfer of data would materially assist them." PI Order, ECF No. 113 at 14. In seeking a stay pending appeal, the Federal Defendants do not attempt to explain why these conclusions were incorrect or otherwise to show how the maintenance of the status quo required by the Stay Order causes harm. The Federal Defendants also suggest that the section 705 stay has "add[ed] further ambiguity over what actions are lawful," thus adding "[n]ew operational burdens." Motion, ECF No. 167 at 8. But a section 705 stay "operates on the legal status of the

challenged agency action by temporarily suspending its operative force." *Coal. for Indep. Tech. Rsch. v. Rubio*, 836 F. Supp. 3d 215, 244 (D.D.C. 2026) (citing *Make the Road N.Y. v. Mullin*, 179 F.4th 16, 31 (D.C. Cir. 2026)). This Court's stay of the Data Demand unambiguously does so here: It temporarily suspends the Data Demand while the case proceeds.

Second, the Federal Defendants assert that the section 705 stay is "irreparably harming DOT's ability to tackle the urgent safety issues posed by unqualified operators of commercial motor vehicles." Motion, ECF No. 167 at 9. As the Court already explained, this assertion is belied by the fact that the Federal Defendants "retain their demonstrated abilities to perform their statutory functions, as they have done for decades, without the demanded data," and because they were unable to provide "a satisfactory explanation as to how obtaining this wholesale transfer of data would materially assist them." PI Order, ECF No. 113 at 14.

**III. The public interest and the balance of the equities weigh against a stay.**

As this Court has held, the "large-scale disclosure of sensitive personal information" that the Data Demand contemplates would impose harms that "are substantial and irreparable." PI Order, ECF No. 113 at 11, 13–14; *see* TRO, ECF No. 54 at 13–14. The Federal Defendants' suggestion that, nonetheless, AFT and its members would not be harmed if the Data Demand were allowed to go into effect is premised on the assumption that AAMVA will not comply with the Data Demand. The Federal Defendants cite no authority for the proposition that the possibility that a regulated entity will not comply with an agency's demand eliminates the risk of harm.

The Federal Defendants also suggest that any harms associated with wrongful disclosure can be remediated after the fact. As AFT has previously explained though, no such relief would be available in this case. *See* AFT 705 Motion, ECF No. 132 at 25–26. The wide dissemination of millions of drivers' information "is a bell that one cannot unring." *Senior Executives Ass'n v.*

*United States*, 891 F. Supp. 2d 745, 755 (D. Md. 2012). As this Court has already found, "the 17 million records at issue here … will not be disclosed to a small number of individuals with confidentiality obligations," and "FMCSA has provided no confidentiality assurances and openly admits that it intends to share the records with DHS so that it can be used for immigration enforcement, among other things." TRO, ECF No. 54 at 13–14.

## CONCLUSION

For the foregoing reasons, this Court should deny the Federal Defendants' motion for a stay pending appeal.

Dated: November 13, 2026

Respectfully submitted,

/s/ Mark Hanna
Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005
(202) 223-2620
mhanna@murphypllc.com

Adam R. Pulver
(admitted pro hac vice)
Nandan M. Joshi
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org
njoshi@citizen.org

*Counsel for Plaintiff-Intervenor AFT*